1
2
3
4
5
6
7
8
9
10

UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

11
12
13
14
15

ROSMINAH BROWN, *et al.*,

                    Plaintiffs,

        v.

THE HAIN CELESTIAL GROUP, INC.,

                    Defendant.

_____/

No. C 11-03082 LB

**ORDER DENYING MOTION TO DISMISS**

[ECF No. 27]

16

**I.  INTRODUCTION**

17    Plaintiff Rosminah Brown,[1] on behalf of herself and all similarly-situated individuals (defined as

18   those who purchased products from Defendant The Hain Celestial Group, Inc. during the four-year

19   period defined in the complaint) alleges that Defendant manufactures, distributes and/or sells

20   cosmetic products (also referred to as personal care products) that are marketed, labeled and sold as

21   "organic" in violation of section 110838 or 110839 of the California Health & Safety Code (part of

22   the California Organic Products Act of 2003 or "COPA"), section 17200 of the California Business

23   & Professions Code (California's Unfair Competition Law or "UCL"), section 1750 of the

24   California Civil Code (the California Legal Remedies Act or "CLRA"), and section 2313 of the

25
26
27
28

_____

    [1] On April 26, 2012, the court granted the parties' stipulation to dismiss Plaintiff Center for
Environmental Health.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

California Commercial Code.  Complaint, ECF No. 1 at 11, ¶ 4 and 13, ¶¶ 14-15.[2]  Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3), arguing that all of the claims rely on an alleged violation of California state law – that the single product purchased by the Plaintiff did not contain 70% organic agricultural content as purportedly required by section 11038(a) of the California Health & Safety Code – and that such a provision is expressly preempted by the federal Organic Foods Production of 1990 ("OFPA").  Motion to Dismiss, ECF No. 27 at 6-7.

The court denies Defendant's motion because the state law claims at issue are not expressly preempted by OFPA and there are no obvious conflicts from the information presented.

## II.  BACKGROUND

### A.  Factual Allegations and Procedural History

On May 11, 2011, Plaintiff filed a putative class action complaint in the Superior Court of the State of California, County of Alameda, against Defendant.  Complaint, ECF No. 1 at 9.  The complaint alleges that Defendant manufactures and sells cosmetic products sold under the JASON and Avalon Organics brands in California.  *Id.* at 10, ¶ 1.  Plaintiff alleges that Defendant has marketed and labeled those products as "organic" products based on the JASON brand's tagline of "Pure, Natural & Organic" and the use of the word "organics" in the "Avalon Organics" brand name.  *Id.*  Plaintiff alleges that such uses of the word "organic" are misleading because the products do not meet state law requirements under COPA.  *Id.* at 10-11, ¶¶ 1, 3-4.  Plaintiff alleges that Defendant used the terms "organic"and "organics" as described above in recognition of the fact that consumers will pay more for organic products.  *Id.* at 10, ¶ 2.

More specifically, Plaintiff alleges that she purchased a single Hain Celestial product, JASON Ester-C Super-C cleanser Gentle Face Wash, in approximately September 2009.  *Id.* at 11-12, ¶ 5.  Plaintiff alleges that she believed that the face wash "was either completely or at least mostly organic" based on the appearance of the word "organic" in the "Pure, Natural & Organic" tagline

___

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

appearing on the product's front label.  *Id.*  Plaintiff alleges that the product contains less than 70%

organic ingredients in violation of COPA.  *Id.* at 10-11, ¶¶ 1, 3-4.  Plaintiff alleges that out of the 19

ingredients listed in small print on the back of the bottle, only one is certified organic.  *Id.* at 14,

¶ 17.  Plaintiff alleges that the sole "certified organic" ingredient, Aloe Barbadensis (Aloe Vera)

Leaf Gel, is not the most prominent of the nineteen ingredients, ranking ninth on the ingredient list

in terms of its predominance in the product.  *Id.*

Plaintiff asserts violations of section 110838 or 110839 of the California Health & Safety Code

(part of the California Organic Products Act of 2003 or "COPA"), section 17200 of the California

Business & Professions Code (California's Unfair Competition Law), section 1750 of the California

Civil Code (the California Legal Remedies Act), and section 2313 of the California Commercial

Code.  *Id.* at 11, ¶ 4 and 13, ¶¶ 14-15.

Defendant removed the action on June 22, 2011.  Notice of Removal, ECF No. 1 at 1.  On March

2, 2012, Defendant filed the instant motion to dismiss.  ECF No. 27 at 1.  Defendant and Plaintiff

filed requests for judicial notice with each of their papers.  *See* ECF Nos. 28, 33, and 35.

Additionally, Plaintiff seeks leave to file a supplemental request for judicial notice.  ECF No. 36 at

1.  Defendant opposes this request, arguing that Plaintiff did not comply with the local rules and that

the supplemental request is actually a disguised sur-reply.  ECF No. 37 at 2.  On July 12, 2012,

Defendant submitted its own Statement of Supplemental Authority.  ECF No. 53.  Plaintiff objects to

Defendant's request, arguing that Defendant did not comply with the local rules and that the

supplemental authority is irrelevant.  ECF No. 55 at 2.  Defendant submitted a response to Plaintiff's

Opposition, in part acknowledging its failure to comply with the Civil Local Rules.  ECF No. 56.

The court may take judicial notice of matters of public record without converting a motion to

dismiss into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th

Cir. 2001).  Because  all of the documents are public records or are capable of accurate and ready

determination by resort to sources whose accuracy cannot be reasonably questioned, the court may

properly take judicial notice of the undisputable facts contained in them.  *See Hotel Employees &*

*Rest. Employees Local 2 v. Vista Inn Mgmt. Co.,* 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R.

Evid. 201(b).  The court grants the unopposed requests for judicial notice filed at ECF Nos. 28, 33

1    and 35.  Because the court did not rely on the material in Plaintiff's supplemental request for judicial

2    notice and the request improperly included counter-arguments to Defendant's reply, the court denies

3    Plaintiff's request.  Similarly, because the court did not rely on the material in Defendant's statement

4    of supplemental authority and the statement was submitted after the noticed hearing took place in

5    violation of Civil L.R. 7-3(d), the court denies Defendant's request.

6    **B. <u>Regulatory History</u>**

7        **1.   The Organic Foods Products Act and the NOP's Production and Labeling Standards**

8             **for Agricultural Products**

9        The purpose of the OFPA is:

10       (1) to establish national standards governing the marketing of certain agricultural
         products as organically produced products;

11       (2) to assure consumers that organically produced products meet a consistent standard;
         and

12       (3) to facilitate interstate commerce in fresh and processed food that is organically
         produced.

13

14    7 U.S.C. § 6501.  OFPA directed the United States Department of Agriculture ("USDA") to

15   establish the national standards governing agricultural products marketed as organically produced.

16   *Id.* at § 6503.  The USDA published its final rule implementing OFPA in 2000, creating the National

17   Organic Program ("NOP").  *See* 65 Fed. Reg. at 80,548 (Dec. 21, 2000) (codified as 7 C.F.R. § 205)

18   ("the Final Rule").  The NOP includes standards for producing and handling organic agricultural

19   products.  *See, e.g.,* 7 C.F.R. § 205.201.  Also, the regulations govern the use of the term "organic"

20   in the labeling and marketing of such agricultural products.  *See* 7 C.F.R. § 205.300.  The statute

21   requires that agricultural products labeled as organic be certified as meeting the requirements of the

22   regulations by an agent accredited by the USDA, and forbids the labeling as organic of products that

23   have not been certified as such.  7 U.S.C. §§ 6514(a), 6515, 6519.  Another court in this district

24   found that "[t]he NOP provisions governing the production, marketing, and labeling of 'organic'

25   products are complex, detailed, and specific."  *All One God Faith, Inc. v. Hain Celestial Group, Inc.*,

26   No. C 09–03517 JF (HRL), 2011 WL 4433817, at *2 (N.D. Cal. Sept. 22, 2011).

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**2. Enforcement of Organic Product Standards**

OFPA generally is the exclusive federal mechanism for evaluating whether agricultural products may be labeled and marketed as "organic" and for challenging decisions made by the USDA pursuant to that mechanism.  *Id.*  As the court in *All One God Faith* found, there is no private right of action to enforce OFPA or its implementing regulations.  2011 WL 4433817, at *3 (citing 7 U.S.C. § 6519).

The Final Rule provides that "[t]he NOP is ultimately responsible for the oversight and enforcement of the program, including . . . cases of fraudulent or misleading labeling."  65 Fed. Reg. at 80,557.  The USDA has indicated that it accepts all consumer and business complaints regarding alleged misuse of the word "organic" but has rejected private enforcement actions.  *Id.* at 80,627.

**3. Application of OFPA to Personal Care Products**

OFPA defines the term "agricultural product" as "any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock that is marketed in the United States for human or livestock consumption."  7 U.S.C. § 6502(1).  The statute also provides that "no person may affix a label to, or provide other market information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with this chapter."  *Id.* at § 6505(a)(1)(B).

At the end of 2000, during deliberations on the regulations, commenters "asked that the NOP include in the final rule certification standards for cosmetics, body care products, and dietary supplements."  65 Fed. Reg. at 80,557.  The USDA concluded, however, that "[t]he ultimate labeling of cosmetics, body care products, and dietary supplements . . . is outside the scope of these regulations."  *Id.*

As Judge Fogel detailed in *All One God Faith*, the USDA's position has changed over time.  In May 2002, the USDA issued a "Policy Statement on National Organic Program Scope," explaining that cosmetic products were eligible for certification under the NOP because they might contain agricultural products.  2011 WL 4433817, at *4.  Two years later, in April 2004, the USDA changed its position and stated that producers of personal care and cosmetic products could not seek even

UNITED STATES DISTRICT COURT
For the Northern District of California

voluntary participation in the NOP.  *Id.*  In a guidance statement, the USDA stated that OFPA does

not extend to personal care products "over which USDA has no regulatory authority."  *Id.* (quoting

guidance statement).

In an August 2005 memorandum, the USDA determined that agricultural products may be

certified as organic if they comply with the NOP regulations. Def.'s RJN Ex. A, ECF No. 28-1 at 2.

And, in April 2008, the USDA confirmed that producers and handlers of personal care products may

seek USDA certification:

> If a cosmetic body care product or personal care product contains or is made up of
> agricultural ingredients, and can meet the USDA/NOP organic production,
> handling, processing and labeling standards, it may be eligible to be certified
> under the NOP regulations . . . .  Any cosmetic, body care product or personal
> care product that does not meet the production, handling, processing, labeling,
> and certification standards described above, may not state, imply or convey in any
> way that the product is USDA-certified organic or meets the USDA organic
> standards.

Pl.'s RJN, Ex. 2, ECF No. 33-1 at 2-3.  The USDA also stated:

> USDA has no authority over the production and labeling of cosmetics, body care
> products and personal care products that are not made up of agricultural
> ingredients or do not make any claims to meeting USDA organic standards.
> Cosmetics, body care products, and personal care products may be certified to
> other, private standards and be marketed to those private standards in the United
> States. These standards might include foreign organic standards, eco-labels, earth
> friendly, etc. USDA's NOP does not regulate these labels at this time.

*Id.* at 3.

On April 23, 2010, Miles McEvoy, Deputy Administrator of the NOP, issued an official

memorandum stating that the NOP would: (1) work with the Food and Drug Administration

("FDA") and the Federal Trade Commission regarding the use of the term "organic" in personal care

products in order to achieve a "comprehensive approach" across agencies; (2) gather information

regarding organic labeling of personal care products in the marketplace; and (3) consider the

recommendations of the NOSB on rulemaking – which called for the USDA to regulate organic

labeling of personal care products – and take them under advisement for future incorporation."

Def.'s RJN Ex. C, ECF No. 35-3 at 2.

Finally, on May 5, 2011, in response to a letter from Judge Fogel inquiring whether the USDA

had any pertinent information other than the documents described above in the *All One God Faith*

UNITED STATES DISTRICT COURT
For the Northern District of California

1  case, the agency replied that "after considerable research, we do not have any additional information

2  relevant to this case."

3

4  **4. OFPA and State Organic Programs**

5  States may develop their own state organic certification programs ("SOP") under OFPA.

6  Specifically, section 6507(a) permits a governing state official to prepare and submit a plan for the

7  establishment of an SOP to the Secretary of Agriculture for approval.  7 U.S.C. § 6507(a).  If an

8  SOP contains more restrictive requirements than those set forth in the NOP regarding the organic

9  certification of farms and handling operations and the production and handling of agricultural

10  products that are to be sold or labeled as organically produced under OFPA, the additional

11  requirements must (A) further the purposes of OFPA; (B) be consistent with OFPA; (C) not be

12  discriminatory towards agricultural commodities organically produced in other states; and (D) only

13  become effective after being approved by the Secretary.  *Id.* at § 6507(b).  The USDA contemplated

14  that states "would want to monitor for false claims or misleading labeling" under the regulations and

15  "would forward any complaints to the NOP."  65 Fed. Reg. at 80,557.

16  **5. California Organic Products Act**

17  The California Organic Products Act of 2003, Cal. Health & Safety Code, §§ 110810 *et seq.*

18  ("COPA") purports to be an approved SOP that prescribes standards for organic products, including

19  the marketing, advertising and labeling of such products.  *See, e.g.*, Cal. Health & Safety Code

20  § 110820.  COPA prohibits any product handled, processed, sold, advertised, represented, or offered

21  for sale in California from being sold as organic unless it also is prominently labeled and invoiced

22  with similar terminology as set forth by regulations promulgated by the NOP.  Cal. Health & Safety

23  Code, § 110830(a)

24  With regard to cosmetics, COPA states, "[c]osmetic products sold, labeled, or represented as

25  organic or made with organic ingredients shall contain, at least 70 percent organically produced

26  ingredients." Cal. Health & Safety Code § 110838(a).  Cosmetic products with less than 70%

27  organically-produced ingredients may identify the organically-produced ingredients only in one of

28  two ways: (1) by identifying each organic ingredient with an asterisk or using the word "organic" in

1  the ingredient list; or (2) by displaying the product's percentage of organic contents on the

2  information panel. *Id.* at § 110839.

3  COPA is enforceable by "any person" who may bring an action for injunctive relief. Cal. Health

4  & Safety Code § 111910(a).

5  ### III. LEGAL STANDARD

6  "[A] court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule

7  12(b)(1) of the Federal Rules of Civil Procedure." *Kingman Reef Atoll Invs., L.L.C. v. United States*,

8  541 F.3d 1189, 1195 (9th Cir. 2008). A district court may "hear evidence regarding jurisdiction"

9  and "resolv[e] factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077

10 (9th Cir. 1983). "Once challenged, the party asserting subject matter jurisdiction has the burden of

11 proving its existence." *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007). "If the

12 court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

13 action." Fed. R. Civ. P. 12(h)(3); *see Saul v. United States*, 928 F.2d 829, 832 (9th Cir. 1991)

14 (recognizing that preemption of state claims deprives a federal court of subject matter jurisdiction

15 over preempted claims).

16 "State law is preempted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in three

17 circumstances." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990) (internal citations omitted).

18 "First, Congress can define explicitly the extent to which its enactments pre-empt state law." *Id.*

19 (internal citations omitted). "Preemption fundamentally is a question of congressional intent and

20 when Congress has made its intent known through explicit statutory language, the courts' task is an

21 easy one." *Id.* at 78-79 (internal citations omitted).

22 "Second, in the absence of explicit statutory language, state law is pre-empted where it regulates

23 conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79.

24 "Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make

25 reasonable the inference that Congress left no room for the States to supplement it,' or where an Act

26 of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system

27 will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (internal citations

28 omitted). "Although this Court has not hesitated to draw an inference of field preemption where it is

UNITED STATES DISTRICT COURT
For the Northern District of California

1  supported by the federal statutory and regulatory schemes, it has emphasized: 'Where . . . the field

2  which Congress is said to have preempted' includes areas that have 'been traditionally occupied by

3  the States,' congressional intent to supersede state laws must be 'clear and manifest.'" *Id.* (internal

4  citations omitted).

5      "Finally, state law is preempted to the extent that it actually conflicts with federal law." *Id.*

6  "Thus, the Court has found preemption where it is impossible for a private party to comply with both

7  state and federal requirements . . . or where state law 'stands as an obstacle to the accomplishment

8  and execution of the full purposes and objectives of Congress.'" *Id.*

9                                    **IV.  DISCUSSION**

10  A.  **Whether OFPA Covers Cosmetics and Preempts State Claims Based on Labeling**

11      **1.  Whether OFPA Covers Cosmetics**

12      Defendant argues that the USDA has adopted the following framework with regard to the

13  certification of cosmetics products as organic: a multi-ingredient cosmetic product may, but need

14  not, be certified under the NOP in order to use the word "organic" in accordance with the OFPA.

15  ECF No. 27 at 8 (citing Ex. A, ECF No. 28-1 at 2-3 (August 23, 2005 USDA Guidance

16  Memorandum)).  Defendant also cites Judge Fogel's conclusion that the USDA has asserted

17  jurisdiction over personal care products.  *Id.* (citing *All One God Faith, Inc. v. Hain Celestial Group,*

18  *Inc.*, No. C 09-03517 JF (HRL), 2010 WL 2133209, at *6 (N.D. Cal. May 24, 2010)).

19      Plaintiff notes that Defendant argued that OFPA does not cover cosmetics in *All One God Faith*.

20  ECF No. 32 at 21.  And Plaintiff points out that the USDA's final rule implementing the NOP

21  regulations concluded that "cosmetics are outside the scope of the rule." *Id.* (quoting 65 Fed. Reg. at

22  80,557).

23      Also, Plaintiff asserts that the typical rationale for preemption of state standards – national

24  uniformity – is expressly limited under OFPA to "certain agricultural products," which are defined

25  as agricultural products for human (or livestock) consumption.  *Id.* at 16 (citing 7 U.S.C. §§ 6501(1),

26  6502(1)).  And Plaintiff quotes a Senate report, which stated, "After September, 1992 no other label

27  will be allowed that claims that a food is in any way organic or organically produced, with specified

28  exceptions regarding State labels and small farmers." *Id.*  Plaintiff emphasizes the Senate report's

1    use of "food" in its statement.  *Id.*

2    Defendant counters by noting that the definition of "agricultural product" appearing in OFPA is

3    not explicitly restricted to human food.  ECF No. 34 at 10 (citing 7 U.S.C. § 6502(1)).  Defendant

4    reasons that this means that the statutory term may include non-food products – a conclusion that is

5    supported by USDA's current construction of the term "agricultural product" as encompassing any

6    compliant product irrespective of the end use of the product.  *Id.* at 10-11 (citing USDA memoranda

7    that authorize certification of finished cosmetic/personal care products).  To this, Defendant also

8    notes that the FDA has recognized the USDA's jurisdiction over "organic" labeling.  *Id.* at 12.

9    Additionally, Defendant explains that Congress's focus on organic food made sense because

10   there were no other classes of organic products at the time.  *Id.* at 11.

11   Defendant further responds to Plaintiff by suggesting that the Final Rule's statement that the

12   labeling of personal care products was outside the scope of the NOP does not mean that cosmetics

13   fall outside of the jurisdiction of the agency and program.  *Id.* at 11-12.  And Defendant notes that

14   the agency has, in fact, changed its position on this issue.  *Id.* at 12.

15   Plaintiff argues that the subsequent USDA guidance memoranda cannot and do not preempt

16   Plaintiff's state claims.  ECF No. 32 at 22.  Plaintiff cites out-of-circuit decisions for the proposition

17   that agency actions that have not been vetted through either the formal notice-and-comment

18   procedure or through a formal adjudicative process lack the force of law sufficient to preempt state

19   law.  *Id.* at 22-23.  Plaintiff then asserts that the USDA's only statement regarding cosmetics that

20   carries the force of law, the NOP, expressly disclaims preemptive regulation of state organic

21   labeling claims regarding cosmetics.  *Id.* at 23 (citing 65 Fed. Reg. at 80,557 ("The ultimate labeling

22   of cosmetics, body care products, and dietary supplements, however, is outside the scope of these

23   regulations.")).  Plaintiff also observes that the USDA memorandum relied on by Defendant is silent

24   as to preemption and provides no indication of preemptive intent.  *Id.*  Plaintiff asserts that the

25   memorandum's discussion of voluntary compliance with the NOP for cosmetic products does not

26   bring cosmetics within the limited scope of OFPA preemption.  *Id.* at 23-24.  Related to this point,

27   Plaintiff notes that an agency's jurisdiction over a subject does not necessarily imply that all state

28   claims related to the subject are preempted.  *Id.* at 24, n. 18.

1    Defendant concludes its arguments regarding this issue by describing Judge Fogel's discussion

2    in *All One God Faith*, which found that the USDA has asserted jurisdiction over personal care

3    products.  ECF No. 34 at 12.

4    OFPA governs the marketing of certain agricultural products as organically-produced products.

5    It sets certain requirements for the production and handling of these products.  Its definition of

6    "agricultural products" is not explicitly limited to food (and it explicitly includes processed

7    material).  *See* 7 U.S.C. § 6502.  And the regulations even address multi-ingredient packaged

8    products that contain less than 70% organically-produced ingredients.  *See* 7 C.F.R. § 205.305.

9    Although the phrase "for human or livestock consumption" could be read as limited to agricultural

10   products that are eaten or drunk, the court adopts a broader view that does not rely on the end use of

11   the crops or livestock-derived products but, instead, finds that OFPA covers cosmetics that use such

12   products.  Having determined that OFPA covers cosmetics, the court turns to the question of

13   whether OFPA preempts all state claims based on labeling.

14   **2.  Whether OFPA Preempts All State Claims Based on Labeling**

15   Defendant argues that Congress supplanted the states and simultaneously vested the exclusive

16   authority to implement the NOP with the USDA.  ECF No. 27 at 13.  Defendant notes that section

17   6505(a)(1) prohibits interstate commerce in agricultural products that do not meet federal organic

18   standards and prohibits claims that such products meet the federal organic program standards unless

19   they are produced and handled in accordance with the federal rules.  *Id.* at 14.  Defendant suggests

20   that this prohibition invalidated and preempted state standards that would impose different product

21   composition requirements than those required by the federal organic scheme because that could

22   thereby alter the application of the federal labeling scheme.  Defendant concludes that COPA's

23   compositional standard is preempted by OFPA.  *Id.*  In support of this position, Defendant also

24   points to section 6507, which requires approval by the Secretary of Agriculture for state organic

25   certification programs.  *Id.* at 15.  Defendant argues that this provision "conclusively preempts every

26   possible state standard that has not been reviewed by the Secretary."  *Id.* at 16.

27   Plaintiff contends that the federal government regulates the labeling of cosmetics through the

28   Food Drug and Cosmetic Act ("FDCA") and that OFPA does not contain any statements

UNITED STATES DISTRICT COURT
For the Northern District of California

1   demonstrating Congressional intent to preempt state organic labeling requirements for cosmetics.

2   ECF No. 32 at 15-16.  Plaintiff argues that, instead, OFPA is expressly limited to the regulation of

3   organic food.  *Id.* at 16.

4       Defendant reiterates its arguments regarding the scope of OFPA, which – under Defendant's

5   view – includes cosmetics.  ECF No. 34 at 7.  Defendant also contends that no distinction can or

6   should be drawn between the substantive organic criteria set by the NOP and the labeling terms

7   based thereon.  *Id.* at 8 (citing *Harvey v. Johanns*, 494 F.3d 237, 238 (1st Cir. 2007); *In re Aurora*

8   *Dairy Corp. Organic Milk Mktg. and Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2010);

9   *Massachusetts Indep. Certification, Inc. v. Johanns*, 486 F. Supp. 2d 105, 110 (D. Mass. 2007); *All*

10  *One God Faith*, 2009 WL 4907433, at *8).  Defendant explains its view that the NOP is a

11  comprehensive pre-market program and, under this scheme, an organic label is authorized by

12  compliance with the substantive organic compositional criteria.  *Id.* at 9.  Given this view, Defendant

13  asserts that it is mere semantics to contend that preemption of "labeling" requirements is different

14  than preemption of other "certification" requirements (such as a compositional requirement) or

15  requires special preemptive language.  *Id.* (citing *Harvey v. Veneman*, 396 F.3d 28, 32 (1st Cir.

16  2005); *In re Aurora Dairy*, 621 F.3d at 796; 7 C.F.R. § 205. 2).  And, in this case, Defendant argues

17  that it is clear that the COPA provision relied upon by Plaintiff is a substantive compositional

18  requirement that is a predicate to their labeling claims and that state law may not circumvent federal

19  requirements by the artifice of a sales prohibition.  *Id.* at 9-10 (citing *National Meat Ass'n v. Harris*,

20  132 S. Ct. 965, 973 (U.S. 2012); Final Rule at 80,682).

21      Plaintiff also relies on the decision in *In re Aurora*.  ECF No. 32 at 17.  Plaintiff asserts that the

22  Eighth Circuit held that section 6507 did not expressly preempt state organic consumer protection

23  and labeling claims on milk products but, instead, applied only to state certification requirements.

24  *Id.* at 17-18 (citing *In re Aurora*, 621 F.3d at 792).  Plaintiff acknowledges that the Eighth Circuit

25  held that the particular labeling claims at issue in *In re Aurora* were preempted but notes that it was

26  based on conflict preemption.  *Id.* at 18 n.13.  Plaintiff observes that Defendant does not contend that

27  conflict preemption applies here and that no conflict exists based on her view that neither OFPA nor

28  the NOP applies to the cosmetic products and Defendant's cosmetic products are not certified as

UNITED STATES DISTRICT COURT
For the Northern District of California

1   organic by any certifying agent that is properly certified under OFPA and the NOP.  *Id.*

2       Defendant counters that the *In re Aurora* case did not involve an attempt to impose state organic

3   dairy product standards and, thus, the case does not stand for the principle that states may impose

4   "labeling" requirements that differ from federal organic labeling requirements outside of section

5   6507's pre-approval process.  Reply, ECF No. 34 at 8.  Defendant also notes that in *In re Aurora,*

6   the court held that unapproved state organic regulations are expressly preempted.  *Id.* (citing 621

7   F.3d at 792).  Defendant asserts that *In re Aurora* therefore compels the conclusion that any organic

8   product standard imposed by a state must be pre-approved by the Secretary under section 6507(b) or

9   it is preempted.  *Id.*

10      In sum, Defendant's fundamental preemption argument is that OFPA preempts any state law

11  claims where the underlying substantive issue is the labeling of products as "organic" under a state

12  law (here, COPA) because, by the operation of its explicit provisions, Congress gave *only* to the

13  USDA the authority to make a determination about the validity of a compositional standard for the

14  term "organic."  The essence of Plaintiff's argument is that there is a strong presumption against

15  preemption and that OFPA does not contain the usual explicit language associated with Congress's

16  intent to preempt state laws (such as the consumer protection laws at issue here).

17      As a general matter, the court agrees that it is difficult to distinguish labeling and compositional

18  requirements in the context of "organic" products.  But, as the Eighth Circuit noted in *In re Aurora*,

19  OFPA's only explicit preemptive language involved cutting off independent state certification laws.

20  *See* 621 F.3d at 792 (citing 7 U.S.C. § 6507).  Given this reading of the statute, the Eighth Circuit

21  found that  "Congress did not expressly preempt state tort claims, consumer protection statutes, or

22  common law claims."  *Id.*  The undersigned agrees with and follows the Eighth Circuit's reasoning.

23  OFPA expressly preempts state certification requirements but does not expressly bar state law

24  claims that do not conflict with OFPA's provisions given the terms of the statute and the

25  presumption against preemption so long as the compositional requirements at issue do not conflict

26  with those set forth in OFPA.  And, unlike the facts in *In re Aurora*, the court cannot discern an

27  obvious substantive conflict between the state and federal definitions of the term "organic" as it is at

28  issue in this case.

1    Moreover, adopting Defendant's interpretation would mean that a consumer would have no

2    protection against deceptive or fraudulent labeling based on the use of the term "organic."  And the

3    court can envision scenarios where, in the absence of clear congressional intent to do this, the results

4    would be absurd.  For example, in the most recent USDA guidance, the agency asserts no authority

5    over the use of private or foreign "organic" certification for personal care/cosmetics products.

6    Under Defendant's view, a consumer would have no recourse if a producer claimed a product was

7    certified "organic" by a particular private regulatory body where, in fact, the product had not in fact

8    been so certified by that particular private regulatory body.

9    **B.   Whether COPA's Compositional Standard Has Been Validly Approved Under OFPA**

10    Defendant argues that the provisions of COPA upon which Plaintiff relies should be interpreted

11    only as an authorizing enactment to the state executive branch (and not as provisions creating

12    substantive rights) because OFPA does not permit standards that differ from federal standards,

13    unless and until the state executive (here, the Secretary of the California Department of Food and

14    Agriculture) receives approval from the federal government pursuant to section 6507(b).  ECF No.

15    27 at 17-18.

16    Plaintiff counters that COPA's cosmetics labeling provisions are part of a federally-approved

17    SOP and, thus, are beyond even Defendant's construction of OFPA preemption.  ECF No. 32 at 24.

18    Plaintiff explains that COPA was enacted by the California Legislature in 2003 and was carefully

19    drafted to implement, and avoid any possible conflict with, NOP regulations.  *Id.* at 25.  Plaintiff

20    states that in February of 2004, pursuant to 7 U.S.C. §§ 6506 and 6507(a), the USDA authorized the

21    California Department of Food and Agriculture ("CDFA") to administer an SOP, which

22    encompasses COPA.  *Id.*

23    Defendant responds by arguing that the 2004 letter relied upon by Plaintiff did not authorize any

24    "additional requirements" and was subsequently repudiated as erroneously issued by the USDA in

25    an independent audit conducted by the USDA's Inspector General.  ECF No. 34 at 13.  Defendant

26    asserts that the NOP January 21, 2011 Policy Memorandum establishes on its face that the USDA

27    has not granted any additional requirements to California except the "Additional Requirements" that

28    appear in the memorandum.  *Id.*  Defendant notes that the memorandum does not mention COPA's

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    70 percent compositional provision.  *Id.*

2        Plaintiff argues that the 2011 approval merely supplemented California's SOP as approved in

3    2004 to add new registration requirements pursuant to section 6507(b), which cannot and did not

4    supplant the initial approval of the SOP in 2004.  ECF No. 32 at 25.  Plaintiff further observes that

5    although the USDA is required to review SOPs every five years, it has never objected to California's

6    enforcement of COPA's cosmetic provisions as beyond the scope of the 2004 federal approval.  *Id.*

7        Plaintiff also argues that COPA's cosmetic requirements do not require special USDA approval

8    pursuant to section 6507(b) because they are not more restrictive than NOP labeling standards.  *Id.*

9    at 26.  Plaintiff explains that, under both labeling standards, products must have at least 70% organic

10   ingredients in order to include organic claims on the product labels.  *Id.* (citing Cal. Health & Safety

11   Code § 110838; 7 C.F.R. § 205.301(c)).  Plaintiff further asserts that, under both COPA and the

12   NOP, products that contain less than 70% organic ingredients may only identify the organic content

13   of the product using a designation in the ingredient statement or as a percentage of the total

14   ingredients of the product.  *Id.* (citing Cal. Health & Safety Code § 110839 with 7 C.F.R. §

15   205.305).  Plaintiff thus concludes that COPA's organic labeling requirements for cosmetics are not

16   "more restrictive" than NOP organic labeling requirements and, therefore, no special authorization

17   under section 6507(b) is required for COPA's cosmetic labeling requirements.  *Id.*

18       Defendant counters with an argument that its product's labeling was consistent with OFPA's

19   labeling requirements.  ECF No. 34 at 16-17.  Defendant's argument that it complied with 7 C.F.R.

20   205.305 appears to rely on Defendant's contention that it identified the organically-produced

21   ingredients in the ingredient statement.  *Id.* at 17.  Defendant otherwise implicitly appears to argue

22   that its use of the term "organic" in the product's tagline does not constitute a prohibited claim.  *Id.*

23       It is unclear from the administrative record provided by the parties whether COPA was approved

24   in its entirety.  And, given the court's holdings as to the lack of preemptive effect of OFPA as to the

25   state claims at issue here, prudence dictates that the court not call into question the state and federal

26   governments' apparently copacetic co-existence, particularly given the strong presumption against

27   preemption and the lack of comment from either the state or federal government.

28       The issue of Defendant's purported compliance with OFPA's labeling requirements is also

C 11-03082 LB
ORDER

15

UNITED STATES DISTRICT COURT
For the Northern District of California

1    unclear.  The use of the term "organic" in the product's tagline seems to violate OFPA's labeling

2    requirements for multi-ingredient products with less than 70% organic composite ingredients.  The

3    requirements only allow the use of the term in the ingredient panel (either by the actual organic

4    ingredient or in the ingredient statement with the specified percentage).  To the extent that

5    Defendant's compliance argument hinges on its view that cosmetics and personal care products are

6    effectively unregulated, the court already has rejected this argument.

7    **C.   Whether Any of Plaintiff's Claims May Persist Even if the Court Adopted Defendant's**

8         **View on the Preemption Issue**

9         Plaintiff argues that her Unfair Competition Law, Consumer Legal Remedies Act, and express

10   warranty claims persist even if the court adopts Defendant's view regarding the preemption issue,

11   ECF No. 32 at 26-27.  Plaintiff argues that none of these claims – except her Unfair Competition

12   Law claim under the "unlawful" prong to the extent that it relies on a violation of COPA – are

13   completely dependent on whether Defendant's products comply with COPA's cosmetic labeling

14   requirements but, instead, are more fundamentally based on Defendant's misrepresentation of the

15   products as "organic" when predominately they are not.  *Id.* at 27.  Plaintiff contends that, while

16   Defendant's violations of COPA enhance these claims, Defendant's misrepresentations that the

17   products are organic are actionable under the Competition Law, Consumer Legal Remedies Act and

18   express warranty law irrespective of COPA.  *Id.*

19        Defendant counters that Plaintiff contended that she was defrauded or misled or that Defendant

20   breached an express warranty based on Plaintiff's position that Defendant's product was represented

21   to be, but was not, "organic" in compliance with COPA's 70% compositional standard.  ECF No. 34

22   at 17-18.  Defendant notes that the complaint does not contain any other compositional standard.  *Id.*

23   at 18.  Defendant thus concludes that all of Plaintiff's claims are preempted by OFPA.

24        At their core, as currently constructed, Plaintiff's claims rely on the term "organic" having some

25   legally meaningful substance when used to market cosmetics or personal care products.  As a

26   general matter, OFPA provides that definition.  But, regardless of whether COPA and OFPA employ

27   different definitions, the court already has determined that OFPA does not preempt Plaintiff's

28   claims.

C 11-03082 LB
ORDER

16

**D. Whether the District Court Should Stay or Dismiss the Case Under the Primary**

   **Jurisdiction Doctrine**

While the court is unwilling to find that OFPA explicitly preempts the state consumer protection laws at issue here, the court also acknowledges that Defendant, in effect, raises a primary jurisdiction argument that needs to be addressed.  At the hearing, Defendant explained its view that Plaintiff should have filed an administrative complaint with the USDA.  Then, if the USDA determined that Defendant's conduct violated the NOP, Plaintiff would be able to pursue her state claims.  On the other hand, if the USDA determined that Defendant's conduct did not violate or was not regulated by the NOP, Plaintiff would have to appeal the USDA's decision under the APA framework (and, presumably, the claims here would be subject to dismissal for failure to state a claim barring a reversal of the USDA's decision).  After the initial hearing on the parties' motion to dismiss, the court granted Defendant's request to submit supplemental briefing solely on the primary jurisdiction issue.[3]  Order, ECF No. 47.

**1. The Primary Jurisdiction Doctrine**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Primary jurisdiction is not "designed to 'secure expert advice' from agencies' every time a court is presented with an issue conceivably within the agency's ambit."  *Id.*  Instead, "it is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'"  *Id.* (quoting *MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

Courts in this circuit traditionally apply the primary jurisdiction doctrine "in cases where there is: (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

---

[3] The court's order limited the scope of the post-hearing briefing to discussions of "7 U.S.C. § 6520 and the application of the primary jurisdiction doctrine to this case."  Order, ECF No. 47 at 1-2.  The court does not consider the parties' post-hearing briefs to the extent they discuss additional topics.

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or

2  activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

3  administration." *Clark*, 523 F.3d at 1115 (alteration omitted)*; Syntek Semiconductor Co., Ltd. v.*

4  *Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002); *United States v. Gen. Dynamics Corp.*,

5  828 F.2d at 1365.  The Ninth Circuit also has explained that the doctrine "is designed to protect

6  agencies possessing 'quasi-legislative power' and that are 'actively involved in the administration of

7  regulatory statutes.'" *Clark*, 523 F.3d at 1115 (quoting *Gen. Dynamics*, 828 F.2d at 1365).

8  **2. The Parties' Arguments**

9  In its supplemental brief, Defendant contends that all of the traditional factors support staying or

10  dismissing Plaintiff's claims under the primary jurisdiction doctrine.  Def.'s Suppl. Brief, ECF No.

11  49 at 2.  Plaintiff counters that Defendant makes conflict preemption arguments that they attempt "to

12  shoehorn . . . into a primary jurisdiction framework by arguing that USDA must determine whether

13  to approve COPA's allegedly conflicting requirements."  Pl.'s Suppl. Brief, ECF No. 51 at 2.

14  Plaintiff also argues that application of the primary jurisdiction doctrine would be inappropriate in

15  these circumstances.

16  **a. Defendant's "Federalizing" Argument**

17  Defendant argues that OFPA vests the USDA with primary jurisdiction over a "seamless federal

18  program" that broadly regulates labeling and compositional standards for cosmetic products that

19  contain organic agricultural ingredients.  Def.'s Suppl. Brief, ECF No. 49 at 3.  According to

20  Defendant, SOPs do not challenge the USDA's primary jurisdiction in regulating under OFPA

21  because "a state's 'additional requirements' become federal law and the organic rules the state

22  implements and enforces are always federal."  *Id.* at 3 (citing Final Rule at 80,617 ("If approved by

23  the Secretary, the more restrictive requirements will become the NOP regulations for organic

24  producers and handlers in the State or applicable geographical area of the State.")).  Defendant also

25  argues that under California law, any provision of COPA that is not identical to a federal organic

26  provision "yields to the federal one and is thus inoperative as a 'state law' provision."  *Id.* at 5 & n.9

27  (citing Cal. Food & Agric. Code §§ 46001, 46004.1(a); Cal. Health & Safety Code §§ 110811,

28  110815).  Defendant claims, "there is no such thing as a 'state' organic law under this legal regime,

UNITED STATES DISTRICT COURT
For the Northern District of California

1    but only federalized SOPs." *Id.*

2        Defendant claims that as a result, OFPA's "federalizing" provisions foreclose parallel actions

3    under state law because "states only and always implement and enforce federal law under the

4    OFPA." *Id.* at 5.  But because federal law does not provide a private cause of action, Plaintiff must

5    exhaust her administrative remedies with the USDA and may challenge an adverse agency ruling

6    only under the deferential standards applicable to judicial review of agency actions. *Id.* at 4.

7        Plaintiff counters that Defendant's "federalizing" argument is simply an attempt to evade

8    established case law that permits "private enforcement of state laws that parallel federal laws even

9    where the federal laws do not allow private enforcement."  Pl's. Suppl. Brief, ECF No. 51 at 6 n.5.

10   Plaintiff points out that there is nothing unique about the COPA provisions incorporating federal

11   regulations and that the California's Sherman Food, Drug, and Cosmetic Act contains the same

12   language as COPA.  *Id.*

13       Defendant analogizes to Lanham Act cases, which it claims support application of the primary

14   jurisdiction doctrine here.  Def.'s Suppl. Brief, ECF No. 49 at 5-6 (citing cases in which courts apply

15   identical reasoning to Lanham act and state unfair competition claims).  Defendant states that federal

16   courts do not permit Lanham Act cases to proceed where evaluation of the claim would require

17   interpretation and enforcement of standards within an agency's primary expertise.  *Id.* at 6

18   (collecting cases).

19       Plaintiff counters that Defendant's cases are distinguishable because those plaintiffs "sought to

20   privately enforce federal standards where the underlying federal law precludes private enforcement."

21    Pl.'s Suppl. Brief, ECF No. 51 at 5.  In contrast, Plaintiff argues that her claims do not encroach

22   upon USDA authority because they arise under state laws that include a private right of action.  *Id.*

23   at 5-6.

24       **b.  Whether COPA Conflicts With the NOP**

25       Defendant contends that Plaintiff's claims arise under COPA provisions that conflict with the

26   NOP, and the USDA should be permitted to decide whether to approve them in the first instance.

27   Def.'s Suppl. Brief, ECF No. 49 at 7.  Specifically, Defendant argues that the USDA should be

28   permitted to decide whether COPA's 70% compositional requirement and the definition of "sold as

1    organic" conflict with the NOP.  *Id.*

2         Plaintiff argues that the court need not consider the merits of Defendant's conflict arguments.

3    Pl.'s Suppl. Brief, ECF No. 51 at 7-9.  Specifically, Plaintiff argues that the USDA approved

4    California's SOP as written, rendering further USDA consideration unnecessary.  Pl.'s Suppl. Brief,

5    ECF No. 51 at 7.  Plaintiff also argues that the USDA has subsequently reviewed California's SOP

6    and required California to change its program, but has not objected to COPA's cosmetic labeling

7    provisions.  *Id.*

8         Plaintiff also argues that it is impossible for COPA to conflict with federal law because there is

9    no federal law regulating organic cosmetics with which COPA can conflict.  *Id.* at 7-8.  Plaintiff

10   contends that the NOP "by its own terms" does not extend to cosmetic products.  *Id.*  Plaintiff argues

11   that until the USDA issues regulations covering cosmetics, conflicts are logically impossible.  *Id.*

12        Turning to the allegedly conflicting provisions, Defendant argues that COPA's 70%

13   compositional requirement conflicts with the NOP, which expressly authorizes products that contain

14   less than 70% organic content, and that only the USDA can decide whether the COPA provision has

15   been approved as part of California's SOP.  Def.'s Suppl. Brief, ECF No. 49 at 7 (citing 7 C.F.R. §

16   205.309).[4]  Plaintiff counters that even if the NOP applied to cosmetics, COPA's standards are

17   consistent with the NOP's.  Pl.'s Suppl. Brief, ECF No. 51 at 8-9 (comparing Cal. Health & Safety

18   Code § 110838 with 7 C.F.R. §§ 205.301(b) & (c), Cal. Health & Safety Code § 110839 with 7

19   C.F.R. § 205.305, and Cal. Health & Safety Code § 110838(b) with 7 C.F.R. § 205.302).  Plaintiff

20   argues that COPA's labeling requirements did not require USDA approval because they are not

21   more restrictive than the NOP.  *Id.* at 9 n.11.

22        As to the "sold as organic" definition, Defendant acknowledges that the COPA definition only

23   applies if the term is not otherwise defined by the NOP.  Def.'s Suppl. Brief, ECF No. 49 at 7 (citing

24   Cal. Health & Safety Code § 110815(k)).  Still, Defendant asserts that the "sold as organic"

25   _____

26        [4] Defendant also argues that allowing a state claim for failure to comply with COPA's
     provision would require that the court "write the existing federal authorization for multi-ingredient
27   products with less than 70% organically produced ingredients out of the NOP (and thus out of
     California's SOP), and notably, out of COPA as well."  Def.'s Suppl. Brief, ECF No. 49 at 7 (citing
28   Cal. Health & Safety Code § 110839).  The court is unable to understand Defendant's argument.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  definition does not match the labeling requirements of OFPA and the NOP and argues that the court

2  should allow the USDA to decide "the question of whether COPA's 'sold as organic' definition

3  should be approved."  *Id.* at 7-9.

4      Plaintiff disputes Defendant's reading of the law and, even assuming that the NOP regulates

5  cosmetics, argues that COPA's cosmetic labeling standards are consistent with the NOP.  Pl.'s

6  Suppl. Brief, ECF No. 51 at 8 (citing Cal. Health & Safety Code § 110838 and 7 C.F.R. §§

7  205.301(b) & (c)).  Plaintiff argues that COPA and the NOP have identical compositional

8  requirements and that both permit products to contain less than 70% organic ingredients.  *Id.*

9  Plaintiff argues that the method of calculating the percentage of organic ingredients also is identical.

10  *Id.* at 7-8.

11          **c. Whether The Primary Jurisdiction Doctrine is Appropriate**

12      Plaintiff argues that her claims are within the ordinary competence of the courts and discusses

13  several district court cases as examples.  *Id.* at 3-5 (discussing *Lockwood v. Conagra Foods, Inc.*,

14  597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009); *Leonetti's Frozen Foods, Inc. v. American Kitchen*

15  *Delights*, Civ. No. 11-6736, 2012 WL 1138590, at *10-11 (E.D. Pa. April 4, 2012); *All One God*

16  *Faith, Inc. v. The Hain Celestial Group, et al.*, No. C 09-03517 JF (HRL), 2011 WL 4433817, at *1

17  (N.D. Cal. Sept. 22, 2011)).  Plaintiff argues that in *Lockwood*, the district court declined to stay the

18  proceedings under the primary jurisdiction doctrine in order to permit the FDA to define the term

19  "natural" where (1) the FDA had not defined the term despite repeated requests to do so, (2) the

20  court merely needed to decide whether a term was misleading, which did not require technical

21  expertise, and (3) the agency's definition of the term would not completely resolve plaintiff's state

22  law claims.  *Id.* at 3-4.

23      Plaintiff also argues that her claims are similar to those in *Leonetti's Frozen Foods, Inc. v.*

24  *American Kitchen Delights*, where the court held that the question of whether defendant's packaging

25  was false or misleading within the meaning of the Lanham Act was within the ambit of the court.

26  2012 WL 1138590, at *10-11.

27      Plaintiff argues that the *All One God Faith* case is distinguishable from Plaintiff's.  Pl.'s Suppl.

28  Brief, ECF No. 51 at 5 (discussing *All One God Faith, Inc.,* 2011 WL 4433817, at *1).  There, the

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    district court applied the primary jurisdiction doctrine and referred the case to the USDA to

2    determine whether NOP standards applied to cosmetic products.  *Id.*  Plaintiff points out that All one

3    God Faith, Inc.'s claims arose under the Lanham Act and that the USDA was then considering a

4    proposal to extend the NOP to cosmetics.  *Id.*  Plaintiff argues that her claims are different because

5    they arise under state law and do not refer to OFPA or the NOP.  *Id.* at 5-6.

6        Finally, Plaintiff argues that it would be inappropriate to apply the primary jurisdiction doctrine

7    to this case because the USDA does not provide any mechanism for referring claims to the USDA.

8    *Id.* at 6.  And in any event, referral to the USDA would be inappropriate because USDA has

9    approved California's SOP, which means that the California Department of Food and Agriculture is

10   the agency charged with hearing challenges under the NOP.  *Id.* (citing 7 C.F.R. §§ 205.680-

11   205.681).

12       Based on the record presented, the court declines to apply the primary jurisdiction doctrine.  As

13   an initial matter, the court agrees that much of Defendant's argument arises under the doctrine of

14   conflict preemption, rather than the primary jurisdiction doctrine.  "Primary jurisdiction is not a

15   doctrine that implicates the subject matter jurisdiction of the federal courts."  *Syntek Semiconductor*

16   *Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (N.D. Cal. 2002).  In contrast, conflict

17   preemption occurs "when either 'compliance with both federal and state regulations is a physical

18   impossibility,' or where 'state law stands as an obstacle to the accomplishment and execution of the

19   full purposes and objectives of Congress.'"  *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d

20   856, 863 (9th Cir. 2009) *aff'd sub nom. Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968

21   (2011) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)).  "For conflict

22   preemption to apply, the conflict must be an actual conflict, not merely a hypothetical or potential

23   conflict."  *Id.*

24       Defendant essentially argues that COPA stands as an obstacle to the accomplishment and

25   execution of Congress's objectives for OFPA by permitting a private right of action.  *See* Def.'s

26   Suppl. Brief, ECF No. 49 at 4 (claiming that Congress created a "seamless federal program that

27   reflects Congress's considered judgment that 'national standards' are best set and enforced by the

28   expert agency").  Similarly, Defendant's argument that "states *only and always* implement and

UNITED STATES DISTRICT COURT
For the Northern District of California

1    enforce federal law under the OFPA" is just another way of saying that compliance with both federal

2    and state regulations is an impossibility.  Def.'s Suppl. Brief, ECF No. 49 at 5.  In both cases,

3    Defendant argues not that this court should defer to the USDA on prudential grounds, but that the

4    court lacks jurisdiction to decide Plaintiff's claims.

5         The court does not accept Defendant's "federalizing" argument.  Defendant cites no authority for

6    the proposition that by incorporating approved SOP provisions into the NOP, the Final Rule renders

7    the state law provisions inoperative.  *See id.* at 3-5.  Nor is the court persuaded by Defendant's novel

8    argument, particularly where the evidentiary record contains scant support for Congressional or

9    agency intent supporting Defendant's theory.  Instead, the court is persuaded by Plaintiff's citation

10   to *Lockwood*.  There, the district court declined to apply the primary jurisdiction doctrine in very

11   similar circumstances.

12        The parties have not identified any specific questions that the court is compelled to refer to the

13   USDA (or the California Department of Food and Agriculture).  As previously discussed, based on

14   the record presented, the court cannot conclude that the USDA has not approved COPA's cosmetic

15   labeling provisions – particularly where the USDA has had ample opportunity to object to them in

16   its original approval and five-year review of COPA.  The court does not perceive a potential conflict

17   between COPA and the NOP that is ripe for agency resolution.  In other circumstances, the court

18   may have considered staying the case while the USDA decided definitively whether the NOP applies

19   to cosmetics.  However, given the extended period of time that the USDA has been considering the

20   issue and given the fact that the *All One God, Inc. v. The Hain Celestial Group* case was stalled for

21   years awaiting an agency decision on that very question, the court doubts that staying this litigation

22   would serve any useful purpose.

23        Since promulgating the Final Rule in 2000, the USDA has struggled with the question of

24   whether the NOP regulates cosmetics.  The USDA's evolving approach to applying the NOP organic

25   food standards to cosmetic products is understandable given the often significant differences in

26   composition, processing, and formulation between the two product categories.  These fluctuations

27   also portray an agency seeking direction from Congress in the face of vaguely drafted legislation.

28   Ultimately, the court finds the USDA's longstanding uncertainty to be an insufficient basis for

1   deferring to the agency.

2                           **V.  CONCLUSION**

3      On its face, OFPA's express preemption provision bars only a narrow set of state organic

4   certification requirements that are not at issue here.  And as discussed, the court sees no real conflict

5   between the NOP and COPA compositional requirements.  Nor can the court ignore that the state

6   and federal government have been co-existing for the past years.  So either (contrary to the court's

7   reading) the USDA reads OFPA's restriction of "for human or livestock consumption" as limiting

8   the statute's reach to agricultural products that are eaten or drunk or it has approved COPA's

9   cosmetic labeling provisions.  In either case, the court does not read OFPA, COPA, and the NOP as

10   jointly creating a regulatory vacuum that guts state consumer protection laws.

11      For the foregoing reasons, the court **DENIES** Defendant's motion to dismiss and declines to

12   refer the case to the USDA or the California Department of Food and Agriculture.  In light of this

13   order, the court directs the parties to meet and confer about the current deadlines, see Orders, ECF

14   Nos. 18 and 57, and propose new dates.  The court sets a case management conference for

15   September 13, 2012, at 10:30 a.m.

16      This disposes of ECF No. 27.

17   **IT IS SO ORDERED.**

18   Dated: August 1, 2012

19                           LAUREL BEELER
                             United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**