**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

# UNITED STATES  DISTRICT COURT

## Northern District of California

San Francisco Division

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated, | No. C 11-03082 LB |
| Plaintiffs, | **ORDER DENYING MOTION TO STRIKE AND DENYING MOTION TO DISMISS** |
| v. | |
| THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation, | [ECF Nos. 85, 87] |
| Defendant. | |

## INTRODUCTION

Plaintiffs Rosminah Brown and Eric Lohela bought several different Jason and Avalon Organics brand cosmetic products that are manufactured and marketed by Defendant The Hain Celestial Group ("Hain") and then – on behalf of themselves and other consumers – sued Hain complaining that these and numerous other products were advertised, marketed, sold, and labeled as organic products when they were not organic, in violation of the following state laws: (1) the California Organic Products Act of 2003 ("COPA"), Cal. Health & Safety Code § 110810, *et seq.*; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, (3) the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and the California Commercial Code provision regarding express warranties, Cal. Com. Code § 2313.  Hain moves to strike and to dismiss, arguing that Plaintiffs lack standing regarding products they never purchased, and that

1    Plaintiffs fail to state claims under the applicable statutes.  For the reasons discussed below, the

2    court **DENIES** both motions.

3                                            **STATEMENT**

4    **I. BACKGROUND ALLEGATIONS**

5        Hain is a Delaware corporation that manufactures and distributes cosmetic products (also

6    referred to as personal care products) that are marketed, labeled, and sold in California as "organic."

7    First Am. Compl. ("FAC"), ECF No. 68, ¶¶ 1, 7, 13.[1]  Hain sells cosmetic products under the Jason

8    and Avalon Organics brands.  *Id.*  Plaintiffs Rosminah Brown and Eric Lohela are California

9    residents.  FAC ¶¶ 5-6.  They allege that Hain markets, labels, and sells these products (the

10   "Products") as "organic," even though they are not predominately made from organic ingredients.

11   *Id.* ¶ 1.  Plaintiffs allege that they purchased the Products because they were organic and they would

12   not have purchased them, at least for the same price, but for Hain's allegedly false and misleading

13   claims.  *Id.* ¶¶ 1, 5-6.

14       On or about September 2009, Brown purchased a Jason Ester-C Super-C Cleanser Gentle Facial

15   Wash ("Jason Face Wash") at a market in Roseville, California.  *Id.* ¶ 5.  The front label of the Jason

16   Face Wash, which Brown reviewed before purchase, states "Pure, Natural & Organic."  *Id.*  Brown

17   believed that the Jason Face Wash was either completely or at least mostly organic and she would

18   not have bought it or would not have paid the same amount for it.  *Id.*

19       On or about December 2009, Lohela purchased a number of Avalon Organics products.  He

20   purchased an Avalon Organics Lavender Hand and Body Lotion ("Avalon Lavender Lotion") from

21   Vitacost.com, an online retailer.  *Id.* ¶ 6.  Before purchasing the Avalon Lavender Lotion, Lohela

22   read the name of the product and reviewed a photograph of the product packaging.  *Id.*  The front

23   label and the product name display the word "Organics" and the front label includes a pledge by

24   Hain that the product is "pro-organic."  *Id.*  Lohela believed that the Avalon Lavender Lotion was

25   either completely or at least mostly organic.  *Id.*

26

27        _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Around the same time, Lohela purchased a number of other Avalon Organics Products and he

2  relied on the same representations identified with regard to the Avalon Lavender Lotion. *Id.* In

3  total, Lohela purchased seven Avalon Organics Products, including: (1) the Avalon Lavender

4  Lotion, (2) Avalon Organics Glycerin Liquid Hand Soap Lemon, (3) Avalon Organics Vitamin C

5  Soothing Lip Balm, (4) Avalon Organics Vitamin C Refreshing Facial Cleanser, (5) Avalon

6  Organics Botanicals Exfoliating Enzyme Scrub Lavender, (6) Avalon Organics Peppermint

7  Botanicals Shampoo, and (7) Avalon Organics Awapuhi Mango Moisturizing Conditioner. *Id.*

8  **II. THE ALLEGED MISREPRESENTATIONS**

9  Plaintiffs allege that Hain advertises, markets, and labels, the Products as organic, when they

10  contain insufficient organic content under the applicable laws to make such claims. Plaintiffs allege

11  that federal law requires "any foods marketed, advertised, labeled, sold and/or represented as

12  organic or made with organic ingredients [to be] comprised of at least 70% organic ingredients."

13  FAC ¶ 12 (citing 7 U.S.C. § 6505; 7 C.F.R. § 205.301). Plaintiffs claim that these regulations do not

14  apply to the Products, which are considered cosmetic products, rather than foods, but that the federal

15  definition has shaped consumer expectations for organic products. *Id.* Plaintiffs allege that

16  California law, however, does apply to the Products. *Id.* COPA requires cosmetic products

17  advertised, marketed, sold, labeled, and/or represented as organic in California be comprised of at

18  least 70% organic ingredients. *Id.* They claim that COPA is a "legislative determination" that it is

19  deceptive to represent that cosmetic products containing insufficient organic ingredients are organic.

20  *Id.*

21  Plaintiffs allege that the Jason Products are labeled with the tagline "Pure, Natural & Organic,"

22  and the Avalon Organics Products include a "pro-organic" pledge on their front label and have the

23  word "Organics" in their name. *Id.* ¶ 14. In contrast to these prominent organic claims, the back

24  label of each Product includes an ingredient list in small print that identifies the organically-

25  produced ingredients with an asterisk. *Id.* ¶ 15. The ingredients list reveals that the organic

26  ingredients comprise less than 70% of the Products, whether measured by weight or volume. *Id.*

27  For example, the Jason Face Wash ingredients list shows that only one of the nineteen

28  ingredients is certified organic and it is listed ninth. *Id.* ¶¶ 16, 20. Because Hain is legally required

UNITED STATES DISTRICT COURT
For the Northern District of California

1   to list the ingredients in descending order of prominence, the sole organic ingredient cannot possibly

2   make up 70% of the Product.  *Id.* n.1.  Similarly, only 5 of the 22 ingredients (excluding water and

3   salt) in the Avalon Lavender Lotion are organic and they rank 4th, 10th, 13th, 14th, and 19th in

4   prominence on the ingredient list.  *Id.* ¶¶ 17, 21.

5       Plaintiffs allege that the ingredients lists on other Jason and Avalon Organics products that they

6   did not purchase also contradict the organic claims made on the front panel.  *Id.* ¶ 22.  Some of these

7   products are Baby Avalon Organics Silky Cornstarch Baby Powder, Jason Aloe Vera Soothing Body

8   Scrub, Jason Thin to Thick Extra Volume Conditioner, Jason PowerSmile All-Natural Whitening

9   Toothpaste, Jason Curl Defining Cream, and Avalon Organics Grapefruit & Geranium Refreshing

10  Shampoo.  *Id.*

11      Plaintiffs do not dispute Hain's labeling claims as to the organic nature of individual ingredients.

12  *Id.* ¶ 23.  Rather, their allegations are based on the assumption that all of the Products' ingredients

13  are accurately identified as organic.  *Id.*  Plaintiffs claim that Hain has a pattern and practice of

14  making organic claims on products that do not meet the organic standards required by COPA.  *Id.*

15  ¶ 23.

16      Plaintiffs also allege that after they filed their original complaint, Hain began a new misleading

17  and deceptive practice.  *Id.* ¶ 27.  They allege that Hain now falsely labels some of the Products as

18  containing 70% organic ingredients.  *Id.*  Plaintiffs allege that Hain calculates the percentage of

19  organic ingredients in such products by including the weight of water used to reconstitute a

20  dehydrated organic ingredient, a practice allegedly prohibited under COPA.  *Id.* (citing 65 Fed. Reg.

21  80548-01, 80586 (December 21, 2000) incorporated into COPA by Cal. Health & Safety Code

22  § 110811).

23  **III.  CLASS ALLEGATIONS, JURISDICTION, CLAIMS, AND RELIEF SOUGHT**

24      Plaintiffs seek to represent a class and two sub-classes of allegedly similarly-situated individuals.

25  Both Plaintiffs seek to represent a class defined as: "All persons who purchased the Products that

26  were sold under the Jason® or Avalon Organics® brand in California during the applicable statute

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

of limitations."[2]  *Id.* ¶ 28.  Brown seeks to represent a subclass defined as: "All persons who purchased the Products that were sold under the Jason® brand in California during the applicable statute of limitations" (the "Jason Subclass").  *Id.* ¶ 29.  Lohela seeks to represent a sub-class defined as: All persons who purchased the Products that were sold under the Avalon Organics® brand in California during the applicable statute of limitations" (the "Avalon Subclass").  *Id.* ¶ 30.

The parties do not dispute that the number of people in the proposed class exceeds 100, the amount in controversy exceeds $5M, jurisdiction is minimally diverse, and jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *Compare* Notice of Removal, ECF No. 1 (setting forth facts establishing the jurisdictional thresholds under CAFA), *with* FAC ¶ 8 (same).

Plaintiffs bring six claims for relief.  *See* FAC, ECF No. 68, ¶¶ 38-80.

First, they allege that Hain violated COPA's restrictions on selling, labeling, or representing products "as organic or made with organic ingredients" unless they contain 70% organically produced ingredients.  FAC ¶¶ 38-42; Cal. Health and Safety Code § 110838.  They allege that they have standing because California Health and Safety Code section 111910(a) permits "any person" to bring an enforcement action seeking injunctive relief under COPA.  *Id.* ¶ 41.

Plaintiffs' second, third, and fourth claims respectively allege violations of the unlawful, fraudulent, and unfair prongs of the UCL, California Business and Professions Code section 17200, *et seq.  Id.* ¶¶ 43-65.  The UCL claims under the unlawful prong are based on Hain's allegedly violating (1) COPA, (2) the CLRA (discussed below), (3) California Health & Safety Code section 111730, which prohibits the sale of misbranded cosmetic products, and (4) California Business and Professions Code section 17580.5, which bars untruthful, deceptive, or misleading environmental marketing claims.  *Id.* ¶¶ 43-51.  The UCL claims under the unfair and fraudulent prongs are based

---

[2]  The class and sub-classes specifically exclude Defendant, the officers, directors, or employees of Defendant, any entity in which Defendant has a controlling interest, and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

on the statutory violations and the misrepresentations alleged throughout the complaint. *Id.* ¶¶ 52-65. Plaintiffs seek injunctive relief and restitution for the alleged UCL violations. *Id.* ¶¶ 50, 57, 64; *id.* at 23-24 (Prayer for Relief).

The fifth claim is for violation of § 1770(a)(5), (7), and (9) of the CLRA, Cal Civ. Code § 1750, *et seq. Id.* ¶¶ 66-74. These CLRA provisions bar:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.

*See id.* ¶ 68. The First Amended Complaint seeks injunctive relief, damages, costs, and fees for the CLRA violations. *Id.* ¶¶ 71-73.

Finally, Plaintiffs claim that Hain breached its express warranties concerning the products in violation of California Commercial Code section 2313.

## IV. PROCEDURAL HISTORY

Brown originally filed suit in Alameda County Superior Court on May 11, 2011, alleging the same causes of action discussed above. *See* Complaint, ECF No. 1 at 9. Hain removed to this court on June 22, 2011. Notice of Removal, ECF No. 1 at 1. On March 2, 2012, Hain filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the Organic Foods Production Act of 1990 ("OFPA"), 7 U.S.C. §§ 6501-24, expressly preempted COPA, which, according to Hain, was the basis for all of Brown's claims. *See* Mot. to Dismiss, ECF No. 27 at 10. In supplemental briefing, Hain also argued that the court should dismiss the complaint because the USDA had primary jurisdiction over Brown's claims. On August 1, 2012, the court denied Hain's motion to dismiss in its entirety. *See* Order Denying Motion to Dismiss, ECF No. 58.

Plaintiff filed the FAC on August 21, 2012, adding Eric Lohela as a plaintiff. *See* FAC, ECF No. 68. On September 24, 2012, the court granted Hain's motion for leave to file an interlocutory appeal, but denied its related request to stay the case. *See* ECF No. 79. The Ninth Circuit denied Hain's section 1292(b) petition. *See* Docket, No. 12-80186. Hain filed the pending motions to

UNITED STATES DISTRICT COURT
For the Northern District of California

strike and dismiss on October 9, 2012.  *See* Motion to Strike, ECF No. 85; Motion to Dismiss, ECF No. 87.

ANALYSIS

## I. MOTION TO STRIKE

Hain moves to strike Plaintiffs' class allegations for lack of standing to the extent they are based on products that Plaintiffs did not purchase.  Motion to Strike ("MTS"), ECF No. 85.  On this record, the court finds that Plaintiffs have standing to sue and DENIES Hain's motion.

### A. Motions to Strike Class Allegations & Standing

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are regarded with disfavor, as they are often used as delaying tactics, and should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party. *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

Class allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class certification. *See, e.g., Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).  Nonetheless, as the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. *See, e.g., Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1).  *See*

2    *United States v. Hays,* 515 U.S. 737, 742 (1995); *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598

3    F.3d 1115, 1122 (9th Cir. 2010).  The party asserting the claim has the burden of establishing

4    standing.  *See Colwell v. Dept. of Health and Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009).

5    The standing doctrine encompasses constitutional requirements and prudential considerations.  *See*

6    *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454

7    U.S. 464, 471 (1982); *Sahni v. American Diversified Partners,* 83 F.3d 1054, 1057 (9th Cir. 1996).

8    From a constitutional perspective, Article III's case-or-controversy requirement requires the

9    following for each claim: (1) the party invoking federal jurisdiction must have suffered some actual

10   or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a

11   favorable decision would likely redress or prevent the injury.  *See Friends of the Earth, Inc. v.*

12   *Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180–81, 185 (2000); *Lujan v. Defenders of Wildlife,* 504

13   U.S. 555, 560–61 (1992); *Valley Forge Christian College,* 454 U.S. at 472; *Sahni,* 83 F.3d at 1057.

14   "In a class action, standing is satisfied if at least one named plaintiff meets the requirements."  *See*

15   *Bates v. United Parcel Serv.,* 511 F.3d 974, 985 (9th Cir. 2007).

16   The prudential limitations on federal court jurisdiction require the following: (1) a party must

17   assert his own legal rights and interests, not those of others; (2) courts will not adjudicate

18   "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is

19   protected or regulated by the statute or constitutional guarantee in question.  *See Valley Forge*

20   *Christ. College,* 454 U.S. at 474–75; *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1122 (9th Cir. 2009).

21   In addition to Article III standing, the named plaintiff must establish standing to bring UCL, and

22   CLRA claims.  *See* Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a).  These statutes

23   require the plaintiff show that he or she has suffered an "economic injury."  *See Kwikset Corp. v.*

24   *Superior Court*, 51 Cal. 4th 310, 323 (2011).  The economic injury requirement under the UCL is

25   "substantially narrower than federal standing . . . which may be predicated on a broader range of

26   injuries."  *Id.* at 324.

27   **B.  Case Law On Standing to Sue Over Products the Named Plaintiff Never Purchased**

28   Hain argues that Plaintiffs lack standing to bring claims based on Hain's labeling of products

UNITED STATES DISTRICT COURT
For the Northern District of California

1  they did not purchase.  MTS, ECF No. 85.  Plaintiffs counter that they has established standing and

2  – in any event – the issue of whether they can bring claims based on the products they did not

3  purchase should be addressed at the class certification stage.  Plaintiffs' Opposition to Hain's

4  Motion to Strike ("MTS Opp'n"), ECF No. 95 at 10.

5      There is no controlling authority on whether Plaintiffs have standing for products they did not

6  purchase.  *See, e.g., Donohue v. Apple, Inc.*, No. 11-cv-05337, 2012 U.S. Dist. LEXIS 65860, at *16

7  (N.D. Cal. May 10, 2012) (collecting cases).

8      Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert such

9  claims.  *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D.

10  Cal. July 11, 2012) ("when a plaintiff asserts claims based both on products that she purchased and

11  products that she did not purchase, claims relating to products not purchased must be dismissed for

12  lack of standing"); *Mlejnecky v. Olympus Imaging America Inc.,* No. 2:10-CV-02630 JAM-KJN, at

13  *4 (N.D. Cal. Apr. 19, 2011) (dismissing claims based on products not purchased for failure to

14  allege economic injury under the UCL); *Carrea v. Dreyer's Grand Ice Cream, Inc.,* No. C 10-01044

15  JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on products other

16  than those purchased by the plaintiff).

17      Other courts have held that the standing inquiry is more appropriately resolved on a motion for

18  class certification.  *See, e.g., Cardenas v. NBTY, Inc.*, No. CIV. S-11-1615 LKK/CKD, 2012 WL

19  1593196, at *7 (E.D. Cal. May 4, 2012) (analyzing "solely under Rule 23" whether plaintiff may

20  assert claims on behalf of purchasers of products she did not purchase); *Forcellati v. Hyland's, Inc.*,

21  No. CV 12-1983-GHK, 2012 WL 2513481, at *5 (C.D. Cal. June 1, 2012) (denying defendants'

22  motion to dismiss because the "argument is better taken under the lens of typicality or adequacy of

23  representation, rather than standing").

24      The majority of the courts that have carefully analyzed the question hold that a plaintiff may

25  have standing to assert claims for unnamed class members based on products he or she did not

26  purchase so long as the products and alleged misrepresentations are substantially similar.  *See, e.g.,*

27  *Stephenson v. Neutrogena*, No. 12-cv-00426 PJH, 2012 U.S. Dist. LEXIS 1005099 (N.D. Cal. July

28  27, 2012) (dismissing claims based on products not purchased because the purchased products were

UNITED STATES DISTRICT COURT
For the Northern District of California

1    not "similar enough to the unpurchased products such that an individualized factual inquiry was not

2    needed for each product"); *see Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC,

3    2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that in most reasoned opinions, "the

4    critical inquiry seems to be whether there is sufficient similarity between the products purchased and

5    not purchased"); *see also Anderson v. Jamba Juice*, No. 12-cv-01213 YGR, 2012 U.S. Dist. LEXIS

6    120723, at *13-14 (N.D. Cal. Aug. 25, 2012) (relying on *Dreyer's* for the same proposition).

7    For example, in *Dreyer's*, the plaintiffs found sufficient similarity where the plaintiffs

8    challenged:

9    > the same kind of food products (i.e., ice cream) as well as the same labels for all of the
     > products–i.e., "All Natural Flavors" for the Dreyer's/Edy's products and "All Natural Ice
10   > Cream" for the Haagen–Dazs products.  That the different ice creams may ultimately have
     > different ingredients is not dispositive as Plaintiffs are challenging the same basic
11   > mislabeling practice across different product flavors.

12   2012 WL 2990766, at *13.  Similarly, in *Anderson v. Jamba Juice Co.*, the court held that the

13   plaintiff, who purchased several flavors of at-home smoothie kits labeled "All Natural," had

14   standing to bring claims on behalf of purchasers of other flavors because the products were

15   sufficiently similar and because the "same alleged misrepresentation was on all of the smoothie

16   kit[s] regardless of flavor . . . ."  No. 12-CV-01213 YGR, 2012 U.S. Dist. LEXIS 120723, at *15

17   (N.D. Cal. Aug. 25, 2012).

18   Where product composition is less important, the cases turn on whether the alleged

19   misrepresentations are sufficiently similar across product lines.  For example, in *Koh v. S.C. Johnson

20   & Son, Inc*, No. C-09000927 RMW, 2010 U.S. Dist. LEXIS 654, at *2, *6-7 (Jan. 5, 2010), the

21   plaintiff purchased Windex brand glass cleaner that bore a "Greenlist" label suggesting the product

22   was environmentally-friendly.  He also sought to challenge the defendant's use of the identical label

23   on Shout brand stain remover that he had not purchased.  *Id.* at *2.  Because the labels were

24   identical, the court denied defendant's motion to dismiss for lack of standing and deferred ruling on

25   the standing question until class certification.  *Id.* at *7.

26   Where the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss

27   claims to the extent they are based on products not purchased.  For example, in *Larsen v. Trader

28   Joe's Co.*, No. 11-cv-5188-SI (Docket No. 41) (N.D. Cal. filed June 14, 2012), the court found that

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the plaintiffs lacked standing to bring claims based on products they did not purchase. There, the

2    plaintiffs challenged "a wide range of Trader Joe's products (cookies, apple juice, cinnamon rolls,

3    biscuits, ricotta cheese, and crescent rolls) which bear little similarity." *Dreyer's*, 2012

4    WL2990766, at *13 (finding *Larsen* distinguishable). And in *Stephenson v. Neutrogena*, the court

5    dismissed claims based on products not purchased where plaintiff brought suit over six Neutrogena

6    Naturals products but had only purchased the purifying facial cleanser. 2012 U.S. Dist. LEXIS

7    1005099, at 1.

8    This court finds the approach in *Dreyer's*, *Jamba Juice*, and *Stephenson* to be persuasive and

9    considers whether there are substantial similarities in the accused products and whether there are

10   similar misrepresentations across product lines such that Plaintiffs' injury is sufficiently similar to

11   that suffered by class members who purchased other accused products.

12   **C. Plaintiffs Have Standing to Bring Claims Based on Products They Did Not Purchase**

13   Here, Plaintiffs argue that the court should address Hain's standing argument in the context of a

14   motion for class certification under Rule 23, rather than a motion to strike, because they allege

15   uniform misrepresentations across product lines. MTS Opp'n, ECF No. 95 at 12-16. Based on the

16   record presented, the court agrees.[3]

17   This court recently issued an order on this subject in another labeling case, finding that plaintiff

18   lacked standing to bring claims based on products he did not purchase. *See Miller v. Ghirardelli*

19   *Chocolate Co.*, No. C 12-04936 LB, 2012 WL 6096593 (N.D. Cal. Dec. 7, 2012). There, Miller

20   sought to bring claims based on Ghirardelli's alleged misrepresentations on the packaging of the

21   white baking chips he purchased and four products he did not purchase. The accused products

22   varied widely in composition (baking chips, three drink powders, and baking wafers), and some

23   were sold in commercial, rather than consumer markets. Miller's false labeling claims were based

24   on various alleged misrepresentations, including the use of the word "flavored" on two products, the

25   words "classic" and "white" on other products, and "romance language" that differed from product

26   _____

27        [3] As discussed below, the court does not take judicial notice of the label proofs Hain
     submitted in support of its motion to dismiss. Even if the court had taken judicial notice of the label
28   proofs and of facts contained therein, it would reach the same conclusion.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  to product.  All of the accused products, however, were marked with the same "Ghirardelli

2  Chocolate" logo.  Miller argued that the logo – when viewed in the context of the entire label –

3  misled consumers into thinking that the accused products contained white chocolate when they did

4  not.  The court found that Miller lacked standing because the logo claim – the only common

5  misrepresentation across product lines – was relatively unimportant considered in the context of the

6  varying alleged misrepresentations.  Thus, the court held, Miller's injury was not sufficiently similar

7  to the injury suffered by purchasers of other products.

8      This case is different from *Ghirardelli Chocolate*.  Like that case, Plaintiffs complain about

9  labels on products they did not purchase and the accused products have various uses and may be

10  marketed differently.  The misrepresentations across the product lines are identical, however, and

11  those common misrepresentations are the crux of Plaintiffs' case.  Also, the court views the brand

12  name/tag line associations here as conveying something more – at least at the pleading stage – than

13  brand name challenges in other cases.  Labels like "Greenlist" are different than labels that convey

14  things that cannot be true (such as the labels in the sugar cereal cases).  These labels are more like

15  "Greenlist" and not like the sugar in the raw or sugar cereal cases.

16      The court's conclusion is bolstered by Plaintiffs' disclaimer of any intent to challenge whether

17  specific ingredients actually are organic.  *See* FAC, ECF No. 68, ¶ 23.  Therefore, unlike *Stephenson

18  v. Neutrogena* and *Larsen v. Trader Joe's*, the dissimilarity of the accused products is relatively

19  unimportant.

20      Hain makes a few additional arguments that do not change the outcome.

21      Hain argues that the court's standing inquiry should consider whether the accused products'

22  "function" and "substitutability," are sufficiently similar.  MTS, ECF No. 85 at 3, 9.  On this record

23  and at the motion to strike stage, Plaintiffs' uniform misrepresentation allegations are sufficient to

24  render irrelevant any differences in the function and substitutability of Hain's cosmetic products.

25      Hain also contends that Plaintiffs lack standing to bring their UCL and CLRA claims because

26  they have not alleged an economic injury as required by the relevant statutes.  MTS Reply, ECF No.

27  100 at 5.  Plaintiffs alleged economic injury.  *See* FAC, ECF No. 68, ¶¶ 5-6.  They also "plead[ed]

28  and prove[d] actual reliance" on the challenged labels.  *In re Tobacco II Cases*, 46 Cal. 4th 298,

1   326-28 (2009).

2       The court denies Hain's motion to strike.

3   **II. MOTION TO DISMISS**

4       Hain moves to dismiss the FAC based on its argument that it complies with COPA, because no

5   reasonable consumer would be misled by its statements, and because it never made any affirmations

6   of fact or promises warrantying that its products were organic. *See* Motion to Dismiss, ECF No. 87.

7       **A. Judicial Notice Issues**

8       Each party asks the court to take judicial notice of documents. *See* Def.'s Request for Judicial

9   Notice ("Hain RJN"), ECF No. 86; Pls.' Request for Judicial Notice ("Pls.' RJN"), ECF No. 94.

10      On a Rule 12(b)(6) motion to dismiss, the court generally may not consider materials beyond the

11  pleadings.  The court may also consider unattached evidence on which the complaint necessarily

12  relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim;

13  and (3) no party questions the authenticity of the document. *U.S. v. Corinthian Colleges*, 655 F.3d

14  984, 998-99 (9th Cir. 2011) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) and *Lee v.*

15  *City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001)); s*ee also Tellabs, Inc. v. Makor Issues &*

16  *Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well

17  as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

18  particular, documents incorporated into the complaint by reference, and matters of which a court

19  may take judicial notice").

20      In addition, under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is

21  not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

22  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

23  reasonably be questioned." Fed. R. Evid. 201(b).  A "high degree of indisputability is the essential

24  prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of

25  caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b)

26  advisory committee's notes.  A court, then, may take judicial notice of undisputed facts contained in

27  public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*,

28  250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California,* C-10-1449-SBA, 2011 WL

UNITED STATES DISTRICT COURT
For the Northern District of California

1   873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained

2   on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence

3   are disputed and otherwise do not meet the requirements of Rule 201").

### 1. Hain's Request for Judicial Notice of Label Proofs

5       Hain asks the court to take notice of eight label proofs that it claims depict the labels for the

6   eight products that Plaintiffs purchased.  Hain RJN, ECF No. 86 at 3.  Hain supports its request with

7   the declaration of Alice L. Brooks.  Brooks Decl., ECF No. 86-1.  Ms. Brooks states that she

8   "work[s] for The Hain Celestial Group, Inc., whose brands include JASON® and Avalon

9   Organics®."  *Id.* at 2.  Ms. Brooks claims to have personal knowledge of the facts set forth in her

10  declaration and "access to company records setting forth these facts . . . ."  *Id.*  For each Product, she

11  states that a specified exhibit to her declaration "is a true and correct copy of the label . . . in effect

12  in 2009."  *Id.*

13      Plaintiffs object to Hain's request for judicial notice, arguing that the exhibits distort the way

14  consumers view the Product labels and that Hain has not established their authenticity.  Objections

15  to Hain RJN, ECF No. 96 at 2.  As to the distortion argument, Plaintiffs argue that these are proofs

16  of labels that "are a distortion of the way in which consumers actually see the Products' labeling"

17  because they "misleadingly portray the principal display panel, the information panel and the

18  ingredients list side-by-side."  *Id.*

19      The court declines to take judicial notice for several reasons.  First, Plaintiffs made an

20  authenticity objection and that generally is dispositive.  *See Corinthian Colleges*, 655 F.3d at 998-

21  99.  Second, assuming authenticity objections could be surmounted (and usually they can), these are

22  proofs, not photographs of the labels or the products themselves.  (Despite Hain's argument to the

23  contrary, parties sometimes submit products when they are small and few in number.  *See* Order at

24  3-4 n.2 *Miller v. Ghirardelli Chocolate Company*, No. C 12-04936 LB (Dec. 7, 2012)).  Plaintiffs

25  make factual arguments about what the proofs do and do not show, and that is enough at the motion

26  to dismiss stage so that the court should not take notice of them.

27      Hain cites cases where courts consider labels, but those do not change the outcome because no

28  party objected to those requests for judicial notice.  *See Dvora v. General Mills, Inc.*, No. CV 11-

UNITED STATES DISTRICT COURT
For the Northern District of California

1  1074-GW(PLAx), 2011 WL 1897349, at *2 (C.D. Cal. May 16, 2011); *Von Koenig v. Snapple*

2  *Beverage Corp.*, 713 F. Supp. 2d 1066, 1072-73 (E.D. Cal. 2010); *McKinniss v. Sunny Delight*

3  *Beverages Co.*, No. CV 07-02034-RGK, 2007 WL 4766525, at *4 n.1 (C.D. Cal. Sept. 4, 2007)

4  (considered defendant's color label exemplars because they were better than the black-and-white

5  copies attached to the complaint).

6      Finally, the court observes that Hain has not established the relevance of its submissions.  Ms.

7  Brooks states that each label "is a true and correct copy of the label . . . in effect in 2009."  *See*

8  Brooks Decl., ECF No. 86-1 at 2.  That does not establish that there was only one label for the

9  Products in 2009 such that this was the label on the products on store shelves or the website where

10  Plaintiffs purchased the Products.  The declaration establishes only that the labels were used at some

11  point in 2009.  On a motion to dismiss, the court declines to infer that this was the only label in

12  effect in 2009 particularly when the declaration does not illuminate the basis for Brooks's

13  knowledge of Hain's labeling practices.

14      **2.  The Remaining Requests for Judicial Notice**

15      No one objects to the other documents, and they are properly the subject of judicial notice.[4]

16  These are a United States Department of Agriculture policy memorandum dated January 31, 2011,

17  *see* Hain RJN Ex. I, ECF No. 86-10 at 2-3, and a copy of Hain's motion to dismiss in another case,

18  several United States Department of Agriculture publications, and California legislative committee

19  publications, *see* Pls.' Request for Judicial Notice, ECF No 94.

20      **B.  Legal Standard**

21      To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

22  true, to state a claim for relief that is plausible on its face.  *See id.*  "A claim has facial plausibility

23  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

24  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "The

25  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

---

27      [4] A court may take judicial notice of undisputed facts contained in public records, but it may
not take judicial notice of disputed ones.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th

28  Cir. 2001).

1   possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557). "While

2   a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,

3   a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

4   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

5   Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,*

6   550 U .S. at 555 (internal citations and parentheticals omitted).

7         In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

8   and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551

9   U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1249 (9th Cir. 2007).  In

10  addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc.*

11  *v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

12        If the court dismisses the complaint, it should grant leave to amend even if no request to amend

13  is made "unless it determines that the pleading could not possibly be cured by the allegation of other

14  facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

15  *v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

16  repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

17  *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

18  district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

19  with leave to amend).

20                    **2. Plaintiff States a Claim for Violation of COPA**

21        Hain first moves to dismiss Plaintiffs' COPA claim, arguing that its product labels do not violate

22  COPA because COPA does not bar products with less than 70% organic content from using the

23  words "organic" or variants thereof on its front label panel.  Hain's point is that its "labels neither

24  state the product itself is organic or identify as organic an ingredient that is not a certified organic

25  ingredient" and therefore do not violate COPA. *See* MTD at 15-16; MTD Reply, ECF No. 99 at 11.

26  The court finds that Plaintiffs plausibly allege COPA claims in that they state that the Products are

27  sold, labeled, or represented as organic and that the labels impermissibly identify the Products'

28  content as organic.

1   COPA provides that "cosmetic products sold, labeled, or represented as organic or made with

2   organic ingredients shall contain, at least 70 percent organically produced ingredients." Cal. Health

3   & Safety Code § 110838(a).[5]  COPA also provides that:

4       Multi-ingredient cosmetic products sold as organic in California with less than 70 percent
        organically produced ingredients, by weight or by fluid volume, excluding water and salt,
5       may only identify the organic content as follows:

6           (a) By identifying each organically produced ingredient in the ingredient statement with the
            word "organic" or with an asterisk or other reference mark that is defined below the
7           ingredient statement to indicate the ingredient is organically produced.

8           (b) If the organically produced ingredients are identified in the ingredient statement, by
            displaying the product's percentage of organic contents on the information panel.

9

10  *Id.* at § 110839.  The phrase "sold as organic" means:

11      any use of the terms "organic," "organically grown," or grammatical variations of those
        terms, whether orally or in writing, in connection with any product grown, handled,
12      processed, sold, or offered for sale in this state, including, but not limited to, any use of these
        terms in labeling or advertising of any product and any ingredient in a multi-ingredient
13      product.

14  *Id.* at § 110815(k).

15      Plaintiffs allege that the Products contain less than 70% organically produced ingredients but are

16  sold as organic because Hain uses grammatical variations of the term organic in the product labels.

17  In opposition to Hain's motion to dismiss, Plaintiffs argue that these allegations are sufficient under

18  the plain language of COPA.  MTD Opp'n, ECF No. 93 at 16-17.  COPA is unambiguous on this

19  point and the court agrees that Plaintiffs' allegations are sufficient.  Plaintiffs allege that the word

20  "organics" in the Avalon Organics brand name and the "pure, natural, and organic" tagline and "pro-

21  organic pledge" on the Jason brand Products are barred by section 110838(a) and that neither of the

22  exceptions in section 110839 apply.  The court agrees.

23

24      [5] The method of calculating the percentage of organically produced ingredients depends on
    whether the product is sold in solid or liquid form. *See id.* at § 110838(b).  For products sold in
25  solid form, the percentage of organic ingredients is calculated by dividing the weight of the organic
    ingredients over the total weight of the product excluding the weight of water and salt. *Id.*  For
26  products that are sold in liquid form, the percentage of organic ingredients is calculated by dividing
    the fluid volume of the organic ingredients by the fluid volume of the product as a whole excluding
27  water and salt. *Id.*

28

1   Hain's arguments do not change the outcome.

2   Hain argues that COPA expressly authorizes the sale of cosmetic products containing less than

3   70% organic ingredients and Plaintiffs' contention otherwise is an attempt to exploit a drafting error

4   in COPA.  MTD Reply, ECF No. 99 at 7.

5   Hain points out that the "sold as organic" definition in COPA section 110815(k) is so broad that

6   it swallows the rest of the statute.  MTD Reply, ECF No. 99 at 7-8.  Instead, Hain suggests that the

7   section 110815(k) "sold as organic" definition "simply describes the kind of transactions that subject

8   a product to the statute's terms."  *Id.* at 8-9.  Hain then argues that COPA's definitions of "sold as

9   organic" in the context of "multi-ingredient cosmetic products" would conflict with the NOP

10   regulation defining what "agricultural products" may be sold as organic and would, therefore, be

11   supplanted by them.  *Id.*  But this argument assumes that the NOP regulations apply to cosmetic

12   products and that the statute could not differently define "sold as organic" for cosmetics.  Hain has

13   not demonstrated those regulations apply or explained why the two product classes should be treated

14   identically.

15   The court recognizes the tension that between the section 110815(k) "sold as organic" definition

16   and the rest of the statute, but it does not change the outcome here.[6]  Even if the federal definitions

17   of "sold as organic" or "made with organic ingredients" applied, Plaintiff's claims would still stand.

18   Under the federal definitions, Hain argues that its products are not "sold as organic" because "only

19   products containing at least 95% organically produced ingredients may be 'sold as organic'" and

20   that those products are permitted to use the term organic to modify the name of the product.[7]  MTD,

21   ECF No. 87 at 17 (quoting 7 C.F.R. § 205.301).  But that argument misconstrues the word 'may' in

22   7 C.F.R. § 205.301.  That regulation does not provide that only products containing 95% organically

23   produced ingredients are *capable* of being sold as organic.  It says that only such products are

---

UNITED STATES DISTRICT COURT
For the Northern District of California

[6]  Even if section 110838 were not so broad as Plaintiffs suggest, Hain does not argue that its products are not "labeled or represented as organic or made with organic ingredients."

[7]  In support of this argument, Hain relies on NOP food standards that it has not shown apply to cosmetic products.  *See, e.g.,* 7 C.F.R. § 205.301.

*permitted* to be sold as organic.  And Hain separately cites a USDA regulation that shows that the term "organic" in a brand name may constitute "an organic production or handling claim."  MTD, ECF No. 87 at 10 (quoting Final Rule, 65 Fed. Reg. at 80,576).  Accordingly, the court concludes that even under the federal definition of "sold as organic," Plaintiffs' COPA section 110838 claim would survive.

Hain also argues COPA section 110839 shields it from liability under 110838.  Section 110839 permits products with less than 70% organic content to be "sold as organic" if the organic content is identified only on the ingredient statement or information panel and in accordance with additional conditions.  *See* Cal. Health & Safety § 110839(a)-(b).  It is undisputed that Hain's Products use the word "organic" on the front labels of the Products.  Thus, section 110839 does not insulate Hain from liability under 110838.  There may be a conflict between section 110838's complete prohibition of organic claims on cosmetic products with less than 70% organic content and section 110839's exceptions to that prohibition.  But that makes no difference here because Hain does not fall within either section 110839 exception.

Hain argues that it complies with 110839 because the Products bear ingredient lists that identify the organically-produced ingredients with an asterisk.  Reply, ECF No. 87 at 16.  But under section 110839, Hain "may *only* identify the organic content" as provided.  Cal. Health & Safety § 110839 (emphasis added).  Plaintiffs allege that Hain identifies the organic content of its cosmetic products as allowed by section 110839 and also through the Avalon Organics brand name, and the Jason tagline and "pro-organic" pledge.

Next Hain contends that Plaintiffs' reading of section 110839 must be incorrect because it would "prohibit[] any use of the word 'organic' on a product label except on the information panel" and renders the word "content" in the statute meaningless.  MTD Reply, ECF No. 99 at 9.  Plaintiffs claim that "COPA prohibits 'any use' of the term organic or organic [sic] in the labeling of products that contain less than 70 percent organic content, subject only to the exception for listing organic ingredients on the ingredient statement."  MTD Opp'n, ECF No. 93 at 17.  Hain suggests that Plaintiffs' reading of section 110839 would prohibit labels with insufficient organic content from making claims like "we support organic farmers," "supporting organic lifestyles," or "choose

UNITED STATES DISTRICT COURT
For the Northern District of California

1   organic." *Id.*  As a matter of formal logic, the court agrees, but this does not alter the court's

2   conclusion that Plaintiffs' allegations about the labels on these products are sufficient to state a

3   claim.

4       Section 110838(a)  prohibits Hain from selling, labeling, or representing the Products as organic

5   or made with organic ingredients (because they do not contain at least 70 percent organically-

6   produced ingredients), and section 110839 prohibits Hain from identifying the organic content of the

7   Products other than as permitted in the ingredient list.  Hain's hypothetical examples might not

8   identify the organic content of the products and might not constitute selling, labeling, or representing

9   the products as organic (though they might).  Those examples, however, are very different from

10  using the phrase "pure, natural, and organic" as a tagline or the word "organics" in a brand name.

11  Hain's labels (at least arguably) identify the contents as organic.

12      Hain makes additional arguments predicated on its contention that the NOP directly regulates

13  COPA's cosmetic regulations.  *See, e.g.,* MTD, ECF No. 87 at 17, 18 n.13; Reply, ECF No. 99 at

14  11-12.  As discussed in the order denying Hain's previous motion to dismiss, ECF No. 58 at 23-24,

15  Hain has not established that the NOP regulates cosmetics.[8]  In any event, the court cannot rule, as a

16  matter of law, that the NOP regulations bar Plaintiffs' claims.

17      **3.  UCL & CLRA Claims Under the Reasonable Consumer Test**

18

19      ───────────────

20          [8]  Hain's statement that the court determined that the NOP standards cover cosmetics is
    incorrect.  *See* MTD at 17:9-11.  The court held only that, on the record presented, there were no
    obvious conflicts between COPA and the NOP.  Order, ECF No. 58 at 2.  The court also observes
21  that – even though it did not read "for human consumption" so narrowly as to preclude applying
    OFPA to organic ingredients in cosmetics – it also acknowledged that OFPA could apply only to
22  foods eaten or drunk and that the USDA either limited OFPA to agricultural products eaten or drunk
    or approved COPA's cosmetic labeling requirements.  *Id.* at 11, 24.  Now Plaintiffs have made a
23  much more robust argument in their opposition for the conclusion that OFPA does not apply to
    cosmetics.  Opposition, ECF No. 93 at 7-10.  The USDA documents they submit – all about food,
24  food, food – and OFPA's expressed purpose of "facilitat[ing] interstate commerce in fresh and
    processed food that is organically produced" support that argument.  *Id.* (quoting 7 U.S.C. § 6501).
25  The court also observes that the processing of cosmetics is enormously different than any processing
    of foods (another reason that militates against the NOP's applying to cosmetics).  In the end, the
26  court's view remains that none of it matters, and Plaintiffs' claims survive at the motion to dismiss
27  stage.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Hain next moves to dismiss Plaintiffs' UCL and CLRA claims, arguing that the alleged

2    statements are not likely to deceive a reasonable consumer.  MTD, ECF No. 87 at 16.  Plaintiffs

3    argue that their allegations of deceptive misrepresentations are sufficiently plausible to survive a

4    motion to dismiss and that the ultimate determination is a fact question not appropriate for resolution

5    at this stage of the case.  MTD Opp'n, ECF No. 93 at 18-25.  The court agrees that Plaintiffs' claims

6    are sufficiently pleaded.

7    Whether a particular misrepresentation violates the UCL or CLRA is determined by the

8    reasonable consumer test.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)

9    (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  Under that standard, the plaintiff

10   must "show that members of the public are likely to be deceived." *Id.* (quotation marks and citations

11   omitted).  Generally, the question whether a business is deceptive is an issue of fact inappropriate

12   for decision on a motion to dismiss. *Id.* at 938-39.  Dismissal of such claims is appropriate where

13   the plaintiff fails to show the likelihood that a reasonable consumer would be deceived.  *Freeman*,

14   68 F.3d at 289-90.

15    Plaintiffs allege that the Avalon Organics brand name and Jason "pure, natural, and organic"

16   tagline could deceive a reasonable consumer.  Under the reasonable consumer standard, as Hain

17   argues, "the key inquiry is whether a statement is misleading in the context of the entire label."

18   MTD Reply, ECF No. 99 at 16.  The entire label is not before the court, precluding dismissal on this

19   basis.  Even if the court considered the label proofs, the court could not say, as a matter or law, that

20   no reasonable consumer would be deceived by their organic claims.[9]

21    Hain's remaining arguments do not change the outcome.

22    First, Hain argues that Plaintiffs' claims must be dismissed because its labels are not "inherently

23   misleading."  Hain relies on an NOP regulation stating that "the term, 'organic,' in a brand name

24   ──────────────────

25       [9] Plaintiffs correctly point out that Hain's motion does not directly address their UCL claims
     under the unfair and unlawful prongs.  MTD Opp'n, ECF No. 93 at 18-19.  In reply, Hain argues that
26   all of Plaintiffs' UCL claims are predicated on the allegation that Hain falsely represented the
     Products as organic.  MTD Reply, ECF No. 99 at 15.  Because the court denies Hain's motion to
27   dismiss those allegations, Plaintiff's unlawful and unfair UCL claims survive.

28

context does inherently imply an organic production or handling claim and, thus, does not inherently constitute a false or misleading statement."  MTD, ECF No. 87 at 17 (quoting Final Rule, 65 Fed. Reg. 80548, at 80,576).  Hain also cites *Bruno Wine Company v. Jolly*, 129 Cal. App. 4th 988, 1006-07 (2005), which states that brand names "have no intrinsic meaning" and "do not necessarily reflect the continued quality of the product offered and need not convey information about the nature, quality, or origin of the product." Assuming that this NOP regulation applied, the court still finds at the pleadings stage, the alleged misrepresentations in the context of this branding could reasonably be interpreted to mean that the product is being sold as organic or that it otherwise meets a compositional standard for the term "organic."   And as Plaintiffs point out, the cited passage in *Bruno Wine* states that brand names can constitute deceptive commercial speech.  MTD Opp'n, ECF No. 99 at 21.

Second, Hain cites labeling cases where courts dismissed UCL labeling claims on a motion to dismiss.  The cases all are distinguishable, mostly because the alleged misrepresentations in them are so obvious.  Representations about fake fruit in the sugar cereal cases or the phrase "sugar in the raw" are very different than product name + "organics", or product name + close tag line with word "organic."[10]  Plaintiffs pleaded sufficiently facts that a consumer cannot readily discern from an inspection of the labels, the truth about their organic claims.  Also, this case is different because

---

[10]  *See McKinniss v. General Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) (a reasonable consumer would know that Berry Berry Kix cereal contained no fruit where the packaging fully complied with the applicable regulations, which allowed products to describe their flavors, and where the consumer would know that the cereal contained no fruit by pouring it into a cereal bowl); *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H (DHB), 2012 WL 1512106 (S.D. Cal. April 16, 2012) (holding that the brand name "Sugar in the Raw" would not make a reasonable consumer believe that the product is actually raw where the package expressly stated the sugar was not raw); *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW (PLAx), 2011 WL 1897349, at *6 (C.D. Cal. May 16, 2011) (no reasonable consumer would think that "fruit flavored clusters" on product package would contain blueberries and/or pomegranates); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (Jcx), 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (no reasonable consumer would think that product contained significant quantities of fruit juice where the label expressly claimed otherwise); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *4 (E.D. Cal. May 21, 2009) ("This Court is not aware of, nor has Plaintiff alleged the existence of, any actual fruit referred to as a 'crunchberry.'").

UNITED STATES DISTRICT COURT
For the Northern District of California

1  there are regulations about the use of "organic" and no regulations expressly authorize Hain's use of

2  the word "organic" in its product line.

3      Third, Hain attempts to recast *Williams v. Gerber*, in which the Ninth Circuit characterized as

4  "rare" the situation in which courts may decide whether a practice is deceptive, fraudulent, or unfair

5  on a motion to dismiss.  552 F.3d 934 (9th Cir. 2008).  Hain suggests that other courts have

6  interpreted *Williams* as holding that "[a]mbiguous representations, as opposed to untrue ones, can be

7  'clarified by the detailed information contained in the ingredient list' explaining a product's exact

8  content."  MTD Reply, ECF No. 99 at 16 (quoting *Hairston v. S. Beach Beverage Co.*, No. CV 12-

9  1429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012)).  On this record, the court

10  finds the question of whether Hain's product name and tagline are ambiguous or untrue to be a close

11  one inappropriate for disposition on a 12(b)(6) motion.

12      In sum, the court denies Hain's motion to dismiss the UCL and CLRA claims.

13          **4.  Breach of Express Warranty Claim**

14      Hain moves to dismiss Plaintiffs' claim for breach of express warranty.  Hain contends that that

15  Plaintiffs do not allege that that it made any affirmation of fact or promise that might establish an

16  express warranty.  MTD, ECF No. 87 at 20-21.  Plaintiffs' express warranty claim is based on

17  California Civil Code section 2313, which states, in relevant part:

18      (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the
      goods and becomes part of the basis of the bargain creates an express warranty that the goods
19      shall conform to the affirmation or promise.

20      (b) Any description of the goods which is made part of the basis of the bargain creates an
      express warranty that the goods shall conform to the description.

21

22  To prevail on a breach of express warranty claim, Plaintiffs must prove: (1) "the seller's statements

23  constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part

24  of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180

25  Cal. App. 4th 1213, 1227 (2010) (internal quotation marks and citation omitted).  Proof of reliance

26  on specific promises is not required.  *Id.*

27      In their opposition brief, Plaintiffs argue that the Jason Products warrant that they are "Pure,

28  Natural & Organic" and the Avalon Organics products warrant that they are "Organics."  MTD

C 11-03082 LB (ORDER)                                    23

1   Opp'n, ECF No. 93 at 25.  In contrast, Hain argues that its use of the word organic in the Products'

2   brand name or tag line did not constitute an "affirmation of fact or promise that 'the Products

3   [themselves] are organic,' 'predominantly organic,' or '70% organic,'" MTD, ECF No. 87 at 21.

4   As discussed above, the court finds that Plaintiffs' have plausibly alleged that Hain has made such

5   claims.  Accordingly, Hain's motion to dismiss Plaintiffs' express warranty claims is DENIED.

## CONCLUSION

For the reasons discussed above, the court DENIES Hain's motion to strike and DENIES its

motion to dismiss.

This disposes of ECF Nos. 85 & 87.

**IT IS SO ORDERED.**

Dated: December 22, 2012

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**