LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA  94117
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>                    Defendant. | No. C 11-03082 LB<br><br>**DECLARATION OF MARK N. TODZO IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(a)(5)**<br><br>Date:    February 21, 2013<br>Time:   11:00 a.m.<br>Dept.    Courtroom C<br>Judge:  Hon. Laurel Beeler |

Case No. C 11-03082 LB

**DECLARATION OF MARK N. TODZO**

## DECLARATION OF MARK N. TODZO

I, Mark N. Todzo, declare:

1. I am a partner at the Lexington Law Group ("LLG") and I represent Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") in the above-captioned case. I have personal knowledge of the matters set forth herein and, if called upon, I could and would competently testify thereto.

**Plaintiffs' Efforts To Obtain Discovery From Defendant**

2. On December 14, 2011, Defendant The Hain Celestial Group, Inc. ("Defendant") served its initial disclosures under Rule 26(a)(1). A true and correct copy of Defendant's initial disclosures is attached hereto as Exhibit B.

3. On December 20, 2011, Plaintiffs served their first set of Special Interrogatories, Requests for Production of Documents and Requests for Admission. True and correct copies of Plaintiffs' first set of Special Interrogatories and Requests for Production of Documents are located in the Court's electronic docket for this case at ECF No. 52-1, Exhs. 1-2.

4. On March 13, 2012, Defendant provided wholly deficient responses to Plaintiffs' first set of discovery. Defendant's responses consisted almost entirely of broad and general objections and Defendant failed to produce a single document. True and correct copies of Defendant's responses to Plaintiffs' first set of Special Interrogatories and Requests for Production of Documents are located in the Court's electronic docket for this case at ECF No. 52-1, Exhs. 4-5.

5. On April 5, 2012, Plaintiffs sent a meet and confer letter to Defendant highlighting these deficiencies and demanding that Defendant correct them.

6. On April 13, 2012, Defendant produced fewer than 300 pages of documents, all of which were limited to Defendant's JASON brand products. This partial production only included labels of JASON products sold during the time period, a one-page summary of JASON revenues for three years and several publicly available promotional materials from the organic trade association.

7. On April 17, 2012, Defendant replied to Plaintiffs' meet and confer letter. Defendant's letter set forth Defendant's general position that Defendant was entitled to a unilateral stay of all discovery pending the resolution of Defendant's first motion to dismiss – which was *filed 10 months* after this lawsuit was initiated.

8. On April 19, 2012, Plaintiffs requested an in-person meet and confer conference pursuant to the Court's standing order. The conference took place on May 1, 2012. During the meet and confer conference, Plaintiffs agreed to narrow and focus a number of their discovery requests, and it was Plaintiffs' understanding that Defendants had in turn agreed to search for information and documents regarding those narrowed requests. On May 10, 2012, I sent Defendant's counsel an email inquiring about Defendant's supplemental responses and set a May 17, 2012 deadline for such responses. On May 17, 2012, Defendant's counsel responded to my email stating that Defendant intended to supplement their responses soon. On May 24, 2012, I sent a follow up email as Defendant still had not supplemented its responses. On May 29, 2012, Defendant's counsel sent me an email stating that Defendant would supplement its written discovery responses by June 11, 2012. On June 8, 2012, Defendant's counsel sent me an email assuring me that Defendant intended to supplement its discovery responses the following week. On June 15, 2012, four days after Defendant promised to provide supplementation, I received an email from Defendant's counsel stating that Defendant had been unable to complete the supplementation.

9. On June 21, 2012, having not received Defendant's promised supplementation, Plaintiffs provided Defendant with their half of the joint letter brief pursuant to the Court's standing order. Defendant provided its half of the letter brief on June 29, 2012. The letter brief was filed on July 2, 2012.

10. On July 7, 2012, Plaintiffs served Defendant with their second set of Special Interrogatories and Requests for Production of Documents. True and correct copies of Plaintiffs' second set of discovery requests are located on the Court's electronic docket at ECF No. 88-1, Exhs. 5-6.

**1**      11.     On July 27, 2012, Defendant provided its responses to Plaintiffs' second set of discovery requests. True and correct copies of Defendant's responses are located on the Court's electronic docket at ECF No. 88-1, Exhs. 7-8.

**12.**     On September 7, 2012, Plaintiffs requested a second meet and confer conference, which took place telephonically on September 18, 2012. A true and correct copy of Defendant's September 27, 2012 follow-up letter regarding the September 18, 2012 meet and confer conference is located in the Court's electronic docket at ECF No. 88-1, Exh. 9.

**13.**     Following the September 18, 2012 meet and confer conference, Plaintiffs awaited Defendant's supplemental production as to the agreed-upon categories so that in the event that Defendant's production was insufficient, the parties could include that dispute in the discovery letter brief process. After waiting more than three weeks without any supplementation, Plaintiffs supplied Defendant with Plaintiffs' portion of the letter brief on October 11, 2012. Plaintiffs' portion of the letter brief addressed Defendant's failure to produce the documents it promised to produce and the categories of information that Defendant outright refused to produce. On October 18, 2012, instead of providing Plaintiffs with Defendant's half of the letter brief responding to Plaintiffs' arguments, Defendant responded with *four separate* letter briefs. Plaintiffs were thus required to reply to Defendant's lengthy arguments as to the propriety of Plaintiffs' discovery requests, even as to the categories of information that the Court had already found to be discoverable.

**Plaintiffs' Counsel's Lodestar**

**14.**     As described above, Plaintiffs' counsel were required to spend a considerable amount of time and resources to force Defendant to respond to discovery requests. Indeed, in my 19 years of experience litigating consumer class actions and complex environmental cases, I have not encountered anything akin to the extreme level of recalcitrance, delay and general evasion of the discovery process that Defendant has exhibited over the past year. Defendant's nearly universal opposition to discovery required significant attorney time and resources to combat.

**15.**     Throughout the litigation I coordinated with the associate attorney assigned to this

1. case, Lucas Williams, to ensure that case work was divided up in an efficient and cost effective manner, thereby ensuring that work was performed without duplication.

16. Plaintiffs have made reasonable voluntary reductions to their lodestar. For example, Plaintiffs have not requested their fees incurred in the substantial meet and confer correspondence that took place preceding Plaintiffs' initiation of the first joint letter brief regarding Plaintiffs' first motion to compel.

17. My firm maintains detailed contemporaneous time and expense records for all time and costs incurred in this matter. Based on those records, my firm's lodestar attorneys' fees as of December 19, 2012, in this matter after reasonable voluntary reductions was $44,590. The lodestar fee amount is as follows:

| *NAME* | *YEARS EXP.* | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Mark N. Todzo | 19 | 28 | $610 | $17,080 |
| Lucas Williams | 3 | 78.6 | $350 | $27,510 |
| TOTAL: | -- | **106.6** | -- | **$44,590** |

The attorney time summarized in this chart is detailed in the report attached hereto as Exhibit A.

18. In addition, I anticipate that I will be required to spend an additional 3 hours on the preparation of Plaintiffs' reply to Defendant's opposition to this motion and appearing at the hearing, and that Mr. Williams will be required to spend an addition 7 hours on the preparation of Plaintiffs' reply for a total of $4,280 ($1,830 + $2,450). Plaintiffs' total lodestar is thus **$48,870**.

19. LLG's timekeeping practices require every professional employee to keep his or her time contemporaneously. An individual time entry is required for every case-related task completed by an attorney. My office uses a custom-designed Excel spreadsheet to initially record time entries. An entry is made by first selecting the case to which the work was performed from a drop-down menu. The spreadsheet allows for the selection of only one case, and it is not possible to assign a given billable entry to more than one case. After the case selection is made, a detailed

description of the task performed is composed by the timekeeper by typing it into the spreadsheet entry. This allows the timekeeper to fully explain the task performed. We encourage use of uniform task descriptions to create bills that are more consistent and readable. After the task is completed, the timekeeper must record the time spent on the task. All time records are recorded in tenth of an hour (six minute) increments.

20. Pursuant to LLG's standard timekeeping procedures, the timekeeping information from the Excel spreadsheets is then uploaded to the Timeslips time and expense software program by LLG's bookkeeper. The Timeslips program then generates reports and bills that are sent to clients and used internally for practice management. Every month, an LLG partner reviews several reports generated by the Timeslips program. One such report summarizes all of the time each timekeeper has spent on every case they have worked on for that given month, sorted by timekeeper. Another report summarizes all of the time billed in every active case, sorted by case. An LLG partner reviews these reports for completeness, accuracy, and reasonableness. My partners and I also periodically review the underlying time entries to ensure that LLG's timekeeping policies are being followed and to exercise billing judgment by writing off any time that appears inefficient or unreasonable. Specific time and expense reports requested are forwarded to the client periodically for review.

21. Because of LLG's rigorous timekeeping practices, LLG's billing records reflect the hours that are reasonably necessary to achieve Plaintiffs' goals in this litigation. I have carefully reviewed the time records in this case and can attest that, in my professional judgment, all of the time spent to date on compelling Defendant to provide discovery was: (a) spent in furtherance of necessary litigation activities; (b) of measured duration appropriate to each task; and (c) billed cost-effectively by a person of appropriate skill and experience for the task.

22. In order to facilitate the Court's review and determination as to the reasonableness of the attorneys' fees incurred in this matter, we have also reviewed and itemized by litigation task descriptions all of the time spent by myself and Mr. Williams on Plaintiffs' motions to compel and this motion for attorneys' fees under Rule 37. The following chart breaks down my and Mr.

Williams' lodestar by task:

**Mark N. Todzo's Lodestar By Task:**

| TASK | Hours | Rate | Lodestar |
|---|---|---|---|
| Review and edit first motion to compel; correspondence re: same. | 13.5 | $610 | $8,235 |
| Review and edit second motion to compel; correspondence re: same. | 12.5 | $610 | $7,625 |
| Review and edit motion for Rule 37 sanctions. | 2 | $610 | $1,220 |
| **TOTAL:** | 28 | -- | $17,080 |

**Lucas Williams' Lodestar By Task:**

| TASK | Hours | Rate | Lodestar |
|---|---|---|---|
| Prepare and revise first motion to compel; correspondence with Mr. Todzo and research re: same. | 28.1 | $350 | $9,835 |
| Prepare and revise second motion to compel; correspondence with Mr. Todzo and research re: same. | 30.1 | $350 | $10,535 |
| Prepare motion for Rule 37 sanctions; correspondence with Mr. Todzo and research re: same. | 20.4 | $350 | $7,140 |
| **TOTAL:** | 78.6 | -- | $27,510 |

The attorney time summarized in this chart is detailed in the report attached hereto as Exhibit A.

23.     Although other attorneys and paralegals at my firm spent time working on the discovery letter briefs and this motion, such time has not been included herein.

**Reasonableness of Rates**

24. Through my practice in consumer protection class actions, my review of attorneys' fee awards by other courts in my own class action cases and in other class action cases, and my review of the declaratory evidence submitted in support of those awards, I am aware of the market rates charged by other firms for attorneys with similar levels of experience. The billing rates of my firm's attorneys are commensurate with prevailing market rates for attorneys of similar skill and experience in the San Francisco Bay Area, as detailed below. My firm's billing rates have also been consistently approved by state and federal courts, and have never been rejected or even questioned by any court in the scores of settlement approval motions we have filed in state and federal courts.

25. The principal attorneys working on the discovery disputes in this case are my associate, Lucas Williams, and myself. I graduated from Hastings College of Law and was admitted to the California Bar in 1993. Since joining LLG in 1998, my practice has been devoted exclusively to representing plaintiffs in complex consumer protection class actions and environmental litigation. My current hourly rate is $610.

26. My associate Lucas Williams graduated from Golden Gate University School of Law and was admitted to the California Bar in 2009. Before joining LLG in January of 2011, Mr. Williams was an attorney with a nonprofit environmental law clinic, where he specialized in enforcing air quality and clean energy laws on behalf of low-income communities of color. Mr. Williams' current hourly rate is $350.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is executed on December 27, 2012, in San Francisco, California.

/s/ Mark N. Todzo
Mark N. Todzo
*Attorneys for Plaintiff Rosminah Brown and Eric Lohela*