1
2
3
4
5
6
7

8 UNITED STATES  DISTRICT COURT

9 Northern District of California

10 San Francisco Division

11 ROSMINAH BROWN and ERIC LOHELA,          No. C 11-03082 LB
   on behalf of themselves and all others
12 similarly situated,                       **ORDER DENYING MOTION FOR
                                             SUMMARY JUDGMENT**
13                      Plaintiffs,
           v.
14                                           [ECF No. 156]
   THE HAIN CELESTIAL GROUP, INC., a
15 Delaware Corporation,

16                      Defendant.
   _____

17

18                              **INTRODUCTION**

19     In this putative class action, Plaintiffs sued The Hain Celestial Group, alleging that it markets

20 and labels its "Avalon Organics" and "Jason" branded cosmetic products as organic when they are

21 not made predominantly from organic ingredients, in violation of the California Organic Products

22 Act of 2003 ("COPA"), California Health and Safety Code Section 110810 *et seq*.  Their claims are

23 as follows: (1) a claim for injunctive relief under COPA (claim one); (2) unlawful, fraudulent, and

24 unfair business practices under California's Unfair Competition Law (the "UCL"), California

25 Business and Professions Code section 17200 *et seq.* (claims two through four); (3) false

26 representations and false advertising in violation of the Consumers Legal Remedies Act (the

27 "CLRA"), Cal Civ. Code §§ 1750 *et seq.*, 1770(a)(5), (7), and (9), and 1780-82 (claim five); and (5)

28 breach of express warranties in violation of California Commercial Code § 2313.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Hain moved for summary judgment on the grounds that (A) the California Department of Health ("CDPH"), the agency responsible for enforcing COPA, determined in a February 2013 enforcement decision that the Jason and Avalon Organics labels comply with COPA (thus "extinguishing" Plaintiffs' COPA claim), (B) Plaintiffs are estopped from arguing otherwise because they likely initiated the complaint and were "deeply involved" in the CDPH's investigation, and (C) the CDPH's determination is dispositive of Plaintiffs' remaining claims, which are predicated on a COPA violation. *See* ECF No. 156.[1]  Because the record establishes only that the CDPH engaged in an informal inquiry and obtained only *ex parte* submissions from Hain that resulted only in a decision not to pursue the matter further, the court denies the motion for summary judgment.

## STATEMENT

## I.  THE PARTIES

The Hain Celestial Group, Inc. is a Delaware corporation that manufactures and distributes cosmetic products (also referred to as personal care products) under the Jason and Avalon Organics brands.  *See* First Am. Compl. ("FAC") ¶¶ 1, 7, 13, ECF No. 68.  Before 2011, with very few exceptions, Hain's Avalon Organics and Jason brand cosmetic products contained less than 70 percent organically-produced ingredients.  Pls. JSUF # 23, ECF No. 164.[2]  Beginning sometime in

---

[1]  Record citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[2]  Before 2011, the following Avalon Organics Products contained less than 70% organic ingredients excluding water and salt and included the phrase "organic [ingredient name]" or "with organic [ingredient name]" on the Principal Display Panel of the labels for such products:

    i. Avalon Organics Deodorant Spray, Grapefruit & Geranium with Organic Essential Oil;
    ii. Baby Avalon Organics Natural Mineral Sunscreen SPF 18;
    iii. Avalon Organics Shampoo, Nourishing Lavender.

Pls. JSUF #25.  The following Jason products included the phrase "Pure, Natural & Organic" on the Principle Display Panel of the label, but contained no organically certified ingredients:

    i. Jason Kiwi & Apricot Volumizing Root Boost;
    ii. Jason Aloe Vera & Bergamot Finishing Spray;
    iii. Jason Mint & Rose Intense Moisture Treatment;
    iv. Jason Kiwi & Apricot Volumizing Mousse;
    v. Jason Plumeria & Sea Kelp Leave In Conditioning Spray;
    vi. Jason Shea Nut Butter;

UNITED STATES DISTRICT COURT
For the Northern District of California

2011, Hain changed the formulation and labeling of substantially all of its Avalon Organics brand products and changed the labeling of substantially all of its Jason brand cosmetic products (other than those that had been discontinued).  Pls. JSUF #18, 20.

On or about September 2009, Plaintiff Rosminah Brown purchased a Jason Ester-C Super-C Cleanser Gentle Facial Wash ("Jason Face Wash") at a Whole Foods Market in Roseville, California.  Brown Decl. ¶ 2, ECF No. 163-1.  The front label of the Jason Face Wash, which Brown reviewed before purchase, stated "Pure, Natural & Organic."  *Id.*  At the time of her purchase, Brown believed that the Jason Face Wash was either completely or at least mostly comprised of certified organic ingredients.  *Id.*

On or about December 2009, Plaintiff Eric Lohela purchased a number of Avalon Organics products.  *See* Lohela Decl., ECF No. 163-2, ¶ 2.  He purchased an Avalon Organics Lavender Hand and Body Lotion ("Avalon Lavender Lotion") from Vitacost.com, an online retailer.  *Id.* ¶ 6.  Before purchasing the Avalon Lavender Lotion, Lohela read the name of the product and reviewed a photograph of the product packaging.  *Id.*  The front label and the product name displayed the word "Organics" and the front label included a pledge by Hain that the product was "Pro-Organic."  *Id.*

Around the same time, Lohela purchased a number of other Avalon Organics Products, and he relied on the same representations identified with regard to the Avalon Lavender Lotion.  *Id.*  In total, Lohela purchased seven Avalon Organics Products, including: (1) the Avalon Lavender Lotion; (2) Avalon Organics Glycerin Liquid Hand Soap Lemon; (3) Avalon Organics Vitamin C Soothing Lip Balm; (4) Avalon Organics Vitamin C Refreshing Facial Cleanser; (5) Avalon Organics Botanicals Exfoliating Enzyme Scrub Lavender; (6) Avalon Organics Peppermint Botanicals Shampoo; and (7) Avalon Organics Awapuhi Mango Moisturizing Conditioner.  *Id.*

---

vii. Jason Ester-C Hydrating Mask;
viii. Jason Color Treated Conditioner, Jojoba & Lemongrass;
ix. Jason Plumeria & Sea Kelp Moisturizing Shampoo;
x. Jason Plumeria & Sea Kelp Moisturizing Conditioner;
xi. Jason Apricot & Kiwi Volumizing Shampoo;
xii. Jason Red Elements Calming Facial Toner;
xiii. Jason Strengthening Shampoo, Peppermint & Biotin.

Pls. JSUF #24.

UNITED STATES DISTRICT COURT
For the Northern District of California

(referencing allegations from the First Amended Complaint).  Lohela believed that the statements on the front of the Avalon Organics labels were true – that the products were either completely or at least mostly comprised of organic ingredients.  *Id.*

Brown and Lohela both are willing to pay more for cosmetic products that are comprised entirely or predominately of organic ingredients than for similar products that contain few or no organic ingredients.  Brown Decl. ¶ 3; Lohela Decl. ¶ 3.

## II. 2011 LAWSUITS AND THE SUBSEQUENT CDPH INQUIRY

### A.  2011 Lawsuits

Plaintiff Rosminah Brown and former Plaintiff Center for Environmental Health ("CEH") filed this class action lawsuit against Hain in Alameda County Superior Court on May 20, 2011.  *See* 6/22/11 Notice of Removal, ECF No. 1; Pls. JSUF #1.[3]  The case was one of several filed by the CEH against manufacturers of personal care products for violations of COPA.  *See* Todzo Decl. ¶ 6, Exs. 3-5, ECF No. 163-3.[4]  On June 15, 2011, the CEH issued a press release announcing its lawsuits, including this one.  *See* Todzo Decl. ¶ 6, Ex. 4, ECF No. 163-3.  Soon thereafter, Patrick Kennelly, a Deputy Director[5] at the CDPH, contacted Plaintiffs' counsel and asked  "for copies of CEH's COPA lawsuits."  Todzo Decl. ¶ 7.  On June 20, 2011, Plaintiffs' counsel e-mailed Mr. Kennelly copies of the complaints in this and another lawsuit.  *See* Hain JSUF #3, Ex. C.  By responding to the inquiry, Plaintiffs' counsel and Plaintiffs did not intend to submit an administrative complaint.  Todzo Decl. ¶ 8, ECF No. 163-3, .

### B.  CDPH's July 27, 2011 Letter

On July 27, 2011, Jane Marie Reick, the Chief of the Food Safety Inspection Unit, sent Hain a letter via "Golden State Overnight – Signature Required" inquiring into Hain's compliance with

---

[3]  Plaintiff Eric Lohela became a party after removal when Plaintiffs filed their First Amended Complaint on August 21, 2012.  *See* FAC, ECF No. 68.

[4]  Because the CEH alleged no injury to itself and instead sued as a private attorney general under COPA, it lacked Article III standing to pursue the claims in federal court, and the parties stipulated to its dismissal.  *See* ECF No. 30.

[5]  The Joint Statement of Undisputed Facts attached to Hain's motion states that Mr. Kennelly was "chief of the [CDPH] Food Safety Section."  Hain JSUF #3.

COPA with respect to its sale of cosmetic products in California.  Hain JSUF #4 & Ex. D.; Pls. JSUF #5.  She sent similar letters to at least eight other companies on that same date.  *See* Todzo Decl. ¶ 10, Ex. 7.

The letter to Hain, which was cc'd to Mr. Kennelly, said that the CDPH Food and Drug Branch "is the state agency with primary responsibility and jurisdiction to enforce the [COPA] related to the manufacture and/or sale of cosmetic products identified as organic in California" and informed Hain that it "recently received a complaint alleging that cosmetics sold by your company do not comply with the COPA" in that the cosmetics products were "identified as organic" and "failed to meet the legal requirements to be identified as organic."  Hain JSUF Ex. D.  The letter set forth the relevant portions of California Health and Safety Code sections 110838 (cosmetic products labeled and sold as organic must contain at least 70 percent organically-produced ingredients) and 110839 (requirements for how multi-ingredient cosmetic products with less than 70% percent organically-produced ingredients may identify the organically-produced ingredients on ingredient lists).  *Id.*  The letter to Hain did not include any reference to section 110815(k), which defines the term "sold as organic."  The eight other letters sent to other companies that day did reference section 110815 in the following context:

> In addition to the issues identified above, a review of our licensing database indicates that your company does not possess a valid Organic Processed Product Registration (OPPR) issued by FDB [Food and Drug Branch]. For your convenience, an OPPR application form has been enclosed.
>
> H&SC Section 110875(a) requires every person engaged in this state in the processing or handling of processed products sold as organic, including cosmetics, to register with FDB. H&SC Section 110815(k) defines "sold as organic" to mean any use of the terms "organic", "organically grown", or grammatical variations of those terms, whether orally or in writing, in connection with any product grown, handled, processed, sold, or offered for sale in this state, including but not limited to, any use of these terms in labeling or advertising of any product and any ingredient in a multi-ingredient product."

Todzo Decl. Ex. 7, ECF No. 163-10.

The CDPH asked Hain to submit a written response directed to Ms. Reick's attention by August 8, 2011 regarding the following:

> 1. A list of all cosmetic products sold by your company that use the terms "organic", "organically grown", "made with" organic ingredients or food groups, or any grammatical variations of those terms, to identify the product.
>
> 2.  One complete and legible label for each product identified in #1, above.

UNITED STATES DISTRICT COURT
For the Northern District of California

3.  The formulation for each product identified in #1, above.  The formulation must identify all of the ingredients in each product and must clearly show the amount of each ingredient in the product by weight or fluid volume.  Please be sure to mark each formulation as "Confidential".

4.  Evidence of organic certification by an approved third party organic-certifying organization for every ingredient identified on product labels as organic.

Hain JSUF Ex. D.  The CDPH also noted the following:

COPA applies to all products sold as organic within the state, wherever produced, handled, or processed.  Furthermore, it is unlawful for any person to sell, offer for sale, advertise, or label any product in violation of the COPA.

Finally, the letter advised Hain of the following:

Failure to respond to the letter and/or to correct the identified violations will result in further enforcement action which may include, but is not limited to, embargo, assessment of civil penalty, and/or referral to a prosecuting attorney for civil and/or criminal prosecution.

Plaintiffs say that they did not lodge a complaint with the CDPH or any other government agency regarding the Products.  Brown Decl. ¶ 4; Lohela Decl. ¶ 4.  The first time Plaintiffs' counsel learned of the CDPH inquiry was on February 21, 2013, when Hain's counsel provided him with the CDPH's February 19, 2013 Notice of Resolution (discussed below).  *See* Todzo Decl. ¶ 9.  Plaintiffs learned of the CDPH inquiry around February 25, 2013, when Mr. Todzo informed them of the Notice of Resolution.  Brown Decl. ¶ 5; Lohela Decl. ¶ 5.

**C.  Hain's September 20, 2011 Response to the CDPH's July 2011 Letter**

On September 20, 2011, Hain's counsel Simon Frankel sent Hain's response to Ms. Reick with a cover letter forwarding three charts listing products and 332 pages of documents consisting of product labels, product formulations, and organic certificates for products.  Frankel Decl. ¶ 2, Exs. 1-17, ECF No. 158.  The body of the letter is as follows:

As we have discussed, I am writing on behalf of The Hain Celestial Group, Inc. ("Hain Celestial") in response to your letter of July 27, 2011.

Your letter requested certain information about products currently sold by Hain Celestial in California that "use the terms 'organic,' 'organically grown,' 'made with' organic ingredients or food groups, or any grammatical variation of those terms, to identify the product." As an initial matter, Hain Celestial does not concede that a product meeting any part of this description would necessarily be one that is "sold, labeled, or represented as organic or made with organic ingredients," within the scope of the California Organic Products Act ("COPA"). We also have uncertainty about the validity and enforceability of COPA in light of existing federal legislation.

Without waiver of these issues, however, Hain Celestial has worked diligently to collect all of the information requested by your July 27 letter. Accordingly, I am attaching three charts that list products currently (or very recently) sold by Hain Celestial that use the term "organic" (or some

variation) to identify the product in any way. These charts, which are for the Avalon Organics®, Earth's Best®, and Jason® brands sold by Hain Celestial, indicate the organic certification status for each of the listed products and provide other information on the current status of each product. In addition, I enclose documents numbered HC00000l-000332, which are copies of (a) the labels for each of the products in the three charts (in a few instances, we could not locate high quality artwork), and (b) the formulations for each of these products. (As you instructed, the formulations are labeled as "Confidential-Trade Secret," and we understand they will be treated accordingly by the Department of Public Health.) Finally, I enclose the organic certificates for the products listed on these charts, with the exception of products for which certification is currently pending (and expected shortly), as indicated on the charts.  As I discussed with you when we spoke on August 4, 2011, Hain Celestial has been working in a focused manner over the past two years to ensure that all of its products comply in all respects with COPA.  As reflected in the enclosed materials, other than discontinued products, we believe that Hain Celestial products currently being sold in California are certified (or in the process of being certified) by third parties as organic consistent with COPA.

Once you have had a chance to review these materials, please let me know if you have any additional questions or need additional information.

ECF No. 158-1.  The charts list product name, size, whether the product has an organic claim on the label, its organic certification status, and whether it is being reformulated, re-labeled, or discontinued.  *See* ECF No. 158-1 at 4-13.  They indicate that all but 4 of the 98 Avalon Organics products were being reformulated for "Oct/Nov 2011 Start Ship."  *See id.*  All but five Avalon Organics products were being re-labeled for "Oct/Nov 2011 Start Ship."  *Id.*  The chart also shows that Hain was discontinuing all but two Jason brand products.  *Id.*

Hain submitted copies of the revised labels and the revised formulations for each product identified.  *Id.* Exs. 1-17.  Hain provided the pre-2011 labels and formulations for just four Avalon Organics products.  *See* Pls. JSUF #19.  Three of the four products were certified to USDA organic standards and are not part of this suit, and the fourth product was being discontinued.  *See id.*

**D.  Relevant Events Between September 20, 2011 and the CDPH's February 2013 Notice**

On March 2, 2012, Hain moved to dismiss the case on the ground that the federal Organic Foods Production Act of 1990 ("OFPA"), 7 U.S.C. §§ 6501-24, expressly preempted COPA.  *See* Mot. to Dismiss, ECF No. 27 at 10 (also arguing that all remaining claims should be dismissed because they were predicated on a COPA violation).  Hain did not mention the CDPH inquiry in its motion, the parties' December 2011 joint case management statement,[6] or its discovery responses (including its

---

[6]  In their initial case management conference statement, the parties must include information about "[a]ny related cases or proceedings pending before another judge of this court, or before another court or administrative body."  *See* N.D. Cal. "Standing Order For All Judges," ECF No. 3-1.

1    March 2012 response to Plaintiffs' December 2011 request for production of documents concerning

2    Hain's compliance with COPA).  Pls. JSUF # 6-13 & Exs. 3 (RFP 9), 4-10.  In its motion to dismiss,

3    Hain also argued that "The California Organic Products Act was enacted in 2003 and has largely

4    been ignored because non-federal organic product standards have been preempted since the

5    enactment of the OFPA."  Motion to Dismiss at 3.

6        On March 7, 2012, Plaintiffs' counsel sent an e-mail to Pat Kennelly at CDPH, attached Hain's

7    motion to dismiss, and asked whether Mr. Kennelly had "any additional thoughts regarding Hain's

8    arguments."  Hain JSUF #5, Ex. E.

9        On August 1, 2012, the court denied Hain's motion to dismiss, rejecting Hain's OFPA

10   preemption argument and its later-raised argument that the USDA had primary jurisdiction over the

11   labeling claims.  *See* ECF No. 58.

12       Other relevant case events after the court's denial of the motion to dismiss in August 2012

13   include the court's rulings against Hain in the parties' discovery disputes.  *See, e.g.,* 8/10/12 Order,

14   ECF No. 64; 9/6/12 Order, ECF No. 75; 12/11/12 Order, ECF No. 102; *see* 10/28/13 Order, ECF

15   No. 155 at 2-9 (recounting case chronology).  In September 2012, the court also certified for appeal

16   its August 2012 order denying the motion to dismiss, but the Ninth Circuit denied the petition to

17   appeal in December 2012.  9/24/12 Order, ECF No. 79; Docket, No. 12-80186 (9th Cir. Dec. 17,

18   2012).  The court denied Hain's motion to dismiss the FAC for Plaintiffs' alleged lack of standing

19   on December 22, 2012.  *See* ECF No. 104.

20   **E.  Hain's January and February 2013 Communications with the CDPH**

21       Between September 21, 2011 and January 28, 2013, there were no communications between

22   Hain and CDPH regarding CDPH's inquiry into Hain's compliance with COPA.  Pls. JSUF #14.  On

23   January 28, 2013, Hain's counsel, William Friedman, sent an email message to Ms. Reick saying

24   that Hain had responded in September 2011 to her July 2011 letter, noting that Hain had not

25   received any response, and asking to speak with her about the matter.  *See* Friedman Decl. Ex. 2,

26   ECF No. 157-2 at 2.  On February 4, 2013, Ms. Reick sent a reply email saying that the Hain

27   Celestial file was forwarded to Regional Administrator Mary Kate Miller for review and that Ms.

28   Miller would contact Mr. Friedman within 10 working days.  *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

On February 7, 2013, Mr. Friedman sent an email to Ms. Miller asking whether she had a moment to speak that day and saying that he had reviewed Hain's previous submission and "wanted to provide some additional information to you."  *See* Todzo Decl. Ex. 9, ECF No. 163-12.  Ms. Miller responded that same day, saying that she would pull the notes and call him shortly.  *Id.*  Mr. Friedman emailed back with his availability that afternoon and attached the two COPA provisions cited in CDPH's July 2011 letter, California Health and Safety Code sections 110839 (cosmetic products labeled and sold as organic must contain at least 70 percent organically-produced ingredients) and 11039 (cosmetic products with less than 70% percent organically-produced ingredients may identify organically-produced ingredients only on ingredient lists and only in certain defined ways).  *See id.*

On February 8, 2013, Mr. Friedman sent Ms. Miller a letter to supplement Hain's September 2011 letter and included several samples of the revised Jason labels.  *See* Friedman Decl. Exs. 1-2, ECF No. 157-1, 157-2.  He first characterized the CDPH's July 2011 letter as (A) referencing COPA, California Health & Safety Code §§ 110838 and 110839, and (B) inquiring about whether "cosmetic products marketed under Hain-Celestial's three product brands, Avalon Organics, Jason and Earth's Best, may be non compliant with COPA's requirements."  He next said that in September 2011, Hain "replied that the products complied with COPA's labeling requirements."  He then argued the following:

*Prior Labels*

The September 2011 submission demonstrated that:

1. The Avalon Organics branded products *did not* use the word "organic" on the principle [sic] display panel at all, but instead used the word "organics" in its brand name on the principal display panel.

2. Jason products used the tagline "pure, natural, organic" in very small font on the principal display panel and Earth's Best products used the word "organic" on the principal display panel.

Each product contained certified organic ingredients. None of these products, however, used the word "organic" to modify the common name of the product (*e.g.* "organic shampoo") and none of the products used the word "organic" to identify *any* agricultural ingredients or product content on the product's principal display panel (*e.g.* "made with organic ingredients" or "organic lavender"). Because the products typically contained organic ingredients that totaled less than 70%, each product restricted reference to the certified organic ingredients to the ingredient panel only. *See* COPA, § 110839 (limiting reference to "organic content" in products with less than 70% content to the ingredient panel).

1   Because no Avalon Organics, Jason or Earth's Best product declared a percentage of organic
content, or modified the common name of the product by placing the word "organic" in front of
2   the product's common name, on the product's principal display panel, none of the products was
identified as a product containing 70% organically produced ingredients under§ 110838. More
3   importantly, as the quotation from § 110839 in the Department's July letter states, COPA
expressly authorizes cosmetic products with less than 70% organic content to be sold in
4   California provided that the "organic content" is identified only on the ingredient panel. The
organic content of the cosmetic products of each of Hain Celestial's three brands was less than
5   70%, and that content was identified solely on the ingredient panel as required under Section
110839. Accordingly, each brand's products were not misleadingly labeled under COPA, and in
6   fact complied with the plain meaning of both §§'s 110838 and 110839 of COPA.

7   He concluded with the following paragraph about the prior labels:

8   Based on the foregoing, the *prior* product labels of all three brands (the subjects of the
complaint) complied with COPA's requirements because COPA does not prohibit the use of
9   the word "organic" on the principal display panel of cosmetic products with less than 70%
organic content as long as its use does not suggest an ingredient is organic that is not organic,
10  or that the product contains 70% organic content when it does not.  Here, the company's
products were not misleadingly labeled under Sec. 110838 or 110839 because not a single
11  product referred to organic content, the percentage or organic ingredients, or declared the
common name of the product to be an "organic" product on the front display panel.

12

13  The letter also made representations about the current labels and included revised label proofs

14  for six Jason products showing that the "pure, natural and organic" tagline had been removed and

15  certificates showing that Avalon and Earth's Best products were now certified to ANSI/NSF-305

16  organic standards.  *Id.*  As to the current labels, he concluded:

17  [T]he *current* labels of all three brands comply with COPA's requirements.  The Avalon
Organics and Earth's Best product principal display panels now state the products contain
18  70% or more organic content and that they are certified to the ANSI/NSF-305 cosmetic
standard.  Jason brand products continue to contain less than 70% organic content and refer to
19  the certified organic ingredients solely on the ingredient panel as directed by Section 110839.

20  **F.   The Notice of Resolution**

21  On February 19, 2013, the CDPH sent Hain a short "Notice of Resolution."  Hain JSUF #6, Ex.

22  F;  Pls. JSUF #6, Ex. F.  The notice begins with the acknowledgment that the CDPH "reviewed the

23  documentation you submitted in response to the CDPH letter sent to Hain Celestial Group on July

24  21, 2011.  You provided labels for various Avalon Organics®, Earth's Best and Jason brands

25  personal products for review to ensure compliance with the California Organics Products Act

26  (COPA), including sections 110838 and 110839."  The notice then says the following:

27  The Avalon Organics® and Earth's Best and Jason brands were not found to represent the
products as "organic", or to use the word "organic" to identify ingredients or modify content
28  on the Principle Display Panel (PDP).  However, it is noted that Hain Celestial Group has
taken the following voluntarily [*sic*] actions to meet buyer and labeling specifications.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

- The Avalon Organics® and Earth's Best products were tested for the percentage of organically produced ingredients as evidence that they contain 70% or more organically produced ingredients. You provided certification from Quality Assurance International (QAI) as documentation that specific Avalon Organics® and Earth's Best products comply with ANSI/NSF 305 specifications as containing not less than 70% organic ingredients.

- Jason product labels originally contained a tag line that included the words, "pure – natural – organic" on the PDP. You removed these words from the labels and provided a copy of the revised labels as verification.

The ingredient panel on the Information Panel (IP) of Avalon Organics®, Earth's Best and Jason product labels listed organic ingredients, as permitted under COPA.

We appreciate the efforts you have taken to address this inquiry and consider the matter resolved.

**G.  Plaintiffs' Post-Notice of Resolution Correspondence with the CDPH**

As discussed above, Plaintiffs' counsel Mark Todzo learned about the CDPH inquiry on February 21, 2013, when Hain's counsel gave him a copy in connection with the parties' mediation efforts. *See* Todzo Decl. ¶ 9.  That day, he sent Ms. Miller an email forwarding two orders: (A) Judge Brick's order in Alameda County Superior Court interpreting COPA as prohibiting any use of the term "organic" or its grammatical variants on the principal display panel of cosmetic products that contain less than 70% organic ingredients and (B) this court's order reaching the same conclusion. *See* Hain JSUF #7, Ex. G.  An email from Mr. Todzo to Mr. Kennelly says that Mr. Todzo left messages for Mr. Kennelly, who responded by email on March 5, 2013 that he was not dealing directly with organic issues and typically did not discuss letters issued to another firm with counsel not representing the firm that received the letter. *See* Hain JSUF #8-12, Exs. H-K.  Mr. Todzo responded that the CDPH seemed to be treating CEH's lawsuits as administrative complaints, and "[i]f so, the Department should be able to discuss the letters with me as the attorney for the complainant." *Id.* Ex. H.  Mr. Kennelly responded that "CEH opted to file these lawsuits instead of referring the alleged violators to CDPH for investigation." *Id.* Ex. L.  Mr. Todzo responded, "I agree that CEH did not intend to initiate an administrative complaint with the Department." *Id.* Ex. K.  He explained that if the CDPH treated him, the CEH, or Ms. Brown as complainants, then he was entitled to information regarding how they were handled.  Alternatively, "[i]f the complaints referenced in the Department's letters are ***not*** based on the complaints I sent you in June 2011[],

1   please so state." *Id.*

2   Mr. Kennelly responded the next day by e-mail. *See* Hain JSUF #13, Ex. M. With regard to the

3   impetus for the CDPH inquiry, Mr. Kennelly stated the following:

4   We initiated a follow-up investigation after hearing about the alleged violations of COPA in
    the media. We likely used "receipt of complaint" language in the letters to the companies as
5   that is the standard language in our letters that are generated when we have not conducted an
    investigation. If you recall, CEH publicized its lawsuits in the media via a press release
6   before you ever provided a copy of the complaint. I had to actually call CEH and ask for a
    copy of the complaint which you ultimately provided at a later time. These facts make it
7   very difficult to argue that you are a complainant.

8   **ANALYSIS**

9   **I. LEGAL STANDARDS**

10   **A. Summary Judgment**

11   The court should grant a summary judgment motion if there is no genuine issue of material fact

12   and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v.*

13   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the case's

14   outcome. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient

15   evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

16   The party moving for summary judgment bears the initial burden of informing the court of the

17   basis for the motion, and identifying portions of the pleadings, depositions, answers to

18   interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material

19   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

20   must either produce evidence negating an essential element of the nonmoving party's claim or

21   defense or show that the nonmoving party does not have enough evidence of an essential element to

22   carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

23   *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076

24   (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

25   only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

26   (quoting *Celotex*, 477 U.S. at 325).

27   If the moving party meets its initial burden, the burden shifts to the non-moving party to produce

28   evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. The non-moving party

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  may not rest upon mere allegations or denials of the adverse party's evidence but instead must

2  produce admissible evidence that shows there is a genuine issue of material fact for trial. *See*

3  *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine

4  issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

5       In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

6  viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

7  *Radio Corp.*, 475 U.S. 574, 587 (1986).

8       **B. COPA's Labeling Requirements For Cosmetic Products**

9       The California Organic Products Act is set forth in California Health & Safety Code sections

10  110810 *et seq.* and is part of the larger Sherman Food, Drug, and Cosmetic Law. *See* Cal. Health &

11  Safety Code § 110810 ("This article shall be known, and may be cited, as COPA.") COPA regulates

12  the requirements for products sold as organic in California. *See, e.g., id.* §§ 110820 ("no product

13  shall be sold as organic pursuant to this article unless it is produced according to regulations

14  promulgated by the NOP [National Organics Products Act]" except for identified exceptions),

15  110880 ("This article shall apply to all products sold as organic within the state"). "'Sold as

16  organic' means any use of the terms 'organic,' 'organically grown,' or grammatical variations of

17  those terms, whether orally or in writing, in connection with any product grown, handled, processed,

18  sold, or offered for sale in this state, including, but not limited to, any use of these terms in labeling

19  or advertising of any product and any ingredient in a multi-ingredient product." *Id.* § 110815(k).

20       Two other provisions are relevant to the cosmetic products at issue in the litigation: section

21  110838, which sets forth the compositional requirements for products sold or labeled as organic, and

22  section 110839, which sets forth the labeling requirements for multi-ingredient cosmetic products

23  with less than 70% organically-produced ingredients.

24       First, section 110838(a) requires that "[c]osmetic products sold, labeled, or represented as

25  organic or made with organic ingredients shall contain, at least 70 percent organically produced

26  ingredients." Cal. Health & Safety Code § 110838(a).[7]

27  _____

28       [7] Section 110838(b) sets forth the methods for calculating the percentage "of all organically
produced ingredients in an agricultural product sold or labeled as 'organic' or "100 percent organic,'

**United States District Court**
**For the Northern District of California**

1    Second, section 110839 applies to cosmetic products with less than 70 percent organically-

2    produced ingredients:

> Multi-ingredient cosmetic products sold as organic in California with less than 70 percent
> organically produced ingredients, by weight or by fluid volume, excluding water and salt,
> may only identify the organic content as follows:
>
>    (a) By identifying each organically produced ingredient in the ingredient statement with the
>    word "organic" or with an asterisk or other reference mark that is defined below the
>    ingredient statement to indicate the ingredient is organically produced.
>
>    (b) If the organically produced ingredients are identified in the ingredient statement, by
>    displaying the product's percentage of organic contents on the information panel.

9    *Id.* at § 110839.

10   **C. Enforcement of COPA**

11   It is unlawful to sell, offer for sale, advertise, or label any product in violation of COPA.

12   *Id.* § 110890.  COPA sets forth mechanisms for addressing and punishing violations of COPA.  This

13   section reviews them in the order in which they occur in the statute.

14   Section 110915 provides that "in lieu of prosecution," the Director may levy certain civil

15   penalties or issue a notice of violation for first offenses in lieu of a civil penalty.  *Id.* § 110915(a)-

16   (c).  If a civil penalty is levied, then the person against whom the penalty is levied may ask for, and

17   then must be given, an administrative hearing.  *Id.* § 110915(d).  At the hearing, the person has the

18   right to review the evidence of the violation and "the right to present evidence on his own behalf."

19   *Id.*  If the person does not request a hearing, the civil penalty is a final, non-removable order.  *Id.*  "If

20

21   _____

22   or sold, labeled, or represented as being made with organic ingredients or food groups, or as
     inclusive of organic ingredients."  The method depends on whether the product has organically-
     produced products in solid form, liquid form, or both.  *See id.* § 110838(b).  For products containing
23   organically-produced ingredients in solid form, the percentage of organic ingredients is calculated
     by dividing the weight of the organic ingredients (excluding water and salt) by the total weight of
24   the finished product (excluding water and salt).  *Id.*  For products containing organically-produced
     ingredients in liquid form, the percentage of organic ingredients is calculated by dividing the fluid
25   volume of the organic ingredients (excluding water and salt) by the fluid volume of the finished
     product (excluding water and salt).  *Id.*  For products containing organically-produced ingredients in
26   both solid and liquid form, one divides the combined weight of the solid ingredients and the weight
     of the liquid ingredients (excluding water and salt) by the total weight of the finished product
27   (excluding water and salt).  *Id.*

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    a hearing is held, review of the decision of the director may be sought by any person within 30 days

2    of the date of the final order of the director pursuant to" California Code of Civil Procedure 1094.5.

3    Any civil penalty levied under section 110915 "may be recovered in a civil action brought in the

4    name of the state." *Id.* § 110915(f).

5         Section 110930 addresses CDPH's enforcement authority:

6         The director shall, to the extent funds are available, enforce this article applicable to all
          processors and handlers of processed products sold as organic."
7

8    *Id.* § 110930; *see also id.* §§ 110812 (director shall enforce regulations promulgated by the National

9    Organic Program ("NOP")), 110815(b) ("Director" means the Director of the Department of Health

10   Services), (c) ("enforcement authority" means the governmental unit (now, the CDPH) with primary

11   enforcement jurisdiction under section 110930), (e) ("handle" means to sell, process, or package

12   agricultural products).

13        Section 110940 provides a process for filing complaints about COPA violations and responding

14   to them.  Section 110940(a) provides that any person may complain to the director about suspected

15   COPA violations by "a person over whom the director has responsibility as provided in this article

16   or regulations adopted by the NOP."  Section 110940(b) addresses the procedures for addressing

17   complaints:

18        The director shall, to the extent funds are available, establish a procedure for handling
          complaints, including, provision of a written complaint form, and procedures for commencing an
19        investigation within three working days of receiving a written complaint regarding fresh food,
          and within seven working days for other products, and completing an investigation and reporting
20        findings and any enforcement action taken, if any, to the complaint within 90 days thereafter.

21   *Id.* § 110940(b).  Section 110940 has three more sections.  Section (c) allows the director to

22   establish minimum information requirements to determine the verifiability of a complaint and may

23   provide for rejection of a complaint that does not meet the requirements (but must provide written

24   reasons for rejection of the complaint to the complainant).  Section (d) reiterates that the director's

25   responsibilities under section 110940 "shall be carried out to the extent funds are available."

26   Section (e) requires that California's complaint process must meet the complaint processes outlined

27   in the NOP regulations.

28        Section 110950 allows the director to "adopt any regulations as are reasonably necessary to

UNITED STATES DISTRICT COURT
For the Northern District of California

assist in the implementation of, or to make more specific, the provisions of, this article."

The Sherman Law has other enforcement mechanisms to address COPA violations. Under section 111840, "[t]he Attorney General, any district attorney, or any city attorney to whom the department reports any violation of this part [meaning, the Sherman Law] may begin appropriate proceedings in the proper court." Under section 111900, "[t]he Attorney General or any district attorney, on behalf of the department [the CDPH], may bring an action in superior court . . . to grant a temporary or permanent injunction restraining any person from violating any provision of this part." *Id.* § 111900. Section 111910 allows a private right to sue for injunctive relief:

> (a) Notwithstanding the provisions of Section 111900 or any other provision of law, any person may bring an action in superior court pursuant to this section and the court shall have jurisdiction upon hearing and for cause shown, to grant a temporary or permanent injunction restraining any person from violating any provision of [COPA].

*Id.* § 111910(a). A private party seeking injunctive relief need not "allege facts necessary to show, or tending to show, lack of adequate remedy at law, or to show, or tending to show, irreparable damage or loss, or to show, or tending to show, unique or special individual injury or damages." *Id.* In addition to injunctive relief, the court may award reasonable attorney's fees. *Id.* § 111910(b). The private right of action, however, "shall not be construed to limit or alter the powers of the department [meaning, the CDPH] and its authorized agents to bring an action to enforce this chapter pursuant to Section 111910 or any other provision of law." *Id.* § 111910(c).

## II. CDPH'S INFORMAL INQUIRY DID NOT DECIDE THE COPA CLAIM

The main issue is whether in its February 19, 2013 Notice of Resolution, the CDPH decided that Hain's labels did not violate COPA and, if it did, whether that decision precludes Plaintiffs' COPA claims in this litigation. Hain's argument is that the CDPH process was an "enforcement proceeding" that "extinguished" Plaintiffs' claim for injunctive relief under COPA for the alleged violations of Section 110839. Motion, ECF No. 156 at 13, 19-20. The basis for this argument is that COPA permits both CDPH and Plaintiffs to seek injunctive relief. *Id.* at 19. Plaintiffs thus are acting as private attorneys general and are bringing an enforcement action to protect the public (and not to benefit themselves as private parties). *Id.* The CDPH is the statute's primary enforcer, and the CDPH "has determined that Avalon Organics products are now each certified as containing 70%

1    minimum organic content and that Jason products no longer bear the tagline "pure, natural &

2    organic." *Id.* at 20. "This moots the allegations by Plaintiffs–the statute's secondary enforcer–with

3    regard to the front panel use of the word 'organic' or 'organics' for each brand." *Id.* Accordingly,

4    Hain concludes, "there is no COPA violation to prospectively enjoin and no public interest to be

5    achieved in this court by maintaining this claim." *Id.*

6         On this record, the court concludes that the CDPH's Notice (A) was only an informal "notice" –

7    issued at the end of CDPH's informal inquiry about a possible COPA violation – of the agency's

8    decision not to pursue further action, and (B) does not preclude Plaintiffs' COPA claim in this

9    lawsuit. This conclusion is supported by several factors.

10        First, the inquiry was informal on its face. CDPH's July 2011 letter said only that CDPH

11   "recently received a complaint" that Hain's cosmetics did not comply with COPA's requirements

12   regarding the identification of cosmetic products as organic, identified the two statutes (California

13   Health and Safety Code §§ 111038 and 111039) that address compositional and labeling

14   requirements for cosmetic products sold as organic, and asked Hain to provide a list of products that

15   use the term "organic" (or variations of organic), the labels for those products, the formulations (or

16   recipes) for the products, and evidence of organic certification for organic ingredients. Hain JSUF

17   Ex. D. The context of the July 2011 letter supports its informality: the letter was one of nine similar

18   letters sent that day. *See* Todzo Decl. Ex. 7. The letters referred generically to receipt of complaints

19   (and did not identify them). As discussed above, the agency appears to have initiated its inquiries

20   after the Center for Environmental Health's June 15, 2011 press releases about its lawsuits

21   (including this one). *See supra* STATEMENT (II)(A)-(G) (the chief of the CDPH Food Safety

22   Section heard about the alleged violations in the media).

23        Second, the process that followed was informal too. Hain's September 2011 submission was *ex

24   parte*. Frankel Decl., Ex. 1, ECF No. 151-1. Eighteen months went by with no response from the

25   CDPH. Then, on January 28, 2013, Hain's counsel sent an email to the head of CDPH's Food

26   Safety Inspection Unit (the person who sent the July 2011 inquiry), asked about the status, and asked

27   to speak to her. Friedman Decl., Ex. 2, ECF No. 157-2. On February 4, 2013, she replied, saying

28   that the Hain Celestial file had been sent to the Regional Administrator for review and to expect a

UNITED STATES DISTRICT COURT
For the Northern District of California

1    response within ten working days.  *Id.*  On February 7, 2013, Hain's counsel and the Regional

2    Administrator exchanged emails arranging to speak later that day, and on February 8, 2013, Hain's

3    counsel sent a letter to supplement Hain's September 2011 submission.  *Id.*; Friedman Decl., Ex. 1,

4    ECF No. 157-1.  Eleven days later, on February 19, 2013, the CDPH issued its Notice of Resolution.

5    Hain JSUF #6, Ex. F.

6        Third, the process's informality also is shown by the fact that the agency considered only Hain's

7    *ex parte* submissions.  That fact is established by the first paragraph of the notice, which begins by

8    acknowledging that the CDPH reviewed Hain's "documentation submitted in response to the CDPH

9    letter sent to Hain Celestial Group on July 27, 2011," including the labels.  *Id.*  The only

10   documentation is Hain's two *ex parte* submissions in September 2011 and February 2013.  The

11   September 2011 submission mostly was about products being reformulated for shipment in October

12   or November 2011 or discontinued.  *See* Frankel Decl. Ex. 1, ECF No. 151-1 (September 2011

13   submission provided information regarding "*products currently (or very recently) sold by Hain

14   Celestial*" that use the term "organic" (or variants such as organically-grown);[8] ECF No. 158-1 at 4-

15   13 (attached charts show that for the Avalon products, all but 4 of the 98 products were products

16   being reformulated for an "Oct/Nov 2011 Start Ship" and all but 5 were being relabeled; all but two

17   Jason products were being discontinued); Pls. JSUF # 19 & Exs. 1-17 (Hain submitted pre-2011

18   labels for just four Avalon products, three of which were certified to USDA organic standards and

19   are not part of this lawsuit, and one that was being discontinued); Friedman Decl. Ex. 1, ECF No.

20   157-1 (attachments were revised label proofs for several Jason products showing that the "pure,

21   natural, and organic" tagline had been removed).[9]

22

23        [8]  The submissions regarding Hain's October/November 2011 new products are for products
     that purport to meet COPA's 70-percent compositional standards (as opposed to the old products,
24   which undisputedly – with very few exceptions – contained less than 70 percent organically-
     produced ingredients).  *See* Pls. JSUF # 23.
25

26        [9]  In addition to the *ex parte* process showing the informality of the inquiry, this record
     refutes Hain's argument at the hearing that one cannot conclude necessarily that the CDPH did not
27   consider all labels at issue in this litigation.  The letter's first paragraph – acknowledging review of
     Hain's documentation – suggests that it considered nothing more.  In its second *ex parte* submission
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In sum, the entire inquiry was a letter, an *ex parte* submission in 2011, an 18-month hiatus, a

2  second *ex parte* submission following some informal emails and possibly a conversation, and a short

3  notice.  The process suggests only an informal inquiry and a decision not to proceed further, a

4  conclusion bolstered by the agency's post-notice communications to Plaintiffs' attorney that he was

5  not a complainant and was not entitled to know the details of a response made to Hain.  *See supra*

6  STATEMENT (II)(G).

7    Hain's arguments do not alter this conclusion.

8    First, Hain argues that Plaintiffs' inability to present evidence, participate in the process, or

9  cross-examine witnesses does not mean that the agency's decision does not preclude Plaintiffs'

10  claims.  Motion, ECF No. 156 at 22.  Hain analogizes to a private plaintiff's lack of right to

11  participate in proceedings such as a district attorney's decision not to prosecute, the State Bar's

12  decision not to revoke a lawyer's license, a zoning board's decision not to grant a conditional use

13  permit, and other public matters where "no single member of the public has a right to participate or

14  direct outcomes, yet everyone is bound."  *Id.*  In support of this argument, Hain cites California law

15  regarding claim preclusion, arguing that it applies because the CDPH and Plaintiffs seek to advance

16  the same "primary right" to be free of products that do not comply with COPA.  *Id.* at n.9.  Because

17  this action addresses the same primary right "adjudicated" by the CDPH, Hain argues that the two

18  proceedings (the federal case and the CDPH's "decision to take up the cause") involve a single

19  cause of action for purposes of claim preclusion.  *See id.*

20    The problem is that this argument is predicated on the CDPH's "decision to take up the cause" of

21  action and its "adjudication" of it.  As discussed above, the informality of the process belies this

22  ———————————————————

23  in February 2013, Hain argued forcibly that the September 2011 submissions demonstrated that "the
prior product labels" complied with COPA's requirements.  Friedman Decl. Ex. 1, ECF No. 157-1.

24  An argument that the September 2011 submissions demonstrated something about the prior product
labels does not alter the record about what Hain actually submitted and what the CDPH actually

25  considered:  current or anticipated Avalon products (except for four), information showing Jason
products that were discontinued, and several revised Jason labels.  Moreover, in conclusion, the

26  CDPH said, "[w]e appreciate the efforts that you have taken to address this inquiry and consider the

27  matter resolved," again leading to the conclusion that it considered only Hain's submissions.  Pls.
JSUF #6, Ex. F.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   predicate.  It was not a formal adjudication.[10]

2       Hain counters in its reply brief that the CDPH adjudication was an enforcement matter, not an

3   adjudication in the sense of a judicial proceeding that requires a trial-like process.  Reply, ECF No.

4   167 at 15.  Trial-like procedures might be required for administrative proceedings to take away

5   Plaintiffs' liberty or property rights (and Hain gives examples such as imprisonment, deportation, or

6   loss of a job, license, or public benefit).  But – Hain argues – this situation is different because the

7   CDPH is the state agency charged with enforcing COPA and its Notice is an enforcement decision

8   that precludes Plaintiffs' private-attorney-general lawsuit for the same relief "adjudicated" in the

9   enforcement proceeding.  Motion, ECF No. 156 at 21-22; Reply, ECF No. 167 at 15.

10      Plaintiffs acknowledged at the hearing on this motion that an administrative enforcement

11  proceeding (by an agency with authority) that addressed conclusively an injunctive relief claim

12  conceivably could preclude private persons (acting as private attorneys general) from pursuing a

13  claim for injunctive relief in a separate civil action.  And administrative enforcement proceedings

14  that "get it wrong"[11] (as Hain characterized the issue at the hearing) still might preclude a civil

15

16          [10]  Plaintiffs point out that federal courts accord preclusive effect to the adjudicative

17  determinations of a California administrative agency only where the state proceeding satisfies the
    fairness requirements set out in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394

18  (1966).  Opposition, ECF No. 163 at 23 (citing *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-
    33 (9th Cir. 1994) and *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999).  Those factors are that

19  (1) the administrative agency acted in a judicial capacity, (2) the agency resolved disputed issues of

20  fact properly before it, and (3) the parties had an adequate opportunity to litigate.  *Miller*, 39 F.3d at
    1032-33.  "The threshold inquiry . . . is whether a state administrative proceeding was conducted

21  with sufficient safeguards to be equated with a state court judgment.' *Miller*, 39 F.3d at 1033

22  (internal quotation omitted).

23          [11]  As for mistakes, Plaintiffs point out that the CDPH's statement that the labels "were not
    found to use the word 'organic' to identify ingredients or modify content on the Principle Display

24  Panel (PDP)" is wrong in that "even Hain's limited production of labels to CDPH included both

25  labels that explicitly identified organic ingredients and ones that identified some organic content on
    the PDP.  For example, as Hain concedes, a number of labels submitted to CDPH included claims

26  that the products are made with 'Organic Oils.'" *See* Opposition, ECF No. 163 at 32-33.  In the
    context of this informal inquiry, the mistakes bolster the conclusion that the process was not an

27  enforcement action and instead was an informal inquiry that relied only on Hain's arguments

28  (including, for example, its February 2013 argument that the September 2011 submissions

1   action for injunctive relief so long at the proceedings had the requisite procedural safeguards.  But

2   here, as Plaintiffs argue, the agency process and resulting notice did not have the procedural

3   safeguards and formality of an agency decision.  This process involved only consideration of Hain's

4   informal, *ex parte* submissions mostly about reformulated and relabeled products and

5   representations about them, and it did not include any consideration of additional information or any

6   independent evaluation about the products or their ingredients.[12]

7       Hain cites no cases where any court has found binding an agency's decision in a process like the

8   CDPH's process to support a conclusion that the undersigned ought to construe the CDPH's notice

9   as precluding Plaintiffs' COPA claim here.

10      For example, its res judicata and collateral estoppel cases all involve prior judicial actions that

11

12

13   _____

14   established that the prior Avalon labels did not violate COPA (even though Hain submitted only four
     pre-2011 Avalon labels, three of which were USDA Certified Organic and thus are not part of this
15   litigation).

16      A related point about the reliability of the CDPH process is that Plaintiffs say that they have
     begun receiving Hain's document production and have identified numerous examples of pre-2011
17   Avalon Organics and Jason product labels that include references to specific organic ingredients (for
     example, "made with organic ingredients").  Opposition, ECF No. 163 at 33 n.17; Pls. JSUF #25,
18   Ex. 13.  Plaintiffs also acknowledge Hain's efforts since 2011 to bring its products into compliance
     with COPA's 70-percent compositional requirements but have identified some examples where they
19   do not.  Todzo Decl. ¶ 14, Ex. 11.  There also may be an issue about the organic certification
     standards and how Hain calculates the organic content.  *See* Opposition, ECF No. 163 at 13 n.2.
20   Plaintiffs point out that these are fact issues, discovery is ongoing, and summary judgment is
     premature.  *Id.*
21

22      [12]  The notice has only two short substantive parts.  The first substantive sentence says the
23   following:  "The Avalon Organics®, Earth's Best and Jason brands were not found to represent the
     products as 'organic', or to use the word 'organic' to identify ingredients or modify content on the
24   Principle Display Panel (PDP)."  Hain JSUF Ex. F.  This sentence is read in the context of the
     sentences that follow, which refer to Hain's "voluntarily [taking] actions to meet buyer and labeling
25   specifications" by testing the Avalon products to show that they contained 70% or more organically-
     produced ingredients, by providing certifications, and by discontinuing the words "pure – natural –
26   organic" from the Jason products.  *Id.*  As discussed above, the Jason brands were discontinued, and
     the new Avalon products – unlike the ones at issue in this litigation – purport to meet COPA's 70-
27   percent compositional requirements.  Whether that is true was not tested in the agency's process.
28   *See supra* n.11 (discussing mistakes).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   bar subsequent actions regarding the same issues (and not agency administrative actions,[13] let alone

2   informal proceedings like this one).  *See* Motion, ECF No. 156 at 21-22; *see, e.g., Alvarez v. May*

3   *Dept. Stores Co.*, 143 Cal. App. 4th 1223, 1233-40 (2006) (order denying class certification in prior

4   case precluded other putative class members from litigating identical claims in subsequent suit in

5   part because class member were adequately represented); *Citizens for Open Access to Sand & Tide,*

6   *Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1072-73 (1998) (settlement and judgment in

7   representative lawsuit between authorized government agencies and landowner barred private group

8   from asserting the same claims in subsequent suit); *Rynsburger v. Dairymen's Fertilizer Coop., Inc.*,

9   266 Cal. App. 2d 269 (1968) (affirming post-judgment injunction barring homeowners from

10  pursuing a private nuisance action against dairy cooperative after dairy prevailed against local

11  governments in public nuisance action, and governments and homeowners were in privity); *Smith v.*

12  *City of Los Angeles*, 190 Cal. App. 2d 112, 128 (1961) (affirming grant of summary judgment on res

13  judicata grounds against plaintiff based on judgment in previous representative suit)*; Price v. Sixth*

14  *Dist. Agric. Ass'n*, 201 Cal. 502, 514-15 (1927) (prior mandamus action by city and county, and

15  subsequent judgment against the government, bars subsequent suit by taxpayers).

16      Hain also cites cases to support the conclusion that taking away benefits require more process

17  than licensing (for example), but those cases involved an opportunity for public participation.  *See,*

18  *e.g., California Radioactive Mat'ls. Mgt. Forum v. Department of Health Servs.*, 19 Cal. App. 4th

19  841, 856-68 (3rd Dist. 1993).  Hain also analogizes to USDA pre-market approval of labels, a

20  process that results in preemption.  *See* Motion, ECF No. 156 at 26-27; Reply, ECF No. 167 at 24;

21  *see, e.g., Meunrit v. ConAgra Foods Inc.*, No. 09-0220 CRB, 2010 WL 2867393, at *6-7 (N.D. Cal.

22  July 20, 2010) (UCL, CLRA, and breach of warranty claims for ConAgra's alleged improper

23  production practices and misleading labeling of its pies preempted by FDA's inspection of facility

24  (when Plaintiff did not allege a violation of federal regulations) and the USDA's and FSIS's pre-

25  approval of ConAgra's labeling); *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL

26  5530017, at *5 (N.D. Cal. July 25, 2013) (collecting cases and holding that pre-approval of labels by

27  _____

28      [13]  See *supra* n.10 (discussing standards that apply to agency adjudicative actions, which the
    CDPH process is not).

UNITED STATES DISTRICT COURT
For the Northern District of California

1  the USDA and FSIS precludes state law claims alleging false or misleading labeling).  But those

2  cases involve an elaborate statutory and regulatory scheme and regularly-followed administrative

3  procedures.  Regulatory schemes and regularly-followed administrative procedures also are

4  characteristics of the other examples that Hain cited at the hearing or in its motion: certification of

5  elevators, certifications of gas pumps, and zoning conditional use permits.

6      There are no cases construing an administrative inquiry like this – triggered by a "complaint"

7  and involving only an informal *ex parte* submission of information by the alleged wrongdoer and no

8  apparent investigation – as a binding agency decision.  It is not an enforcement decision and instead

9  was only a notice that the CDPH considered its informal inquiry resolved and was not pursuing

10  further action.

11      Hain also argued that an agency's decision not to refer the case for investigation or prosecution

12  is a decision that has preclusive effect on Plaintiffs' claims because it is a "no violation"

13  determination.  It is not so here given (A) a statute (California Health & Safety Code § 111910(a))

14  that permits a private right of action for injunctive relief "[n]otwithstanding the provisions of

15  Section 111900" (the provision that allows the California Attorney General or a district attorney to

16  bring an injunctive-relief action),[14] and (B) a record that establishes only an informal determination

17  by the agency (based only on Hain's *ex parte* submissions) not to pursue further enforcement action.

18  As Plaintiffs pointed out at the hearing, there are many reasons why the CDPH's decision not to

19  continue its inquiry was not a decision that precludes private litigation under a statutory scheme that

20  allows it.  Lack of resources, lack of information, and the ongoing lawsuits in state and federal court

21  are a few possible reasons.

22      The court denies Hain's motion for summary judgment on this ground.

23  **II.  PLAINTIFFS ARE NOT ESTOPPED FROM CONTESTING THE NOTICE**

24      Hain also argues that Plaintiffs are judicially estopped from contesting the Notice because they

25  triggered the CDPH's inquiry.  The record does not support the conclusion that Plaintiffs triggered

26  _____

27      [14]  Conversely, the private right of action "shall not be construed to limit or alter the powers
    of the department [meaning, the CDPH] and its authorized agents to bring an action to enforce this
28  chapter pursuant to section 111910 or any other provision of law."  Cal. Health & Safety Code
    § 111910(c).

the inquiry and instead supports the conclusion that the CDPH asked for the complaint from this lawsuit (and others) and did not thereafter include Plaintiffs' counsel's in its inquiry.  *See supra* STATEMENT (II)(G).  Indeed, Plaintiffs' counsel did not learn about the inquiry until Hain's counsel told him about the notice in February 2013, and Plaintiffs learned about it thereafter.[15]  Even if Plaintiffs had provided information at the CDPH's request (or otherwise), Hain did not explain why allowing this lawsuit is unfair or inconsistent with the agency's complaint process.  The doctrine of judicial estoppel is an equitable doctrine that in the court's discretion may be invoked to prevent a party from benefitting by taking one position and later benefitting by taking an inconsistent position.  *See Hamilton v. State Farm Fire and Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  Those factors are not present here.[16]

## III.  THE CDPH NOTICE DID NOT RESOLVE THE REMAINING CLAIMS

Hain's final argument – that the CDPH's notice also precludes Plaintiffs' other state claims because they are all predicated on the COPA violation  – fails based on the court's holding that the CDPH's notice did not decide and does not preclude the COPA claim.  Also, as the court decided previously and as Plaintiffs argued at the hearing, on this record it is not obvious that Plaintiffs' UCL, CLRA, and breach of warranty claims are predicated necessarily on the alleged COPA violation.

### CONCLUSION

The court DENIES Hain's motion for summary judgment.  This disposes of ECF No. 156.

**IT IS SO ORDERED.**

Dated: February 10, 2014

_____
LAUREL BEELER
United States Magistrate Judge

---

[15]  At the hearing, Hain's counsel – when asked – did not dispute Mr. Todzo's account in his declaration about his learning of the CDPH inquiry when Hain's counsel told him in February 2013.

[16]  Plaintiffs also argue that Hain ought to be precluded from relying on the CDPH's notice because it failed to disclose the CDPH's inquiry earlier.  In light of its decisions about the nature of the administrative process, the court does not need to address the issue.