LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA  94117
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated, | Case No. C 11-03082 LB |
| Plaintiffs, | **PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES [PER ECF NO. 230]** |
| v. | |
| THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation, | Hearing Date: October 16,  2014<br>Time:     9:30 a.m.<br>Dept.     Courtroom C<br>Judge:   Hon. Laurel Beeler |
| Defendant. | |

Case No. C 11-03082 LB

**MOTION FOR CLASS CERTIFICATION**

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3   STATEMENT OF ISSUES TO BE DECIDED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

4   MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6   II.   FACTUAL BACKGROUND AND COMMON EVIDENCE. . . . . . . . . . . . . . . . . . . . . . 3

7     A.   Hain's False and Misleading Labeling And Marketing
      Of The Products As "Organic" Is Uniform Among All
8       Products In Each Challenged Brand.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9     B.   The Products All Contain Less Than 70% Organic Ingredients. . . . . . . . . . . . . . 4

10     C.   Plaintiffs' Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11     D.   The Class Representatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12     E.   The Proposed Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13   III.   RELEVANT PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14   IV.   STANDARD FOR CLASS CERTIFICATION UNDER RULE 23. . . . . . . . . . . . . . . . . 8

15   V.   CERTIFICATION OF THE PROPOSED CLASSES IS APPROPRIATE. . . . . . . . . . . 10

16     A.   The Criteria For Class Certification Under Rule 23(a) Are Satisfied. . . . . . . . . 11

17       1.   The Classes Are Clearly Defined and Readily Ascertainable. . . . . . . . . 11

18       2.   The Classes Are Sufficiently Numerous. . . . . . . . . . . . . . . . . . . . . . . . . . 12

19       3.   The Classes Meet the Commonality Requirement.. . . . . . . . . . . . . . . . . . 12

20       4.   Plaintiffs' Claims Are Typical Of The Classes' Claims. . . . . . . . . . . . . . 14

21       5.   The Class Representatives And Their Counsel Adequately
        Represent The Proposed Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
22

23         a.   The Class Representatives Do Not Have Any
          Conflicts With Other Class Members. . . . . . . . . . . . . . . . . . . . . . 16

24         b.   Plaintiffs' Counsel Are Qualified. . . . . . . . . . . . . . . . . . . . . . . . . 16

25     B.   The Requirements Of Rule 23(b)(3) Are Satisfied. . . . . . . . . . . . . . . . . . . . . . . 16

26       1.   Common Issues of Law and Fact Predominate. . . . . . . . . . . . . . . . . . . . . 16

27         a.   Common Questions Predominate Regarding
          Plaintiffs' COPA Claim And Plaintiffs' UCL
28           Claim Predicated On COPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

- i -

b.      Common Questions Predominate Regarding
Plaintiffs' UCL, CLRA and Breach of Warranty Claims. . . . . . . 18

c.      Plaintiffs Have Established That Damages Are
Capable of Measurement on a Classwide Basis.. . . . . . . . . . . . . 20

2.      Superior Method. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

**CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.,*
    731 F.3d 952, 957 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
    133 S. Ct. 1184 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ballard v. Equifax Check Servs., Inc.,*
    186 F.R.D. 589 (E.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bank of the West v. Sup. Ct.,*
    2 Cal.4th 1254 (Cal. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brazil v. Dole Packaged Foods, LLC,*
    12-CV-01831-LHK (N.D. Cal. May 30, 2014). . . . . . . . . . . . . . . . . . . . . . 10, 14, 18,  21

*Bruno v. Quten Research Inst., LLC*
    280 F.R.D. 524 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*California Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Californians for Disability Rights, Inc. v. California Dept. of Transp.,*
    249 F.R.D. 334 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14, 15

*Colgan v. Leatherman Tool Grp., Inc.,*
    135 Cal. App. 4th 663 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Comcast Corp. v. Behrend,*
    __ U.S.__, 133 S. Ct. 1426 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 20

*Delarosa v. Boiron, Inc.,*
    275 F.R.D. 582 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 14

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Ellsworth v. U.S. Bank, N.A.,*
    C 12-02506 LB (N.D. Cal. June 13, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

MOTION FOR CLASS CERTIFICATION

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 17, 23

*Heighley v. J.C Penney Life Ins. Co.*,
    257 F. Supp. 2d 1241 (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Apple, AT & T iPad Unlimited Data Plan Litig.*,
    No. C-10-2553 RMW (N.D. Cal. June 26, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re First Alliance Mortgage Corp.*,
    471 F.3d 977 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Hulu Priv. Litig.*,
    C 11-03764 LB, 2014 (N.D. Cal. June 17, 2014). . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 12

*In re Steroid Hormone Product Cases*,
    181 Cal. App. 4th 145 (Cal. App. 2nd Dist. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Tobacco II Cases*,
    46 Cal.4th 298 (Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab.
Litig.*,
    754 F.Supp.2d 1145 (C.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    527 F. Supp. 2d 1053 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Johnson v. General Mills*,
    275 F.R.D. 282 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 19, 20

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (Cal. App. 1st Dist. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Leyva v. Medline Industries Inc.*,
    716 F.3d 510 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581(9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MOTION FOR CLASS CERTIFICATION

*Menagerie Prods. v. Citysearch,*
CV 08-4263 CAS(FMO) (C.D. Cal. Nov. 9, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Natl. Fedn. of the Blind v. Target Corp.,*
C 06-01802 MHP (N.D. Cal. April 25, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Negrete v. Allianz Life Ins. Co. of North America,*
238 F.R.D. 482 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*O'Donovan v. CashCall, Inc.,*
278 F.R.D. 479 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Parsons v. Ryan,*
__F.3d__ (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schnall v. Hertz Corp.,*
78 Cal. App. 4th 1144 (Cal. App. 1st Dist. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stearns v. Ticketmaster Corp.,*
655 F.3d 1013 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stockwell v. San Francisco,*
749 F.3d 1107 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*True v. American Honda Motor Co., Inc.,*
520 F.Supp.2d 1175 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Watkins,*
278 F.3d 961 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. __, 131 S.Ct. 2541 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Werdebaugh v. Blue Diamond Growers,*
12-CV-2724-LHK (N.D. Cal. May 23, 2014). . . . . . . . . . . . . . . . . . . . . . . 10, 11, 18, 21

*Wiener v. Dannon Co., Inc.,*
255 F.R.D. 658 (C.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Williams v. Gerber Products Co.,*
552 F.3d 934 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wolph v. Acer America Corp.,*
No. 09-01314 (N.D. Cal. Mar. 23, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zeisel v. Diamond Foods, Inc.,*
C 10-01192 JSW (N.D. Cal. June 7, 2011). . . . . . . . . . . . . . . . . . . . . . 10, 13, 15, 18

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

- v -

1  **STATUTES & RULES**

2  Fed. R. Civ. P. 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3  Fed. R. Civ. P. 23(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4  Fed. R. Civ. P. 23(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5  Fed. R. Civ. P. 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6  Fed. R. Civ. P. 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

7  Fed. R. Civ. P. 23(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8  Cal. Business & Professions Code § 17203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9  Cal. Civil Code §1780(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

10  Cal. Health & Safety Code § 110838. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11  Cal. Health & Safety Code § 110838(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 16, 2014 at 11:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Laurel Beeler, or at such date and time as the Court may otherwise direct, Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") will, and hereby do, move pursuant to Rules 23(b)(3), 23(b)(2), and/or 23(c)(4) of the Federal Rules of Civil Procedure for an order: (i) certifying the proposed classes (defined herein); and (ii) approving the Lexington Law Group as Class Counsel.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Mark Todzo and the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

Whether class certification is appropriate under Rule 23(b)(3), 23(b)(2), and/or 23(c)(4) of the Federal Rules of Civil Procedure.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

"Simply stated: labels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label . . . ."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (Cal. 2011).  This case challenges The Hain Celestial Group, Inc.'s ("Hain" or "Defendant") use of uniform organic representations on the front labels of its Avalon Organics and Jason cosmetic products (collectively, the "Products"), representations that Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") allege are unlawful, false and misleading under California law.[1]  By this motion, Plaintiffs seek certification of two classes of California purchasers of the Products, those of the Avalon Organics Products (the "Avalon Organics Class") and those of Jason Products (the "Jason Class").

This case's suitability for class treatment cannot be seriously disputed.  The Court has already held that "[t]he misrepresentations across the product lines are identical . . . and those common misrepresentations are the crux of Plaintiffs' case."  ECF No. 104 at p. 12:10-11.  In one candid moment, Hain's counsel conceded as to the Products' labels, if you "had [seen] just one label, [you] may as well have [seen] all of them . . . they were all the same."  Declaration of Mark N. Todzo ("Todzo Decl."), ¶ 2, Exh. 1 at pp. 104:25-105:3.

Indeed, the proposed Avalon Class and Jason Class are ideal for certification since every member of the class was subjected to the same unlawful and deceptive conduct resulting in the same injury.  Every member of the Avalon Organics Class purchased a Product that includes the word "Organics" on the principal display panel of a product that contains less than 70% organic ingredients.  Likewise, all of the Jason Products included the representation that such products were "Pure, Natural & Organic" on the front label.  Yet, as with the Avalon Products, such products all contained less than 70% organic ingredients.  Using the word "organic" on the labels

---

[1] "Products" excludes any Avalon Organics or Jason products that were certified as organic using the United States Department of Agriculture's ("USDA") organic seal.

**MOTION FOR CLASS CERTIFICATION**

1    of products with less than 70% organic ingredients is precisely the conduct that Plaintiffs allege is

2    prohibited by the California Organic Products Act ("COPA") and constitutes deceptive conduct

3    under California consumer protection law.  Thus, a determination of the validity of each of

4    Plaintiff's claims will thus resolve in one stroke the liability for each of the Classes.

5            Resolution of Plaintiffs' class claims will also be greatly aided by the Court's prior rulings

6    and by significant admissions made by Hain.  For instance, the Court has already ruled that,

7    assuming the Products contain less than 70% organically produced ingredients, Hain's use of the

8    Avalon Organics name and Pure, Natural & Organic tagline violate COPA.  ECF No. 104 at p.

9    17:20-22.  And Hain has admitted that all of the Avalon and Jason Products include the identical

10   alleged misrepresentations and that all such products (other than reformulated Avalon Products)

11   contain less than 70% organic ingredients.  ECF No. 167 at 1:22-2:18.  Thus, the facts are largely

12   undisputed, and many of the legal issues have already been resolved against Hain.

13           To the extent Plaintiffs are successful in proving liability, restitution and damages are also

14   calculable on a classwide basis.  To prevent Hain from profiting from its unlawful conduct,

15   California's Unfair Competition Law ("UCL") provides that Hain's profits from illegal sales of

16   the Products should be restored to the purchasers of the Products who paid the money that resulted

17   in those profits.  *See* Cal. Business & Professions Code § 17203.  The UCL and other California

18   consumer protection statutes upon which Plaintiffs base their claims also entitle purchasers of the

19   Products to a refund of the organic price premium they paid for the Products.  As set forth in the

20   accompanying Declaration of Stephen F. Hamilton, both restitutionary disgorgement and damages

21   may be proven on a classwide basis using common evidence.

22           "[T]he parent who purchasers food represented to be, but not in fact, organic, has . . . not

23   received the benefit of his or her bargain."  *Kwikset Corp.,* 51 Cal. 4th at 332.  This same

24   observation applies with equal force to the purchasers of the Products.  To ensure class members

25   have their day in Court to seek compensation for the relatively small losses caused by Hain's

26   unlawful conduct, the Court should certify the Classes.

27

28

II.       **FACTUAL BACKGROUND AND COMMON EVIDENCE.**

     A.       **Hain's False and Misleading Labeling And Marketing Of The Products As "Organic" Is Uniform Among All Products In Each Challenged Brand.**

Hain describes itself as the "leading natural and organic food and personal care product company in North America."  ECF No. 163-3 at ¶ 2.  Although Hain has purchased numerous different brands, it touts that it runs them all using a "unified marketing strategy."  Todzo Decl., ¶ 4, Exh. 3 at p. 35 of Form 10-k.  This strategy is to take advantage of certain consumers' willingness to pay more for what they perceive to be healthier products by marketing products as organic and/or natural.  *Id.*, ¶ 7, Exh. 6 at Bates No. RITE000176; *see also id.*, ¶ 8, Exh. 7 at p. 17 (quantifying the "price premium" that consumers are willing to pay for a natural/organic version of the personal care products they use).  The two brands at issue in this case, the Avalon Organics and Jason lines of personal care products, are both promoted using this scheme.

From the time of its acquisition of the Jason company and brand in 2004 (one year after COPA's effective date), Hain has promoted the Jason products as both natural and organic.  At the time of the acquisition, Hain's founder, President and CEO boasted that "'Jason Natural is a leader in the natural and organic health and body care category,'" and Hain indicated that "[i]t is the company's Organic Promise to formulate organic items that are pure, natural and formulated with 70-100% Organic ingredients."  ECF No. 164, ¶ 26; ECF No. 164-14 at p. 2.

Similarly, Hain has always marketed its Avalon Organics brand as organic.  When it acquired the Avalon Organics company and its namesake brand in late 2006, Hain represented that "Avalon offers a unique collection of quality personal care products for caring consumers seeking natural, organic and cruelty-free ingredient alternatives," and that "'The Avalon Organics and Alba Botanical brands provide us with a strong, well-rounded personal care portfolio that helps solidify our leadership position in the natural and organic personal care category.'"  ECF No. 164, ¶ 27; ECF No. 164-15.  As Hain touts on its website, "Our name, Avalon organics, is the hallmark of our active commitment to organic agriculture . . . ."  Todzo Decl., ¶¶ 5-6, Exhs. 4-5.

Hain's uniform marketing strategy extends to the labeling of the Products.  Recognizing the importance of front labels to consumers, Hain designs the front labels of each brand to have a

1    uniform look and to include the same organic claims.  *See, e.g,* Todzo Decl., ¶ 3, Exh. 2 at p.

2    69:12-24; Declaration of Thomas J. Maronick ("Maronick Decl."), ¶ 5.  Specifically, the principal

3    display panel of all Jason branded products was emblazoned with the phrase "Pure, Natural &

4    Organic" up until that representation was removed in June 2011, while Avalon Organics branded

5    Products have always been labeled as "Organics" in the very name of the products on the front

6    labels.  Todzo Decl., ¶ 3, Exh. 2 at p. 69:12-24; ECF No. 156 at 6:16-19; ECF No. 167 at 1:22-

7    2:18.  Thus, the very label representations that are challenged as unlawful and deceptive are

8    universally placed on the front of every Product label.  *Id.*

9           **B.      The Products All Contain Less Than 70% Organic Ingredients.**

10          In contrast to the prominent organic claims on the Products' principal display panels, not a

11   single Product sold during the class period contained the 70% organic content required by

12   California law.  With regard to the Jason Products, Hain concedes that all such Products contain

13   less than 70% organic ingredients.  ECF No. 164, ¶ 23.  Indeed, all of the included Jason Products

14   contained less than 50% organic ingredients.  *See* ECF Nos. 158-13 to 158-17 at HC000241-328.

15          With regard to the Avalon Organics Products, Hain admits that up until its reformulation in

16   2011, all Avalon Organics Products contained less than 70% organic ingredients.  ECF No. 164, ¶

17   23.  As with the Jason Products, all Avalon Organics Products during this period contained less

18   than 50% organic ingredients.  Todzo Decl., ¶ 9, Exh. 8.  The parties dispute whether Hain's

19   reformulation cured this failing.  While Hain contends that the reformulated Avalon Organics

20   Products all contain more than 70% organic ingredients, Plaintiffs contend that they all continue to

21   contain less than that amount.  The determination of which side is correct hinges on a single

22   determination – whether it is appropriate to include water that is added to reconstitute dehydrated

23   aloe powder as part of the percentage of organic ingredients.  This determination is the same for

24   every Avalon Organics Product – if the added water is included in the calculation of the organic

25   percentage, the Products all have more than 70% organic ingredients; but if the added water is

26   excluded, the Products all continue to have significantly less than 70% organic ingredients.  *See,*

27   *e.g.,* Todzo Decl., ¶ 10, Exh. 9; *see also id.*, ¶ 11, Exh. 10.

28

      **C.**      **Plaintiffs' Claims.**

Based on Hain's conduct described above, Plaintiffs seek certification of six claims for relief.  *See* FAC, ¶¶ 38-80.  Plaintiffs' claims fall into two groupings: those based on violations of COPA (First and Second Causes of Action) and those contending that Hain's organic representations are deceptive (Third through Sixth Causes of Action).

For their COPA and UCL unlawful claim based on violations of COPA, Plaintiffs allege that Hain violated COPA's restrictions on selling, labeling, or representing products "as organic or made with organic ingredients" unless they contain a minimum of 70% organically produced ingredients.  FAC ¶¶ 38-42; Cal. Health & Safety Code § 110838.  California Health and Safety Code § 111910(a) permits "any person" to bring an enforcement action seeking injunctive relief under COPA.  *Id.* ¶ 41.

Plaintiffs' second, third, and fourth claims, respectively, allege violations of the unlawful, fraudulent, and unfair prongs of the UCL, California Business and Professions Code § 17200, *et seq.*  FAC, ¶¶ 43-65.  The UCL claims under the unlawful prong are based on Hain's violations of (1) COPA, (2) the CLRA (discussed below), (3) California Health & Safety Code section 111730, which prohibits the sale of misbranded cosmetic products, and (4) California Business and Professions Code section 17580.5, which bars untruthful, deceptive, or misleading environmental marketing claims.  FAC, ¶¶ 43-51.  The UCL claims under the unfair and fraudulent prongs are based on Hain's unlawful and deceptive labeling and marketing of the Products as organic.  *Id.* ¶¶ 52-65.  Plaintiffs seek injunctive relief and restitution for the UCL violations.  *Id.* ¶¶ 50, 57, 64; *id.* at 23-24 (Prayer for Relief).

Plaintiffs' fifth claim is for violation of § 1770(a)(5), (7), and (9) of the CLRA, California Civil Code § 1750, *et seq.*  FAC, ¶¶ 66-74.  These CLRA provisions, among other things, bar: (i) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (iii) advertising goods or services with intent not to sell them as advertised.

1 | *See id.*, ¶ 68. The FAC seeks injunctive relief, compensatory and punitive damages, costs, and

2 | fees for the CLRA violations. *Id.*, ¶¶ 71-73. Finally, Plaintiffs allege that Hain breached express

3 | warranties it made concerning the organic content of the Products in violation of California

4 | Commercial Code § 2313.

5 | **D.    The Class Representatives.**

6 | Plaintiffs Rosminah Brown and Eric Lohela each purchased one or more of the Products in

7 | California based on Hain's uniform organic label representations. Declaration of Rosminah

8 | Brown ("Brown Decl."), ¶2; Declaration of Eric Lohela ("Lohela Decl."), ¶2. Each Product

9 | purchased by Plaintiffs contained far less than the 70% minimum organic content required by

10 | California law; in fact, each Product contained far less than 50% organic content.  Todzo Decl., ¶¶

11 | 12 & 13, Exhs. 11 & 12. Had each Plaintiff known that the products were predominately

12 | comprised of non-organic ingredients, each Plaintiff would not have paid more for the products

13 | than the cost of other non-organic cosmetic products. Brown Decl., ¶2; Lohela Decl., ¶2. Each

14 | Plaintiff has already been deposed and has agreed to vigorously litigate the class claims on behalf

15 | of, and for the benefit of the respective Classes. Brown Decl., ¶¶3-4; Lohela Decl., ¶¶3-4.

16 | **E.    The Proposed Classes.**

17 | Plaintiffs seek to represent two classes of similarly-situated individuals – the Jason Class

18 | and the Avalon Organics Class. The proposed Jason Class that Brown seeks to represent is

19 | defined as follows:

20 | > All persons who purchased a personal care product in California sold under
   | > the Jason brand name between May 12, 2007 and June 30, 2011 other than
21 | > those Jason brand personal care products that are USDA certified as
   | > organic.
22 |

23 | The proposed Avalon Organics Class that Lohela seeks to represent is defined as

24 | follows:

25 | > All persons who purchased a personal care product in California sold under
   | > the Avalon Organics brand name between May 12, 2007 and the present
26 | > other than those Avalon brand personal care products that are USDA

27 |

28 |

1          certified as organic.[2]

2     **III.     RELEVANT PROCEDURAL BACKGROUND**

3          Plaintiff Brown filed the original Complaint in Alameda County Superior Court on May

4     11, 2011 based on the conduct described above.  ECF No. 1 at p. 9.  On June 22, 2011, Defendant

5     answered the Complaint and filed a notice of removal, alleging that this Court has subject matter

6     jurisdiction pursuant to 28 U.S.C. § 1332.

7          On March 2, 2012, Defendant moved to dismiss the complaint for lack of subject matter

8     jurisdiction, arguing that the Organic Foods Production Act of 1990 ("OFPA"), 7 U.S.C. §§ 6501-

9     24, expressly preempted COPA.  ECF No. 27 at p. 10.  In supplemental briefing, Hain also argued

10    that the Court should dismiss the complaint because the USDA had primary jurisdiction over

11    Brown's claims.  On August 1, 2012, the Court denied Defendant's motion in its entirety.  ECF

12    No. 58.

13         Plaintiff Brown filed the First Amended Complaint on August 21, 2012 in order to add

14    Plaintiff Lohela as a class representative and to conform the complaint to the federal rules

15    regarding class certification.  On October 9, 2012, Defendant filed a second motion to dismiss

16    together with a motion to strike.  In its motion to strike, Hain argued that Plaintiffs lacked standing

17    to represent purchasers of products other than those specific ones they had purchased.  On

18    December 20, 2012, the Court denied Defendant's second motion to dismiss and motion to strike

19    in their entirety.  ECF No. 104.  In ruling that Plaintiffs have standing to represent purchasers of

20    products they did not buy, the Court recognized that the Products all bear the same alleged

21    misrepresentation concerning the organic nature of the products, while all allegedly containing

22    less than 70% organic ingredients, which all allegedly violate the same California law.  Thus, the

23    Court concluded that having a purchaser of one product represent the interests of purchasers of

24    _____

25         [2]   The Jason Class and Avalon Organics Class specifically exclude Defendant, the officers,
      directors, or employees of Defendant, any entity in which Defendant has a controlling interest, and
26    any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any federal,
      state, or local governmental entities, any judicial officer presiding over this action and the
27    members of his/her immediate family and judicial staff, and any juror assigned to this action.

28

1   other products is appropriate.  ECF No. 104 at p. 12:10-11.

2           Hain filed its fourth unsuccessful attempt to derail Plaintiffs' claims, its motion for

3   summary judgment ("MSJ"), on November 1, 2013.  In its MSJ, Hain argued that a California

4   Department of Public Health ("CDPH") letter dated February 19, 2013 barred Plaintiffs' claims.

5   In making its argument, Hain conceded that all of the Jason Products included the "Pure, Natural

6   & Organic" representation on the front label and that all such products (with the exception of the

7   few USDA certified ones not at issue) contained less than 70% organic ingredients.  ECF No. 167

8   at p. 1:18-2:18.  Hain further conceded that prior to the end of 2011, every Avalon Organics

9   product contained less than 70% organic ingredients and that every Avalon Organics product

10  includes the word "Organics" on the front label.  *Id.*  The Court denied Hain's MSJ on February

11  10, 2014.  ECF No. 172.

12  **IV.     STANDARD FOR CLASS CERTIFICATION UNDER RULE 23.**

13          Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  To obtain

14  class certification, Plaintiffs bear the burden of showing that they have met each of the four

15  requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *Ellis v. Costco Wholesale*

16  *Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).  A "court's class-certification analysis must be

17  'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'"

18  *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal–Mart*

19  *Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2551 (2011)).  This "rigorous" analysis applies

20  to both Rule 23(a) and Rule 23(b).  *Comcast Corp. v. Behrend*, __ U.S.__, 133 S. Ct. 1426, 1432

21  (2013).  Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

22  at the certification stage."  *Amgen*, 133 S. Ct. at 1194-95.  "If a court concludes that the moving

23  party has met its burden of proof, then the court has broad discretion to certify the class."  *In re*

24  *Hulu Priv. Litig.*, C 11-03764 LB, 2014 WL 2758598, *13 (N.D. Cal. June 17, 2014) (citing

25  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001)).

26          Rule 23(a) provides that a district court may certify a class if: "(1) the class is so

27  numerous that joinder of all members is impracticable; (2) there are questions of law or fact

28

1 common to the class; (3) the claims or defenses of the representative parties are typical of the

2 claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

3 the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of

4 numerosity, commonality, typicality, and adequacy of representation to maintain a class action.

5 *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Further, while Rule

6 23(a) is silent as to whether the class must be ascertainable, courts in this District require that the

7 class "be sufficiently definite and clearly ascertainable by reference to objective criteria so that it

8 is administratively feasible for a court to determine whether a particular person is a class member

9 and thus bound by the judgment. *Hulu*, 2014 WL 2758598, *13 (collecting cases). If all four

10 prerequisites of Rule 23(a) are satisfied, a court must also find that Plaintiffs "satisfy through

11 evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast*, 133 S. Ct. at

12 1432.

13       A class may be certified under Rule 23(b)(3) if the Court finds that "questions of law or

14 fact common to class members predominate over any questions affecting only individual

15 members, and that a class action is superior to other available methods for fairly and efficiently

16 adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs must show that the claims of

17 the class "depend upon a common contention . . . of such a nature that it is capable of classwide

18 resolution—which means that determination of its truth or falsity will resolve an issue that is

19 central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. The

20 "presence of individualized damages cannot, by itself, defeat class certification under Rule

21 23(b)(3)." *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Still, "the

22 plaintiffs must be able to show that their damages stemmed from the defendant's actions that

23 created the legal liability." *Id*.

24       A class is properly certified under Rule 23(b)(2) if the defendant "acted or refused to act on

25 grounds that apply generally to the class, so that final injunctive relief or corresponding

26 declaratory relief is appropriate respecting the class as a whole" and the class representatives are

27 seeking "final injunctive relief." Fed. R. Civ. P. 23(b)(2); *see also Dukes*, 131 S. Ct. at 2557.

28

1  Rule 23(b)(2) "injunction-only" classes are appropriate where consumer plaintiffs seek to enjoin

2  misrepresentations on consumer products insofar as an injunction prohibiting such

3  misrepresentations will benefit plaintiffs and similarly-situated class members. *See Delarosa v.*

4  *Boiron, Inc.*, 275 F.R.D. 582, 592-93 (C.D. Cal. 2011); *accord Dukes,* 131 S. Ct. at 2557-58

5       In addition, under Rule 23(c)(4), "[w]hen appropriate, an action may be brought or

6  maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).  "Even if

7  the common questions do not predominate over the individual questions so that class certification

8  of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate

9  the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular

10 issues.  *Valentino v. Carter–Wallace*, *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also Comcast*,

11 133 S. Ct. at 1437 ("a class may be certified for liability purposes only, leaving individual

12 damages calculations to subsequent proceedings."); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D.

13 492, 544 (N.D. Cal. 2012) (collecting cases).

14 **V.     CERTIFICATION OF THE PROPOSED CLASSES IS APPROPRIATE.**

15      Consumer protection cases challenging deceitful business practices are particularly well

16 suited for class certification under Rule 23.  *See, e.g., In re First Alliance Mortgage Corp.,* 471

17 F.3d 977, 991 (9th Cir. 2006); *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (1997).  Indeed,

18 "[c]lass action certifications to enforce compliance with consumer protection laws are desirable

19 and should be encouraged."  *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 600 (E.D. Cal.

20 1999) (internal quotations omitted).  Accordingly, courts in the Northern District have routinely

21 certified classes of consumers bringing substantially similar false advertising claims.  *See, e.g.,*

22 *Werdebaugh v. Blue Diamond Growers*, 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May

23 23, 2014); *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831-LHK, 2014 WL 2466559 (N.D.

24 Cal. May 30, 2014); *Zeisel v. Diamond Foods, Inc.*, C 10-01192 JSW, 2011 WL 2221113 (N.D.

25 Cal. June 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010).

26 This case is perfectly suited for class certification as it involves uniform and prominent organic

27 front label product representations that are presumed to be material and that by their very nature

28

1   entail a price premium.  Because every member of the classes has been subject to the same

2   wrongful conduct that has given rise to the same injury, the Court should certify the Classes.

3          A.      **The Criteria For Class Certification Under Rule 23(a) Are Satisfied.**

4                  1.      **The Classes Are Clearly Defined and Readily Ascertainable.**

5          Although there is no explicit ascertainability requirement in FRCP 23, courts have held

6   that the class must be adequately defined and ascertainable before a class action may proceed.  *See*

7   *Hulu*, 2014 WL 2758598, at *12.  "A class is ascertainable if the class is defined with 'objective

8   criteria' and if it is 'administratively feasible to determine whether a particular individual is a

9   member of the class.'"  *Wolph v. Acer America Corp.*, No. 09–01314, 2012 WL 993531, **1-2

10  (N.D. Cal. Mar. 23, 2012)).  Class membership need not be demonstrated by documentation;

11  rather, all that is needed is to describe a set of common characteristics sufficient to allow a

12  member of that group to identify himself or herself as having a right to recover based on the

13  description.  *Id.* at *3 (collecting cases).

14         Here, each Plaintiff seeks to represent a class of similarly-situated individuals that is

15  precise, objective and ascertainable.  The Classes are limited to California purchasers of Avalon

16  Organics and Jason products during a specified time period.  Persons who read the definitions can

17  easily determine whether they are class members as they will know whether they purchased the

18  Products during the class period.  Indeed, a class defined as consumers who purchased a product

19  bearing an allegedly deceptive label during a particular period, as here, is sufficiently

20  ascertainable.  *See, e.g., Werdebaugh*, 2014 WL 2191901, **9-10; *Chavez,* 268 F.R.D. at 377.  As

21  this Court recently observed, "[i]n cases where the dollar amounts are small, and class members

22  do not have proof of purchase of a defective product, courts (including those in this district) allow

23  proof by affidavit."  *Hulu*, 2014 WL 2758598, *15 (collecting cases).  This is precisely that type

24  of case as Class members each paid less than $20 for each Product, are unlikely to have retained

25  proof of purchase, but will be able to self-identify through affidavit.[3]

26  _____

27         [3] While here the Classes are clearly ascertainable, it is worth noting that a lack of
    ascertainability alone will not defeat certification.  *Natl. Fedn. of the Blind v. Target Corp.*, C 06-

28  (footnote continued)

1    **2.    The Classes Are Sufficiently Numerous.**

2        A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ.

3    P. 23(a)(1). "[A]s a general rule, classes of forty or more are considered sufficiently numerous."

4    *Delarosa*, 275 F.R.D. at 587 (citation omitted). Here, having sold the Products to many thousands

5    of California consumers, Defendant admits that Plaintiffs have satisfied the numerosity

6    requirement. *See* Todzo Decl., ¶ 14, Exh. 13 at Request for Admission No. 5.

7    **3.    The Classes Meet the Commonality Requirement.**

8        To establish commonality under Rule 23(a)(2), Plaintiffs' "claims must depend upon a

9    common contention [and] [t]hat common contention . . . must be of such a nature that it is capable

10   of classwide resolution—which means that determination of its truth or falsity will resolve an

11   issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at

12   2551. Rule 23(a)(2)'s commonality requirement is "less rigorous than the companion

13   requirements" of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

14   The Ninth Circuit has further clarified that Rule 23(a)(2) requires "a single significant question of

15   law or fact." *Stockwell v. San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Abdullah

16   v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). Here, every member of each class

17   was exposed to the same allegedly unlawful and deceptive organic claim giving rise to the same

18   common issues.

19       Plaintiffs' COPA claim and their UCL unlawful claim predicated on COPA involve two

20   common questions applicable to every member of each of the Classes: (1) did Defendant's use of

21   the words "Organics" and "Pure, Natural and Organic" constitute selling, labeling or representing

22   the Products as organic or made with organic ingredients?; and (2) did the Products contain at

23   least 70 percent organic content? *See* Health & Safety Code § 110838(a). Both of these questions

24   involve the application of two provisions of a single statute (Sections 110838 and 110839 of

25   COPA) to a common set of facts. Given the prior proceedings addressing each of these issues on a

26   _____

27   01802 MHP, 2007 WL 1223755 (N.D. Cal. April 25, 2007).

28

**MOTION FOR CLASS CERTIFICATION**

1    classwide basis, there is no real debate that they are common questions under Rule 23(a).

2          Indeed, the Court has made a classwide determination regarding the first question by

3    finding that Defendant sold the Products as organic under COPA by use of the Avalon Organics

4    brand name on the Avalon Products and the "Pure, Natural, and Organic" tagline on the Jason

5    Products.  ECF No. 104, 17:20-22.  These organic claims appear on each of the labels of the

6    Products sold in California during the class period.  ECF No. 164, ¶ 23.  Further, at the hearing on

7    Hain's Motion for Summary Judgment, the Court and even Hain's counsel recognized that the

8    representations at issue are common across different Products.  Specifically, the Court stated that

9    "the misrepresentations across the product lines are identical . . . and those common

10   misrepresentations are the crux of Plaintiffs' case."  ECF No. 104 at p. 12:10-11.  Similarly,

11   Hain's counsel admitted as to the Products, if you "had [seen] just one label, [you] may as well

12   have [seen] all of them . . . they were all the same."  Todzo Decl., ¶ 2, Exh. 1 at pp. 104:25-105:3.

13         Moreover, Defendant's concession that virtually all of the Products sold before 2011

14   contain less than 70% organic ingredients eliminates any need for individual inquiries concerning

15   the second question.  ECF No. 164, ¶ 23.  Rather, the only remaining issue to be determined with

16   regard to Plaintiffs' COPA and UCL unlawful claim based on COPA concerns the organic content

17   of Avalon Organics Products subsequent to Defendant's attempted reformulation.  This

18   determination presents an additional common question: whether the water added to rehydrate

19   dehydrated aloe powder may be included in the percentage of organic ingredients.

20         Plaintiffs' remaining claims under the UCL, CLRA and California express warranty law

21   can be proven by the following common determinations: (1) whether the organic statements on the

22   Product labels are representations that the Products are organic; (2) whether the organic

23   representations are material; (3) whether the Products are comprised predominantly of organic

24   ingredients; (4) whether ordinary consumers are likely to be deceived by Defendant's organic

25   representations; and (5) the legal significance of the Legislature's determination that cosmetic

26   products should not be sold, labeled or represented as organic unless they contain at least 70%

27   organically produced ingredients.  These are the same types of common questions found to satisfy

28

**MOTION FOR CLASS CERTIFICATION**

1   Rule 23(a) in numerous cases.  *See, e.g., Johnson v. General Mills*, 275 F.R.D. 282, 286-287 (C.D.

2   Cal. 2011); *Brazil*, 2014 WL 2466559, **7-9; *Zeisel*, 2011 WL 2221113, *7 (commonality met

3   where "class was exposed to the same misleading and misbranded labels"); *Chavez*, 268 F.R.D. at

4   377 (commonality met where common issue was "whether the [product] packaging and marketing

5   materials are unlawful, unfair, deceptive or misleading to a reasonable consumer"); *Delarosa*, 275

6   F.R.D. at 588-589 (commonality met where "Plaintiff alleges a single misrepresentation [on a

7   product's packaging] that was made identically to all potential class members").  Given that each

8   Plaintiff challenges a single product line sold during the class period which contained identical

9   misrepresentations on their labels, the answer to these common questions will resolve "in one

10  stroke" issues that are "central to the validity" of each class members' claims.  *See Dukes*, 131

11  S.Ct. at 2545.

12          **4.      Plaintiffs' Claims Are Typical Of The Classes' Claims.**

13          The typicality requirement is a permissive standard.  *Parsons v. Ryan*, __F.3d__, 2014 WL

14  2523682, *18 (9th Cir. 2014); *Hanlon*, 150 F.3d at 1019.  Plaintiffs' claims are typical "if they are

15  reasonably co-extensive with those of absent class members; they need not be substantially

16  identical."  *Hanlon,* 150 F.3d at 1020.  In other words, typicality is established where the Plaintiffs

17  and the absent class members were injured through an alleged common practice.  *Id.*; *California*

18  *Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990).  Here,

19  Plaintiffs easily satisfy typicality as their claims are more than "reasonably co-extensive" with

20  those of absent class members.

21          As with every member of the Avalon Class, Lohela purchased an Avalon Organics Product

22  with "Organics" emblazoned on the front of the Product label.  Also as with every member of the

23  Avalon Organics Class, the Avalon Organics Product purchased by Lohela contained less than

24  70% organic ingredients.  Further, as with every member of the Avalon Organics Class, Lohela

25  paid more for the Avalon Organics Product by virtue of the organic representation on the Product

26  label.  *See, e.g.,* Hamilton Decl., ¶¶ 8, 27.  Likewise, as with every member of the Jason Class,

27  Brown purchased a Jason Product with "Pure, Natural & Organic" prominently placed on the front

28

**MOTION FOR CLASS CERTIFICATION**

1    of the Product label.  Also like all other members of the Jason Class, the Jason Product purchased

2    by Brown contained significantly less than 70% organic ingredients.  Moreover, as with every

3    other member of the Jason Class, Brown paid more for the Jason Product as a result of the organic

4    representation on the Product label.  *Id.*

5         Given the common labels, alleged misrepresentations and injuries discussed above, the fact

6    that Lohela and Brown purchased some, but not all of the Products at issue in the classes has no

7    bearing on their typicality.  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (same)

8    (citing *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012)); *Chavez*, 268 F.R.D. at 378

9    (typicality met where defendant made "substantially the same misrepresentation" on several

10   different beverage products, even though Plaintiffs "did not purchase each type of [Product]

11   carrying the misleading label.").  In sum, the ultimate success of Plaintiffs' claims will depend on

12   proving an identical set of facts based on the same law as every other class member.  Typicality is

13   therefore satisfied.  *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491-92 (N.D. Cal. 2011);

14   *Zeisel*, 2011 WL 2221113, *8 (typicality met where plaintiff's claims relating to allegedly false

15   health-related statements on product labels were "reasonably co-extensive with those of absent

16   class members," notwithstanding particularities of class representative's "specific medical

17   condition").

18        **5.    The Class Representatives And Their Counsel Adequately Represent
                  The Proposed Classes.**

19

20        The representative parties must "fairly and adequately protect and represent the interest of

21   each member of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry serves to uncover

22   conflicts of interest between named parties and the classes they seek to represent.  *Amchem*, 117

23   S.Ct. at 2250.  The adequacy of representation requirement is satisfied if:  (1) the proposed

24   representative plaintiffs do not have conflicts with the proposed class; and (2) the plaintiff is

25   represented by qualified and competent counsel.  *See Dukes*, 509 F.3d at 1185.  Adequate

26   representation is usually presumed in the absence of contrary evidence.  *Californians for

27   Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

28

**MOTION FOR CLASS CERTIFICATION**

### a.  The Class Representatives Do Not Have Any Conflicts With Other Class Members.

There is no conflict between Plaintiffs and the members of the classes.  Lohela Decl., ¶¶ 2-3; Brown Decl., ¶¶ 2-3.  Because Plaintiffs and the members of the classes have been injured in the same manner and seek relief for the same claims, their interests are coextensive.  *See O'Donovan*, 278 F.R.D. at 492 (class representative fairly and adequately represents class where "their claims are reflective of those of the putative class members' and the relief they seek is identical to that sought for the Classes.").

Further, Plaintiffs Brown and Lohela both possess the requisite knowledge of the basis for the claims in this action and their responsibilities as lead plaintiffs.  Lohela Decl., ¶ 4; Brown Decl., ¶ 4; *see Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 267 (N.D. Cal. 2011).

### b.  Plaintiffs' Counsel Are Qualified.

Plaintiffs' counsel are well qualified and experienced in certifying, litigating, settling, and administering class actions.  *See* Todzo Decl., ¶ 15, Exh. 14.  Plaintiffs' counsel are committed to the vigorous prosecution of this action.  *Ibid.*  To date, Plaintiffs' counsel have demonstrated an understanding of the issues in this case and competence to conduct this litigation.  Further, in addition to counsels' experience, the Lexington Law Group possesses the resources to efficiently prosecute this class action lawsuit to its final conclusion.  *Id.*  Thus, Plaintiffs and their counsel readily satisfy the adequacy requirement of Rule 23(a)(4).

### B.  The Requirements Of Rule 23(b)(3) Are Satisfied.

In addition to the prerequisites set forth in Rule 23(a), a class must also meet the requirements of at least one of the types of classes set forth in Rule 23(b).  Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.  Common Issues of Law and Fact Predominate.

The predominance requirement is met "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."

**MOTION FOR CLASS CERTIFICATION**

1    *Hanlon*, 150 F.3d at 1022.  The predominance requirement does not demand that the common

2    issues be identical so long as there is an essential common factual link between all class members

3    and the defendant for which the law provides a remedy.  *In re Wells Fargo Home Mortg. Overtime*

4    *Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007) (citing *Local Joint Executive Bd. of*

5    *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001)).

6    The predominance inquiry is essentially a balancing test between common and individual issues:

7    "The predominance analysis is a pragmatic one: it is not a numerical analysis and instead is a

8    qualitative assessment of overriding issues in the case, despite the existence of individual

9    questions."  *Ellsworth v. U.S. Bank, N.A.*, C 12-02506 LB, 2014 WL 2734953, *19 (N.D. Cal.

10   June 13, 2014).  Questions that are common to the class predominate over individual questions

11   where a plaintiff alleges a common course of conduct of misrepresentations that affected all the

12   class members in a similar manner.  *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir.

13   1975).

14          Here, common issues clearly predominate over individual ones.  Each member of the

15   classes purchased the Products and was therefore subject to the same deceptive marketing and

16   advertising on Product labels.  ECF No. 167 at p. 1:18-2:18.  However, as Hain has admitted, the

17   Products contain less than 70% organic ingredients.  *Id.*  Thus, each member of the classes paid

18   for Products falsely advertised as organic.  Further, because Hain unlawfully profited from sales of

19   the Products, and because the Products were sold as organic by Hain at a measurable premium,

20   each member of the class suffered the same financial injury.

21          Further supporting class treatment of Plaintiffs' claims are Hain's defenses, which are also

22   amenable to classwide resolution.  To date, Hain's principal defenses have been preemption,

23   primary jurisdiction and its contention that the California Department of Public Health ("CDPH")

24   determined that it did not violate COPA.  As has been demonstrated by the Court's ability to reject

25   each of these defenses without any inquiries as to individual class member's claims, each of these

26   defenses is common to all members of the Classes and no individual issues apply.

27          Hain will likely argue that differences in Product sizes, shapes and functions create

28

**MOTION FOR CLASS CERTIFICATION**

1   predominant individual issues.  However, this case does not involve the size, shape or function of

2   the Products.  Rather, it concerns the organic representations on the Products, and those are

3   identical for all Products.

a.      **Common Questions Predominate Regarding Plaintiffs' COPA**
4       **Claim And Plaintiffs' UCL Claim Predicated On COPA.**

5           As set forth in the commonality section above (Section V.A.3.), Plaintiffs' COPA claim

6   and UCL unlawful claim that is predicated on COPA boil down to two simple questions which are

7   capable of a classwide determination: (1) did Defendant sell, label or represent the Products as

8   organic?; and (2) were the Products comprised of at least 70% organically produced ingredients?

9   Both of these questions can and should be answered on a common, classwide basis.  Given that the

10  representations on the Products are identical, and that it is undisputed that the Products all contain

11  less than 70% organic ingredients, Product differences do not impact resolution of either of these

12  questions.

b.      **Common Questions Predominate Regarding Plaintiffs' UCL,**
13      **CLRA and Breach of Warranty Claims.**
14

15          While pled under various legal theories, Plaintiffs' remaining claims under the UCL, the

16  CLRA, and for breach of express warranty boil down to a single question that is susceptible to

17  common proof: are Hain's organic claims likely to mislead ordinary consumers?  Because the

18  representations are uniform and appear on the front labels of the Products themselves, and because

19  the organic content of the Products can be objectively ascertained by common proof, this case is

20  ideally suited for class treatment.

21          As set forth in Section V.A.3. above, there are at least five significant questions that are

22  common to all members of the Classes that are each capable of classwide resolution.  All of these

23  questions are subject to common proof, and they are the same types of predominating common

24  questions that have resulted in certification of numerous false advertising classes in this Circuit

25  and District.  *See, e.g., Werdebaugh*, 2014 WL 2191901; *Brazil,* 2014 WL 2466559; *Zeisel*, 2011

26  WL 2221113; *Chavez*, 268 F.R.D. at 377.

27          While class actions challenging false advertising of consumer products are routinely

28

**MOTION FOR CLASS CERTIFICATION**

certified in this district and elsewhere, to the extent class certification is denied in such cases those

decisions are based on factors that are not present here.  For instance, while courts sometimes deny

class certifications based on variations in the representations at issue, here it is undisputed that the

organic representations were uniform within each Product line.  And while class certification is

sometimes denied on the basis that some class members may not have even viewed the advertising

at issue, this case addresses representations that were prominently displayed on the front label of

the Products themselves.  Maronick Decl., ¶ 5, 9.  Thus, there can be no legitimate question that

each member of the Classes viewed those organic representations.

Finally, while courts sometimes deny class certification based on the need for individual

inquiries as to whether each class member relied upon the representations at issue, reliance is not

an element of Plaintiffs' UCL[4] and warranty claims,[5] and reliance may be presumed on a

classwide basis for Plaintiffs' CLRA claim so long as Plaintiffs can prove that the representations

are material.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *In re*

---

[4]   Whether allegations fall under the "unlawful," "unfair" or "fraudulent" prong, courts have repeatedly certified UCL class claims "without individualized proof of injury or causation."  *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 154 (Cal. App. 2nd Dist. 2010).  To succeed in their claim under the "fraudulent" prong of the UCL, Plaintiffs "need only show that 'members of the public are likely to be deceived'" by Hain's labels.  *See In re Tobacco II Cases,* 46 Cal.4th at 312; *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507-08 (Cal. App. 1st Dist. 2003); *Bank of the West v. Sup. Ct.,* 2 Cal.4th 1254, 1266-67 (Cal. 1992).  Whether absent class members are "likely to be deceived" is determined by the effect the advertisement would have on an objectively "the reasonable consumer." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Lavie,* 105 Cal.App.4th at 506-07.  Thus, unlike common law fraud, Plaintiffs need not prove that every class member "was actually deceived, relied upon the fraudulent practice, or sustained any damage." *Heighley v. J.C Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (Cal. App. 1st Dist. 2000).  Where, as here, the conduct alleged to be deceptive is deemed unlawful pursuant to a different law, a presumption of deceptiveness arises. *See Kwikset,* 51 Cal. 4th at 329.

[5]   As with Plaintiffs' UCL and CLRA claims, Plaintiffs can prove their breach of express warranty claim by showing that Hain's organic representations on the labels were false, and that such false representations resulted in class members paying more for the Products.  This showing does not require that Plaintiffs and the class members relied on the individual advertisements – it only requires that Plaintiffs and the classes actually were exposed to the advertising. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.,* 754 F.Supp.2d 1145, 1183 (C.D. Cal. 2010).

---

**MOTION FOR CLASS CERTIFICATION**

1   *Tobacco II Cases*, 46 Cal.4th 298, 328 (Cal. 2009)).  Critically, materiality, judged by an

2   objective, 'reasonable man' standard, is subject to common proof.  *In re Apple, AT & T iPad*

3   *Unlimited Data Plan Litig.*, No. C-10-2553 RMW, 2012 WL 248248, *5 (N.D. Cal. June 26,

4   2012) (citing *United States v. Watkins*, 278 F.3d 961, 967-68 (9th Cir. 2002); *see also Bruno v.*

5   *Quten Research Institute, LLC,* 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Courts in California

6   routinely find that [the materiality] inquiry focuses on the Defendants' representations about the

7   product and applies a single, objective 'reasonable consumer' standard—not, as Defendants urge,

8   a subjective test that inquiries into each class members' experience with the product.").

9         Thus, Plaintiffs will be able to prevail on their UCL, CLRA and breach of express

10  warranty by simple reference to the Product labels and formulations.  Plaintiffs will further show

11  that they reasonably relied on Defendant's representations that the Products' were "organic" via

12  expert testimony and/or consumer surveys demonstrating that reasonable consumers would have

13  believed, as Plaintiffs did, that a product prominently labeled as "organic" was mostly comprised

14  of organic ingredients.  Maronick Decl., ¶¶ 5-18.  Furthermore, the California Legislature – by

15  requiring that cosmetics marketed as organic contain a minimum of 70% organic ingredients – has

16  effectively determined that Defendant's representations are deceptive and likely to induce reliance.

17  *Cf. Kwikset*, 51 Cal.4th 310, 329.   Thus, similar to *Kwikset*, "[t]he Legislature has recognized the

18  materiality of this representation by specifically outlawing deceptive and fraudulent [organic]

19  representations."  *Id.*  Accordingly, the Court will not be required to make any individual

20  determinations as to reliance or as to the materiality of Hain's misrepresentations.  *See True v.*

21  *American Honda Motor Co., Inc.*, 520 F.Supp.2d 1175, 1182 (C.D. Cal. 2007).

22        **c.**    **Plaintiffs Have Established That Damages Are Capable of**
          **Measurement on a Classwide Basis.**

23

24        At class certification, Plaintiffs must "establish[] that damages are capable of measurement

    on a classwide basis."  *Comcast*, 133 S. Ct. 1426, 1433 (2013).  Plaintiffs' method for calculating
25
    damages on a classwide basis must be consistent with their theory of liability by "measur[ing]
26
    only those damages attributable to that theory."  *Id.*  Nevertheless, "[c]alculations need not be
27
    exact," *id.*, and the fact that individualized damage calculations may be necessary cannot alone
28

**MOTION FOR CLASS CERTIFICATION**

1  defeat class certification. *Leyva*, 716 F.3d at 513. Here, there are a number of different

2  methodologies that can measure the restitution and damages due to the Classes as a result of

3  Hain's unlawful and deceptive conduct using common evidence.

4        In this action, Plaintiffs are entitled to restitution as a result of Defendant's UCL and

5  CLRA violations. *See Werdebaugh*, 2014 WL 2191901, *22 (citing *Colgan v. Leatherman Tool*

6  *Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006)). Restitution may be measured either as the price

7  difference between products containing the advertised attributes and those without such attributes,

8  or as restitutionary disgorgement of profits. *Johns v. Bayer Corp.*, 2012 WL 1520030, *4 (S.D.

9  Cal. April 30, 2012).[6] Although damages are not an available remedy under the UCL, damages

10  are available here pursuant to Plaintiffs' CLRA and breach of express warranty claims. *See, e.g.,*

11  Cal. Civil Code §1780(a)(1). As with restitution, damages here are easily measurable as the price

12  differential between cosmetic products represented as organic and those that are not.

13        Restitution and/or damages under both the restitutionary disgorgement and overcharge

14  methodologies can be calculated using common evidence on a classwide basis. Hamilton Decl., ¶

15  28. Under the restitutionary disgorgement method, the financial gains Defendant has reaped from

16  members of the classes as a result of its unlawful and deceptive sales of Jason and Avalon

17  Products are returned to class members. These gains may be measured either as the gross profits

18  Defendant has earned from its unlawful sales of the Products or its operating profits therefrom.

19  *Id.*, ¶¶ 33-40. Either way, the information required to measure such relief can be obtained from

20  Defendant's financial statements. *Id.*, ¶ 34.[7]

21  _____

22    [6] One of the underlying policies of the UCL – prohibiting a defendant from retaining its ill-
gotten gains – applies in full force here. Defendant should not be allowed to retain profits derived

23  from the sale of Products which were falsely and misleadingly labeled as organic in violation of
COPA.

24

25    [7] This methodology yields restitutionary disgorgement totals that are limited to profits earned
by Defendant on its unlawful sales of Jason and Avalon Organics products and thus tied to the

26  specific claims in the litigation. This restitutionary disgorgement of profits accounts for the idea
that even though Plaintiffs and the Classes did not get the organic cosmetic product they bargained

27  for, they did get a cosmetic product. As such, the disgorgement of profits methodology avoids the
problems identified by certain courts with the disgorgement of revenue model. *See, e.g., Brazil,*

28  (footnote continued)

1    Likewise, the overcharge or "organic premium" methodology measures restitution and/or

2    damages on a classwide basis using common evidence.  Hamilton Decl., ¶41-57.  There are three

3    approaches to measuring the amount that Defendant overcharged consumers due to its false

4    organic claims – two that measure the difference in prices between products sold as organic and

5    those that are not and one that measures the additional price consumers are willing to pay for

6    organic products.  *Id.*  The first two approaches utilize Nielsen data which show sales of cosmetic

7    products represented as price per ounce.  *Id.*, ¶¶ 44-55.  The ordinary least square ("OLS")

8    approach uses a regression analysis to calculate the price premium for organic personal care

9    products by comparing the prices of organic and non-organic cosmetic products while controlling

10   for other variables such as brand.  *Id.*, ¶¶ 44-47.  The difference-in-difference approach takes

11   advantage of the fact that the organic claims have been removed from the labels of a number of

12   brands of personal care products (including Jason) over the past few years.  *Id.*, ¶¶ 51-56.  The

13   sales volume and/or price differences occurring after the label changes can be used to calculate the

14   organic premium.  *Id.*, ¶¶ 51-52.  The third method uses survey data to determine the applicable

15   premium for organic personal care products.  *Id.*, ¶ 48-50.  Under each method, the price premium

16   is then applied to California sales of the Products in order to arrive at the amount that the class was

17   overcharged.  *Id.*, ¶57.  These methods have been used to calculate price premiums for a variety of

18   different organic products.  *Id.*, ¶¶18-21.

19       Thus, the injuries common to the Classes, which result from common misrepresentations

20   may be calculated using common evidence.  As such, the classes are appropriate for certification.

21   While Plaintiffs acknowledge that there will be some differentiation of damages and/or restitution

22   among class members based on the number of products purchased, any such differences are not

23   relevant during the liability or even damages phases of trial.  Rather, any such differences will be

24   _____

25   2014 WL 2466559, *15 ("full refund model is deficient because it is based on the assumption that
     consumers receive no benefit whatsoever from purchasing the identified products. "This cannot be
26   the case, as consumers received benefits in the form of calories, nutrition, vitamins, and
     minerals.")

27

28

1 addressed during the claims period following entry of judgment for the entire amount of the

2 classwide restitutionary disgorgement or overcharge proven during trial.[8]

3         **2.     Superior Method.**

4       The second requirement for class certification pursuant to Rule 23(b)(3) is that the class

5 action is superior to other methods of adjudication.  In determining whether a class action is the

6 superior method, courts must consider the four non-exclusive factors enumerated in Rule 23(b)(3):

7 (i) the class members' interests in individually controlling the prosecution or defense of separate

8 actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or

9 against class members; (iii) the desirability or undesirability of concentrating the litigation of the

10 claims in the particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R.

11 Civ. P. 23(b)(3); *see also Zinser,* 253 F.3d at 1190.

12       The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification here.

13 Because liability in this action will turn on whether Hain's uniform organic labeling on the

14 Products was unlawful and misleading, judicial efficiency weighs in favor of a class action.  *See*

15 *Hanlon,* 150 F.3d at 1023.  Likewise, it is not economically feasible for the many thousands of

16 class members to pursue their claims against Hain on an individual basis given that the Products

17 are relatively inexpensive compared to the enormous expense associated with litigating the

18 question of whether Hain's business practices were unlawful.  *See Hanlon,* 150 F.3d at 1023; *see*

19 *also Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009) ("there is no realistic

20 alternative to a class action in this case, making a class action understandably the superior method

21 of adjudication.").  Here, there simply is no other practical method of adjudicating these claims.

22 Absent the class action vehicle, Hain will be allowed to retain substantial sums of ill-gotten

23 financial gains -- gains that were unlawfully and deceptively obtained from thousands of

24      _____

25     [8]   Plaintiffs' claim for punitive damages under the CLRA is also subject to common proof.

26 This claim is based on Defendant's flouting of California law through its blatant, intentional and calculated use of the organic misrepresentations to dupe consumers, and will be proven through

27 common evidence such as internal company marketing studies and presentations.

28

**MOTION FOR CLASS CERTIFICATION**

1   individual purchasers.  To allow Hain to profit from its illegal acts would fly in the face of the

2   UCL and other consumer protection statutes at issue here that were passed by the California

3   Legislature for the protection of consumers such as Plaintiffs and the Classes.

4              With respect to the second and third factors, Plaintiffs are not aware of any

5   individual litigation concerning the claims alleged in this case on behalf of the proposed classes.

6   Finally, there are no manageability issues.  Each of Plaintiffs' claims can be proven through

7   common proof, namely through Hain's own business records and witness testimony.  There is no

8   reason to believe that the prosecution of the claims of the proposed classes in a single class action

9   will create more management problems than the alternative (*i.e.*, the prosecution of hundreds or

10  thousands of separate lawsuits by each class member).  Given the number and importance of the

11  predominating common questions described above, the adjudication of class claims would be

12  significantly less burdensome than if the matter were prosecuted individually.  *See Menagerie*

13  *Prods. v. Citysearch*, CV 08-4263 CAS(FMO), 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9,

14  2009) (citing *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 494 (C.D. Cal.

15  2006) ("The individuation of damages in consumer class actions is rarely determinative under

16  Rule 23(b)(3).")).  To the extent necessary, any individual proceedings as to damage allocations

17  for individual class members can be easily handled in a claims administration proceeding

18  following a determination of liability and classwide damages.  In sum, Class treatment of

19  Plaintiffs' claims here is simply the most efficient and just way to proceed.

20  **VI.    CONCLUSION**

21         "Organic" is an important attribute of consumer products – one for which consumers are

22  willing to pay a significant premium.  However, whether or not a product is organic may not be

23  determined based its look, smell, feel or performance.  Rather, consumers must rely entirely on the

24  representations of the product seller.  Here, Hain has abused the trust of the Classes by

25  misrepresenting the Products as organic, thereby commanding a significant organic premium for

26  such Products.  The Court should certify the proposed classes to allow them to recover the money

27  due to them, while preventing Hain from continuing to violate California and from profiting by its

28

**MOTION FOR CLASS CERTIFICATION**

1   illegal and unconscionable conduct.  For all the reasons set forth herein, Plaintiffs respectfully

2   request that the Court grant this motion.[9]

3

4   DATED: July 15, 2014                                    Respectfully submitted,

5                                                           LEXINGTON LAW GROUP

6

7                                                           By:   /s/ Mark N. Todzo
                                                                  Mark N. Todzo
8                                                                 Attorneys for Plaintiffs
                                                                  ROSMINAH BROWN and ERIC LOHELA, on
9                                                                 Behalf of Themselves and All Others Similarly
                                                                  Situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25   [9] While Plaintiffs believe class certification is proper under Rule 23(b)(3), they alternatively
     request that the Court certify each Class pursuant to Rule 23(b)(2) or certify a liability class
26   pursuant to Rule 23(c)(4).  The arguments supporting certification under Rule 23(b)(3) herein
     support certification under Rule 23(b)(2) and 23(c)(4) should the Court determine that certification
27   under Rule 23(b)(3) is not proper.

28

**MOTION FOR CLASS CERTIFICATION**