UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES  DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated, | No. C 11-03082 LB |
| Plaintiffs, | ORDER CERTIFYING RULE 23(b)(3) CLASS, DENYING PLAINTIFFS' MOTION TO STRIKE AS MOOT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE AS PREMATURE, AND DENYING DEFENDANT'S MOTIONS TO STRIKE |
| v. | |
| THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation, | |
| Defendant. | [ECF Nos. 242, 223, 244, 251, and 252] |

## INTRODUCTION

In this putative class action, plaintiffs Rosminah Brown and Eric Lohela bought several different Avalon Organics and Jason cosmetic products that are manufactured and marketed by Defendant The Hain Celestial Group and then – on behalf of themselves and other consumers – sued Hain complaining that Hain advertised, marketed, sold, and labeled these and other products as organic when they were not, in violation of the following state laws: (1) the California Organic Products Act of 2003 ("COPA"), Cal. Health & Safety Code § 110810, *et seq.*; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and the California Commercial Code provision regarding express warranties, Cal. Com. Code § 2313.  The plaintiffs move for class certification under Federal Rule of Civil Procedure 23(b)(3) or, alternatively, 23(b)(2).  The court grants the plaintiffs'

1    motion to certify two Rule 23(b)(3) classes, one for each product line.

2                            **STATEMENT**[1]

3   **I. THE PARTIES**

4      Hain is a Delaware corporation that manufactures and distributes cosmetic products (also

5   referred to as personal-care products) under the Jason and Avalon Organics brands. *See* First Am.

6   Compl. ("FAC"), ECF No. 68, ¶¶ 1, 7, 13.[2] Before 2011, with very few exceptions, Hain's Avalon

7   Organics and Jason cosmetic products contained less than 70% organically produced ingredients.

8   JSUF # 23, ECF No. 164.[3] In 2011, Hain changed the formulations and labels of substantially all of

9

10       [1] The facts are from the First Amended Complaint, ECF No. 68, the Joint Statements of
  Undisputed Facts filed in connection with previous motions, ECF Nos. 159, 164, and evidence

11   submitted in connection with the pending motions that the parties did not dispute.

12       [2] Citations to the record are to the electronic case file ("ECF") with pin cites to the ECF-

13   generated page numbers at the top of the document.

14       [3] JSUF # 25 and 24 say the following. Before 2011, the following Avalon Organics

15   Products contained less than 70% organic ingredients excluding water and salt and included the
  phrase "organic [ingredient name]" or "with organic [ingredient name]" on the Principal Display

16   Panel:

17         i. Avalon Organics Deodorant Spray, Grapefruit & Geranium with Organic Essential Oil;
        ii. Baby Avalon Organics Natural Mineral Sunscreen SPF 18;

18         iii. Avalon Organics Shampoo, Nourishing Lavender.

19   The following Jason products included the phrase "Pure, Natural & Organic" on the Principal
  Display Panel of the label, but contained no organically certified ingredients:

20

21         i. Jason Kiwi & Apricot Volumizing Root Boost;
        ii. Jason Aloe Vera & Bergamot Finishing Spray;

22         iii. Jason Mint & Rose Intense Moisture Treatment;
        iv. Jason Kiwi & Apricot Volumizing Mousse;

23         v. Jason Plumeria & Sea Kelp Leave In Conditioning Spray;
        vi. Jason Shea Nut Butter;

24         vii. Jason Ester-C Hydrating Mask;

25         viii. Jason Color Treated Conditioner, Jojoba & Lemongrass;
        ix. Jason Plumeria & Sea Kelp Moisturizing Shampoo;

26         x. Jason Plumeria & Sea Kelp Moisturizing Conditioner;
        xi. Jason Apricot & Kiwi Volumizing Shampoo;

27         xii. Jason Red Elements Calming Facial Toner;

28         xiii. Jason Strengthening Shampoo, Peppermint & Biotin.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   its Avalon Organics-brand products.  Hain also changed the labels for substantially all of its Jason-

2   brand cosmetic products (other than those that had been discontinued).  JSUF #18, 20.

3       On or about September 2009, Plaintiff Rosminah Brown purchased a Jason Ester-C Super-C

4   Cleanser Gentle Facial Wash at a Whole Foods Market in Roseville, California.  (ECF No. 163-1.)

5   The front label of the Jason Face Wash, which Brown reviewed before purchase, stated "Pure,

6   Natural & Organic."  (*Id.*)  When she bought it, Brown believed that the Jason Face Wash was either

7   completely or at least mostly made of certified organic ingredients.  (*Id.*)

8       On or about December 2009, Plaintiff Eric Lohela purchased a number of Avalon Organics

9   products.  (ECF No. 163-2, ¶ 2.)  He purchased an Avalon Organics Lavender Hand and Body

10  Lotion from Vitacost.com, an online retailer.  (*Id.* ¶ 6.)  Before buying the Avalon Lavender Lotion,

11  Lohela read the name of the product and reviewed a photograph of the product packaging.  (*Id.*)  The

12  front label and the product name displayed the word "Organics," and the front label included a

13  pledge by Hain that the product was "Pro-Organic."  (*Id.*)  Around the same time, Lohela purchased

14  other Avalon Organics Products, relying on the same representations identified with regard to the

15  Avalon Lavender Lotion.  (*Id.*)  In total, Lohela purchased seven Avalon Organics Products: (1) the

16  Avalon Lavender Lotion; (2) Avalon Organics Glycerin Liquid Hand Soap Lemon; (3) Avalon

17  Organics Vitamin C Soothing Lip Balm; (4) Avalon Organics Vitamin C Refreshing Facial

18  Cleanser; (5) Avalon Organics Botanicals Exfoliating Enzyme Scrub Lavender; (6) Avalon Organics

19  Peppermint Botanicals Shampoo; and (7) Avalon Organics Awapuhi Mango Moisturizing

20  Conditioner.  (*Id.*)  Lohela believed that the statements on the front of the Avalon Organics labels

21  were true – that the products either completely or at least mostly comprised organic ingredients.

22  (*Id.*)

23      Brown and Lohela both are willing to pay more for cosmetic products that are made wholly or

24  predominately of organic ingredients than for similar products that contain few or no organic

25  ingredients.  (Brown Decl. ¶ 3; Lohela Decl. ¶ 3.)

26  **II. THE ALLEGED MISREPRESENTATIONS**

27      The plaintiffs allege that Hain advertises, markets, and labels the challenged products as organic,

28  when they contain insufficient organic content to lawfully make such claims.  The plaintiffs allege

UNITED STATES DISTRICT COURT
For the Northern District of California

that federal law requires "any foods marketed, advertised, labeled, sold and/or represented as organic or made with organic ingredients must be [composed] of at least 70% organic ingredients." FAC ¶ 12 (citing 7 U.S.C. § 6505; 7 C.F.R. § 205.301). The plaintiffs allow that these rules do not apply to the products in question here, which are considered cosmetic products, rather than foods, but insist that the federal definition has "helped to shape consumer expectations" for organic products. *Id.* The plaintiffs allege that California law does apply to the products. *Id.* Perhaps most centrally, COPA requires that cosmetic products advertised, marketed, sold, labeled, or represented as organic in California be made of at least 70% organic ingredients. *Id.* Plaintiffs claim that COPA is a "legislative determination" that it is deceptive to represent as organic cosmetic products that have insufficient organic content. *Id.*

The plaintiffs allege that the Jason Products are labeled with the tagline "Pure, Natural & Organic," and that the Avalon Organics Products include a "pro-organic" pledge on their front label and have the word "Organics" in their name. *Id.* ¶ 14. In contrast to these prominent organic claims, the back label of each Product includes an ingredient list in small print that identifies the organically produced ingredients with an asterisk. *Id.* ¶ 15. The ingredient list reveals that the organic ingredients constitute less than 70% of the products, whether measured by weight or volume. *Id.*

For example, the Jason Face Wash ingredients list shows that only 1 of the 19 ingredients is certified organic and it is listed ninth. *Id.* ¶¶ 16, 20. Because Hain is legally required to list the ingredients in descending order of prominence, the sole organic ingredient cannot possibly make up 70% of the product. *Id.* n.1. Similarly, only 5 of the 22 ingredients (excluding water and salt) in the Avalon Lavender Lotion are organic; these rank 4th, 10th, 13th, 14th, and 19th on the ingredient list. *Id.* ¶¶ 17, 21.

The plaintiffs allege that the ingredient lists on Jason and Avalon Organics products that they did not purchase also contradict the organic claims made on the front panel. *Id.* ¶ 22. Some of these products are: Baby Avalon Organics Silky Cornstarch Baby Powder; Jason Aloe Vera Soothing Body Scrub; Jason Thin to Thick Extra Volume Conditioner, Jason PowerSmile All-Natural Whitening Toothpaste, Jason Curl Defining Cream, and Avalon Organics Grapefruit & Geranium

1   Refreshing Shampoo. *Id.*

2      The plaintiffs do not dispute Hain's labeling claims as to the organic nature of individual

3   ingredients. *Id.* ¶ 23. Indeed, their allegations assume that all of the products' ingredients are

4   accurately identified as organic. *Id.* Their claims are limited to the Avalon Organics brand name

5   and the Jason-brand "Pure, Natural & Organic" tagline. They complain that Hain has a pattern and

6   practice of making organic claims on products that do not meet the organic standards required by

7   COPA. *Id.* ¶ 23.

8      The plaintiffs also allege that after they filed their original complaint, Hain began a new

9   deceptive practice. *Id.* ¶ 27. They allege that Hain now falsely labels some of its products as

10   containing 70% organic ingredients as part of its efforts to comply with COPA. *Id.* They allege that

11   Hain calculates the percentage of organic ingredients in such products by including the weight of

12   water used to reconstitute a dehydrated organic ingredient, a practice allegedly prohibited under

13   COPA. *Id.* (citing 65 Fed. Reg. 80548-01, 80586 (December 21, 2000) incorporated into COPA by

14   Cal. Health & Safety Code § 110811).

## III.  PLAINTIFFS' CLAIMS

16      Plaintiffs bring six claims for relief. *See* FAC, ECF No. 68, ¶¶ 38-80.

17      First, they allege that Hain violated COPA's restrictions on selling, labeling, or representing

18   products "as organic or made with organic ingredients" unless they contain 70% organically

19   produced ingredients. FAC ¶¶ 38-42; Cal. Health and Safety Code § 110838. They allege that they

20   have standing because California Health and Safety Code section 111910(a) permits "any person" to

21   bring an enforcement action seeking injunctive relief under COPA. *Id.* ¶ 41.

22      The plaintiffs' second, third, and fourth claims respectively allege violations of the unlawful,

23   fraudulent, and unfair prongs of the UCL. *Id.* ¶¶ 43-65. Their claims under the UCL's "unlawful"

24   prong are based on Hain's allegedly violating: (1) COPA; (2) the CLRA (discussed below);

25   (3) California Health & Safety Code section 111730, which prohibits the sale of misbranded

26   cosmetic products; and (4) California Business and Professions Code section 17580.5, which bars

27   untruthful, deceptive, or misleading environmental-marketing claims. *Id.* ¶¶ 43-51. The plaintiffs'

28   claims under the UCL's "unfair" and "fraudulent" prongs are based on the statutory violations and

UNITED STATES DISTRICT COURT
For the Northern District of California

1  the misrepresentations alleged throughout the complaint. *Id.* ¶¶ 52-65. They seek injunctive relief

2  and restitution for the alleged UCL violations. *Id.* ¶¶ 50, 57, 64 and ¶. 23-24 (prayer for relief).

3      The fifth claim is for violation of § 1770(a)(5), (7), and (9) of the CLRA, Cal Civ. Code § 1750,

4  *et seq. Id.* ¶¶ 66-74. These CLRA provisions bar:

5      (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients,
       uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval,
6      status, affiliation, or connection which he or she does not have.

7      (7) Representing that goods or services are of a particular standard, quality, or grade, or that
       goods are of a particular style or model, if they are of another.

8
       (9) Advertising goods or services with intent not to sell them as advertised.
9

10 *See id.* ¶ 68. For the alleged CLRA violations, the plaintiffs seek injunctive relief, damages, costs,

11 and fees. *Id.* ¶¶ 71-73.

12      Finally, Plaintiffs claim that Hain breached its express warranties concerning the products in

13 violation of California Commercial Code § 2313.

14 **IV. THE PROPOSED CLASSES**

15     In their class certification motion, Plaintiffs ask the court to certify two California classes.

16 Rosminah Brown seeks to represent a "Jason Class," defined as:

17     All persons who purchased a personal care product in California sold under the Jason brand
       name between May 12, 2007 and June 30, 2011 other than those Jason brand personal care
18     products that are USDA certified as organic.[4]

19 (ECF No. 200 at 14.) Eric Lohela seeks to represent an "Avalon Organics Class," defined as:

20     All persons who purchased a personal care product in California sold under the Avalon
       Organics brand name between May 12, 2007 and the present other than those Avalon
21     Organics brand personal care products that are USDA certified as organic.[5]

22 _____

23      [4] The principal display panel of all Jason products had the phrase "Pure, Natural, &
24 Organic" until that representation was removed by at least June 2011. (Todzo Decl., ¶ 3, Ex. 1 at
   69; ECF No. 156 at 6:6-19; ECF No. 16 at 1:22-2:18.) Hain previously conceded that the Jason
25 products sold during the class period contained less than 70% organic ingredients. (ECF No. 164, ¶
26 23.)

27      [5] Hain previously conceded that all Avalon Organics Products contained less than 70%
   organic ingredients before the 2011 product reformulation. (ECF No. 164, ¶ 23.) As with the Jason
28 Products, all Avalon Organics Products before the reformulation contained less than 50% organic

1    *Id.* at 14-15.

2        Both classes exclude Hain and its officers, directors, and employees, any entity in which Hain

3    has a controlling interest, Hain's affiliates, legal representatives, heirs or assigns, any federal, state,

4    or local governmental entities, any judicial officer presiding over this action and the members of

5    his/her immediate family and judicial staff, and any juror assigned to this action.

6                                            **ANALYSIS**

7        Class actions are governed by Federal Rule of Civil Procedure 23.  A party seeking to certify a

8    class must prove that all the prerequisites of Rule 23(a) are met, as well as those of at least one

9    subsection of Rule 23(b) (and the relevant subsection here is 23(b)(3)).  Fed. R. Civ. P. 23.  The

10   following are the prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of

11   representation.  A court may certify a class under Rule 23(b)(3) if the court finds that questions of

12   law or fact common to class members predominate over any questions affecting only individual

13   members, and a class action is superior to other available methods for fairly and efficiently

14   adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3).

15       "Certification is proper only if the trial court is satisfied, after a rigorous analysis," that the

16   proposed class meets Rule 23's demands.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

17   "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'"

18   *Id.* (quoting in part *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  This is because

19   "the class determination generally involves considerations that are enmeshed in the factual and legal

20   issues [constituting] the plaintiff's cause of action."  *Id.*  Still, "Rule 23 grants no license to engage

21   in free-ranging merits inquiries at the  certification stage.  Merits questions may be considered to the

22   extent – but only to the extent – that they are relevant for determining whether the Rule 23

23   prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

24

25   _____

26   ingredients.  (Todzo Decl., ¶ 9, Ex. 8.)  Hain says that after the reformulation, the products contain
     more than 70% organic ingredients, and Plaintiffs dispute that.  The resolution of the dispute turns
27   on whether it is appropriate to include water that is added to reconstitute dehydrated aloe powder as
     part of the percentage of organic ingredients.  If one counts the water, then the Products all have
28   more than 70% organic ingredients, but if one excludes the water, they do not.  (*Id.* ¶¶ 9-10.)

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   133 S. Ct. 1184, 1194-95 (2013).

2       Beyond Rule 23's express demands, courts have implied an additional requirement under Rule

3   23(a): that the proposed class be ascertainable.  *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d

4   583, 592-93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671-72 (N.D.

5   Cal.2011); *see* Fed. R. Civ. P. 23(c)(1)(B) ("[a]n order that certifies a class action must define the

6   class and the class claims, issues, or defenses").  This preliminary requirement asks whether the

7   class is so defined that its individual members can be readily identified.  A class should be

8   sufficiently definite and "clearly ascertainable" by reference to objective criteria "that it is

9   administratively feasible to determine whether a particular person is a class member." *Shepard v.*

10  *Lowe's HIW, Inc*., No. C 12-3893 JSW, 2013 WL 4488802, *2 (N.D. Cal. Aug. 19, 2013).

11      If the class proponent meets his or her burden under Rule 23, then the court has broad discretion

12  to certify the class.  *Zinser v. Accuflix Res. Inst., Inc*., 253 F.3d 1180, 1186, *amended by* 273 F.3d

13  1266 (9th Cir. 2001).

14  **I.  HAIN'S CHALLENGES TO CLASS DEFINITIONS**

15      Hain raises two concerns involving the proposed class definitions: (A) they differ materially

16  from the definitions in the FAC and potentially include non-actionable products; and (B) the class is

17  not ascertainable because consumers can only self-identify and are unlikely to have receipts.

18      **A.  The Classes Do Not Differ Materially From the FAC and Exclude Non-Actionable**

19          **Products**

20      Hain argues that the plaintiffs' motion proposes classes that are "materially different" from those

21  described in the FAC and potentially include non-actionable products.  (ECF No. 248 at 14-16.)

22      The FAC had one class with two subclasses.  Both plaintiffs were proposed as class

23  representatives for the class, defined as "All persons who purchased the Products that were sold

24  under the Jason® or Avalon Organics® brand in California during the applicable statute of

25  limitations." *Id.* ¶ 28.  The FAC had two subclasses, one for Jason-branded products and one for

26  Avalon Organics.  Brown was the named Plaintiff for the Jason subclass, defined as "All persons

27  who purchased the Products that were sold under the Jason® brand in California during the

28  applicable statute of limitations." *Id.* ¶ 29.  Lohela was the named plaintiff for the Avalon subclass,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   defined as "All persons who purchased the Products that were sold under the Avalon Organics®

2   brand in California during the applicable statute of limitations."  *Id.* ¶ 30.

3       Plaintiffs broke out and narrowed their definitions in their motion for class certification.  Instead

4   of one class (for all products with both class representatives) and two subclasses (one each for Jason

5   and Avalon Organics, each represented by a different named Plaintiff), they have only two classes,

6   one for Jason (represented by Brown) and one for Avalon Organics (represented by Lohela).

7   Plaintiffs narrowed the Jason-brand class by excluding products sold after June 30, 2011, when Hain

8   discontinued the "Pure, Natural, & Organic" tagline.  Plaintiffs also narrowed the class definition by

9   excluding products that are USDA-certified as organic.  *See supra* Statement, IV. Proposed Class

10  Definitions.

11      Hain first argues that Plaintiffs' narrowing of the complaint is impermissible and that the FAC

12  should "trump[]" the motion.  (ECF No. 248 at 14-15.)  It then challenges the Jason class definition

13  as cutting off the class after June 30, 2011 and including products that (a) were USDA-certified (and

14  thus contained 95% or 100% organic ingredients), (b) did not carry the tagline, or (c) did carry the

15  tagline but contained more than 70% organic ingredients.  (*Id.*)  Hain also says the plaintiffs' motion

16  asks for an Avalon Organics class "that may (or may not) include" post-June 2011 buyers depending

17  on whether the court holds that water can count toward organic content in the reformulated Avalon

18  Organics products.  (*Id.* at 15-16.)

19      The court disagrees.  It is an unremarkable feature of class actions that class definitions are

20  refined to reflect the developing realities of a given suit.  Courts, including those in the Ninth

21  Circuit, regularly allow class definitions to be adjusted over the course of a lawsuit.  *See*, *e.g.*, *Zeisel*

22  *v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, *2, *6 (N.D. Cal. June 7, 2011);

23  *In Re Hulu Privacy Litig.*, No. C 11-3764, 2014 WL 2758598, at *14 (N.D. Cal. June 16, 2014)

24  ("definitional flaws 'can and often should be resolved by refining the class definition rather than by

25  flatly denying class certification on that basis'") (quoting *Messner v. Northshore Univ.*

26  *HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)).  Class definitions are often revised, for example,

27  to reflect the contours of a settlement.  Discovery too regularly changes the parties' initial

28  understanding of a case's facts; this can affect a class suit's legal theories.  *See In re Conseco Life*

*Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521, 529-330 (N.D. Cal. 2010). The usual practice in both cases (perhaps especially with settlements) is to revise the complaint. In principle the plaintiffs could do that here. But that would be wasteful. The court understands the plaintiffs' motion to be their operative request. Judicial efficiency is best served by addressing now the classes that motion proposes. This is not a ground on which to viably challenge the plaintiffs' motion.

Hain's objections to the refined definition of the Jason class do not identify a real problem. Plaintiffs' proposed class narrows the Jason class to exclude purchasers who bought a product bearing the USDA's "NSF" certification badge. The motion's class definition also cuts off the Jason class after June 30, 2011. The narrowed class was meant to capture (perhaps imperfectly) the fact that, after that date, the offending tagline was removed from Jason products. (*Id.* and n. 4.) Hain sees something amiss in these adjustments. (*See id.* at 14-15.) It then criticizes the Jason class, as originally defined, because (in sum) some Jason products never carried the tagline, while others had sufficient (at least 70%) organic content and "were USDA-certified." (*Id.* at 15.)

But these are exactly the facts that the narrowing of the Jason class is meant to address. It cannot be a legitimate grievance, much less a reason to deny certification, to complain both that *X* trait prevents membership in the class and that the class has been defined to exclude those with *X* trait. Moreover, the argument that the June 2011 cutoff may do so imperfectly is a point that Plaintiffs answered in their reply brief. They chose the June 30, 2011 cut off because Hain previously said that they deployed the new Jason labels without the tagline in late 2011 and 2012, so they were trying to be conservative. (ECF No. 237 at 9.) But Hain's documents show that the earliest that any new-label Jason products were on the shelf was February 1, 2011. (Hirsch Decl., ECF No. 246, ¶ 12.) Accordingly, Plaintiffs suggest, refining the Jason class further to a class cutoff of January 31, 2011 fixes the problem. The court agrees. Hain did not disagree with this proposal at the hearing.

The definition of the proposed Avalon Organics class also has not changed in any substantial or troubling way. The FAC proposed a class of all California buyers of covered Avalon Organics products "during the applicable statute of limitations." (ECF No. 68 at 12-13.) That period is from from May 12, 2007 to the filing of the initial complaint in May 2011. The certification motion

UNITED STATES DISTRICT COURT
For the Northern District of California

1   proposes the same class, except that it rules out USDA-certified products.  (*See* ECF No. 243 at

2   14-15.)  As discussed in the context of the Jason products, it is appropriate to define buyers of these

3   non-actionable products out of the class.

4        Hain sees a more troubling feature implicit in the Avalon Organics class definition.  It writes:

5   "[The class] may (or may not) include post-June 2011 Avalon Organics purchasers depending on

6   how the Court were to rule on a merits issue –  whether water used to rehydrate aloe powder counts

7   toward the 70% threshold."  (ECF No. 248 at 14.)  Hain continues:

> The Court is asked to expand (or contract) the class recursively, depending on
> whether post-June 2011 Avalon Organics purchasers can prove their claim.  In effect,
> Plaintiffs are saying, "If Hain wins, we'll shrink the class period to June 30, 2011; if
> Hain loses, we won't."  This is impermissible.  It amounts to a "fail-safe" class in
> which membership will be determined by the Court's prior determination of Hain's
> liability.
>
> [T]his "shrink-to-fit" condition asks the Court to make a merits ruling before class
> certification.  That violates "one-way intervention."

13  (*Id*. at 15-16 (citations omitted).)

14       "One-way intervention" is a serious issue.  It is the problem created when merits issues are

15  decided before a class is certified; the ruling binds named parties but not absent members of the

16  proposed class.  The latter can thus choose to join or opt out of the class depending on how the

17  substantive decisions have fallen.  Absent parties would remain free to re-litigate ostensibly decided

18  questions.  Generally speaking, this is inefficient and unfair.  "Absent a class action . . . , a defendant

19  could win against the named plaintiff and then face additional suits by other [claimants] similarly

20  situated."  *Benitez v. Wilbur*, CVF 08-1122 LJO GSA, 2009 WL 498085, *8 (E.D. Cal. Feb. 26,

21  2009).  "As the California Supreme Court aptly analogized, a defendant is then open to 'being

22  pecked to death by ducks.  One plaintiff could sue and lose; another could sue and lose; and another

23  and another until one finally prevailed.'"  *Id.* (quoting *Fireside Bk. v. Superior Court*, 40 Cal. 4th

24  1069, 1078 (2007)).  Courts thus mostly avoid pre-certification merits rulings:

> A largely settled feature of state and federal procedure is that trial courts in class
> action proceedings should decide whether a class is proper and, if so, order class
> notice before ruling on the substantive merits of the action.  The virtue of this
> sequence is that it promotes judicial efficiency, by postponing merits rulings until
> such time as all parties may be bound, and fairness, by ensuring that parties bear
> equally the benefits and burdens of favorable and unfavorable merits rulings.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   *Fireside Bank*, 40 Cal. 4th at 1074 (citations omitted) (reversing merits holding before class was

2   certified and notice was given).

3        The plaintiffs in this case have moved for partial summary judgment.  (ECF No. 244.)  They ask

4   the court to decide two issues that are central to this lawsuit.  They ask the court to hold: (1) "that

5   Hain has violated [COPA]"; and 2) that "Hain's violations of COPA constitute predicate unlawful

6   acts for purposes of their claim under the unlawful prong" of the UCL.  *Id.* at 4.  The question to

7   which Hain's certification brief points – "whether water used to rehydrate aloe powder counts

8   toward [COPA's] 70% threshold" – is a key subsidiary question in deciding whether, or to what

9   extent, Hain has violated COPA.  Both parties discuss one-way intervention in their

10  summary-judgment briefs though, as Hain rightly notes, the question more properly lies within the

11  certification analysis.  (*See* ECF No. 220 at 19-21; ECF No. 228 at 21.)

12       The court agrees with Hain that it should not rule on merits issues before a class is certified and,

13  indeed, fully formed.  For this reason, the court suspends ruling on the plaintiffs' summary-judgment

14  motion.  There will be no "prior determination of Hain's liability."  But, within the context of

15  ascertaining the class, the issue is not quite the one that Hain identifies.  There is no problem of class

16  definition or ascertainability.  Hain misapprehends the role and effect of the parties' disagreement

17  over whether water counts toward organic content in the reformulated (after about June 2011)

18  Avalon Organics products.  That issue doesn't affect the class definition.  All purchasers are defined

19  into the class.  A key merits question for those who bought after June 2011 will then be: Does water

20  count toward organic content?  If Hain proves that water should count, then Hain will prevail over

21  post-June 2011 buyers.

22       Apart from its concern over one-way intervention, Hain does not identify, and the court does not

23  see, how Hain is prejudiced by the refined definitions of either the proposed Avalon Organics or the

24  proposed Jason class.

25       In sum, from this record, the court concludes that cutting off the Jason class after January 31,

26  2011 resolved any issue regarding the roll-out of labels without the tagline.  (*See* Hirsch Decl., ECF

27  No. 246, ¶ 11.)  Excluding products that are USDA-certified also avoided any issue of over-

28  inclusiveness for the Avalon and Jason classes.  Moreover, as the plaintiffs point out, including a

small percentage of uninjured persons does not defeat ascertainability (although a court should not certify a class that contains "a great many persons who have suffered no injury at the hands of the defendant"). *Kohen v. Pac. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (collecting cases); *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at \*16 (N.D. Cal. Mar. 9, 2014). Finally, Hain will either win or lose on the issue of whether the reformulated Avalon products violate COPA, but that issue does not affect or defeat class certification.

### C. Ascertainability and Self-identification by Absent Class Members

Hain also argues that the class is not ascertainable because it keeps no receipts, individuals are not likely to keep their receipts for small purchases, and the only way consumers can prove they are class members is by self-identification via an affidavit or similar means. (*See* ECF No. 248 at 19-22.) In such circumstances, Hain contends, "courts . . . deny certification." (*Id.* at 19.)

To support this position, Hain cites *Carrera v. Bayer Corp.*, 727 F.3d 300, 303-04 (3rd Cir. 2013). (ECF No. 248 at 19.) That case holds that, "in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, [Rule 23] prohibits certification of the class." *McCrary v. Elations Co.*, No. 13-cv-00242 JGB OP, 2014 WL 1779243, \*8 (C.D. Cal. Jan. 13, 2014). As the *McCrary* court observed, though, "[w]hile this may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit." *Id.* (citing cases); *accord Bruton v. Gerber Prods. Co.*, 2014 WL 2860995, \* 5 (N.D. Cal. June 23, 2014). "[C]ourts in this district have previously found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits"; at the same time, our courts "have also declined to certify classes when self-identification would be unreliable or administratively infeasible." *Id.* (citing *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) (allowing self-identification) and *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075 (N.D. Cal. 2011) (rejecting self-identification)).

The question goes to the heart of the Rule 23(b)(3) class action. As Judge Tigar recently wrote:

> Adopting the *Carrera* approach would have significant negative ramifications for the ability to obtain redress for consumer injuries. Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as

a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed.

*Lilly v. Jamba Juice Co.*, 13-CV-02998-JST, 2014 WL 4652283, *4 (N.D. Cal. Sept. 18, 2014) (amusing footnote omitted) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("since [n]o competent attorney would undertake this complex antitrust action to recover so inconsequential an amount . . . [e]conomic reality dictates that petitioner's suit proceed as a class action or not at all.")).

There is ultimately no ironclad rule on self-identification. Proof by affidavit does not necessarily defeat ascertainability. On the other hand, reliance on affidavits can be problematic. (This court recognized both truths in *Hulu*, 2014 WL 2758598 at *16.) Governing law draws no bright line; the decision must be made on a case-by-case basis.

Hain suggests that this case is "perhaps most analogous" to *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 86581 (N.D. Cal. June 23, 2014). There, Judge Koh held that a class could not be ascertained where teeming variety in baby-food labels made it infeasible for unnamed class members to "accurately recall" whether they had bought a product with a challenged statement. *Id.* at *1-*2, *5-*10. The court agrees that *Bruton* is in some ways similar to this case. The issue in both is when unnamed class members may self-identify. But the salient details of the two cases cause *Bruton* to slide down one side of the decisional bubble, and this case the other.

The *Bruton* plaintiff "challenge[d] Gerber's use of 'nutrient content claims'" in 69 varieties of baby food. *Id.* at *2. These claims were embodied in seven differently worded label statements. *See id.* There was in *Bruton*, as in this case, the complication of rolling label changes. "Of the 69 products at issue" in *Bruton*, "66 were labeled both with and without challenged labels during the class period." *Id.* at *6. This means that 95% of the products at issue in *Bruton* were subject to label variation. Given the logistics of getting labels onto products, and then getting products into retailers' inventories and onto their shelves, Gerber contended that it would "not be able to identify what label was on a consumer's product even if the consumer remembers the exact date on which

she purchased the product." *Id.* "[A]t certain times during the class period, there were two different labels for sale in one store . . . ." *Id.* Furthermore, some of the challenged statements were over time "moved from the front of the package to less prominent places . . . ." *Id.* at *8. This "ma[de] it even less likely that consumers [would] recall whether" they bought a product with a challenged statement. *Id.* This case lacks that particular wrinkle. Further complicating matters in *Bruton*, in a way that does not exist here, "[n]early all of the Gerber . . . products included in the class definition did not contain any challenged label statements during a portion of the class period." *Id.* at *8. *Jones v. Conagra* posed similar issues regarding "literally dozens of varieties with different can sizes, ingredients, and labeling over time," with some labels that "included the challenged language and some that included no such language at all." No. 12-cv-01633-CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014). For that reason, the court concluded that class members could not recall whether they purchased products with the challenged statements. *Id.*

   This case does not feature the same proliferating variety in labels. Calculating from Hain's data, Plaintiffs point out that all but 8 products (out of the 326 at issue) are the same with regard to the organic representations and product formulations that form the basis for the claims, the 8 products all are Jason products, and they are not popular products. (*See* Hirsch Decl., ECF No. 246, ¶ 11.[6]) This case does not similarly threaten to thwart class members' recall. Where *Bruton* involved seven different challenged statements, this case involves only one: the word "organic." And, while the "pure, natural, and organic" tagline eventually disappeared from Jason products, Plaintiffs (as discussed above) cut off the class after January 31, 2011 based on Hain's contention that the first roll-out of the new label was not until February 2011. There similarly is no issue with Avalon Organics because every class member who bought any Avalon Organics product would have been exposed to the challenged "organic" claim by virtue of its being part of that brand's very name. The temporal variation in challenged labels is also much more limited here. There are only two: The eventual removal of the Jason tagline and the appearance on some products of the NSF badge.

---

   [6] Hain's motions to strike at ECF Nos. 251 and 252 are denied because the challenged declaration was to rebut Hain's new contentions and evidence, and Hain's motions to strike illuminated any issues sufficiently.

1   The court thinks that – unlike the consumers in *Bruton* or *Jones v. Conagra Foods* – consumers

2   can accurately recall whether they bought an Avalon Organics product, or a Jason product that said

3   "pure, natural, and organic," during the given period.  Given that ability, courts have permitted

4   self-identification by affidavit in small-ticket consumer-mislabeling suits.  *See, e.g., Brazil v. Dole*

5   *Packaged Foods, LLC*, No. 12-CV-01831-LHK, ECF No. 220 at 24-25; *Lilly*, 2014 WL 4652283;

6   *Zeisel*, 2011 WL 2221113; *Reis*, 287 F.R.D. 523 (N.D. Cal. Nov. 27, 2012).  The appropriateness of

7   this result is informed by the *Lilly* court's concern that, if class actions are not available in

8   small-ticket consumer-deception suits like this one, then the wrongs that those suits allege will often

9   escape redress, and Rule 23(b)(3) will be nullified just where it is most socially useful.  *See Lilly*,

10  2014 WL 4652283 at *4.

11      Hain also cites the court's decision in *Hulu*, *supra*, where this court declined to allow unnamed

12  class members to self-identify.  The reasoning in *Hulu* does not change the court's conclusion either.

13  The ascertainment-by-affidavit proposed in *Hulu* would have demanded that class members recall

14  fairly technical issues, about which many of them might not have known in the first place.  *See id.* at

15  *15-*16.  The "size of the [individual] claims" also played a role.  *See* 2014 WL 2758598 at

16  *15-*16.  For every statutory violation in *Hulu*, the defendant faced a mandatory minimum fine of

17  $2500; the size of the class, and the easy frequency with which individual violations could

18  accumulate, threatened a total award in the "billions of dollars."  *See id.* at *1, *23.  That would

19  have been "wildly disproportionate to any adverse effects class members suffered," would have

20  "shock[ed] the conscience," and so raised due-process concerns.  *Id.* at *23.  But "[w]here the

21  [individual] claims are small," the *Hulu* decision recognized, a "simple statement or affidavit may be

22  sufficient" to ascertain class membership.  *Id.* at *15 (quotations omitted).  "[W]hen dollar amounts

23  are higher, some form of verification is appropriate beyond just an affidavit."  *Id.* at *15 (citing

24  cases).  In that latter context, as it arose in *Hulu*, the court declined to permit self-identifying

25  affidavits.

26      That self-identification is allowable here is bolstered by the fact that "total damages" will be

27  proved and fixed at trial — as opposed to awaiting a world of individual claimants who drive the

28  defendant's bill higher with every new "Me, too" that rings in.  *See Lilly*, 2014 WL 4652283 at *5-6.

1  The restitutionary damages that the plaintiffs seek focus on the defendant's conduct rather than on

2  the harm allegedly done any individual class member.  Those damages, as both parties recognize, are

3  measured by the profit that Hain allegedly derived from the misbranded products.  That profit will

4  be measured without regard to any individual plaintiff; then, after the total figure is set, individual

5  claimants will divide the award.

6  **II. RULE 23(a) PREREQUISITES**

7  Rule 23(a) requires a class proponent to show four things: (1) the class is so numerous that

8  joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

9  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

10  class; and (4) the representative parties will fairly and adequately protect the interests of the class.

11  Fed. R. Civ. P. 23(a).  These are usually termed the prerequisites of numerosity, commonality,

12  typicality, and adequacy.  The court finds that the plaintiffs have met all prerequisites.

13  **A. Numerosity — Rule 23(a)(1)**

14  There is no dispute that the proposed classes are both "so numerous that joinder of all members

15  is impracticable."  There is no absolute minimum class size for establishing numerosity, but courts

16  have held that classes as small as 40 satisfy the numerosity demand.  *Delarosa v. Boiron*, 275 F.R.D.

17  582, 587 (C.D. Cal. 2011).  The plaintiffs estimate that Hain "sold the Products to many thousands

18  of California consumers."  (ECF No. 20 at 33.)  Hain does not dispute this.  The plaintiffs have

19  established that the proposed classes each meet Rule 23(a)(1)'s numerosity requirement.

20  **B. Commonality — Rule 23(a)(2)**

21  Under Rule 23(a)(2), a class cannot be certified unless the class proponent establishes that "there

22  are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The named plaintiff

23  need not show that each class member's factual and legal issues are identical: "To establish

24  commonality, '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as

25  is a common core of salient facts . . . .'"  *Parra v. Bashas' Inc.*, 536 F.3d 975, 978 (9th Cir. 2008)

26  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  "Commonality requires

27  the plaintiff to demonstrate that class members have suffered the same injury.  This does not mean

28  merely that they have all suffered a violation of the same provision of law."  *Dukes*, 131 S. Ct. at

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

2551.  The common question "must be of such a nature that it is capable of classwide resolution –
which means that determination of its truth or falsity will resolve an issue that is central to the
validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . . . is not
the raising of common 'questions' – even in droves – but rather the capacity of a classwide
proceeding to generate common answers apt to drive resolution of the litigation.  Dissimilarities
within the proposed class are what have the potential to impede the generation of common answers."
*Id.*  In that light, "even a single common question will do."  *Id.* at 2556 (quotation and interpolation
omitted); *accord Stockwell v. San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).

Commonality exists here.  Several common questions define and drive this lawsuit.  The most
central questions include: (1) Did Hain's use of the word "organic" on its Jason and Avalon
Organics labels constitute selling, labeling, or representing its products as organic or made with
organic ingredients?; and (2) Did the Hain products so labeled contain at least 70% organic content?
*See* Cal. Health & Safety Code § 110828(a).  COPA, the UCL, and the CLRA also make common
the questions of materiality, reliance, and causation: If a plaintiff proves that an objective
"reasonable consumer" would deem the "organic" claim material, then inferences of reliance and
causation arise, and there is no room for delving into individual transactions.  *E.g.*, *Stearns v.
Ticketmaster Corp.*, 655 F.3d 1013, 1020-23 (9th Cir. 2011) (citing cases).  These questions are
more than "apt to drive resolution of" this suit; in a sense, answering these common questions will
*be* the resolution of this suit.  The plaintiffs do not merely claim "that they have all suffered a
violation of the same provision of law," meaning COPA, the UCL, the CLRA, and so on.  Rather,
they allege that they have suffered the "same injury" caused by "a common core of salient facts" –
mainly, Hain's labeling and the lack of sufficient organic content.  This is all sufficient to meet Rule
23(a)(2)'s commonality requirement.

### C.  Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the class representatives [be] typical of the
claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards,
representative claims are 'typical' if they are reasonably co-extensive with those of absent class
members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1011.  "Typicality refers to

the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). "The purpose of the typicality requirement is to [en]sure that the interest of the named representative aligns with the interests of the class." *Id.* "[C]lass certification is inappropriate when a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citing cases).

The named plaintiffs' claims are typical of the class's claims. The plaintiffs do more than merely allege that they "suffered a violation of the same provision of law." *See Dukes*, 131 S. Ct. at 2551. The conduct they challenge was not unique to any plaintiff; rather, the plaintiffs all claim injury from the "same course of conduct." *Hanon*, 976 F.2d at 508. There is moreover no real dispute that the named plaintiffs are members of the class they would represent. *See, e.g.*, *Bautista-Perez v. Holder*, C 07-4192 TEH, 2009 WL 2031759, at *8 (N.D. Cal. July 9, 2009) (citing *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). There appear to be no claims that the named plaintiffs bring that class members cannot bring, or vice versa.

Hain's arguments to the contrary are not persuasive.

Hain first contends that the named plaintiffs are not typical of plaintiffs who purchased different products. Hain notes that "Neither plaintiff bought a product with the 'NSF' certification." (ECF No. 248 at 18-19.) This works only if one considers the class definitions in the complaint. Plaintiffs omitted buyers of NSF-certified products in the narrowed class definition. *See supra* Statement, IV. Proposed Class Definitions.

Hain also observes that both Avalon Organics and Jason products bore "other label statements (such as 'no parabens' and 'no animal testing') that surely influenced some consumers' purchase decisions." (ECF No. 248 at 18.) That observation may be correct. Different plaintiffs may have found different label statements material, and, in deciding to buy a product, may have relied on something other than the "organic" claim alone. This does not make the named plaintiffs'

UNITED STATES DISTRICT COURT
For the Northern District of California

1    claims atypical.  Looking at the wider doctrinal context, under the relevant California law, "an

2    inference of common reliance arises if representations are material and materiality is judged by an

3    objective standard rather than by any understandings specific to the individual consumer."  *Lilly*,

4    2014 WL 4652283 at * 8 (UCL, CLRA, and warranty claims); *accord*, *e.g.*, *Stearns*, 655 F.3d at

5    1020 (UCL and CLRA; materiality, reliance, causation) (citing *In re Tobacco II Cases*, 46 Cal.4th

6    298 (2009)).  The court is not saying that the plaintiffs will be able to prove this, only that California

7    law permits it to be proven, or disproven, at once for the whole class.  This has consequences for the

8    discussion of common-question predominance; it also rebuts Hain's typicality objection based on

9    the possibly varying motives of purchasers.

10        Hain next insists that plaintiff Lohela cannot be typical of absent members because he bought

11   from an online vendor and paid "less than Hain's wholesale cost."  (ECF No. 248 at 19.)

12   Consequently, in Hain's view, he "did not suffer 'the same or similar injury' as anyone else for

13   purposes of Rule 23(a)(3)."  (*Id.*)  The court thinks that Hain makes a subtle but important mistake

14   here.  If Mr. Lohela differs in this way from other members of the putative class, it is not a

15   breakdown in typicality; it is a question of individual damages.  Different damages need not destroy

16   class cohesion.  Thus, the Ninth Circuit recently discussed with approval recent cases affirming

17   certification, "no matter how individualized the issue of damages may be," "even when some

18   consumers might have no harms at all."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-68 (9th

19   Cir. 2014) (discussing *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d

20   838, 853-55 (6th Cir. 2013) and citing cases).  As discussed below, in considering whether the

21   plaintiffs have shown that damages can be proven on a class-wide basis, particularly under the

22   Supreme Court's decisions in *Dukes* and *Comcast*, the court is preserving Hain's right to present any

23   defenses it may have to individual damage claims.  *See infra*, Part III.A.3.  For now, the point is that

24   *Jimenez* militates against Hain's argument that Mr. Lohela's particular damage profile destroys

25   typicality.

26        Finally in this area, Hain cites *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014) –

27   a case it finds "controlling" – and *Major v. Ocean Spray Cranberries, Inc.*, No. 12-cv-03067 EJD,

28   20133 WL 2558125 (N.D. Cal. June 10, 2013), which it says "could have been writ[ten] about this

1    case."  Both cases are visibly different from this case.

2        In *Berger*, as Hain writes, "the named plaintiffs signed one form of tool[-]rental agreement but

3    not four others.  Hence, the class could not proceed as to the others."  (ECF No. 248 at 18 (citing

4    *Berger*, 741 F.3d at 1069).)  The dispute in *Berger* was over a damage waiver in the rental

5    agreement.  741 F.3d at 1066.  The case involved five versions of that agreement, "each of which

6    discussed the damage waiver in a different way."  *Id.*  Furthermore, the named *Berger* plaintiff had

> not alleged that all of the members of his proposed class were exposed to Home
> Depot's alleged deceptive practices — and in fact, he has alleged the opposite.  Each
> of the five contracts used by Home Depot requires an independent legal analysis to
> determine whether the language and design of that contract did or did not suffice to
> alert customers that the damage waiver was an optional purchase, and thereby did or
> did not expose that group of customers to a potentially misleading or deceptive
> statement.

11   *Id.* at 1069.  This case is different.  Here, the acts of alleged "deception," the labels, are uniform —

12   insofar as they are said to violate California law by wrongly making the uniform claim that the

13   attendant product was "organic."  And the named plaintiffs do allege that the whole class was

14   exposed to that claim.

15       As for the misbranding decision in *Major*, Judge Koh distinguished that case in a way that

16   applies here:

> [T]he *Major* case involved unique facts that justified the court's finding that
> typicality was lacking . . . .  The plaintiff in *Major* attempted to include entire product
> lines based on a single purchase, and the plaintiff "fail[ed] to link any of those
> products to any alleged misbranding issue" related to the plaintiff's purchase.  *Id.*
> Furthermore, the *Major* court observed "that the labels and nutrition claims on each
> of Defendant's products may be unique to that product itself."  *Id.*  The plaintiff
> purchased a pomegranate blueberry drink and alleged misrepresentations based on
> label language making specific claims about blueberries.  Yet the plaintiff sought to
> certify a class that would include products having label statements making no claims
> about blueberries.  As the *Major* court explained, "[t]he evidence needed to prove
> Plaintiff's claim that the Diet Sparkling Pomegranate Blueberry drink contained false
> or misleading labeling is not probative of the claims of unnamed class members who
> purchased products within the 'Sparkling' line that did not contain blueberries."  *Id.*

24   *Brazil v. Dole Packaged Foods, LLC*, 12-cv-01831-LHK, 2014 WL 246659, at *10 (N.D. Cal. May

25   30, 2014).  Analogous facts are absent from this case.  The named plaintiffs here do "link" their

26   claims to those arising from products that they themselves did not buy, and the challenged

27   representations are not "unique" to any product.  The representative claims, and the absent claims

28   linked to any covered product, challenge only what is allegedly shared by the representations made

UNITED STATES DISTRICT COURT
For the Northern District of California

1    on all such products: that they claimed to be organic – and used that one word – when under

2    California law they could not rightly do so.

3      The plaintiffs have established that their claims are typical of those of the absent class.  *See*, *e.g.*,

4    *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (typicality existed

5    where variously worded representations about product's source was made on every container).

6

7    **D.  Adequacy — Rule 23(a)(4)**

8      Rule 23(a)(4) requires that, before a court may certify a class, it must find that "the

9    representative parties will fairly and adequately protect the interests of the class."  This requirement

10   applies to the class representative and class counsel and poses two questions: "(1) do the named

11   plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the

12   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*,

13   150 F.3d at 1020.  Hain does not dispute the adequacy of class counsel or the willingness of the

14   named plaintiffs to vigorously prosecute the class's case.  "Adequate representation is usually

15   presumed in the absence of contrary evidence."  *Californians for Disability Rights, Inc. v. California*

16   *Dept. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

17      *1.  Adequacy of class counsel*

18      Rule 23(g) provides further guidance for assessing the adequacy of class counsel.  Rule 23(g)(4)

19   restates the demand that class counsel "must fairly and adequately represent the interests of the

20   class."  Under Rule 23(g)(1)(A), the court must consider the following criteria:

21        i.   counsel's work in identifying or investigating potential claims in the action;

22       ii.   counsel's experience in handling class actions, other complex litigation, and the types of

23           claims asserted in the action;

24       iii.   counsel's knowledge of the applicable law; and

25       iv.  the resources that counsel will commit to representing the class.

26   Rule 23(g)(1)(B) permits the court to "consider any other matter pertinent to counsel's ability to

27   fairly and adequately represent the interests of the class."

28      The court finds that class counsel is adequate in all these respects.  They have extensive

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    experience in litigating consumer class actions; they have proven more than proficient in the

2    applicable law; and they have averred to having the necessary resources to prosecute this action to

3    its end. (*See* ECF No. 243 at 24; ECF No. 242-1 at 3-5.)

4         **2.   *Adequacy of the named plaintiffs***

5         As to the named plaintiffs, Rule 23(a)(4)'s adequacy requirement evaluates whether "the named

6    plaintiff's claim and the class claims are so interrelated that the interests of the class members will

7    be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158, n.13. To this extent

8    the adequacy, commonality, and typicality prerequisites "tend to merge." *Dukes*, 131 S. Ct. at

9    2550-51 n.5.

10        The adequacy requirement is met here. The named plaintiffs' claims share core common issues

11   with those of the unnamed class, and there are no "conflicts of interest" between the named plaintiffs

12   and the absent claimants whom they would represent. The named plaintiffs' claims are, again,

13   typical of the class's so that "the class claims [are] . . . fairly encompassed by the named plaintiff[s']

14   claims." *Dukes*, 131 S. Ct. at 2550 (quoting *Falcon*, 457 U.S. at 156).

15        Some additional observations can now be made. These will wrap up the discussion under Rule

16   23(a) and inform the analysis under Rule 23(b). They also further address some of the concerns

17   raised in the parties' certification briefs. The basic point is this: If Rule 23(a)'s ultimate goal is to

18   ensure that class claims and interests are sufficiently "interrelated" to guarantee the fair treatment of

19   named and absent parties, thus ensuring the propriety of the representative suit, then it is hard to see

20   that the variety in Hain's products, or in consumers' ancillary motivations for buying those products,

21   should bar a finding of commonality, typicality, or adequacy. Whatever the precise formulations

22   and uses of Hain's various products, and whatever additional reasons consumers had for buying

23   them, the plaintiffs' claims against them are simple and uniform: the products were presented as

24   organic when, under COPA, they were not. The plaintiffs' claims, in other words, have nothing to

25   do with the unique characteristics of the various Hain products; they have to do only with what is

26   allegedly shared by all those products. The court thus thinks that the plaintiffs' core claims can be

27   adequately proved, for example, by someone who has bought shampoo for someone who has bought

28   hand cream. The products' different recipes, uses, and additional virtues (such as lacking parabens)

1   are for present purposes irrelevant.

2   **III.      RULE 23(b)(3) — PREDOMINANCE AND SUPERIORITY**

3       In addition to proving the prerequisites of Rule 23(a), a plaintiff who seeks to certify a class must

4   also show that the proposed class meets the requirements of at least one subsection of Rule 23(b).

5   Here, the plaintiffs move for certification primarily under Rule 23(b)(3).  (They move alternatively

6   under Rule 23(b)(2).  The court discusses that section in the last part of this order.  *Infra*, Part IV.)

7       To form a Rule 23(b)(3) class, the plaintiffs must show two things: "that the questions of law or

8   fact common to class members predominate over any questions affecting only individual members,

9   and that a class action is superior to other available methods for fairly and efficiently adjudicating

10   the controversy."  Fed. R. Civ. P. 23(b)(3).

11      The predominance inquiry involves weighing and evaluating the common and individual issues

12   in the case.  *See Dukes*, 131 S. Ct. at 2556.  It involves the same principles that guide the Rule

13   23(a)(2) commonality analysis, but it "is even more demanding than Rule 23(a)."  *See Comcast*, 133

14   S. Ct. at 1432.  The predominance inquiry looks at a suit's common questions, "focuses on the

15   relationship between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and requires the

16   court to weigh the common issues against the individual issues.  *See Dukes*, 131 S. Ct. at 2556.

17   Class certification under Rule 23(b)(3) is proper when common questions represent a significant

18   portion of the case and can be resolved for all members of the class in a single adjudication.

19   *Hanlon*, 150 F.3d at 1022.  Finally, predominance is not a matter of merely toting up common and

20   individual issues; the inquiry is pragmatic and qualitative and focuses on whether common questions

21   present the overriding issues in a suit.  *See*, *e.g.* Newberg on Class Actions, § 4.51; *Butler v. Sears,*

22   *Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) (single,

23   central issue of liability supported a class action involving product defects; different specific defects

24   and different damages could be handled by forming subclasses, by individual damages hearings, or

25   in settlement negotiations).

26      The court finds that common issues of fact and law predominate and that the class device is the

27   superior method of handling this dispute.  The next two sections address these subjects in turn.

28   **A.  Common-Issue Predominance**

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

Several central common questions drive this case, including the following:

- Did Hain label their products with the word "organic"?

- Did products labeled "organic" contain less than 70% organic content?

- Did products labeled "organic" but containing less than 70% organic content violate COPA?

- Are Hain's organic claims likely to mislead ordinary consumers?  (UCL, CLRA, and breach of warranty claims)

The plaintiffs have also shown that the damages that they seek can be proven on a common basis. *Infra*, Part III.A.3.  Furthermore, California's approach to proving materiality, reliance, and causation in consumer-deception cases makes those questions amenable to common proof.  *See Stearns*, 655 F.3d at 1020, 1022-23; *Lilly*, 2014 WL 4652283 at *8.  Finally, one of Hain's primary defenses – that an opinion expressed in an administrative agency's letter effectively bars the plaintiffs' claims – can also be adjudicated at one stroke for the whole class.  These common issues make up the bulk and engine of this case.

Hain's arguments against finding common-issue predominance do not change this conclusion.

### 1.  *Varying labels, sufficient content*

Hain first points out that not all Jason products carried the "pure, natural, and organic" tagline, while other carried it for only a certain period, while still others contained at least 70% organic content.  (ECF No. 243 at 23.)  Similarly, the company adds, some Avalon Organics products carried the USDA certification.  (*Id.*)  These "complicating factors" keep common issues from predominating, Hain says.  (*Id.*)

The court disagrees.  As for the USDA certification, again, those products are by definition excluded from the class.  As for Jason products that did not carry the word "organic," and for any product that contained sufficient organic content, these are (Hain correctly says) "non-actionable." (*E.g.*, ECF No. 248 at 23.)  But this is not quite a problem with common-issue predominance.  It is more like an observation about the merits of the case or perhaps about the scope of the defined class. Hain does not so much identify individual issues, in other words, as identify those products whose buyers cannot prevail.  And as discussed above, the issue is only with the Jason products, the products are few, and Plaintiffs narrowed the class at the hearing to exclude purchases after January

UNITED STATES DISTRICT COURT
For the Northern District of California

1    31, 2011, thereby avoiding inclusion of re-labeled Jason products.

2    It is perhaps a more straightforward question of common-issue predominance to consider just

3    how many products Hain's argument describes.  Hain now argues that a "large but unknown

4    percentage" of its products come within this category – enough, in any case, to make the class

5    "overbroad." *Id.*  And "[a]n overbroad class cannot be certified." *Id.*  Earlier, Hain had largely

6    signed on to the assertion that the challenged products contained insufficient organic content "with

7    very few exceptions."  *See supra* n. 4-5 (citing ECF No. 164, ¶ 23); ECF No. 104 at 12; ECF No.

8    172 at 2, 18 n. 8.  Hain's present position is somewhat at odds with that previous assertion.  In any

9    case, qualitative characterizations ("large" or "very few") can take us only so far.  The plaintiffs

10   more usefully reduce the point to hard numbers.  Accepting Hain's own data, they write, "8 of the

11   184 Jason Products subsumed within the class definition should not be included either because they

12   had no organic representation (6 Products) or actually had 70% organic content (2 Products)."  (ECF

13   No. 237 at 14.)  That is to say, a maximum of 4.3% of Jason products falling within the class

14   definition could be "non-actionable."  *See id.*  Whatever the percentage, moreover, it is apparent that

15   Hain's records allow the parties to readily tell which products meet the 70% threshold.  To the

16   extent that this raises individual issues, then, those issues are easily tamed.  They do not predominate

17   over the several key shared issues that dominate this case.  Nor do they create an impermissibly

18   "overbroad" class.  *See*, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917,  2013

19   WL 5429718, at *8-*9 (N.D. Cal. June 20, 2013) report and recommendation adopted 2013 WL

20   5391159 (N.D. Cal. Sept. 24, 2013) ("[A] class will often include persons who have not been injured

21   by the defendant's conduct but [this] . . . does not preclude class certification."); *Nat'l Fed'n of the*

22   *Blind v. Target Corp.*, No. C 06-01802 MHP, 2007 WL 1223755, at *3 (N.D. Cal. April 25, 2007)

23   ("an over-inclusive class definition need not defeat certification entirely").

24        **2.   *Materiality, Reliance, Causation***

25   Hain also contends that the plaintiffs must prove individual materiality, reliance, and causation.

26   (ECF No. 248 at 23-27.)  Factually, this mainly entails Hain's observation that some consumers may

27   have bought its products for reasons other than the "organic" claim.  Some will have found it

28   important, for example, that a product contained "no parabens"; others (including the named

UNITED STATES DISTRICT COURT
For the Northern District of California

1    plaintiffs) would "care deeply" that a product was not tested on animals. (*E.g.*, *id.* at 24.) The court

2    disagrees for several reasons.

3        First, in cases like this, California judges materiality, reliance, and causation by an objective

4    "reasonable consumer" test. Judge Tigar discussed the point in *Lilly*:

> Plaintiffs further argue that these common issues will predominate over any
> individualized issues. In establishing the elements of a CLRA violation, an inference
> of common reliance arises if representations are material, and materiality is judged by
> an objective standard rather than any understandings specific to the individual
> consumer. *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292-93
> (2002). Similarly, Plaintiffs' [false-advertising] claim and her claims under the
> fraudulent prong of the UCL will be determined by a "reasonable consumer standard,"
> which is whether the statement "has a capacity, likelihood or tendency to deceive or
> confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).
> Proving whether the challenged representations qualify under this standard will not
> require delving into issues specific to each consumer. For similar reasons, proving the
> "unfair" and "unlawful" prongs of the UCL also do not depend upon any issues
> specific to individual consumers, and neither does the breach of warranty claim.

*Lilly*, 2014 WL 4652283 at *8. Discussing the UCL in *Stearns*, the Ninth Circuit confirmed this rule

and explained its rationale:

> [T]o state a claim under either the UCL or the false advertising law, based on false
> advertising or promotional practices, it is necessary only to show that members of the
> public are likely to be deceived. To achieve its goal of deterring unfair business
> practices in an expeditious manner, the Legislature limited the scope of the remedies
> available under the UCL. A UCL action is equitable in nature; damages cannot be
> recovered.... We have stated under the UCL, prevailing plaintiffs are generally limited
> to injunctive relief and restitution.
>
> A [common law] fraudulent deception must be actually false, known to be false by the
> perpetrator and reasonably relied upon by a victim who incurs damages. None of
> these elements are required to state a claim for injunctive relief under the UCL. This
> distinction reflects the UCL's focus on the defendant's conduct, rather than the
> plaintiff's damages, in service of the statute's larger purpose of protecting the general
> public against unscrupulous business practices.

*Stearns*, 655 F.3d at 1020 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 312).

        Second, Hain's argument assumes that there can be only one material trait that causes a person to

buy a given product. That does not seem a necessary consequence of logic or law. It is entirely

possible, and the court has seen no law to the contrary, to both accept Hain's (surely correct)

observation that features other than the organic claim would have mattered to some consumers, and

yet to accept that, in the same transaction, both touted features motivated the purchase. (This is how

consumers shop: they buy products all the time for more than one reason.) The other-than-organic trait does not supplant the organic claim or prevent class members from sharing the latter as a material impetus to their purchases.

Third, the plaintiffs have shown that all buyers of the challenged products would have paid an "organic premium" as a result of the organic claim on Jason and Avalon Organics products. Or, more precisely, the plaintiffs have shown that, assuming that they will establish their claims on the merits, such an organic premium can be calculated and fixed at once for the whole class. Hain itself argues that just this premium is what the plaintiffs must show. (*See* ECF No. 248 at 21.) But that premium is independent of buyers' potentially varying motives. The buyer who chooses a product because it is labeled "organic," and the next buyer who does so because it claims "no animal testing," are both injured (on the plaintiffs' theory) if the organic claim proves false. Their different motives do not obviate their shared injuries.

### 3. *The plaintiffs' damages models*

The plaintiffs present the declaration of Stephen F. Hamilton on the issue of damages. (*See* ECF No. 243-14.) Dr. Hamilton is a professor in, and the longtime chair of, the Department of Economics at California Polytechnic State University, San Luis Obispo. (*Id*. at 3.) He sets out two models for calculating class damages. His first model "is a restitutionary measure that calculates the amount of revenue and profit Hain Celestial has wrongfully gained from sales of its [allegedly] mislabeled products," meaning, the Jason and Avalon products in this case. (*Id*. at 5.) The second calculates the "overcharge" or "price premium" that consumers were charged for the claimed "organic attribute" of the challenged Hain products. (*Id*.) His most essential view is that damages can be calculated on a class-wide basis. In his words, his models are "formulaic and can be executed using only data and information common to the proposed Class." (*Id*. at 20.) His models "do not rely on individualized information about Class members." (*Id*.)

In response, Hain offers the testimony of economist Keith R. Ugone. (*See* ECF No. 217-6.) Dr. Ugone finds various flaws in Hamilton's models. (*Id*. at 27-48.) He also concludes that calculating damages in this case must entail "individualized inquiry." (*Id*. at 49-53.) Pointing in part to Ugone's work, Hain argues that Hamilton's first method uses the "wrong legal measure of restitution," and

1   that his second shows various flaws and "flunks" the Supreme Court's decision in *Comcast*, *supra*.

2      "In this circuit," on the question of damages models and class certification, *"Leyva v. Medline*

3   *Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013), is the controlling case." *Jimenez*, 765 F.3d at 1167.

4   Among other things, *Leyva* explains the effect of the Supreme Court's decisions in *Dukes* and

5   *Comcast*. The upshot for this case is twofold. First, under *Comcast* and *Leyva*, the plaintiffs must

6   present a damages model that ties damages to their theory of liability. *See Leyva*, 716 F.3d at 514. In

7   *Comcast's* terms: "The first step in a damages study is the translation of the legal theory of the

8   harmful event into an analysis of the economic impact of that event." *Comcast*, 133 S. Ct. at 1435

9   (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011)

10  (emphasis in *Comcast*). Second, to comport with due process, the court must "preserve" the

11  defendant's right "to raise any individual defenses it might have at the damages phase." *Jimenez*, 765

12  F.3d at 1168.

13     The court has considered Hamilton's models, and Hain's objections, and concludes that through

14  Hamilton the plaintiffs have adequately shown that damages can be calculated on a class-wide basis.

15  Hamilton's methods are both tied to the plaintiffs' liability theory within the meaning of *Comcast*; his

16  models calculate the excess profits that Hain made in consequence of its (allegedly false) claim that

17  the products in question were organic. Moreover, consistent with *Comcast* and *Jimenez*, Hain will be

18  able to present any defenses that it might have to individual claims at the damages phase of this

19  proceeding.

20     Much of Hain's objection to Hamilton's work is in the nature of a Rule 702 challenge. That is not

21  inappropriate at the certification stage; there is no Rule 702 motion pending, but *Comcast* suggests

22  that, even without one, the court must vet the class's proposed damages model with some rigor. *See*

23  *Comcast*, 133 S. Ct. at 1433. The court has tried to do that. For instance, Hain argues that Hamilton

24  has failed to control for confounding variables, for product features other than the "organic" claim

25  that might have factored into a given product's enhanced price. (ECF No. 243 at 29 n.18.) But

26  Hamilton does address the problem of controlling for product aspects other than the

27  "organic-conventional" dichotomy. In fact, he proposes three different statistical methods to control

28  for the effect of other product traits. (ECF No. 243-14 at 26-33.) The other errors that Hain

1    identifies do not show that Hamilton is indeed mistaken; and they certainly do not disprove that

2    restitutionary damages in this case can be calculated commonly for the whole class.  Even if a fuller

3    vetting is needed at a later date under Rule 702, the plaintiffs' "submissions suffice to show that

4    means exist for proving [injury] on a class-wide basis, which is all that is required" at the certification

5    stage.  *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007).

6         Nor does it prevent certification that Hamilton has not actually performed the calculations that his

7    damages models dictate (in part apparently because discovery is ongoing and new information

8    continues to be revealed).  (*See* ECF No. 248 at 30-31; *see, e.g.*, Mencarelli Decl., ECF No. 248-11,

9    Exs. A-B.)  The point for Rule 23 purposes is to determine whether there is an acceptable class-wide

10   approach, not to actually calculate under that approach before liability is established.  One court in

11   this district has held that "no such calculation is required at the class certification stage."  *Chavez*,

12   268 F.R.D. at 379.  "At class certification, plaintiff must present a likely method for determining

13   class damages, though it is not necessary to show that his method will work with certainty at this

14   time."  *Id.*

15        Judge Koh's recent decision in *Brazil* does not change this conclusion.  There, the damages model

16   borrowed the price premium that a third-party study had calculated for "all natural" yogurt and

17   applied it to the "all natural" fruit products at issue in *Brazil*.  *See* No. 12-CV-0831, ECF No. 220 at

18   22.  The issues were whether the expert's regression analysis controlled for other variables affecting

19   price, whether he corroborated assumptions that he made (such as whether the products had the label

20   with the challenged "All Natural" claim), whether he rendered contradictory opinions in different

21   cases, and whether he established that packaged fruit consumers valued the "all natural" claim to the

22   same extent that yogurt customers might.  *Id.* at 18-23.  On a motion to decertify the class, the *Brazil*

23   court concluded that the damages model did not account for these issues.  *Id.*  The issues in this case

24   are different.  On this record, the proposed damages model controls for other variables, will be run on

25   a universe of known labels, is proposed by a reputable expert, and does not suggest the same

26   problems of extrapolation from one product universe to another, given that all the products at issue

27   are cosmetics.  *Cf. In Re Conagra Foods, Inc.*, No. CV 11--05379 MMC, 2014 WL 410440, at *7

28   (C.D. Cal. Aug. 1, 2014) (no identification of variables that would be built into the damages models

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   and no identification of the data to which the models could be applied).

2       Finally in this area, Hain argues that Hamilton's approach "violates the California Supreme

3   Court's recent holding in *Duran v. U.S. Bk., N.A*., 59 Cal.4th 1 (2014). (ECF No. 248 at 33-34.)

4   "There is no variable in Dr. Hamilton's model to account for the 'subtraction' of the 'many

5   purchasers [who] were satisfied with the Class Products' – the 'happy purchaser'" who is

6   "unharmed" and thus has no claim. (*Id.*) This is not the problem that *Duran* presented; the court

7   does not agree that case in any way impugns Hamilton's analysis. Insofar as is relevant here, the

8   problem in *Duran* was a bad sample that was then used to crudely extrapolate to class-wide damages.

9   *Duran*, 59 Cal.4th at 35-38. But Hamilton's models use no sampling at all. The court fails to see

10  how they run afoul of *Duran*.

11      The plaintiffs have plausibly shown that damages can be calculated on a class-wide basis. In

12  other words, damages raise another key issue toward common-question predominance.

13      A final housekeeping matter regarding damages is that Plaintiffs moved to exclude the Ugone

14  declaration on the ground that Ugone is not qualified on the subjects of his opinions and ignores

15  relevant evidence. (ECF No. 223 at 6.) The court considered Ugone's opinions to the extent that

16  Hain cited them in support of its challenges to Hamilton's proposed methodology. His opinions did

17  not change the court's conclusions. The court denies Plaintiffs' motion as moot.

18  **B. The Class Action is the Superior Method of Handling This Dispute**

19      The other main prong of Rule 23(b)(3) requires a class proponent to show that the class action is

20  the superior method for adjudicating the dispute. Factors to be considered in weighing this question

21  include: class members' interest in individually controlling litigation; the nature of the litigation; the

22  desirability of concentrating the claims in one suit; and the likely difficulties in managing the class

23  action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *Leyva*, 716 F.3d at 514.

24      Considering all these factors, the court has no difficulty concluding that a class suit is superior to

25  a galaxy of individual suits. The parties have not identified any other lawsuit in which plaintiffs have

26  sued Hain for the organic claims made on its Jason and Avalon Organics products. There would

27  seem to be little individual initiative for undertaking and "controlling" discrete, individual lawsuits.

28  As discussed above, the "nature of this litigation" – a consumer-mislabeling case in which individual

UNITED STATES DISTRICT COURT
For the Northern District of California

1   transactions involve only small amounts of money – is especially suited to Rule 23(b)(3). The court

2   does not see that this case will be any more or less manageable than similarly sized class actions.

3   There may well be the usual management difficulties in overseeing damages and in ruling out certain

4   Hain products as grounds for liability. But, in the Ninth Circuit, "damage calculations alone cannot

5   defeat class certification." *Leyva*, 716 F.3d at 513 (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*,

6   594 F.3d 1087, 1094 (9th Cir. 2010)). And, whatever the possible (and probably not unusual)

7   management difficulties, surely class treatment is superior to a multitude of one-off class suits,

8   especially where, given the small size of individual claims, such suits would probably not be brought.

9   *See Leyva*, 716 F.3d at 515 ("In light of the small size of the putative class members' potential

10  individual monetary recovery, class certification may be the only feasible means for them to

11  adjudicate their claims. Thus, class certification is also the superior method of adjudication.").

12      Hain argues that the Jason class nonetheless defeats superiority because Lauren Crivier, a plaintiff

13  in *Crivier v. Hain Celestial Group*, also challenges the same tagline "Pure, Natural, & Organic."

14  (ECF No. 248 at 16.) Unlike Ms. Brown, who challenges only the word "organic," Ms. Crivier

15  challenges the words "organic" and "natural." (*See* No. C 13-03227-LB, ECF No. 1.) Hain's

16  argument is that this possibility of serial class certification is fundamentally unfair. (ECF No. 248 at

17  16.) But the cases it cites – which are about exclusion of foreign individuals whose home countries

18  do not recognize class-action judgments – do not establish unfairness or lack of superiority here,

19  especially because (assuming she does not opt out) judgment in this case will bind Ms. Crivier on the

20  organic claim.

21  **IV.    RULE 23(b)(2) — INJUNCTION CLASS**

22      The plaintiffs move "alternatively" for an injunction-only class under Rule 23(b)(2). Such classes

23  are not appropriate where a monetary award is more than "merely incidental" to the desired

24  injunction. *E.g.*, *Dukes*, 131 S.Ct. at 2557. In any event, because the court is certifying a Rule

25  23(b)(3) class, the plaintiffs' alternative request under Rule 23(b)(2) is moot.

26                              **CONCLUSION**

27      The court certifies the following two classes:

28      The Jason Class," defined as:

1 | All persons who purchased a personal-care product in California sold under the Jason brand
2 | name between May 12, 2007 and January 31, 2011 other than those Jason brand personal-care products that are USDA-certified as organic.

3 | The "Avalon Organics Class," defined as:

4 | All persons who purchased a personal-care product in California sold under the Avalon
5 | Organics brand name between May 12, 2007 and the present other than those Avalon Organics brand personal-care products that are USDA-certified as organic.

6 | As to the Avalon Organics class, if the buyers of the reformulated products lose on the merits,

7 | they can be defined out of the class. An alternative approach to the issue of buyers of pre- and post-

8 | reformulated Avalon Organics Products is subclassing. The parties must confer within one week of

9 | the date of this order about the issue and submit a joint case-management statement one week later

10 | with any proposed change to the definition.

11 | The court denies Plaintiffs' motion to strike the Ugone declaration and the Mencarelli declaration

12 | as moot. The court denies Plaintiffs' motion for summary judgment without prejudice as premature.

13 | The court denies Hulu's motions to strike.

14 | This disposes of ECF Nos. 242, 223, 244, 251, and 252.

15 | **IT IS SO ORDERED.**

16 | Dated: November 14, 2014

17 | LAUREL BEELER
United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28