UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ROSMINAH BROWN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE HAIN CELESTIAL GROUP, INC.,<br><br>        Defendant. | Case No.  11-cv-03082-LB<br><br>**ORDER ON SUMMARY JUDGMENT**<br>[Re: ECF No. 323] |

## INTRODUCTION

This is a consumer-products mislabeling case. The plaintiffs allege that defendant Hain Celestial Group sold two lines of cosmetics whose front labels used the word "organic," but that did not contain at least 70% organic ingredients as required by the California Organic Products Act ("COPA"), Cal. Health & Safety Code § 110810 *et seq*. For this alleged violation, the plaintiffs bring claims under COPA itself and under two general California remedial statutes: the Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200-10; and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-84. (*See generally* 1st Am. Compl. – ECF No. 68 at 16-22.)[1] They also bring a claim for breach of express warranty under Cal. Comm. Code § 2313. (ECF No. 68 at 22-23.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

The plaintiffs allege that they bought various Hain cosmetic products under the brand names *Avalon Organics* and *Jason*.[2] The word "organic" obviously appears in the very name of — and so was on the front labels of — Avalon Organics products. And, for some time, Jason products carried the front-label tagline, "Pure, Natural, and Organic." Cosmetics in both lines underwent reformulations during the class period, as well as relabeling that (among other things) removed the "Pure, Natural, and Organic" tagline from Jason products. The court has certified two plaintiff classes (corresponding to the two Hain product lines) under federal procedural Rule 23(b)(3). (ECF No. 269 at 33.)

The plaintiffs now move for partial summary judgment with respect to 167 "Disputed Products." (ECF No. 322.) (A list of the Disputed Products appears at ECF No. 323 at 25-29.) The plaintiffs' motion and the parties' arguments present the court with three issues. (*See generally* ECF No. 323 at 5.)

First, do any of the Disputed Products satisfy the controlling definition of "cosmetic"? This definition is located in California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), of which COPA is a part; the "cosmetic" definition appears at Cal. Health & Safety Code § 109900. From the definition of "cosmetic" the Sherman Law excludes "soap" — but does not define "soap."

Second, what is the applicable definition of "soap"? In the absence of California law defining "soap," the parties offer competing alternatives. The plaintiffs argue that the federal regulatory definition (21 C.F.R. § 701.20) should apply; Hain contends that "soaps" should be defined as anything that "foams and cleanses." After settling on a definition, are any of the Disputed Products excluded from COPA's organic-labeling requirement as soaps?

Third, Hain explains that a number of the Disputed Products are federally regulated drugs. The plaintiffs do not deny this. Are such products subject to simultaneous regulation as cosmetics under COPA? Put differently, if a product satisfies the definitions of both "drugs" and "cosmetics" under California law, is that "drug" also subject to COPA's organic-labeling and –content rule as a

---

[2] The latter brand, strictly speaking, is "JĀSÖN."

ORDER (11-cv-3082 LB)                                    2

1  "cosmetic"? Relatedly, does federal law preempt COPA from covering Disputed Products that are
2  federally regulated drugs?
3      The parties have submitted deposition testimony, discovery responses, declarations, the
4  products' names (which, for the most part, indicate their intended functions), and samples of labels
5  for some (though not all) of the Disputed Products. The court held a hearing on May 28, 2015 and,
6  for the reasons given below, now partly grants and partly denies the plaintiffs' motion.

\* \* \*

## SUMMARY-JUDGMENT LAW

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. Federal courts sitting in diversity normally apply the substantive law of the forum state. *E.g., Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983).

## ANALYSIS

### I. MOST OF THE DISPUTED PRODUCTS ARE "COSMETICS"

The plaintiffs first move the court to hold that all the Disputed Products are "cosmetics" under relevant California law. The controlling definition of "cosmetic" resides in California's Sherman Food, Drug, and Cosmetic Law, of which COPA is a part. Under that law,

> "Cosmetic" means any article, or its components, intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance.
>
> The term "cosmetic" does not include soap.

Cal. Health & Safety Code § 109900. Neither the Sherman Law nor COPA defines "soap." (A point that is discussed in its own right, below. *Infra*, Analysis, Part II.)

The plaintiffs argue that Hain has already admitted that all the Disputed Products meet this

definition. The plaintiffs here cite to Hain's answers to the plaintiffs' Fourth Requests for Admission. In those requests, the plaintiffs asked, product by product, whether specific Avalon Organics and Jason products were "cosmetics." The plaintiffs defined "cosmetics" using the definition at Cal. Health & Safety Code § 109900. (ECF No. 330-3 at 3.) The plaintiffs defined "soap" by synopsizing the key parts of the federal regulatory definition. (*Id.* at 4.)

Asked to admit that these products were cosmetics, as so defined, Hain provided one of two answers. For some products, Hain simply "admitted" that the product met the given definition of "cosmetic." (*E.g,* ECF No. 323-9 at 6 (RFA #118).) For many others, Hain responded: "Admit that [the specific product] is a 'COSMETIC' under Plaintiffs' definition, but deny that the product is regulated as a 'cosmetic' under California's Sherman Law and COPA." (*E.g.*, *id.* at 8-9 (RFA #122).) More generally, Hain placed clear limits and reservations on its answers. It argued that some of the products were soaps, drugs, or pesticides under California law, and were thus outside COPA. (*Id.* at 4.) It noted the parties' disagreement over the applicable definition of "soap." (*Id.*) And, perhaps having in mind the plaintiffs' partial summary-judgment motions that were then pending, Hain stated that it in no way agreed to the further "legal implications" that might be said to follow from its responses. (*See id.* at 4-5.)

For every product covered by its responses, however, Hain did admit that the item in question met the governing definition of "cosmetic." Hain calls that the "plaintiffs' definition." But it is the Sherman Law's definition. It is the controlling definition. In the many responses in which Hain "admits" that a given product is a "cosmetic," but denies that it comes within COPA's reach, Hain does admit that the product at least initially meets the Sherman Law's definition of a "cosmetic." Its admissions on that point are binding. Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). Some of these products may ultimately be excluded from COPA's reach: either because they are "soaps," or because (as Hain argues) they are drugs that cannot be simultaneously regulated as a cosmetic. But those are secondary questions. The initial question — *Do these products meet the Sherman Law's definition of "cosmetic"?* — must be answered affirmatively.

The Disputed Products — at least those covered by the plaintiffs' Fourth Requests for Admission[3] — are all cosmetics.

This conclusion also follows (for some products) from Hain's arguments about "soap." Hain contends that 133 of the Disputed Products are "soaps" under the Sherman Law and are thus excluded from COPA's reach. (ECF No. 328 at 26.) This argument depends on Hain's proposed definition of "soap" as anything that "foams and cleanses." (*Id.* at 26-27.) The court discusses this definition at length below. For now, the important point is to notice that by claiming that 133 of the Disputed Products "foam[] and cleanse[]" the human body, Hain effectively concedes that these products meet the Sherman Law's initial definition of a "cosmetic" — precisely because they are "intended to be . . . applied to . . . the human body . . . for cleansing." *See* Cal. Health & Safety Code § 109900. Whether they can then be removed from COPA's reach as "soaps" is, again, a subsequent issue.

The court would raise an additional point. There are some products that, in answering the plaintiffs' discovery requests, Hain admitted are cosmetics, but that, in its summary-judgment opposition, Hain argues are not cosmetics, after all. For example, Hain's discovery responses admit that diaper balm is a cosmetic. (ECF No. 323-9 at 16.) Its summary-judgment brief denies this, pointing out that the purpose of diaper balm is to alleviate (what else?) diaper rash — and that the product does not meet the initial definition of a cosmetic. (*See* ECF No. 328 at 20.) So, too, for therapeutic gels intended to relieve pain. (*Compare, e.g.,* ECF No. 323-9 at 167-68 (admissions) *with* ECF No. 328 at 20 (brief).) Some or all of these latter products are federally regulated drugs. (*See* ECF No. 328 at 28-30.)

Calling such products "cosmetics" seems counterfactual. And patently outside the Sherman Law's definition of "cosmetics." The plaintiffs insist that Hain is bound to its admissions. For the most part, that is true and uncontroversial. Can it be true for these "cosmetics" that are obviously not cosmetics? Can Hain's admissions bind the court to conclusions that seem openly

---

[3] The products covered in the Fourth Requests for Admission are not perfectly coextensive with those that the plaintiffs have listed (ECF No. 332-5 at 25-29) as the Disputed Products presently at issue. The discovery requests covered 142 products, by the court's count, while the Disputed Products list names 167.

counterfactual? The court does not think that a party's admissions can bind it to "facts" that are at odds with empirical reality. Discounting these particular admissions would "align[] the record to reality, and thus provide[] a more accurate basis upon which the Court can reach the merits" of this case. *See Jones v. Tauber & Balser, P.C.,* 503 B.R. 162, 175 (N.D. Ga.), *modified,* 503 B.R. 510 (N.D. Ga. 2013). This is particularly so where the ultimate conclusion sought — that a given product is a statutorily defined "cosmetic" — is not purely factual but primarily legal. The plaintiffs have not shown that, as a matter of law, products in this group are "cosmetics" under the Sherman Law. (The court observes that Hain's argument at the hearing suggested that its position now stems from its argument that the products are drugs that are excluded from COPA's reach and may not be an argument that the products do not meet the Sherman Law's definition of a "cosmetic." The discussion about the Sherman Law's cosmetic definition focused on soap, though, and the court is unwilling on this record to bind Hain to its admissions about these balm-and-gel products, which are not obviously cosmetics, at least on this record.)

\* \* \*

## II. CALIFORNIA WOULD ADOPT THE FEDERAL DEFINITION OF SOAP

### A. The Parties' Proposed Definitions

The Sherman Law excludes soap from its definition of "cosmetics." *See* Cal. Health & Safety Code § 109900. It does not, however, define "soap." *See id.* Neither does COPA. The parties disagree about how "soap" should be defined. The plaintiffs argue for a more technical, and ultimately narrower, definition drawn from counterpart federal law; Hain proposes a simpler and broader definition that would carry many of the Disputed Products into the soap exclusion and thus outside COPA's cosmetics provisions.

California's definition of "cosmetic" is identical to the definition in the U.S. Food, Drug, and Cosmetic Act ("FDCA"). *Compare* Cal. Health & Safety Code § 109900 *with* 21 U.S.C. § 321(i). This is not a coincidence. California enacted its definition of "cosmetics" in 1961 to fill a potential gap in the federal regulation of such products. Specifically, due to concerns that "cosmetics" manufactured and sold intrastate might be outside the jurisdictional reach of the federal government, California passed the California Cosmetics Act (now part of the Sherman Law) "for

the purpose of polic[ing] the adulteration and misbranding of cosmetics manufactured and sold in intra-state commerce." (ECF No. 323-14) (Letter from Sen. Fred S. Farr to Gov. Edmund G. Brown Re: S.B. 621 (Farr), June 19, 1961.); *see also* (ECF No. 323-15 (Cal. Office of Consumer Counsel Memorandum to Gov. Edmund G. Brown Re: Why We Need A Cosmetic Law: SB 621 (Farr), April 28, 1961) ("Many cosmetics do not cross state lines on their way to consumers and so are not subject to the Federal jurisdiction. To give their residents complete protection, therefore, thirty states have passed a cosmetic law to pick up where the Federal law leaves off, but California still has not."); (ECF No. 323-16) (Letter from Dir. of Cal. Dept. of Public Health to Gov. Edmund G. Brown Re: S.B. No. 621 (Farr), June 28, 1961 ("We believe this to be very important legislation *as it gives us authority to enforce in California the essential provisions of the Federal Cosmetics Act*.") (emphasis added); (ECF No. 323-18) (Analysis of S.B. 621 (Farr) by Legislative Analyst, June 9, 1961) ("The bill would provide an intrastate commerce law governing adulterated and misbranded cosmetics which is comparable to the present federal laws governing interstate commerce in cosmetics.") To accomplish this purpose, the California law was "drafted to conform as closely as possible to the Federal statute." (ECF No. 323-14 at 2.)

Both California and federal law exclude "soap" from the term "cosmetic." Cal. Health & Safety Code § 109900; 21 U.S.C. § 321(i). Where California law lacks a definition of "soap," the federal regulations supply one. The FDA defines "soap," for purposes of the FDCA, as "only [those] articles that meet the following conditions":

> 1. The bulk of the nonvolatile matter in the product consists of an alkali salt of fatty acids and the detergent properties of the article are due to the alkali-fatty acid compounds; and
>
> 2. The product is labeled, sold, and represented only as soap.

21 C.F.R. § 701.20. The FDA first adopted this definition in 1958, three years before California enacted its definition of "cosmetic." *See* 23 Fed. Reg. 7483 (Sept. 26, 1958). For convenience, the court calls this the "federal definition." It is the definition that the plaintiffs advocate for.

Hain calls this definition "outdated." (ECF No. 328 at 21.) Hain proposes a more "contemporary" definition that (it contends) is more in line with modern "soap technology" and the "modern marketplace for 'soap.'" (*See id.* at 12, 22-24.) The definition that Hain proposes is "a

ORDER (11-cv-3082 LB) 7

product that foams and cleanses." (*E.g., id.* at 22.) This in Hain's view reflects the "common definition of soap" as "a substance that is used for washing something." (ECF No. 328 at 22.) Hain's underlying point seems to be that consumers today recognize and use other products in ways that they have traditionally used (let us call them) true soaps: Products such as body washes, "dual-purpose shampoo–body cleaners," "shower or bath gels," or "moisturizing cleaners." (*Id.* at 22-24) (quoting in part Cal. Code Regs. tit. 17, § 94508(a)(6)). Under its "foams and cleanses" definition, Hain argues that 133 of the Disputed Products qualify as soap and thus fall outside COPA's cosmetics regulation. (*Id.* at 26-27; Mencarelli Decl. – ECF No. 328-9 at 6-14, ¶¶ 18-23 and Table 2.)

* *

**B. The Federal Definition of "Soap" Should Apply Under the Sherman Law**

The court concludes that the federal definition must apply under the Sherman Law and COPA. The primary reason for adopting the federal definition is that using Hain's "foams and cleanses" definition would cause sharp and unacceptable consequences. Hain's definition would remove from the Sherman Law products that the statute expressly covers. In relevant part, the Sherman Law defines "cosmetics" as products that are "applied to" the body "for *cleansing*." Cal. Health & Safety Code § 109900 (emphasis added). Without further analysis, it is obvious that Hain's proposed definition of soap — anything that "foams and *cleanses*" — would exclude from the Sherman Law any personal-care product that is meant for "cleansing." *Yet the Sherman Law expressly reaches such products.* And, indeed, this is how Hain applies its "foams and cleanses" definition. With that as a test, Hain argues that the Sherman Law and COPA exclude 133 of the Disputed Products in the following categories: "(1) Bath and Shower Washes, Scrubs, Cleansers, and Gels; (2) Facial Washes, Scrubs, and Cleansers; (3) Hand Washes; and (4) Shampoos." (ECF No. 328 at 26.) On their face, because they "cleanse" the human body, these products all appear to be "cosmetics" under the Sherman Law's definition. On Hain's view, because they "foam and cleanse," these are all excluded soaps.

This is untenable. The broad "foams and cleanses" definition abrades elemental rules of statutory construction. The most basic canon of statutory interpretation, after all, is that statutes

should be read to give effect to the legislature's intent. *See, e.g., In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001) ("The California Supreme Court has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.'") (quoting in part *People v. Massie*, 19 Cal.4th 550, 569 (1998) *cert. denied*, 526 U.S. 1113 (1999)). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *First T.D.*, 253 F.3d at 527 (quoting *Pacific Gas & Elec. Co. v. County of Stanislaus,* 16 Cal.4th 1143, 1152, (1997)). Here, the words of the Sherman Law overtly bring into the law's scope any product that is applied to the human body "for cleansing"; yet Hain would use that same word, "cleanse," to remove exactly those products from the law's reach. That would be the opposite of giving effect to the legislature's apparent intent.

In this vein, Hain recognizes that, "It is axiomatic that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (ECF No. 328 at 22) (quoting *United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014) (internal quotation omitted)). Hain then argues that the narrow federal definition of "soap" "would eviscerate the 'soap' exception altogether." (ECF No. 328 at 22.) The court thinks that Hain gets this point backward. It is Hain's *broad* definition of "soap" that would make "inoperative," "insignificant," and effectively "void" the Sherman Law's definition of "cosmetics" as (among other things) products for "cleansing" the body.

The Ninth Circuit has explained that, "[A]ny exemption from . . . remedial legislation . . . must . . . be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of [the legislature]. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process . . . ." *Mount Graham Coal. v. Thomas*, 53 F.3d 970, 975 (9th Cir. 1995) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). In other words, "statutory exceptions are to be strictly construed so as to prevent the exception from swallowing the rule." *United States v. Luna*, 768 F. Supp. 705, 708 (N.D. Cal. 1991) *aff'd sub nom. United States v. Perez Luna*, 15 F.3d 1093 (9th Cir. 1993) (citing *A.H. Phillips*, 324 U.S. at 493). Hain's proposed definition of "soap" would do exactly that — using the same term ("cleanse") to wrench from the Sherman Law that which the law's terms expressly

1   reach. The court cannot adopt such a construction.

2   That the Sherman Law expressly defines "cosmetics" as covering products meant for
3   "cleansing" the body, while excluding "soaps," suggests that the law is meant to reach even
4   products that "foam and cleanse" while excluding a narrower category of things called "soap."
5   Cosmetics are this system's planet, while soaps are a moon. The federal definition would better
6   effect the legislative intent apparent in the Sherman Law's plain text. It would thereby yield a
7   COPA whose parts were in internal harmony, whereas Hain's broad reading of "soap," whatever
8   merit it has, would tend to wipe out the Sherman Law's express inclusion of "cleansing" products.

9   This interpretation has the added virtue of springing from the Sherman Law's history. That act,
10  again, was modeled on the FDCA and was intended to bring into California's intrastate
11  jurisdiction the same range of products that its FDCA model had brought under federal regulation.
12  When California enacted its FDCA-tracking definition of "cosmetic" in 1961, the FDA had
13  already settled on the definition of "soap" for which the plaintiffs argue here. That federal
14  definition must embody a truer reading of the Sherman Law than a definition forged decades later
15  in the furnace of litigation. This is not to question Hain's good faith in championing its preferred
16  definition. It is only to notice that the federal definition is rooted in the history of the California
17  statute that is under consideration.

18  Other considerations support adopting the federal definition. For example, Hain urges that its
19  "foams and cleanses" definition is, like COPA, "consumer-driven," "consumer-friendly," and
20  "consistent with consumer expectations." (ECF No. 328 at 23-25.) The court disagrees. Hain's
21  definition is certainly simpler than the more technical description of the federal regulatory
22  definition. But that does not make it "consumer-friendly" so much as colloquial, lay, and inexact.
23  It is not "consumer-friendly" merely for being demotic.

24  Nor would Hain's definition yield a statutory scheme "consistent with consumer
25  expectations." The court thinks that California consumers would not expect that a sizeable fraction
26  of the cosmetic products that they normally buy could be legally labeled "organic" without having
27  to actually be so. Even less would the ordinary consumer be interested in gathering soaps and
28  body washes (for instance) under the same statutory definition, just to comport with their roughly

similar expectations about how these products are used or colloquially described. What California consumers would expect is that products labeled "organic" will generally fall within COPA's statutory guarantee of truthfulness; will fall, in other words, within the rules that their legislature has passed to ensure that "organic" cosmetics are truthfully labeled. As Hain notes, "COPA's cosmetics provisions were enacted based on consumer demand for organic products . . . ." (ECF No. 328 at 24.) More precisely, the COPA rule in question reflects the legislature's concern that those increasingly popular organic products not be labeled or advertised falsely. The federal definition of "soap" yields an exclusion that is narrower and more truly consumer-friendly. That definition advances the purposes of the Sherman Law, generally, and, more specifically, those of COPA.

One more point will wrap up this part of the discussion. Hain argues that the federal definition is "inconsistent" with other California regulations. (ECF No. 328 at 23.) Here, Hain points to the definitions of certain "consumer products" that appear in California air-pollution regulations. (*Id.*) It suggests that these support its broader definition of soap and that, because these too are "consumer protection" rules, they should weigh into the court's analysis under the Sherman Law and COPA. (ECF No. 328 at 23-24.) Specifically, Hain points to air-quality regulations that define

> "'Facial Cleaner or Soap,'" as "a cleaner or soap designed primarily to clean the face," which may include "facial cleansing creams, semisolids, liquids, lotions, and substrate-impregnated forms." Cal. Code Regs. tit. 17, § 94508(a)(46). Similarly, the regulations define "General-use Hand or Body Cleaner or Soap'" as "a cleaner or soap designed to be used routinely on the skin to clean or remove typical or common dirt and soils." Cal. Code Regs. tit. 17, § 94508(a)(60). Examples include "hand or body washes, dual-purpose shampoo-body cleaners, shower or bath gels, and moisturizing cleaners or soaps." *Id.*

(ECF No. 328 at 23.)

The court is not convinced that these regulations are persuasive. If they are "consumer protection" rules, for starters, they are so only in the broadest sense. These air-pollution regulations seek to protect Californians as members of the public who must have clean air to breathe. To ensure good air quality, the regulations set out rules and standards for different

products and activities, among which are "consumer products."[4] The relevant part of COPA, rather differently, seeks to protect Californians *as consumers* — as members of the public who must be assured truthfulness in their purchases. These regimes have different purposes, and different objects, and this should dissuade from any easy assumption that the definitions and product groupings established for one field translate seamlessly into the other. Furthermore, even if the air-pollution regulations could speak helpfully to the Sherman Law–COPA analysis, those regulations are for present purposes inconclusive. Both rules that Hain cites speak in terms of *or*. Thus, "Facial Cleaner *or* Soap," "Hand or Body Cleaner *or* Soap," both of which are more generally described as "cleaners *or* soaps." (*See* ECF No. 328 at 23) (emphases added). Hain's argument treats these as semantically conjunctive, so that the nominally distinct products effectively collapse to one: soap. But these regulations do not indicate whether they are using a conjunctive or disjunctive *or*. Reading the plain text of these regulations, they seem to preserve the distinction between various "cleaners," on the one hand, and, on the other, "soaps." For present purposes, then, the air-pollution rules are inconclusive. We are returned to our analysis directly under the Sherman Law and COPA.

\* \*

### C.  Which Products Are Soaps?

Having adopted the federal definition of "soap," it remains to ask whether the record evidence places any of the Disputed Products into that category. On this point the testimony of Hain's Senior Manager, Mr. Victor Mencarelli, is relevant. Mr. Mencarelli is Hain's designated Rule 30(b)(6) witness on matters related to Hain's "personal[-]care products, their properties, intended use(s), ingredients, and actual performance." (*See* ECF No. 328-9 at 2, ¶ 2.) He has made two salient statements. On the one hand, during his deposition, Mr. Mencarelli testified that none of the challenged Avalon Organics or Jason products qualifies as soap under the federal definition. (ECF Nos. 322-9 at 9 (deposition pp. 50-51), 323-12 (deposition exhibit).) On the other hand, in

---

[4] *See, e.g.,* Cal. Code Regs. tit. 17 §§ 80100 to -300 ("Smoke Management Regulations for Agricultural and Prescribed Burning"), 86500 to -01 ("Large Confined Animal Facilities"), 92000 to -540 ("Abrasive Blasting").

his declaration opposing the plaintiffs' present summary-judgment motion — and applying Hain's "anything that foams and cleanses" definition — Mr. Mencarelli states that 133 of the Disputed Products qualify as "soap" and that these all "contain alkali salts and fatty acid[s]" that "enable the products to foam and cleanse." (ECF No. 328-9 at 7-14, ¶ 23; *see* ECF No. 328 at 26.)

The plaintiffs argue that Mr. Mencarelli's deposition testimony, that no Hain product meets the federal definition of "soap," is conclusive against Hain on this point. Are the plaintiffs correct? "The Ninth Circuit has not yet decided the issue." *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n. 11 (W.D. Wash. 2014); *accord Coal. for a Sustainable Delta v. John McCamman*, 725 F. Supp. 2d 1162, 1172 & nn. 10-12 (E.D. Cal. 2010). "Some courts suggest that a corporation is bound by the testimony of its Rule 30(b)(6) designee." *MKB Constructors*, 49 F. Supp. 3d at 829 (citing, *inter alia*, *Mitchell Eng'g v. City & Cnty. of San Francisco,* 2010 WL 455290, *1 (N.D. Cal. Feb. 2, 2010) ("A 30(b)(6) witness testifies as a representative of the entity, [and] his answers bind the entity . . . .")). "Other courts hold that 'testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted . . . and that such testimony does not 'bind' the designating entity 'in the sense of [a] judicial admission.'" *John McCamman*, 725 F. Supp. 2d at 1172 and n. 11 (quoting in part A.*I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630, 637 (7th Cir. 2001) and citing, *inter alia*, 8A C. Wright *et al.*, *Federal Practice and Procedure* § 2103, pp. 469-70 (2010) ("[A]s with any other party statement, [Rule 30(b)(6) deposition statements] are not 'binding' in the sense that the corporate party is forbidden to call the same or another witness to offer different testimony at trial."). "In the absence of specific direction from the Ninth Circuit, this court adopts a middle ground and holds that a party cannot [disavow] the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the [disavowal]." *MKB Constructors*, 49 F. Supp. 3d at 829 (citing cases).

Mr. Mencarelli is Hain's Rule 30(b)(6) witness; he was presented with the federal definition of "soap", and he testified that no Avalon Organics or Jason product met that definition. Hain of course advocates for an entirely different definition of "soap." But it has not contradicted or qualified Mr. Mencarelli's testimony regarding the status of Hain's products under the federal

1  definition. There is nothing before the court that indicates why Mr. Mencarelli's testimony on this
2  point should not bind Hain.

3  Mr. Mencarelli's latter averment — that all the products that Hain considers soaps "contain
4  alkali salts and fatty acid[s]" — speaks partially to the first prong of the federal definition. *See* 21
5  C.F.R. § 701.20 ("The bulk of the nonvolatile matter in the [soap] product consists of an alkali salt
6  of fatty acids and the detergent properties of the article are due to the alkali-fatty acid
7  compounds[.]") Even if the 133 products met that first part of the federal definition, however, on
8  the record before the court, and judging from Hain's descriptions of its products (*see* ECF No.
9  328-9 at 8-14), it seems clear that only 14 of these 133 products meet the federal definition's
10  second prong. To be "soap" under the FDCA, a product must also be "labeled, sold, and
11  represented *only* as soap." *Id.* (emphasis added). Judging from Mr. Mencarelli's declaration, only
12  14 of the 133 products that Hain identifies as soap can meet this requirement. These are products
13  whose names include the word "soap." (*See* ECF No. 328-9 at 8-14.) The remaining 119 products
14  that Hain would call "soap" were named and sold as "body wash," "bath and shower gel," "hand
15  and body lotion," "shampoo," or "makeup remover." (*See id.* at 11.) From the plain language of
16  the federal definition, and from Hain's evidence, the court concludes as a matter of law that, for
17  this additional reason, these 119 products were not "soaps."

\* \* \*

## III. CAN FEDERALLY REGULATED DRUGS ALSO BE REGULATED AS COPA COSMETICS?

Finally, there is the question of Hain products that qualify as both cosmetics and drugs. Are such products subject to COPA's organic-content rule? Both California and federal law define a "drug" as:

    a) Any article recognized in an official compendium;

    b) Any article used or intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human beings or any other animal;

    c) Any article other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal.

      d)  Any article used or intended for use as a component of any article designated in subdivision (a), (b), or (c) of this section.

Cal. Health & Safety Code § 109925; 21 U.S.C. § 321(g)(1). Hain argues that 25 of the Disputed Products qualify as drugs and, as such, "should be excluded from [COPA's] cosmetic standard." (ECF No. 328 at 28.) These products, Hain says, fall into five categories: "(1) Conditioners; (2) Baby care; (3) Oral care; (4) Sun Protection (Sunscreens, Lip Balms and Moisturizers); and (5) Therapeutic Gels." (*Id.*) 9, 27.) Hain explains that all 25 of these products are "federally[]registered drugs." (*Id.* at 9, 27.)

The questions in this area reduce to two. First, does the FDCA preempt state-law claims alleging that "federally registered drugs" violated state-law cosmetic-labeling regulations (*i.e.*, COPA)? Second, under California law, can products be simultaneously regulated as drugs and cosmetics? More precisely, if a product is a drug, but also meets the Sherman Law's definition of "cosmetic," is that product excluded from COPA's organic-content rule?

\* \*

**A.  The Ninth Circuit Has Held That State-Law Claims Are Not Preempted**

First, Hain argues that the "FDCA expressly preempts state[-]law labeling requirements that are 'different from,' 'additional to,' or 'otherwise not identical with' federal labeling requirements." (ECF No. 328 at 29) (quoting in part 21 U.S.C. § 379r(a)(2)). Subjecting its federally registered drugs to COPA's organic-labeling requirement would, in Hain's view, run afoul of § 379r. Recognizing that the FDCA does not prohibit the "organic" labeling that COPA addresses, Hain adds: "[P]reemption is certainly appropriate when a state law prohibits labeling that is permitted under federal law. But it is *also* appropriate when a state law prohibits labeling that is *not prohibited* under federal law." (ECF No. 328 at 29) (quoting *Bowling v. Johnson & Johnson*, 2014 WL 5643955, \*2 (S.D.N.Y. Nov. 4, 2014) (emphases in original and by Hain)).

The Ninth Circuit's recent decision in *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (2015) settles this point. It tells us that the FDCA does not preempt the plaintiffs' COPA-based claims, insofar as they are directed at Hain's drug products.

The *Astiana* court reversed a dismissal that had been granted in Hain's favor. In so doing, the Ninth Circuit rejected a preemption argument nearly identical to the one that Hain advances here.

ORDER (11-cv-3082 LB)                 15

The plaintiffs in *Astiana* alleged that Hain had falsely labeled some of its Jason products as being "natural." *Astiana*, 783 F.3d at 756. They brought claims under California's UCL and false-advertising law. *Id.* The district court agreed with Hain that these claims were preempted by the following language in the FDCA:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that *is different from or in addition to, or that is otherwise not identical with*, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter . . . .

*See Astiana*, 783 F.3d at 756-57 (quoting 21 U.S.C. § 379s(a)) (emphasis added). The effective terms of this statute are identical to the language (from 21 U.S.C. § 379r(a)(2)) that Hain argues preempts the plaintiffs' state-law claims in this case. The drug products that Hain argued were preempted from California state-law claims in *Astiana* are, to some extent, the same drugs that Hain would preempt from COPA's reach here. (The parties agreed on this last point at the May 28, 2015 hearing.)

The Ninth Circuit rejected Hain's preemption argument. Calling preemption a "purely legal question," it held: "[T]he [FDCA] does not expressly preempt California's state[-]law causes of action that create consumer remedies for false and misleading labels." *Astiana*, 783 F.3d at 756. More precisely, *Astiana* held that the FDCA did not preempt state-law remedies based on "violation of *federal* standards." *Id.* at 757 (emphasis added). That is not exactly the present case. Here, the plaintiffs allege that Hain violated *state* labeling standards. The *Astiana* court's reasoning, however, extends to the latter situation. That court explained that, consistently with 21 U.S.C. § 379s, state-law claims can enforce "any state rules that are fully consistent with" or "parallel" to "federal requirements." *Id.* at 757-58. The court then more concretely wrote:

> FDA regulations do not require Hain to label its products as "All Natural" or "Pure Natural." If Astiana's suit ultimately requires Hain to remove these allegedly misleading advertising statements from its product labels, *such a result does not run afoul of the FDCA, which prohibits "requirement[s]" that are "different from," "in addition to," or "not identical with" federal rules*.

*Id.* at 758 (emphasis added). Substitute "organic" for "'All Natural' or 'Pure Natural'" and the *Astiana* holding directly answers Hain's present argument.

The *Astiana* decision also answers Hain's specific point about state law being preempted where federal law has "not prohibited" a certain claim. (*See* ECF No. 328 at 29.) Hain made a similar argument in *Astiana*. There, Hain contended that because the FDA "has never issued regulations regarding the use of 'natural' on cosmetic labels," the court should read this as "tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit." *Id.* at 758. Hain does not press the argument so far here. But, even in its more limited guise, Hain's "not prohibited" argument suffers the same problems that the Ninth Circuit identified in *Astiana*. Here, as in *Astiana*, Hain's contention "proves too much." *Id.* "By this logic, a manufacturer could make any claim — wild, untruthful, or otherwise — about a product whose contents are not addressed by a specific regulation." *Id.*

The court concludes that, under *Astiana*, the FDCA does not preempt the plaintiffs' California-law claims as they relate to Hain's cosmetic products that are also "federally registered drugs."

* *

**B.  Dual-Quality Products Are Subject to Dual State Regulation**

The next issue occurs inside California law. This question asks whether drugs can also be regulated as cosmetics under COPA. Or, more exactly, whether products that qualify as both drugs and cosmetics are subject to COPA's organic-content labeling rule. In sum, Hain argues that, if a product is a drug, then it is "outside the scope of COPA's 'cosmetic' definition" or, in any event, is "excluded from COPA." (*E.g.,* ECF No. 328 at 9, 17, 29-30.) The plaintiffs respond (again, in sum) that a product can be simultaneously regulated under California law as both a drug and a cosmetic; a drug is not *ipso facto* exempt from COPA's organic-labeling rule.

The court has neither found nor been given case law in this area. On balance, it finds the plaintiffs' reasoning more persuasive. Hain argues that California has set up a "separate regulation" for the misbranding of drugs. That is correct. The statute that Hain points to, Cal. Health & Safety Code § 11340, provides:

> Any drug or device is misbranded unless it bears a label containing all of the following information:
>
> (a) The name and place of business of the manufacturer, packer, or distributor.

> (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.
>
> Reasonable variations from the requirements of subdivision (b) shall be permitted. Requirements for placement and prominence of the information and exemptions as to small packages shall be established in accordance with regulations adopted pursuant to Section 110380.

(*See* ECF No. 328 at 14, 29.) In the present context, this statute is notable for what it does *not* say. It requires a quantity-based listing of a drug's contents — but says nothing about claims that such contents are organic. Nor does it expressly preclude the overlapping application of other state laws. Such a term is common in statutes and usually rendered by such language as, "Notwithstanding the provisions of any other law," or, "This law shall establish the exclusive requirements for . . . ." Nothing like that appears here.

Federal FDCA regulations openly contemplate that some products will be subject to regulation as both cosmetics and drugs. *See* 21 C.F.R. § 701.3(d).[5] Given that California's cosmetic law was originally modeled on the FDCA, there is good reason to construe the state's regulatory scheme as hewing in this respect, too, to its federal counterpart. Needless to say, there is nothing logically preventing, or even impeding, a product that is a drug from being subject to COPA's rather differently premised concern for truthful organic-content claims. Perhaps most conclusively, neither the Sherman Law nor COPA itself excludes drugs from COPA's organic-labeling rule. The Sherman Law's express exclusion of "soap" confirms that the California legislature is capable of writing such an exclusion when it wants to. In its absence, there is little reason to pluck drugs from the reach of COPA's organic-labeling rule, and rather more reason to nestle them within COPA's ambit.

\* \* \*

---

[5] "Where a cosmetic product is also an over-the-counter drug product, the declaration shall declare the active drug ingredients as set forth in 201.66(c)(2) and (d) of this chapter, and the declaration shall declare the cosmetic ingredients as set forth in 201.66(c)(8) and (d) of this chapter." 21 C.F.R. § 701.3(d).

ORDER (11-cv-3082 LB)   18

## IV. CONCLUSIONS — SPECIFIC PRODUCTS

### A. Cosmetics

What do these answers mean for the Disputed Products? Which are cosmetics and which soaps? First, the cosmetics. The court holds that all the products covered in Hain's answers to the plaintiffs' Fourth Requests for Admission (ECF No. 323-9 at 6-308) are cosmetics under Cal. Health & Safety Code § 109900. This conclusion is based on Hain's admissions that these products meet the Sherman Law's initial definition of "cosmetic" — recognizing that this did not constitute Hain's further agreement that the given products might be excluded from COPA's reach for some other reason: because they are "soaps" or "drugs." For those products for which the record contains an authenticated label, the court's holding additionally rests on that evidence.

Even if some of these products are also "drugs," under the court's holding, they are also "cosmetics" subject to COPA's organic-content and -labeling requirements.

The court denies summary judgment on this point with respect to those items that appear on the Disputed Products list (ECF No. 323 at 25-29) but do not appear in Hain's answers to the plaintiffs' admission requests. The court declines to hold that these products are "cosmetics" under the Sherman Law and COPA. The plaintiffs urge the court to count these items as "cosmetics" by their similarity to products that are covered by Hain's discovery responses. (ECF No. 323 at 16.) "For instance," the plaintiffs argue, "Hain has admitted that the Jason® SPF 36 Family Sunblock (J08300)" is a cosmetic. (*Id.*) "There is no reason [this] same admission[] would not apply to the Jason® SPF 20 Facial Natural Broad Spectrum Sunscreen (J08327) — a product that is identical other than the difference in the 'sun protection factor,' or 'SPF.'" (*Id.*) That is not an unreasonable position. And the court is aware that discovery responses do not exist for these products because they came to light only after the plaintiffs had served their last requests for admission and discovery had closed. Still, the court is uncomfortable entering summary judgment on these products when the only thing supporting that conclusion are the products' names on a list.

The court calculates that 142 products appear in the Fourth Requests for Admission and are therefore cosmetics. From 167 total Disputed Products, this leaves a remainder of 25 that the court has not deemed "cosmetics." Of course, it is the substantive holding that matters here and not the

1  court's numerical count. If the latter is off, it is the substantive ruling that controls.

2  The court further excludes from its holding on cosmetics those products that, whatever Hain's admission, seem plainly outside the Sherman Law's definition. This includes Avalon Organics Zinc Diaper Balm (AV37110). It also includes the following pain-relief gels: Jason Tea Tree Cooling Mineral Gel Pain Reliever (J03002); Jason Tea Tree Cooling Mineral Gel Pain Reliever (J03022); Jason Cooling Mineral Gel - Travel Size (J01332); Jason Tea Tree Soothing Gel (J04020); and Jason New Cell Therapy Oil Free Gel (J50134). It does not include Jason Aloe Vera 98% Moisturizing Gel – Travel Size (J04104). The very name of the last product indicates that it is a moisturizer and thus comes within the Sherman Law's definition of "cosmetic."

* *

**B.  Soaps**

The court holds that, as a matter of law, none of the Disputed Products is a "soap" under the definition appearing at 21 C.F.R. § 701.20. This conclusion rests primarily on the testimony of Hain's Rule 30(b)(6) witness, Victor Mencarelli. There is nothing that Hain presented that indicates why Mr. Mencarelli's testimony should not bind Hain. For the 119 Disputed Products that Hain contends are soaps, but whose labels describe the product as anything other than soap (such as "body wash," and so on), this conclusion rests on the additional ground that these products were not "labeled, sold, and represented only as soap." *See* 21 C.F.R. § 701.20.

* * *

## CONCLUSION

For the reasons and to the extent described above, the court partly grants and partly denies the plaintiffs' motion for partial summary judgment. This disposes of ECF No. 323.

**IT IS SO ORDERED.**

Dated: May 30, 2015

_____
LAUREL BEELER
United States Magistrate Judge