1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br><br>     v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br>                         Defendant. | Case No. 11-cv-03082 LB<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:        October 8, 2015<br>Time:        9:30 a.m.<br>Location:  Courtroom C<br>Judge:      Hon. Laurel Beeler |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION.......................................................................................................... 1

BACKGROUND............................................................................................................ 2

I.      FACTUAL BACKGROUND ............................................................................... 2

II.     PROCEDURAL HISTORY ................................................................................. 3

        A.      The Litigation .................................................................................. 3

        B.      Settlement Negotiations ................................................................. 7

III.    THE PROPOSED SETTLEMENT ..................................................................... 7

        A.      Payments to the Class Members................................................... 8

        B.      Release of Plaintiffs' Claims ....................................................... 9

        C.      Modified Class for Settlement Purposes ................................... 9

        D.      Payment of Plaintiffs' Reasonable Attorneys' Fees and
                Litigation Costs, and Service Awards to the Plaintiffs ......................................... 10

ARGUMENT ................................................................................................................ 10

I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL
        OF THE SETTLEMENT ................................................................................... 10

        A.      The Applicable Legal Standard............................................. 11

        B.      This Settlement Is the Product of Serious, Informed
                and Arm's-Length Negotiations........................................... 12

        C.      The Settlement Has No "Obvious Deficiencies" and Treats No
                Members Of the Class Preferentially ................................... 12

        D.      The Settlement Falls Within the Range Of Possible Approval ............................ 13

II.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT
        CLASS IS APPROPRIATE ............................................................................... 14

III.    THE PROPOSED CLASS NOTICE SATISFIES THE
        REQUIREMENTS OF DUE PROCESS ......................................................... 15

        A.      The Method of Notice Proposed Is Appropriate ................ 16

        B.      The Contents of the Proposed Notice Are Adequate........... 16

IV.      SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ........................ 17

CONCLUSION ........................................................................................................................ 17

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**TABLE OF AUTHORITIES**

**CASES**

*Churchill Village, L.L.C. v. General Elec.,*
    361 F.3d 566 (9th Cir. 2004).................................................................................. 11, 16

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011)........................................................................................ 14

*Glass v. UBS Fin. Servs., Inc.,*
    No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .............................................. 12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)...................................................................................... 11

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000)......................................................................................... 11

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................... 11, 16

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
    MDL No. C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) .................. 17

*Miller v. Ghirardelli Chocolate Co.,*
    C 12-04936 LB, 2014 WL 4978433 (N.D. Cal. Oct. 2, 2014).......................................... 16

*Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 12

*Relente v. Viator, Inc.*
    No. 12-CV-05868-JD, 2015 WL 3613713, at *1 (N.D. Cal. June 9, 2015)..................... 13

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009)................................................................................... 16, 17

*Tijero v. Aaron Brothers, Inc.,*
    301 F.R.D. 314 (N.D. Cal. 2013) ................................................................................ 14

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976)........................................................................................... 1

*Williams v. Costco Wholesale Corp.,*
    No. 02-cv-2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010)....................... 11

**RULES**

Fed. R. Civ. P. 23(a)................................................................................................... 14

Fed. R. Civ. P. 23(b)(3)............................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................... 16

Fed. R. Civ. P. 23(e)(1) ............................................................................................... 15

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**OTHER AUTHORITIES**

The Rutter Group,
 CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (2012) .................................................. 14

William B. Rubenstein, et al.,
 NEWBERG ON CLASS ACTIONS (4th ed. 2002) .................................................................. 11

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 8, 2015 at 9:30 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Laurel Beeler, Plaintiffs Rosminah Brown, Eric Lohela and Lauren Crivier ("Plaintiffs") will, and hereby do, respectfully apply to this Court for entry of an order:

1.      Preliminarily approving the settlement agreement reached between Plaintiffs and The Hain Celestial Group, Inc. ("Settlement"), attached as Exhibit 1 to the Declaration of Mark N. Todzo in Support of Plaintiffs' Motion for Preliminary Approval;

2.      Conditionally certifying a modified Settlement Class for settlement approval purposes comprised of individuals who purchased at least one Avalon Organics® product in California between May 11, 2007 and May 11, 2011, and/or at least one JASON® product in California from May 11, 2007 to January 30, 2011;

3.      Appointing Heffler Claims Group as the Claims Administrator and approving the proposed notice plan; and

4.      Scheduling a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arm's-length, good-faith negotiations, and is fair, reasonable and adequate to the Class.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Mark N. Todzo and exhibits attached thereto, the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this motion.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs Rosminah Brown, Eric Lohela and Lauren Crivier on behalf of the proposed Settlement Class (defined herein) ("Plaintiffs") request that the Court grant preliminary approval of the Stipulation of Settlement ("Settlement") reached with Defendant The Hain Celestial Group, Inc. ("Hain"), attached as Exhibit 1 to the Declaration of Mark N. Todzo submitted herewith.  The Settlement resolves Plaintiffs' claims concerning Hain's allegedly false and misleading labeling of its Avalon Organics® and JASON® brand personal care products ("Challenged Products") as "organic," as well as similar claims raised in the related case, *Crivier v. The Hain Celestial Group, Inc.* Specifically, the Settlement resolves Plaintiffs' claims under California consumer protection statutes alleging that the Challenged Products were predominately comprised of non-organic ingredients but were nevertheless labeled and sold as "organic."

The Settlement is fair, reasonable and adequate, falling well within the range of class action settlements that merit preliminary approval.  The Settlement creates a cash fund of $7,500,000 and up to $1,850,000 in coupons for the benefit of individuals in California who purchased the Challenged Products.  Thus, the Settlement provides substantial monetary relief for many thousands of purchasers of the Challenged Products who allegedly paid a premium over comparable personal care products that did not purport to be organic.

The Settlement was reached through arm's-length negotiations after more than four years of hard-fought litigation, including: (1) substantial investigation by Class Counsel; (2) the completion of extensive fact discovery, including the review of hundreds of thousands of pages of documents and over ten depositions, as well as four discovery dispute letters; and (3) significant motion practice, including two motions to dismiss, a motion to strike, a motion for class certification and four motions for summary judgment.

Furthermore, the proposed notice plan provides Class members with the best notice practicable under the circumstances and will allow Class members a full and fair opportunity to evaluate the Settlement and decide whether to participate.  Accordingly, Plaintiffs request that the

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1    Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of disseminating

2    notice to the Class; (3) appoint Heffler Claims Group  as the Notice Administrator; (4) set a

3    schedule for disseminating notice to Class members, as well as deadlines to comment on, object

4    to, or opt out of, the Settlement; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal

5    Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable and

6    adequate and should be finally approved

7                                              **BACKGROUND**

8    **I.        FACTUAL BACKGROUND**

9              Defendant Hain is a manufacturer, seller and distributor of Avalon Organics® and

10   JASON® brand personal care products (the "Products"), which were sold to thousands of

11   consumers in California.  Plaintiffs allege that Hain, in recognition of the growing public demand

12   for organic products, prominently placed the word "Organics" and/or "Organic" on the principal

13   display panel of the Challenged Products.[1]  *See* ECF No. 68.  Specifically, Plaintiffs allege that the

14   principal display panel of JASON® branded products displayed the phrase "Pure, Natural &

15   Organic," while Avalon Organics® branded products were labeled as "Organics" in the very name

16   of the products.  *Id.*  In reality, Plaintiffs allege, the Challenged Products were predominately

17   comprised of non-organic ingredients.  *Id.*

18             Hain maintains that it had begun efforts to bring the Challenged Products into compliance

19   with the California Organic Products Act ("COPA") at around the time this litigation was initiated.

20   Todzo Decl. ¶ 4.[2]  Accordingly, the central objective of the claims resolved in the Settlement was

21   to require Hain to disgorge the premiums it allegedly obtained during the period of time when the

22   _____

23        [1] A list of the Challenged Products will be included as an attachment to Exhibit F to the
     Settlement.  The list was not available at the time of this filing but the Parties will provide the
24   Court with an updated Exhibit F prior to the October 8, 2015 hearing.

25        [2] Based on their investigation, Plaintiffs concur with Hain that the current JASON® brand
     cosmetic products comply with COPA's requirements.  Todzo Decl. ¶ 4.  However, the Parties
26   disagree as to whether the current (post-reformulation) Avalon Organics® products comply with
     COPA, so that issue is excluded from the scope of the claims resolved in and released by the
27   Settlement, as explained further below.  *Id.*

28

1  Challenged Products were allegedly mislabeled as "organic," thereby compensating consumers for

2  past alleged wrongdoings.  *Id.*

3  **II.        PROCEDURAL HISTORY**

4       **A.        The Litigation.**

5       On May 11, 2011, Plaintiff Brown filed an initial complaint in the Alameda County

6  Superior Court.  ECF No. 1.  Brown was joined on the complaint by the Center for Environmental

7  Health ("CEH"), a non-profit environmental organization.  *Id.*  Brown alleged claims under

8  California consumer protection statutes for injunctive and monetary relief on behalf of a class of

9  similarly situated consumers who purchased certain Avalon Organics® and/or JASON® brand

10  personal care products based on purported representations that such products were "organic" when

11  they were allegedly comprised primarily of non-organic ingredients.  *Id.*  Specifically, the

12  complaint alleged that Hain's conduct, as described above, violated: (1) COPA's restrictions on

13  selling, labeling or representing cosmetic products "as organic or made with organic ingredients"

14  unless the products contain a minimum of 70% organically produced ingredients, Cal. Health &

15  Safety Code §§ 110838 *et seq.*; (2) the unlawful, unfair, and fraudulent prongs of California's

16  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) the California

17  Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750 *et seq.*; and (4) the express-

18  warranty provisions of California's Commercial Code, Cal. Com. Code § 2313.

19       Hain removed Plaintiff Brown and CEH's action to this Court on June 22, 2011.  ECF No.

20  1.  Because CEH raised only a claim pursuant to California Health & Safety Code section 111910

21  seeking injunctive relief based on violations of COPA, CEH lacked injury sufficient to give it

22  standing under Article III of the United States Constitution.  Accordingly, CEH and Hain entered

23  into a stipulation to dismiss CEH as a party to this action.  *See* ECF No. 30.

24       On March 2, 2012, Hain moved to dismiss Plaintiff Brown's complaint for lack of subject

25  matter jurisdiction, arguing that the Organic Foods Production Act of 1990 ("OFPA"), 7 U.S.C. §§

26  6501-6524, expressly preempts COPA.  ECF No. 27.  In supplemental briefing, Hain also argued

27  that the Court should dismiss the complaint because the United States Department of Agriculture

28

1   has primary jurisdiction over Plaintiff Brown's claims.  ECF No. 49.  On August 1, 2012, the

2   Court denied Hain's motion in its entirety.  ECF No. 58.  Hain subsequently requested that the

3   Court certify the order denying Hain's motion to dismiss for interlocutory appeal to the Ninth

4   Circuit, and the Court did so.  ECF No. 60.  On December 17, 2012, the Ninth Circuit denied

5   Hain's petition for permission to appeal the denial of Hain's first motion to dismiss.  Ninth Cir.

6   Docket No. 12-80186.

7        On August 21, 2012, Plaintiff Brown filed an amended complaint in order to add Plaintiff

8   Lohela as a class representative and to conform the complaint to the federal rules regarding class

9   certification.  *See* ECF No. 68.  On October 9, 2012, Hain filed a second motion to dismiss

10  together with a motion to strike.  ECF Nos. 85 & 87.  On December 20, 2012, the Court denied

11  Hain's second motion to dismiss and motion to strike in their entirety.  ECF No. 104.

12       In addition, on April 6, 2012, Lauren Crivier filed a complaint in the United States District

13  Court for the Central District of California alleging violations of California's False Advertising

14  Law (FAL), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the UCL, and the CLRA based on the same

15  allegedly misleading product tagline "Pure, Natural & Organic" appearing on the principal display

16  panels of some JASON® brand products, as well as other iterations, combinations, or uses of the

17  words "natural" and "organic" on the brand's product labels and advertising.  Docket No. 13-cv-

18  02237 at ECF No. 1.  Ms. Crivier's case was transferred to this Court on May 9, 2013.  ECF No.

19  119.  Ms. Crivier's case was stayed following its transfer to this Court.  As part of the Settlement,

20  the operative First Amended Complaint will be deemed amended to add Ms. Crivier as a named

21  plaintiff herein.  Settlement § II.F.  Also as part of the settlement of this action, Ms. Crivier and

22  Hain stipulated to dismissal of her complaint which was entered on September 2, 2015.  *Id.*

23       On February 21, 2013, Hain provided Plaintiffs' counsel with a letter from the California

24  Department of Public Health ("CDPH") to William J. Friedman dated February 19,

25  2013 ("CDPH Letter") regarding some of the Challenged Products.  ECF No. 159-12.  The CDPH

26  Letter resolved in Hain's favor a complaint received by CDPH in 2011 regarding those Challenged

27  Products.  *Id.*  The CDPH Letter noted that Hain has certified its Avalon Organics® products as

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

containing 70% organic ingredients under the ANSI/NSF 305 standard and had removed the "Pure, Natural & Organic" tagline from its JASON® products. *Id.* The CDPH Letter concluded that, prior to these changes, the Challenged Products were not represented as "organic" and did not use the word "organic" to identify ingredients or modify the product's content on the principal display panel. *Id.*

On February 25, 2013, and March 12, 2013, Class Counsel, Hain, and Hain's counsel participated in mediation with mediator Randall W. Wulff. Todzo Decl. ¶ 5. Prior to the mediation, Hain provided Plaintiffs with confidential information regarding its California sales of the Challenged Products and the Challenged Products labeling during the class period. *Id.* At the mediation, the Parties reached an agreement in principle to resolve this litigation. *Id.* While finalizing the terms of the settlement agreement, an issue arose that precluded the Parties from finalizing the settlement. *Id.* Though the Parties continued to make efforts to resolve the issue, they were unable to do so. *Id.*

On November 1, 2013, Hain filed a motion for summary judgment, arguing that the CDPH Letter barred Plaintiffs' claims. *See* ECF No. 156. On February 10, 2014, the motion was denied. ECF No. 172. Following denial of Hain's summary judgment motion, the Parties participated in two full day settlement conferences with the Court in April and May 2014. Todzo Decl. ¶ 6. The Parties were unable to reach an agreement at that time. *Id.*

On July 15, 2014, Plaintiffs filed a motion for class certification. ECF No. 243. The motion was granted on November 11, 2014. ECF No. 269. The Court certified a class of: (1) consumers who purchased JASON® products in California from May 11, 2007 to January 30, 2011; and (2) consumers who purchased Avalon Organics® products in California from May 11, 2007 to January 6, 2015. ECF No. 267. The class excludes products that were certified USDA Organic. *Id.*

On December 23, 2014, the Court approved the Parties' class notice program. ECF No. 279. In accordance with the notice program, the class notice was disseminated beginning on January 6, 2015. Todzo Decl. ¶ 7. The deadline for absent class members to exclude themselves

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1    from the class closed on March 9, 2015 and there were no requests for exclusion.  *Id.*

2              On October 1, 2014, Plaintiffs filed a motion for partial summary adjudication of issues

3    seeking a ruling that Hain violated COPA in selling Jason and Avalon products which included the

4    word "organic" on the front label but did not contain 70% organic ingredients.  ECF No. 243.  On

5    February 2, 2015, Plaintiffs filed a second motion for partial summary judgment seeking a ruling

6    that organic representations on the Jason and Avalon products constituted material

7    misrepresentations, and were likely to deceive consumers, under the UCL and CLRA.  ECF No.

8    296.  On April 23, 2015, Plaintiffs filed their third motion for partial summary judgment seeking a

9    ruling that the Challenged Products are "cosmetics" under California law.  ECF No. 323.  The

10   Court granted Plaintiffs' first two motions for summary adjudication on May 26, 2015, and

11   granted in part Plaintiffs' third motion for summary adjudication on May 30, 2015.  ECF No. 340.

12             In addition to the motion practice described above, the Parties conducted an extensive

13   amount of discovery.  Todzo Decl. ¶ 8.  As the Court is well aware, discovery in this case was

14   particularly contentious.  *Id.*  The Plaintiffs served over five sets of requests for production of

15   documents, four sets of interrogatories and three sets of requests for admissions.  *Id.*  Hain served

16   three sets of requests for admissions and two sets of requests for production of documents and

17   interrogatories.  *Id.*  The Parties engaged in numerous meet and confer sessions, resulting in the

18   submission of four discovery dispute letters to the Court for resolution.  *Id.*  Plaintiffs also

19   subpoenaed over thirty third parties including wholesalers, retailers and marketing firms.  *Id.*

20   More than 229,000 pages of documents were produced and reviewed by the Parties, and over 10

21   depositions were conducted of Plaintiffs, senior Hain personnel and Plaintiffs' damages expert.

22   *Id.*

23             While Hain continues to deny Plaintiffs' allegations, Hain has concluded that further

24   defense of the action would be protracted and expensive, and that it is desirable that the case be

25   fully and finally settled in the manner and upon the terms and conditions set forth in the

26   Stipulation.  *See* Settlement ¶ II.P.  Hain also has taken into account the uncertainty and risks

27   inherent in any litigation.  *Id.*  Hain, therefore, has determined that it is desirable and beneficial to

28

1  it that the Action be settled in the manner and upon the terms and conditions set forth in the

2  Stipulation.  *Id.*

3      Similarly, Class Counsel have concluded, after extensive litigation, investigation of the

4  facts, consultation with their experts, extensive discovery and careful consideration of the

5  circumstances of the case, that the Settlement provides relief to the Class that is fair, reasonable

6  and adequate, and in the best interests of the Class.  *See* Todzo Decl. ¶¶ 9-11

7      **B.      Settlement Negotiations.**

8      As described above, the Parties engaged in settlement discussions and participated in

9  mediations following the February 2013 DPH Letter, and again in April and May of 2014

10  following the Court's denial of Hain's motion for summary judgment.  *See* Todzo Decl. ¶¶ 5-6.

11  These negotiations, however, did not result in a resolution of the case.  *Id.*

12      The Parties again entered into settlement negotiations after the Court granted Plaintiffs'

13  three motions for summary judgment in May 2015.  Todzo Decl. ¶ 6.  On June 15, 2015, the court

14  referred the Parties to Magistrate Judge Spero for a settlement conference, which took place on

15  July 20, 2015.  ECF No. 342.  The settlement conference with Judge Spero culminated in an

16  agreement in principle resolving the case.  Todzo Decl. ¶ 6.  Over the past two months, the Parties

17  have negotiated the detailed terms of the Settlement.  *Id.*

18  **III.    THE PROPOSED SETTLEMENT**

19      The Settlement compensates Class members for a significant portion of their alleged

20  damages.  Specifically, Hain has agreed to contribute $7,500,000 in cash into an independent

21  settlement fund ("Claim Fund") as well as up to $2,000,000 to be spent by Hain on coupons

22  redeemable for Hain products for the benefit of the Settlement Class.  The Claim Fund will also be

23  used to pay for disseminating notice to the Class, Class Counsel's attorneys' fees and costs and

24  modest service awards to the class representatives for their time and efforts on behalf of the Class.

25  In exchange for these payments, Hain will receive a release of Plaintiffs' claims arising out of or

26  related to Hain's use of the word "organic" or "organics" in connection with the Challenged

27  Products.  The key terms of the Settlement are described in detail below.

28

**A.      Payments to the Class Members.**

Hain will contribute $7,500,000 into the Claim Fund, which will be used chiefly to compensate California purchasers of the Challenged Products who were allegedly misled by Hain's past labeling practices.  Settlement § III.A.  In addition, Hain will expend up to $2,000,000 for coupons which may be used toward the purchase of any Avalon Organics® brand or JASON® brand cosmetic.  *Id.* § I.A.28.[3]  The Claim Fund will also be used to pay up to $650,000 for disseminating notice to the Class and processing claims, to pay for attorneys' fees and costs of no more than $4,000,000, and to pay modest service awards to the class representatives for their time and efforts on behalf of the Class.  *Id.* § VIII.A.2 & VIII.B.

The Claim Fund will be administered by Heffler Claims Group (the "Claim Administrator") – an independent, qualified company – which shall approve claims submitted by affected members of the Class in accordance with a clear and objective procedure and subject to verification by the Parties.  Settlement § I.A.8.  Class Members who submit claim forms are eligible to receive, for each product purchased, either: (1) a cash payment; or (2) a cash payment and coupons.  *Id.* § III.B.9 & Exh. A.  Class members who elect to receive cash payments will receive 50% of the purchase price of each JASON® or Avalon Organics® product purchased in California up to a total of $50.  *Id.* § III.B.2(a) & III.B.3.  Class members who elect to receive cash payments/coupons will receive 50% of the value of the purchase price of the products purchased and coupons for a total of up to $80 (the payment will be calculated at a ratio of $1 cash to $4 in coupons).  *Id.* § III.B.2(b) & III.B.3.  For class members who have receipts for the Challenged Products they purchased, there is no maximum limit for either cash or cash/coupon payments.  *Id.* § III.B.3.

---

[3] The cost of a coupon includes the face value of the coupon together with printing and processing fees.  Settlement § I.A.17.  Thus, each $2 coupon costs Hain approximately $2.15.  *Id.* Accordingly, the maximum total face value of coupons available under the Settlement is $1,850,000.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1    The Settlement allows no possibility of any Claim Fund monies reverting to Hain.

2  Settlement § III.B.6.  If the amounts ultimately paid on claims and expenses do not equal or

3  exceed $7,500,000 million, the remainder of the Claim Fund will be equally distributed to the

4  California Consumer Protection Foundation and the Jesse Smith Noyes Foundation for use in a

5  manner that the will provide the next best use of compensation to Class members arising out of

6  claims that have been made by Plaintiffs in this action.  Todzo Decl. ¶ 14.

7           **B.      Release of Plaintiffs' Claims.**

8    In exchange for Hain's substantial monetary payments to the Class, the Settlement releases

9  Hain from all claims relating to violation of COPA, UCL, FAL, CLRA, the express-warranty

10  provisions of the California Commercial Code (or other similar state or federal laws), arising out

11  Hain's use of the word "organic" or "organics" in connection with the Challenged Products.

12  Settlement § IV.A.  The Settlement does not, however, release Hain from Plaintiffs' claim that the

13  post-reformulation Avalon Organics® products continue to violate COPA by allegedly counting

14  as organic the water used to rehydrate the powdered aloe used in the products.  *See id.* §§ I.A.7 &

15  I.A.16.

16           **C.      Modified Class for Settlement Purposes.**

17    As described above, the Court granted Plaintiffs' motion for class certification, which

18  certified a class of individuals who purchased Avalon Organics® products from May 11, 2007 to

19  January 6, 2015, and a class of individuals who purchased JASON® products from May 11, 2007

20  to January 30, 2011.  ECF No. 269.  For purposes of the Settlement only, the Parties agree to

21  certification of a modified Settlement Class.  Settlement § V.  This putative Settlement Class will

22  comprise all persons who purchased at least one Avalon Organics® product in California between

23  May 11, 2007 and May 11, 2011, and/or at least one JASON® product in California from May 11,

24  2007 to January 30, 2011.  *Id.* § I.A.16.  Thus, the only difference between the two classes

25  certified by the Court and the proposed Settlement Class is that the Settlement Class excludes

26  purchasers of post-reformulation Avalon Organics® products by excluding purchases after May

27  11, 2011.

28

Class members will have until thirty days prior to the Final Approval Hearing to: submit claims, file any objections to the proposed settlement, seek exclusions from the Settlement Class, or file notices of intent to appear at the hearing. Settlement § VI.B.3. The Parties will monitor and track those Settlement Class members seeking exclusion or objecting to the proposed Settlement. *Id.* § B.3.D.

### D.      Payment of Plaintiffs' Reasonable Attorneys' Fees and Litigation Costs, and Service Awards to the Plaintiffs.

The Settlement authorizes Class Counsel to seek to recover a portion of their attorneys' fees and costs incurred in the prosecution of this action and the *Crivier* matter. Following the Court's preliminary approval of the Settlement, Class Counsel will submit an application to the Court for an award of attorneys' fees and expenses not to exceed $4,000,000. Settlement § VIII.A.2. Class Counsel's application for attorneys' fees and expenses will be made in accordance with COPA, the CLRA and Cal. Code of Civil Procedure §1021.5. *Id.* Any award of fees and expenses approved by the Court will be paid from the Claim Fund thirty days after entry of judgment following final approval of the Settlement. *Id.* VIII.A.3.

At the same time as moving for attorneys' fees and costs, Class Counsel will also seek reasonable service award payments for each of the named Plaintiffs for their services as class representatives. Settlement § VIII.B. The amount of these awards is not to exceed $7,500 each for Plaintiffs Brown and Lohela and $1,500 for Plaintiff Crivier. *Id.*

## ARGUMENT

### I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

The Settlement is fair, reasonable and adequate. The Settlement provides substantial benefits to the Settlement Class by securing just compensation for consumers in California who purchased the Challenged Products based on Hain's "organic" representations. The Settlement accomplishes this while avoiding both the uncertainty and the delay that would be associated with further litigation. It represents a fair compromise of the Parties' respective positions in the litigation, and enables each party to end the litigation, thus avoiding its costs and risks. Finally,

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1    the Settlement was reached through arm's length negotiations as part of a supervised mediation

2    process.  Class Counsel, which has significant experience in litigating class actions, supports the

3    resulting Settlement as fair and as providing reasonable and substantial relief to the members of

4    the Class.

5        **A.    The Applicable Legal Standard.**

6        Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  A

7    proposed settlement may be approved by the court if it is determined to be "fundamentally fair,

8    adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)

9    (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).  "[T]here is an overriding

10   public interest in settling and quieting litigation . . . particularly . . . in class action suits which are

11   now an ever increasing burden to so many federal courts and which frequently present serious

12   problems of management and expense."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

13   Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

14       Given that the full fairness and adequacy of a class settlement can only be assessed at the

15   final approval hearing, at the preliminary approval stage the Court "need only review the Parties'

16   proposed settlement to determine whether it is within the permissible 'range of possible judicial

17   approval' and thus, whether the notice to the class and the scheduling of the formal fairness

18   hearing is appropriate."  *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003 IEG (AJB), 2010

19   WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) (citing William B. Rubenstein, et al., Newberg On

20   Class Actions § 11:25 (4th ed. 2002) (citations omitted)).

21       Specifically, preliminary approval of a settlement and notice to the proposed class is

22   appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed,

23   noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

24   preferential treatment to class representatives or segments of the class, and [4] falls with the range

25   of possible approval . . . ."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D.

26   Cal. 2007).  The Settlement meets all of the above criteria.

27

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**B.      This Settlement Is the Product of Serious, Informed and Arm's-Length Negotiations.**

Arm's-length negotiations conducted by competent counsel after meaningful discovery constitute prima facie evidence of a fair settlement.  *Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004).  The Parties' negotiations here were adversarial and at arm's length.  *See* Todzo Decl. ¶ 2.  Class Counsel  have considerable experience in class action litigation in general, and with the legal and factual issues of this case in particular.  *See id.* ¶ 13; ECF No. 269 at 22-23 (granting class certification motion, finding that Class Counsel have "extensive experience" and "have proven more than proficient in the applicable law").  Moreover, the fact that the Settlement was reached only after participation in a formal settlement conference before Magistrate Judge Spero also weighs in favor of granting preliminary approval.  *See Glass v. UBS Fin. Servs., Inc.*, No. 06–4068, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007).

Furthermore, extensive discovery was conducted, and Plaintiffs obtained vital information from Hain pertaining to the legitimacy and scope of their claims, including information regarding the Challenged Products' labels, formulations and sales.  Todzo Decl. ¶ 8.  This extensive discovery ensured sophisticated and meaningful settlement negotiations, which were conducted over several months, including face-to-face meetings with members of Hain's internal legal team.  *See id.* ¶¶ 2, 5-6.  In short, the Parties were fully informed of all relevant facts at the time the Settlement was reached.

**C.      The Settlement Has No "Obvious Deficiencies" and Treats No Members of the Class Preferentially.**

The Settlement is fair and treats Class members equitably.  All Class members who purchased the Challenged Products between May 2007 and the time when the Challenged Products were relabeled and reformulated (*i.e.,* January 30, 2011 for JASON® products and May 11, 2011 for Avalon Organics® products) will receive the benefit of the monetary relief provided by the Settlement.  The Settlement's notice provisions, which are detailed and comprehensive and which will be administered by a qualified third party, will help to ensure that such purchasers will actually recoup their alleged monetary losses.  Moreover, the substantial monetary relief secured by the Settlement is fair in light of the total damages at issue and the risks of trial.  Indeed, Hain

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1  vigorously disputes that the Class would be able to prove liability at trial or be entitled to

2  injunctive relief or monetary damages.

3        Plaintiffs believe they could establish liability and substantial damages on a class-wide

4  basis were the case to go to trial, however this is hardly an easy win.  Although Plaintiffs prevailed

5  against the defenses Hain has raised thus far – as well as prevailing on their motion for class

6  certification – there is considerable litigation risk for Plaintiffs going forward.  Todzo Decl. ¶ 9.

7  For example, given that the legal issues regarding allegedly false organic representations on

8  consumer products are relatively novel and have not been widely litigated, there is always the risk

9  that the Court's orders denying Hain's motions to dismiss and granting Plaintiffs' motions for

10 summary judgment could be reversed on appeal even if Plaintiffs prevailed at trial.  *Id.*  By settling

11 now, Class members secure immediate significant monetary compensation.  *Id.*  ¶¶ 9 & 11.  These

12 benefits will accrue equally to all Class members.  *Id.* ¶ 9.

13       **D.**      **The Settlement Falls Within the Range Of Possible Approval.**

14       The substance of the Settlement falls well within the bounds of reasonableness.  The

15 $7,500,000 Claim Fund plus up to $1,850,000 in coupons paid by Hain represents a substantial

16 portion of the damages sought.  *See* Todzo Decl. ¶ 10.  The monetary provisions of the Settlement

17 were based in part on a damages model that measures premiums paid by consumers for the

18 Challenged Products over and above the prices paid by consumers for seemingly comparable

19 personal care products that do not claim to be organic.  *Id.*  Plaintiffs also seek disgorgement of

20 profits, which while easier to calculate has less precedential support.  *Id.*  The 50% of the purchase

21 price made available to Class members pursuant to the Settlement exceeds the restitution and/or

22 damages estimate under either the price premium or disgorgement model.  *Id.*

23       Furthermore, the attorneys' fees and litigation costs award sought by Plaintiffs, which will

24 be subject to further review by this Court at the final settlement approval stage, is well within the

25 range of possible approval under California law.  Indeed, the attorneys' fees award sought by

26 Plaintiffs is significantly less than Class Counsel's lodestar.  *See* Todzo Decl. ¶ 12.  Accordingly,

27 the award is reasonable under the applicable law.  *See, e.g.*, *Relente v. Viator, Inc.*, No. 12-CV-

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

05868-JD, 2015 WL 3613713, at *1 (N.D. Cal. June 9, 2015) (attorney fee award pursuant to class action settlement must be calculated using lodestar method where plaintiffs' claims were based on California law).  For all of these reasons, preliminary approval of the settlement should be granted.

## II.        PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

For settlement purposes only, Plaintiffs request that the Court provisionally certify a slightly modified Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of a Settlement Class defined as follows:

> all individuals who purchased an Avalon Organics® product in California between May 11, 2007 and May 11, 2011, and all individuals who purchased a JASON® product in California from May 11, 2007 to January 30, 2011.

Settlement § I.A.12 & I.A.16.  Where parties consent to certification of a class for settlement purposes, the court may enter an order provisionally certifying a settlement-only class.  *See generally* The Rutter Group, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (2012), Ch. 10-C at § 10:787 (noting that courts generally permit parties to stipulate that a defined class be conditionally certified for settlement purposes because it facilitates settlement); *see also Tijero v. Aaron Brothers, Inc.,* 301 F.R.D. 314, 320 (N.D. Cal. 2013).  Because the Court has already certified a nearly identical class of California purchasers of the Challenged Products, certification of the proposed Settlement Class is proper.

To merit class certification under Rule 23, Plaintiffs must show that the proposed class meets each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).   Rule 23(a) provides that a district court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Moreover, a class may be certified under Rule 23(b)(3) if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual

1   members, and that a class action is superior to other available methods for fairly and efficiently

2   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

3           Here, in granting Plaintiffs' motion for class certification, the Court has already made the

4   findings necessary for it to certify the slightly modified Settlement Class.  Specifically, with

5   respect to the Rule 23(a) factors, the Court held that: (1) the numerosity prong is satisfied because

6   Hain sold the Challenged Products to many thousands of California consumers [ECF No. 269 at

7   17]; (2) the commonality prong is met because several common legal and factual questions "define

8   and drive this lawsuit," such as whether the Challenged Products were sold, labeled or represented

9   as "organic" [*id.* at 18]; (3) Brown and Lohela's claims are "typical" of the class as they "claim

10  injury from the same course of conduct" and are undoubtedly members of the class they wish to

11  represent [*id.* at 19]; and (4) the adequacy prong is satisfied because Class Counsel have

12  "extensive experience" and "have proven more than proficient in the applicable law," and the

13  named Plaintiffs share "core common issues with those of the unnamed class" [*id.* at 22-23].

14          Regarding the Rule 23(b) requirements, the Court rejected each of Hain's arguments that

15  individual factual and legal issues make certification of a class inappropriate.  The Court found

16  that despite differences in, for example, the various uses and formulations of the Challenged

17  Products, "the plaintiffs' claims against them are simple and uniform: the products were presented

18  as organic when, under COPA, they were not.  The plaintiffs' claims, in other words, have nothing

19  to do with the unique characteristics of the various Hain products; they have to do only with what

20  is allegedly shared by all those products."  ECF No. 269 at 23.

21          Each of the Court's determinations as to the satisfaction of the Rule 23(a) and Rule

22  23(b)(3) factors apply with equal force to the Settlement Class.  Indeed, the Settlement Class is

23  only slightly modified from the classes the Court certified so as to exclude the post-reformulation

24  Avalon Organics® products.  Thus, the Settlement Class should be certified.

25  **III.     THE PROPOSED CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE
            PROCESS.**

26          Rule 23(e) requires the court to direct notice "in a reasonable manner to all class members

27  who would be bound by" a proposed class action settlement.  Fed. R. Civ. P. 23(e)(1).  The

28

1  Settlement Agreement provides for notice that readily satisfies Rule 23 and due process

2  considerations.

3          **A.**       **The Method of Notice Proposed Is Appropriate.**

4          The method proposed for providing notice to Class members is "reasonable" and should be

5  approved.  Notice to the Class will be achieved shortly after entry of the Preliminary Approval

6  Order, in at least five ways.  First, links to the relevant Settlement documents will be posted on the

7  Settlement website (www.HainOrganicCosmeticsLawsuit.com) and on Class Counsel's websites.

8  Settlement § VI.B & Exh. D.  Second, the Claim Administrator will publish notice in four

9  installments over the course of one month in the San Francisco Chronicle, which has a circulation

10  of more than 200,000.  *Id.*  Third, notice will be published in *People* magazine, which has a

11  circulation of over 370,000.  *Id.*  Fourth, press releases in both English and Spanish will be

12  disseminated via the PR Newswire.  *Id.*  Fifth, internet and mobile advertisements targeting

13  potential Class members in both English and Spanish will be run on various media services,

14  including People.com, Pulpo Media, UsWeekly.com, Xaxis Network, ShareThrough, Facebook

15  and Twitter.  *Id.*

16          The Notice will be provided to Class members so that they have sufficient time to decide

17  whether to participate in the Settlement, object, or opt out.  The Court has found that substantially

18  similar notice programs meet the requirements of due process and Rule 23, *Miller v. Ghirardelli*

19  *Chocolate Co.*, C 12-04936 LB, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014), as have other

20  courts in the Northern District, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

21  Accordingly, the notice plan should be approved.

22          **B.**       **The Contents of the Proposed Notice Are Adequate.**

23          Rule 23 requires that notice of a settlement be "the best notice practicable under the

24  circumstances, including individual notice to all members who can be identified through

25  reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The content of the notice to class members "is

26  satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

27  with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez v. West*

28

1 *Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. General Elec.*,

2 361 F.3d 566, 575 (9th Cir. 2004)).

3    Here, the proposed notice forms provide this "sufficient detail."  *See* Settlement § VI,

4 Exhs. C & E.  Together, they define the Settlement Class, explain all Class member rights,

5 releases, and applicable deadlines, and describe in detail the terms of the Settlement, including the

6 procedures for allocating and distributing Settlement funds.  They plainly indicate the time and

7 place of the hearing to consider approval of the Settlement, and the method for objecting to or

8 opting out of the Settlement.  They detail the provisions for payment of attorneys' fees and service

9 awards to the class representatives, and provide contact information for Class Counsel.  This

10 comports with settlement notices upheld in other cases.  *See, e.g.*, *In re Wells Fargo Loan*

11 *Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460, at *4

12 (N.D. Cal. Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the

13 settlement, including class members' release of claims, their ability to opt out or object to the

14 settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award

15 members could expect to receive."); *see generally Rodriguez*, 563 F.3d at 962-63 (because

16 "[s]ettlement notices are supposed to present information about a proposed settlement neutrally,

17 simply, and understandably," they need not "detail the content of objections, or analyze the

18 expected value" of fully litigating the case).

19 **IV.    SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.**

20    The last step in the settlement approval process is a final fairness hearing at which the

21 Court may hear all evidence and argument necessary to make the settlement evaluation.

22 Proponents of the settlement may explain the terms and conditions of the settlement and offer

23 argument in support of final approval.  In addition, Class members, or their counsel, may be heard

24 in support of or in opposition to the Settlement.  The Court will determine after the final approval

25 hearing whether the settlement should be approved, and whether to enter a final order and

26 judgment under Rule 23(e).  Plaintiffs request that the Court set a date for the final fairness

27 hearing approximately 120 days after entry of the Preliminary Approval Order.

28

1

## CONCLUSION

2      For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant

3  preliminary approval of the proposed Settlement, provisionally certify the proposed Settlement

4  Class, approve the proposed notice plan and schedule a formal fairness hearing on final settlement

5  approval approximately 120 days after entry of the Preliminary Approval Order.

6

7  DATED: September 22, 2015              Respectfully submitted,

8                                        LEXINGTON LAW GROUP

9

10                                       By:  /s/ Mark N. Todzo
                                         Mark N. Todzo
11                                       Attorneys for Plaintiffs ROSMINAH BROWN
                                         and ERIC LOHELA, on Behalf of Themselves
12                                       and All Others Similarly Situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28