LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>  Defendant. | No. 11-cv-03082 LB<br><br>**DECLARATION OF MARK N. TODZO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:       October 8, 2015<br>Time:       9:30 a.m.<br>Location:  Courtroom C<br>Judge:      Hon. Laurel Beeler |

I, Mark N. Todzo, declare:

1. I am an attorney with the Lexington Law Group ("LLG"), and I represent Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") in this action. I have personal knowledge of the matters set forth below and, if called upon, I could and would competently testify thereto. I am the attorney who has been principally involved in the prosecution of this litigation and the negotiations that culminated in the Stipulation of Settlement (the "Settlement Agreement" or "Settlement") which is before the Court for preliminary approval. A true and correct copy of the Settlement Agreement, signed by the Parties to this case, is attached as **Exhibit 1**. The Settlement Agreement itself appends and incorporates seven exhibits, entitled "Exhibit A" through "Exhibit G," which I have included as part of Exhibit 1.

2. I negotiated the Settlement Agreement on behalf of Plaintiffs and the Class during a series of intensive settlement negotiations with counsel for Defendant The Hain Celestial Group, Inc. ("Hain" or "Defendant") in this action. The negotiations were adversarial and conducted at arm's length, and there was no collusion involved.

3. Before commencing this action, I and others in my firm spent numerous hours and significant resources investigating and researching the facts of this case and evaluating the relevant law and facts to assess the merits of Plaintiffs' potential claims and to determine how best to serve the interests of Plaintiffs and the Class.

4. Hain maintains that it had begun efforts to bring the Challenged Products into compliance with the California Organic Products Act ("COPA") at around the time this litigation was initiated. Accordingly, the central objective of the claims resolved in the Settlement was to require Hain to disgorge the premiums it allegedly obtained during the period of time when the Challenged Products were allegedly mislabeled as "organic," thereby compensating consumers for past alleged wrongdoings.

5. On February 25, 2013, and March 12, 2013, Class Counsel, Hain, and Hain's counsel participated in mediation with mediator Randall W. Wulff. Prior to the mediation, Hain provided Plaintiffs with confidential information regarding its California sales of the Challenged

1  Products and the Challenged Products labeling during the class period.  At the mediation, the
2  Parties reached an agreement in principle to resolve this litigation.  While finalizing the terms of
3  the settlement agreement, an issue arose that precluded the Parties from finalizing the settlement.
4  Though the Parties continued to make efforts to resolve the issue, they were unable to do so.

5      6.    Following denial of Hain's summary judgment motion, the Parties participated in
6  two full day settlement conferences with the Court in April and May 2014.  The Parties were
7  unable to reach an agreement at that time.  The Parties again entered into settlement negotiations
8  after the Court granted Plaintiffs' three motions for summary judgment in May 2015.  On June 15,
9  2015, the court referred the Parties to Magistrate Judge Spero for a settlement conference, which
10 took place on July 20, 2015.  The settlement conference with Judge Spero culminated in an
11 agreement in principle resolving the case.  Over the past two months, the Parties have negotiated
12 the detailed terms of the Settlement.

13     7.    On December 23, 2014, the Court approved the Parties' class notice program.  ECF
14 No. 279.  In accordance with the notice program, the class notice was disseminated beginning on
15 January 6, 2015.  The deadline for absent class members to exclude themselves from the class
16 closed on March 9, 2015 and there were no requests for exclusion.

17     8.    In addition to the significant motion practice in this case, the Parties conducted an
18 extensive amount of discovery.  As the Court is well aware, discovery in this case was particularly
19 contentious.  The Plaintiffs served over five sets of requests for production of documents, four sets
20 of interrogatories and three sets of requests for admissions.  Defendant served three sets of
21 requests for admissions and two sets of requests for production of documents and interrogatories.
22 The Parties engaged in numerous meet and confer sessions, resulting in the submission of four
23 discovery dispute letters to the Court for resolution.  Plaintiffs also subpoenaed over thirty third
24 parties including wholesalers, retailers and marketing firms.  More than 229,000 pages of
25 documents were produced and reviewed by the Parties, and over 10 depositions were conducted of
26 Plaintiffs, senior Hain personnel and Plaintiffs' damages expert.  Through this discovery, Plaintiffs
27 obtained vital information from Hain pertaining to the legitimacy and scope of their claims,
28

1 including information regarding the Challenged Products' labels, formulations and sales.

2      9.      In my firm's capacity as class counsel, we considered a number of factors in reaching the proposed Settlement Agreement with Defendant.  Although Plaintiffs prevailed against the defenses Hain has raised thus far – as well as prevailing on their motion for class certification – there is considerable litigation risk for Plaintiffs going forward.  For example, given that the legal issues regarding allegedly false organic representations on consumer products are relatively novel and have not been widely litigated, there is always the risk that the Court's orders denying Hain's motions to dismiss and granting Plaintiffs' motions for summary judgment could be reversed on appeal even if Plaintiffs prevailed at trial.  By settling now, Class members secure immediate significant monetary compensation.  These benefits will accrue equally to all Class members.

     10.     In agreeing to the monetary payments to the Class under the Settlement, Class Counsel considered that the $7,500,000 claim fund plus up to $1,850,000 in coupons paid by Hain represents a substantial portion of the damages sought.  The monetary provisions of the Settlement were based in part on a damages model that measures premiums paid by consumers for the Challenged Products over and above the prices paid by consumers for seemingly comparable personal care products that do not claim to be organic.  Plaintiffs also seek disgorgement of profits, which while easier to calculate has less precedential support.  The 50% of the purchase price made available to Class members pursuant to the Settlement exceeds the restitution and/or damages estimate under either the price premium or disgorgement model.

     11.     Other factors we considered in reaching the Settlement with Hain include the present value of obtaining immediate monetary relief versus the potentially long wait for a recovery after a full trial and the burdens of proof necessary to establish liability.  All of these factors indicated that the Settlement to which the Parties agreed would best serve the interests of the Class.  Based on our experience, we concluded that the terms of the Settlement are fair and reasonable.

     12.     I and others in my firm spent numerous hours investigating and researching the

3                                      Case No. 11-cv-03082 LB
**TODZO DECL. ISO MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

1 facts of this case, conferring with Plaintiffs, researching applicable law, drafting pleadings,
2 reviewing and analyzing documents and data produced by Defendant, and negotiating the
3 proposed Settlement Agreement.  Class Counsel will submit support for the attorneys' fee and
4 costs award called for by the Settlement in connection with the hearing for final approval of the
5 Settlement.  While the proposed Settlement provides that Class Counsel may be awarded up to
6 $4,000,000 as partial compensation for Class Counsel's reasonable attorneys' fees and costs, that
7 amount is significantly less than Plaintiffs' lodestar incurred in prosecuting the action and
8 negotiating the Settlement.

9       13.     LLG is a private law firm that has been successfully pursuing cases on behalf of
10 consumers and public interest groups for over a decade.  LLG has represented numerous Parties in
11 civil actions of various types and degrees of complexity, including many cases brought as class
12 actions.  The LLG's attorneys have substantial experience in false advertising and unfair
13 competition matters.  The following is a representative sampling of some of the cases LLG has
14 successfully litigated or is currently involved in:

15         a)     *Golloher, et al. v. Todd Christopher International, Inc.*, Case No. CV-12-
16 06002 (N.D. Cal.):  Class counsel in case involving misrepresentation of non-organic cosmetic
17 products as organic;
18         b)     *Stephenson, et al. v. Neutrogena Corporation*, Case No. C 12-00426 PJH
19 (N.D. Cal.):  Named Class Counsel in case involving misrepresentation of cosmetic products as
20 "natural."
21         c)     *In re WellPoint Out of Network UCR Rates Litigation*, Case No. MDL 2074
22 (J.P.M.L.):  Named interim Class Counsel in antitrust case against health insurer alleging
23 conspiracy to artificially reduce reimbursements on "out of plan" claims by policy holders through
24 the use of the fraudulent Ingenix database;
25         d)     *In re Comcast Peer to Peer (P2P) Transmission Contract Litigation*, Case
26 No. 2:08-md-01992 (E.D. Pa.):  Named Class Counsel in class action against Comcast for alleged
27 breach of contract and false advertising arising from interference with subscribers' use of peer to
28

peer file sharing applications; obtained $16 million settlement for the class;

      e)    *CEH v. Bristol-Meyers Squibb Co.*, Case No. 307981 (San Francisco County Super. Ct.); *Johnson v. Bristol-Meyers Squibb Co.*, Case No. 308872 (San Francisco County Super. Ct.):  Counsel for plaintiffs in consolidated cases against manufacturers and retailers of topical skin care products such as diaper rash ointments containing lead and cadmium; plaintiffs' case included class action claims against defendants for falsely advertising the attributes of their products;

      f)    *In re Kava Kava Litigation*, Case No. BC269717 (Los Angeles County Super. Ct.):  Co-counsel for plaintiffs in class and private attorney general action for false advertising on behalf of purchasers of dietary supplements containing Kava-Kava root;

      g)    *Jones v. Microsoft Corporation*, Case No. 405657 (San Francisco County Super. Ct.):  Co-counsel for plaintiff in class and private attorney general action for false advertising on behalf of purchasers of Microsoft's Office software;

      h)    *In re TCPA Cases*, Case No. JCCP 4350 (Los Angeles County Super. Ct.):  Counsel for plaintiffs in class action on behalf of recipients of unsolicited fax advertisements;

      i)    *Foundation Aiding the Elderly, et al. v. Covenant Care, GranCare, and Ember Care*, Case Nos. RG03087211, RG03083528, and RG03087224 (Alameda County Super. Ct.):  Co-counsel for plaintiffs in class and private attorney general action on behalf of residents of understaffed nursing homes; plaintiffs' cases included false advertising claims based on defendants' failure to disclose that their nursing homes are not adequately staffed;

      j)    *In re Automobile Advertising Cases*, Case No. JCCP 4149 (San Francisco County Super. Ct.):  Counsel for plaintiff in private attorney general action for false advertising on behalf of automobile consumers;

      k)    *Lombardi v. Stompsoft, Inc.*, Case No. 04CC08816 (Orange County Super. Ct.):  Counsel for plaintiff in class action alleging claims for false advertising of computer software;

      l)    *In re Tobacco Cases II*, Case No. JCCP 4042 (San Diego County Super.

1    Ct.):  Counsel for City of San Jose in action alleging claims under Proposition 65 and Unfair
2    Competition Law for failure to warn regarding dangers of second hand smoke exposure;
3           m)    *Dowhal v. Amazon.com, et al.*, Case No. 03-417080 (San Francisco County
4    Super. Ct.):  Counsel for plaintiff in class and private attorney general action for false advertising
5    on behalf of purchasers of inkjet printers;
6           n)    *Robins v. US Airways, Inc.*, Case No. CGC-07-460373 (San Francisco
7    County Super. Ct.):  Appointed class counsel in class action alleging breach of contract on behalf
8    of internet customers;
9           o)    *Gardner v. Chase Bank USA, N.A.*, Case No. SCV 242322 (Sonoma County
10   Super. Ct.):  Counsel for plaintiff in class case alleging national bank's violations of state and
11   federal fair debt collection laws in connection with outstanding consumer credit card debt;
12          p)    *Dervaes v. California Physicians' Service*, Case No. RG-06262733
13   (Alameda County Super. Ct.): Counsel for plaintiff in class case challenging health insurer's
14   unilateral mid-year increase to calendar-year costs.
15   Attached hereto as **Exhibit 2** is a true and correct copy of LLG's firm resume.
16      14.   To the extent that there is any money left over after payment of claims, notice and
17   administration costs, attorneys' fees and costs and incentive awards, those funds will be paid as *cy*
18   *pres* to the California Consumer Protection Foundation and the Jesse Smith Noyes Foundation.
19   These foundations are well-suited to ensure that any funds paid to them pursuant to the Settlement
20   will be used for the next-best use of the class members.  Following receipt of any funds paid from
21   the Settlement, the foundations will send out a request for proposal ("RFP") to non-profit
22   organizations seeking proposals relating to the matters that will benefit class members such as
23   consumer education regarding the advertising relating to organic products.  The two foundations
24   chosen by the Parties are ideally situated fund the RFPs that best match the underling goals of the
25   lawsuit to the benefit of class members.
26          I declare under penalty of perjury under the laws of the United States that the
27   foregoing is true and correct.
28

1    Executed on September 22, 2015, at San Francisco, California.

2
3                                                    */s/ Mark N. Todzo*
                                                      MARK N. TODZO