LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br>                              Defendant. | Case No. 11-cv-03082 LB<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND SERVICE AWARDS**<br><br>Date:       February 11, 2016<br>Time:       9:30 a.m.<br>Location:  Courtroom C – 15th Floor<br>Judge:      Hon. Laurel Beeler |

Case No. 11-cv-03082 LB

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1

## TABLE OF CONTENTS

2   NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

3   MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   I.      LITIGATING THIS CASE WAS TIME AND LABOR INTENSIVE. . . . . . . . . . . . . . 3

7          A.      Class Counsel Conducted Extensive Factual and Legal Investigation
                   Prior to Filing This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8
                   B.      This Case Required Significant Case Management and Litigation Strategy
9                          Efforts   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10         C.      Class Counsel Were Required to Defend Hain's Three Pleadings Challenges,
                   Motion for Interlocutory Appeal and Petition for Permission to Appeal in the
11                 Ninth Circuit   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

12         D.      Class Counsel Conducted Substantial, Hard Fought Discovery to Obtain the
                   Information Necessary to Prosecute This Action   . . . . . . . . . . . . . . . . . . . . . . 5
13
                   E.      Class Counsel Were Required to Defend Hain's Motion for
14                 Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15         F.      Plaintiffs' Successful Motion for Class Certification   . . . . . . . . . . . . . . . . . . 6

16         G.      Plaintiffs Brought Three Successful Motions for Partial Summary
                   Adjudication to Narrow the Issues for Trial   . . . . . . . . . . . . . . . . . . . . . . . . . 7
17
                   H.      Class Counsel Prepared for Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
18
                   I.      Class Counsel Engaged in Intensive Settlement Efforts with Hain . . . . . . . . . . . 8
19
20  II.     CLASS COUNSEL'S TIME AND EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21  III.    THE VALUE OF THE SETTLEMENT TO THE CLASS . . . . . . . . . . . . . . . . . . . . . . 11

22  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23  I.      PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES
            UNDER CALIFORNIA FEE-SHIFTING STATUTES AND THE LODESTAR
            METHOD SHOULD BE USED TO CALCULATE THE AMOUNT OF THOSE
24          FEES   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25         A.      Plaintiffs' Fee Request Is Governed By California Law . . . . . . . . . . . . . . . . . . 11

26         B.      Plaintiffs' Are Entitled to Recover Their Attorneys' Fees Under the CLRA,
                   California's Private Attorney General Statute and COPA . . . . . . . . . . . . . . . . 12
27
                   C.      California Law Prescribes a Lodestar Method of Calculating a
28                 Reasonable Fee   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

1   D. Federal Courts Utilize the Lodestar Analysis to Calculate Attorneys'
    Fees in Class Action Cases Based on California Law . . . . . . . . . . . . . . . . . . . . . 15

2

3   E. The Class Action Fairness Act Also Supports Application of the
    Lodestar Method to Class Counsel's Fee Request . . . . . . . . . . . . . . . . . . . . . . . 16

4 II. THE FEE AWARD OF $3.54 MILLION IS REASONABLE AND SIGNIFICANTLY
  LESS THAN THE TIME SPENT BY CLASS COUNSEL REPRESENTING THE
5  CLASS OVER MORE THAN FOUR YEARS OF LITIGATION . . . . . . . . . . . . . . . . . 18

6   A. The More Than 8,969 Hours Class Counsel Expended Are Well Documented and
    Reasonable in Light of the Case's Complexity, Intensity and Duration . . . . . . . 18

7

8   B. Class Counsel's Rates Are Consistent with the Predominate Market Rates
    for Private Lawyers in the Northern District . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9   C. The Requested Fee Award Is Reasonable Given the Benefits Obtained
    for the Class, the Serious Risks Assumed by Class Counsel and the
10    Quality of the Representation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11    1. The Settlement Is a Remarkable Result for the Class . . . . . . . . . . . . . . . 21

12    2. The Issues Involved in This Litigation Were Novel and Difficult  . . . . . 21

13    3. Class Counsel Faced Serious Risks in Taking the Case on a
     Contingency Basis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

14

15    4. The Exceptional Quality of Class Counsel's Representation  . . . . . . . . . 22

16   D. The Requested Fee Award Is Supported by Awards Granted in
    Other Class Action Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

17 III. CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR
  OUT-OF-POCKET LITIGATION EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18

19 IV. THE CLASS REPRESENTATIVES SHOULD RECEIVE REASONABLE
  SERVICE AWARDS FOR THEIR EFFORTS IN SECURING THE
  SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20

21 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Chavez v. City of Los Angeles,*
    224 P.3d 41 (Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4

5

*Dunk v. Ford Motor Co.,*
    56 Cal. Rptr. 2d 483 (Cal. App. 4th Dist. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6

*Graham v. DaimlerChrysler Corp.,*
    101 P.3d 140 (Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21, 22

7

8

*Harman v. San Francisco,*
    69 Cal. Rptr. 3d 750 (Cal. App. 1st Dist. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

9

*Harris v. Vector Mktg. Corp.,*
    C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) . . . . . . . . . . . . . . . . . . . . 24

10

11

*Horsford v. Bd. Of Trustees Of California State U.,*
    33 Cal. Rptr. 3d 644 (Cal. App. 5th Dist. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

12

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

13

*In re Cellphone Fee Termination Cases,*
    113 Cal. Rptr. 3d 510 (Cal. App. 1st Dist. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

14

15

*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

16

*Jefferson v. Chase Home Fin.,*
    C 06-6510 TEH, 2009 WL 2051424 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17

*Ketchum v. Moses,*
    17 P.3d 735 (Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

18

19

*Kim v. Euromotors W./The Auto Gallery,*
    56 Cal. Rptr. 3d 780 (Cal. App. 2d Dist. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

*Lealao v. Beneficial California, Inc.,*
    97 Cal. Rptr.2d 797 (Cal. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21

22

*Lilly v. Jamba Juice Co.,*
    No. 13-cv-02998-JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) . . . . . . . . . . . . 15, 18

23

*Lytle v. Carl,*
    382 F.3d 978 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

24

25

*Mangold v. California Public Utilities Commission,*
    67 F.3d 1470 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26

27

*Meister v. Regents of U. of California,*
    78 Cal. Rptr. 2d 913 (Cal. App. 6th Dist. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28

MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

*Miller v. Ghirardelli Chocolate Co.,*
  12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) . . . . . . . . . . . . . . . . 19, 23

*Minor v. Christie's, Inc.,*
  C 08-05445 WHA, 2011 WL 902235 (N.D. Cal. Jan. 29, 2011),
  *report and recommendation adopted* C 08-05445 WHA, 2011 WL 902033
  (N.D. Cal. Mar. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Parkinson v. Hyundai Motor Am.,*
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*Pierce v. Rosetta Stone, Ltd.,*
  No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) . . . . . . . . . . . . . 24

*PLCM Group v. Drexler,*
  997 P.2d 511 (Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Prison Legal News v. Schwarzenegger,*
  608 F.3d 446 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Relente v. Viator, Inc.,*
  12-CV-05868-JD, 2015 WL 3613713 (N.D. Cal. June 9, 2015) . . . . . . . . . . . . . . . . . . 15

*Rodriguez v. Disner,*
  688 F.3d 645 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sadowska v. Volkswagen Group of Am., Inc.,*
  CV 11-00665-BRO AGRX, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) . . . . . . . . . 23

*Serrano v. Priest,*
  569 P.2d 1303 fn. 23 (Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Serrano v. Unruh,*
  652 P.2d 985 (Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Thieriot v. Celtic Ins. Co.,*
  C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) . . . . . . . . . . . . . . . . . . 24

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

*Wolph v. Acer Am. Corp.,*
  C 09-01314 JSW, 2013 WL 5718440 (N.D. Cal. Oct. 21, 2013) . . . . . . . . . . . . . . . 12, 15

*Wren v. RGIS Inventory Specialists,*
  Case No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. April 1, 2011) . . . . . 16, 20, 23

MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

**STATUTES**

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1712(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 17

Cal. Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Civ. Code § 1770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Civ. Code § 1780(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Code Civ. Pro. § 1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Health & Safety Code § 109900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Health & Safety Code § 111910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**RULES**

Fed. R. Civ. P. 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**LEGISLATIVE HISTORY**

S. Rep. 109-14 (109th Cong., 1st Sess. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3 **PLEASE TAKE NOTICE THAT** on February 11, 2016 at 9:30 a.m., or as soon thereafter as this

4 matter may be heard in the courtroom of the Honorable Laurel Beeler, Plaintiffs Rosminah Brown

5 and Eric Lohela will, and hereby do, respectfully apply to this Court for an award of attorneys'

6 fees of $3.541 million and litigation expenses of $459,000 (which are rounded to $3.54 million

7 and $460,000, respectively, for the purposes of this motion) as well as service awards to the class

8 representatives in the total amount of $15,000.  As required by the Settlement Agreement,

9 Plaintiffs make this motion pursuant to the California Organic Products Act, Cal. Health & Safety

10 Code § 111910(b), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e), and

11 California's private attorney general statute, Cal. Code Civ. Pro. § 1021.5.  Settlement § VIII.A.2

12 [ECF No. 358-3].

13        This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

14 Authorities, the accompanying Declaration of Mark N. Todzo and exhibits attached thereto, the

15 Declarations of Rosminah Brown and Eric Lohela, the other papers on file in this action, and such

16 other submissions or arguments that may be presented before or at the hearing on this motion.

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

After four and a half years of litigation, more than 8,969 attorney hours and staff time and $460,000 in out-of-pocket expenses, Class Counsel[1] obtained nearly complete relief for class members who purchased Avalon Organics® and JASON® products believing them to be organic. Class Counsel's efforts enabled them to successfully negotiate a Settlement that, if approved by the Court, will compensate class members for more than 100% of the alleged "organic" overcharge for the Avalon Organics® and JASON® products. Despite all of their work and the excellent results obtained, Class Counsel are seeking considerably less than their lodestar.

Hain fought at every stage of the litigation, and agreed to provide appropriate relief to the class only after Plaintiffs withstood three pleadings challenges and a motion for summary judgment, defeated a request for interlocutory review in the Ninth Circuit, brought three successful motions for summary judgment, fought through innumerable discovery disputes, obtained class certification and prepared Plaintiffs' experts for trial. Now, having succeeded in their efforts on behalf of the class, Plaintiffs ask that the Court grant their application for an award of attorneys' fees of $3.54 million and out-of-pocket litigation expenses of $460,000 pursuant to the California Organic Products Act ("COPA"), Cal. Health & Safety Code § 111910(b), the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780(e), and California's private attorney general statute, Cal. Code Civ. Pro. § 1021.5.

California law governs the right to a fee in this case as well as the method of calculating that fee. Ninth Circuit courts applying federal law have discretion to utilize the percentage-of-the-fund method to determine fee awards in common fund settlements. In contrast, here, the Court must apply state substantive law given that this is a diversity action in which Plaintiffs asserted

---

[1] Class Counsel is the Lexington Law Group. Although Kirtland & Packard LLP performed work in this litigation on behalf of Plaintiff Crivier, they are not seeking to recover attorneys' fees or costs by this motion given that Lexington Law Group did the vast majority of the work on this case.

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   claims under California law and seek their attorneys' fees under the fee-shifting provisions of

2   those same laws.

3   Under California law, successful plaintiffs are entitled to recover their fees using a lodestar

4   method.  Here, there can be no serious dispute as to whether Plaintiffs were successful.  They

5   prevailed on every legal challenge to their claims and obtained almost full relief for the entire

6   class.  The lodestar approach must therefore be used to calculate Class Counsel's fees.

7   Accordingly, the Court should apply California's two-step lodestar procedure.  In the first

8   step, the Court calculates the lodestar value by multiplying the hours reasonably spent litigating

9   the case by reasonable hourly rates.  Next, the Court may adjust the lodestar upward or downward

10   by applying a multiplier to the lodestar figure to take into account the result achieved for the class

11   members, the contingency risk associated with the case and the quality of the representation,

12   among other things.

13   Here, applying Class Counsel's customary hourly rates – which are commensurate with the

14   prevailing rates charged by attorneys that practice complex class action litigation on a non-

15   contingent basis in this District – to the 8,969 hours Class Counsel spent through November 30,

16   2015 representing class members yields a lodestar value of more than $4.51 million, which will

17   increase to at least $4.54 million through final resolution of this case.  Although a multiplier of the

18   $4.54 million lodestar would be appropriate in light of the relief obtained for the class, the

19   significant novelty and risk associated with this case and the other lodestar enhancement factors,

20   Class Counsel are not seeking a fee enhancement.  The Settlement caps any fees and costs award

21   at $4 million, which is $1 million dollars less than the $5 million in fees and costs incurred in this

22   case, and a 22% reduction of Class Counsel's lodestar.  Thus, the requested fees and costs are

23   reasonable, and the Court should approve $3.54 million in attorneys' fees and $460,000 in

24   litigation expenses.

25   **BACKGROUND**

26   Prior to and since initiating this case in May 2011, Class Counsel have engaged in

27   extensive investigation, case management efforts, discovery, pleadings challenges, summary

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

judgment motion practice, class certification proceedings and intensive settlement negotiations including four separate mediations.  Hain aggressively defended this action by leveraging its wealth of resources to resist discovery at every turn and raise numerous legal attacks on Plaintiffs' claims.  Victory for the class was not guaranteed, and Plaintiffs faced significant legal hurdles in order to prevail.

## I.      LITIGATING THIS CASE WAS TIME AND LABOR INTENSIVE.

### A.      Class Counsel Conducted Extensive Factual and Legal Investigation Prior to Filing This Action.

Plaintiff Brown (along with the Center for Environmental Health) filed this action on May 11, 2011.  Todzo Decl. ¶ 2.  Before commencing this action, Class Counsel conducted a comprehensive examination and evaluation of the relevant law and facts to assess the merits of the claims and to determine how to best serve the interests of the class members.  *Id.*  At that time, there were no reported cases involving COPA, and Class Counsel could not find any precedent for asserting a claim under COPA or using COPA as a predicate for a claim under California's Unfair Competition Law, Cal. Business & Professions Code §§ 17200, *et seq.* ("UCL") or the CLRA, Cal. Civ. Code § 1770, *et seq.  Id.*  Class Counsel also anticipated that Hain would raise defenses based on preemption and primary jurisdiction and had to be sure to plead the case in a way that minimized Hain's chance of prevailing on these issues.  *Id.*  Because of the novelty of the legal issues, Class Counsel were required to conduct significant legal research prior to filing the action. *Id.*

In addition to their legal research, Class Counsel conducted a pre-suit factual investigation that included interviewing and communicating with putative class members and consulting with expert witnesses.  Todzo Decl. ¶ 3.  It also included investigating Hain's marketing, business practices and promotional efforts with respect to the Avalon Organics® and JASON® products, preparing the requisite pre-suit notice pursuant to the CLRA and drafting the complaint.  *Id.*

### B.      This Case Required Significant Case Management and Litigation Strategy Efforts.

This complex class action required Plaintiffs to expend substantial time on case

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   management matters.  *See* Todzo Decl. ¶ 4.  Over the four and a half years of litigation, Plaintiffs

2   submitted seventeen joint case management conference statements, each of which required

3   Plaintiffs to engage in often contentious meet and confer efforts with Hain regarding the

4   management of discovery, motion practice, the litigation schedule, alternative dispute resolution

5   and other matters.  *Id.*  Class Counsel were also required to prepare for and appear at the

6   approximately ten case management conferences held by the Court.  *Id.*  In addition, the

7   complexity of the case and the nature of Hain's spirited defense required numerous internal

8   strategy meetings regarding the litigation and overall case administration.  *Id.*

9        There was also significant administrative motion practice regarding case management

10  matters.  Todzo Decl. ¶ 5.  Plaintiffs filed ten administrative motions concerning matters such as

11  case deadlines, motion page limits and discovery, and Plaintiffs were required to oppose an

12  administrative motion by Hain to stay all case deadlines early in the litigation.  *Id.*  Further, as a

13  result of Hain's practice of designating virtually every document produced in the litigation as

14  "confidential," Plaintiffs were required to file six motions to seal documents.  *Id.*

15       **C.    Class Counsel Were Required to Defend Hain's Three Pleadings Challenges,
                Motion for Interlocutory Appeal and Petition for Permission to Appeal in the

16              Ninth Circuit.**

17       Hain zealously attacked the pleadings in this action, bringing three separate challenges to

18  the operative complaint based on at least six distinct legal theories.  Todzo Decl. ¶ 6.  Ten months

19  after the lawsuit was filed, Hain moved to dismiss the complaint for lack of subject matter

20  jurisdiction, arguing that the Organic Foods Production Act, 7 U.S.C. §§ 6501-6524 ("OFPA"),

21  expressly preempts COPA [ECF No. 27].  Todzo Decl. ¶ 6.  At the hearing on the motion,

22  although the Court indicated it did not believe OFPA preempted Plaintiffs' claims, Hain argued

23  for the first time that the Court should dismiss the complaint because the United States

24  Department of Agriculture purportedly had primary jurisdiction over Plaintiffs' claims.  *Id.*  Hain

25  requested permission to file supplemental briefs regarding the primary jurisdiction issue, which

26  the Court granted over Plaintiffs' opposition.  *Id.*  After holding a hearing on the supplemental

27  briefing, the Court denied Hain's motion to dismiss in its entirety [ECF No. 58].  *Id.*  Had it been

28

granted, Hain's motion could have been completely dispositive of Plaintiffs' claims. *Id.*

Hain thereafter requested that the Court certify the order denying the motion to dismiss for interlocutory appeal to the Ninth Circuit, and moved for a stay of the case pending such appeal, which Plaintiffs opposed. Todzo Decl. ¶ 7. The Court granted Hain's motion for certification of the order for interlocutory review but denied the request for a stay. *Id.* The parties subsequently briefed Hain's petition for permission to appeal, and the Ninth Circuit denied the petition shortly after the briefing was completed [Ninth Cir. Docket No. 12-80186, Order Denying Petition (December 17, 2012)]. *Id.*

On August 21, 2012, Plaintiff Brown filed an amended complaint ("FAC") to add Plaintiff Lohela as a class representative and to conform the complaint to the federal rules regarding class certification (given that the operative complaint had been removed by Hain from state court). Todzo Decl. ¶ 8. On October 9, 2012, Hain filed a motion to dismiss the amended complaint together with a motion to strike [ECF Nos. 85 & 87]. *Id.* If granted, the second motion to dismiss could have been dispositive of the entire action, and the motion to strike would have substantially narrowed the class to less than 3% of the settlement class approved by the Court. *Id.* On December 22, 2012, the Court denied Hain's second motion to dismiss and motion to strike in their entirety [ECF No. 104]. *Id.*

### D. Class Counsel Conducted Substantial, Hard Fought Discovery to Obtain the Information Necessary to Prosecute This Action.

As the Court is well aware, Hain forcefully resisted discovery in this case. As a result, discovery was unusually time consuming and hard fought. The following is an overview of the major discovery conducted in this case:

- Plaintiffs served five sets of requests for production of documents, four sets of interrogatories and three sets of requests for admissions on Hain. Todzo Decl. ¶ 9. Plaintiffs met and conferred with Hain extensively regarding its responses to these requests. *Id.* Hundreds of thousands of pages of documents were eventually produced by Hain and carefully reviewed by Plaintiffs. *Id.*

- Plaintiffs responded to three sets of requests for admissions and two sets of document requests and interrogatories propounded by Hain. *Id.*

- Plaintiffs took a FRCP 30(b)(6) deposition and deposed eight key Hain employees. *Id.*

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

Class Counsel also defended the depositions of Plaintiffs Brown and Lohela, as well as defending the deposition of one of their experts, Stephen F. Hamilton, Ph.D.  *Id.*

- Plaintiffs were required to conduct substantial third party discovery due to gaps in Hain's document production and written discovery responses.  *Id.*  Plaintiffs subpoenaed over thirty non-parties including Hain's suppliers, wholesalers, retailers, marketing firms and the entities responsible for certifying the organic content of the Avalon Organics® products, and met and conferred extensively with those non-parties regarding their responses.  *Id.*

- Plaintiffs were required to submit a total of eight separate discovery dispute letters to the Court, which resulted in six orders compelling Hain to produce relevant information and documents [ECF Nos. 64, 102, 278, 283, 299 & 320].  *Id.*  Plaintiffs were also required to file a motion for discovery sanctions under FRCP 37, which the Court granted in the amount of $26,520 due to Hain's refusal to substantively respond to Plaintiffs' discovery requests for the first eighteen months of the litigation [ECF No. 155].  *Id.*

### E.    Class Counsel Were Required to Defend Hain's Motion for Summary Judgment.

In another unsuccessful attempt to derail Plaintiffs' claims, Hain filed a motion for summary judgment on November 1, 2013, arguing that a California Department of Public Health ("CDPH") "Resolution Letter" dated February 19, 2013 barred Plaintiffs' claims [ECF No. 156]. Todzo Decl. ¶ 10.  This was another potentially dispositive motion that required skilled and careful opposition in order to keep the class claims intact.  *Id.*  Once the motion was briefed and the Court had held a hearing, the Court denied the motion [ECF No. 172].  *Id.*

### F.    Plaintiffs' Successful Motion for Class Certification.

Plaintiffs filed their motion for class certification on July 15, 2014 [ECF No. 248].  Todzo Decl. ¶ 11.  This motion was heavily litigated.  *Id.*  In support of the motion, Plaintiffs consulted with experts regarding the method of calculating damages on a classwide basis, the alleged price premium Hain charged for the products and the likelihood of deception resulting from the organic representations on the products.  *Id.*  Plaintiffs prepared and submitted two detailed expert declarations with their motion.  *Id.*  Hain vigorously opposed the motion.  Hain's opposition brief was accompanied by over 600 pages of testimony from a damages expert and key Hain employees [ECF Nos. 248-2 to 248-18].  *Id.*  Hain also filed a motion to strike Plaintiffs' evidence, which Plaintiffs opposed.  *Id.*  The Court granted the class certification motion on November 14, 2014 [ECF No. 267].  *Id.*  The Court certified a class of consumers who: (1) purchased JASON®

products in California from May 11, 2007 to January 30, 2011; and (2) purchased Avalon Organics® products in California from May 11, 2007 to January 6, 2015. *Id.* Plaintiffs thereafter conferred extensively with Hain's counsel and the Claims Administrator regarding the class notice program, prepared the class notice and supporting documents, and prepared and filed the motion for approval of the class notice program, which the Court granted on December 23, 2014. *Id.*

**G.      Plaintiffs Brought Three Successful Motions for Partial Summary Adjudication to Narrow the Issues for Trial.**

Following class certification, Plaintiffs brought three successful motions for summary adjudication under FRCP 56(a) in order to narrow the disputed issues for trial [ECF Nos. 245, 296 & 323]. Todzo Decl. ¶ 12. Although Hain mounted a forceful opposition to each motion, the Court granted all three motions [ECF Nos. 333 & 340]. *Id.*

**H.      Class Counsel Prepared for Trial.**

The settlement conference that led to the Settlement took place on July 20, 2015, which was only six months prior to the scheduled trial date. Todzo Decl. ¶ 14. Accordingly, Class Counsel had to begin preparing for trial. Had the case gone to trial, Plaintiffs would have had to demonstrate, among other things, that each product at issue: (1) was a "cosmetic" under Cal. Health & Safety Code § 109900; (2) displayed the word "organic" on the principal display panel during a particular time period; and (3) contained less than 70% organic ingredients during the same time period. *Id.* Thus, Plaintiffs gathered and prepared their evidence as to each of the more than 300 products at issue. *Id.* Given the significant gaps in Hain's document production, this process was extraordinarily time consuming. *Id.*

In addition to their pre-trial work with consulting and class certification experts, Class Counsel's trial preparation included working with their expert witnesses to prepare the necessary expert reports for trial. Todzo Decl. ¶ 15. Plaintiffs consulted with and retained several experts regarding, among other things: (1) Hain's method of calculating the organic content of its NSF-certified Avalon Organics® products; (2) the amount of the "organic" premium allegedly charged for the Avalon Organics® and JASON® products; and (3) the proper calculation of damages in the case based on sales data Hain produced in discovery. *Id.* Plaintiffs were in the process of

1   finalizing their expert reports in advance of an August 2015 expert disclosure deadline when the

2   parties reached a settlement in principle on July 20, 2015.  *Id.*

3           **I.**      **Class Counsel Engaged in Intensive Settlement Efforts with Hain.**

4          As with the other aspects of this litigation, the negotiations ultimately leading to the

5   settlement of Plaintiffs' claims were contentious and required significant attorney time and skill.

6   Todzo Decl. ¶ 16.  Class Counsel engaged in intensive, adversarial settlement efforts with Hain

7   over the course of the litigation, including participating in four separate mediations.  From the

8   outset, Plaintiffs attempted to resolve their claims without the need for the time consuming and

9   expensive litigation described herein.  *Id.*  Early in the proceedings, the parties agreed to

10  participate in the Northern District's Alternative Dispute Resolution program, and a mediation

11  with Arthur D. Levy was scheduled for March 2012.  *Id.*  As noted above, however, ten months

12  after the case was filed, Hain chose to delay the scheduled mediation in order to file a motion to

13  dismiss and the parties agreed to postpone mediation until the Court ruled on the motion.  *Id.*

14  Following the Court's denial of Hain's first motion to dismiss in August 2012, the parties

15  submitted detailed mediation briefs and attended a day-long mediation with Mr. Levy at which a

16  Hain representative and Plaintiffs Brown and Lohela were present.  *Id.*  The case did not settle.  *Id.*

17  Indeed, Plaintiffs did not receive any counteroffer from Hain regarding Plaintiffs' monetary

18  demand at that time.  *Id.*

19         Five months later, following the Court's denial of Hain's motion to strike and second

20  motion to dismiss, the parties again entered into settlement discussions and agreed to participate in

21  a mediation with Randall D. Wulff in late February 2013.  Todzo Decl. ¶ 17.  Four days prior to

22  the February 25, 2013 mediation, after the parties had already submitted their mediation briefs,

23  Hain provided Class Counsel with the CDPH's February 19, 2013 "Notice of Resolution" letter.

24  *Id.*  The CDPH letter significantly impacted the negotiations, and although the parties made some

25  progress toward a resolution, they were ultimately unable to reach a settlement.  *Id.*  The parties

26  scheduled a second day of mediation with Mr. Wulff, which took place on March 12, 2013.  *Id.*

27  Near the end of the second day of mediation, the parties believed they had reached a settlement in

28

1   principle.  *Id.*  For the next six months, Plaintiffs expended considerable resources attempting to

2   finalize the detailed terms of a settlement agreement with Hain and preparing the preliminary

3   approval papers.  *Id.*  However, in the process of memorializing the settlement, it became clear

4   that there was no meeting of the minds as to a particular issue which prevented the parties from

5   finalizing the settlement.  *Id.*  Thus, the parties resumed litigation in September 2013.  *Id.*  The

6   value of the settlement to the class that the parties were negotiating at that time was a mere

7   fraction of the value of the present Settlement to the class.  *Id.*

8       After the Court denied Hain's motion for summary judgment in February 2014, the parties

9   agreed to participate in a settlement conference with the Court.  Todzo Decl. ¶ 18.  On April 16,

10  2014, the parties participated in a full day settlement conference with the Court.  *Id.*  The

11  conference did not result in a settlement.  *Id.*  On May 23, 2014, the parties participated in a

12  second full day settlement conference with the Court.  *Id.*  Following the settlement conference,

13  settlement discussions continued with the Court's assistance until June 3, 2014, at which time it

14  became clear that the case would not settle.  *Id.*  The parties thus resumed litigation.  *Id.*  The

15  monetary relief for the class on the table when settlement discussions were terminated was

16  significantly less than the relief provided by present Settlement.  *Id.*

17      One year later, in April 2015, following the Court's class certification order, Hain

18  proposed reopening settlement discussions.  Todzo Decl. ¶ 19.  The parties discussed and made

19  proposals to the Court regarding the scheduling of a settlement conference.  *Id.*  Shortly thereafter,

20  on May 26 and May 30, 2015, the Court granted each of Plaintiffs' three motions for summary

21  adjudication.  *Id.*  On June 15, 2015, the Court referred the parties to Magistrate Judge Spero for a

22  settlement conference, which took place on July 20, 2015.  *Id.*  The parties were able to reach a

23  settlement in principle at the conference, and Judge Spero scheduled a second settlement

24  conference so he could oversee any issues with finalizing the Settlement.  *Id.*  The Court stayed

25  the litigation deadlines and, for the next month, the parties negotiated the specific terms of the

26  Settlement.  *Id.*  Following agreement as to the general terms of the settlement in principle, much

27  work remained for Class Counsel.  *Id.*  Class Counsel still had to draft and reach agreement with

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1    Hain regarding the form of the Settlement, the class notices, the claim form, the notice program

2    and multiple other exhibits to the Settlement.  *Id.*  The parties submitted updated settlement

3    conference statements in advance of the August 26, 2015 settlement conference, at which the

4    parties informed Judge Spero that they had reached agreement on all material and substantive

5    terms of the Settlement.  *Id.*

6           Once the Settlement was signed, Class Counsel prepared and filed the motion for

7    preliminary approval, which included numerous supporting documents and declarations [ECF No.

8    355].  Todzo Decl. ¶ 20.  Class Counsel appeared at the hearing and argued in support of

9    preliminary approval, which the Court granted shortly after the hearing on October 28, 2015.  *Id.*

10   Since the Court preliminarily approved the Settlement, Class Counsel have worked closely with

11   Hain's counsel and the Claim Administrator to supervise dissemination of notice to class members

12   and to oversee the claims process.  *Id.*  This work continues at the time of this filing.  *Id.*  Class

13   Counsel also prepared this motion, which included reviewing voluminous billing records.  *Id.*

14   **II.     CLASS COUNSEL'S TIME AND EXPENSES.**

15          Class Counsel have expended significant professional time and out-of-pocket expenses

16   litigating this case and securing the Settlement for the benefit the Class.  In total, Class Counsel

17   have spent over 8,969 hours litigating this case through November 30, 2015 resulting in a lodestar

18   of $4.51 million.  Todzo Decl. ¶¶ 29-30.  Class Counsel anticipate spending an additional 100

19   hours up through final distribution of the Settlement resulting in a lodestar of $4.54 million.  *Id.* at

20   ¶¶ 31-32.  The out-of-pocket litigation expenses incurred by Class Counsel are $460,000 to date.

21   *Id.* at ¶ 45.  Thus, Class Counsel's total lodestar and costs will be approximately $5 million at the

22   conclusion of its work on behalf of the Class.  *Id.* at ¶¶ 32 & 45.  The amounts of the lodestar and

23   litigation costs are eminently reasonable for a class action case of this size and complexity which

24   was heavily litigated and settled a few months before the scheduled trial.

25   **III.    THE VALUE OF THE SETTLEMENT TO THE CLASS.**

26          Assuming the Court grants Class Counsel's request for $4 million in fees and costs, the

27   remaining $5.35 million in cash and coupons still represents a significant percentage, if not 100%,

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

of the damages alleged by the class.  Todzo Decl. ¶ 22.  At class certification, Plaintiffs' expert estimated Hain's operating profits from sales of the allegedly mislabeled products at $11.5 million which represented 32% of total sales [ECF No. 243-14 at ¶ 40].  *Id.*  However, the class period at issue was longer – up through October 2014 for the Avalon Organics® products – than the Settlement Class certified by the Court, which is only up through May 2011.  *Id.*  Adjusting for the shorter class period, 100% of disgorgement of profits would be $8.2 million.  *Id.*  Nevertheless, it is more likely that the Court would have ultimately utilized the price premium methodology to calculate damages rather than the disgorgement remedy.  *Id.*  Here, based on Class Counsel's consultation with their damages expert in preparation for trial, the price premium methodology would likely have resulted in approximately 50% of the disgorgement damages, or $4.1 million. *Id.*  Thus, at a minimum, the Settlement provides a cash fund for the class equal to 85% of the potential recovery in a case where the outcome was uncertain and the risks and costs of proceeding through trial were considerable.  *Id.*  This percentage increases if the value of any of the coupons are considered.  *Id.*  The recovery by individual class members valued at 50% of the cost of their purchases is in excess of even the 32% disgorgement of profits remedy, which was identified as the highest measure of restitution or damages by Plaintiffs' expert.  *Id.*

## ARGUMENT

**I.     PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES UNDER CALIFORNIA FEE-SHIFTING STATUTES AND THE LODESTAR METHOD SHOULD BE USED TO CALCULATE THE AMOUNT OF THOSE FEES.**

### A.     Plaintiffs' Fee Request Is Governed By California Law.

California law applies to Plaintiffs' entitlement to attorneys' fees and the method of calculating those fees.  This is a diversity action removed to this Court by Hain under the Class Action Fairness Act, 28 U.S.C. § 1332.  In a diversity action, where state substantive law governs plaintiff's claims, "it also governs the award of fees."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state."); *Wolph v.*

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   *Acer Am. Corp.*, C 09-01314 JSW, 2013 WL 5718440, at *2 (N.D. Cal. Oct. 21, 2013) ("This

2   action asserted claims under California law and is premised on diversity jurisdiction.  Therefore,

3   California law governs the determination of attorneys' fees here.").

4         Specifically, Plaintiffs' eligibility to recoup their attorneys' fees is premised on COPA, the

5   CLRA and Cal. Code Civ. Pro. § 1021.5.  Indeed, the Settlement mandates that Class Counsel's

6   request to be compensated for their attorney time and litigation expenses is made pursuant to these

7   California fee-shifting laws.  Settlement § VIII.A.2.  Therefore, the Court should apply California

8   state law in assessing this fee application, as both the availability of a fee award and the method of

9   calculating that award are considered substantive issues reflecting important state policy.

10      **B.    Plaintiffs' Are Entitled to Recover Their Attorneys' Fees Under the CLRA,**
11           **California's Private Attorney General Statute and COPA.**

12         Plaintiffs are eligible to recover their attorneys' fees under three California fee-shifting

13   statutes.  First, the CLRA mandates an award of fees and costs here.  Under the CLRA, "[t]he

14   court ***shall*** award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant

15   to [the CLRA]."  Cal. Civ. Code § 1780(e) (emphasis added); *Kim v. Euromotors W./The Auto*

16   *Gallery*, 56 Cal. Rptr. 3d 780, 786 (Cal. App. 2d Dist. 2007) (attorney fee award to prevailing

17   plaintiff is mandatory under CLRA "even where the litigation is resolved by a pre-trial settlement

18   agreement.").  A litigant is the "prevailing plaintiff" when he or she either: (1) obtained a net

19   monetary recovery; or (2) "realized [his or her] litigation objectives."  *Kim* at 786-87.  Here,

20   Plaintiffs are prevailing parties under either approach.  The Settlement results in a "net monetary

21   recovery" of at least $3.5 million in cash for the members of the class.  Plaintiffs also realized their

22   litigation objectives by obtaining a Settlement that provides class members with significant

23   compensation for their purchases of products that were represented as organic but which allegedly

24   were comprised of mostly non-organic ingredients.[2]  Thus, Plaintiffs are entitled to a fee award

25      [2] In addition, early in the litigation, Hain ceased making organic representations with respect to
26   its Jason® products and reformulated its Avalon Organics® products to increase the percentage of
     organic ingredients.  Todzo Decl. ¶ 21.  Hain has continued to implement these more accurate
27   organic representations on the Jason® and Avalon Organics® products up through the present.  *Id.*

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   under the CLRA as prevailing plaintiffs.

2   Second, California's private attorney general statute authorizes the requested fee award.

3   The private attorney general statute allows a court to award attorneys' fees to a "successful party"

4   in an action to enforce "an important public right" where: (1) a significant benefit has been

5   conferred on a large class of persons; (2) the necessity and financial burden of the private

6   enforcement are such as to make the award appropriate; and (3) such fees should not in the interest

7   of justice be paid of the recovery, if any.  Cal. Code Civ. P. § 1021.5.  The term "successful

8   party" is synonymous with the term "prevailing party" used in the CLRA, and requires only that

9   the plaintiff achieve its litigation objectives, whether by judgment, settlement, or other means.

10  *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 150 (Cal. 2004).  Here, for the same reasons

11  previously discussed, Plaintiffs satisfy the "successful party" standard.

12  Plaintiffs meet section 1021.5's other criteria as well.  The action enforced important

13  consumer protection rights under COPA, the UCL and the CLRA, and will likely discourage other

14  companies from using similar unfair and deceptive "organic" representations on cosmetic

15  products.  *Graham,* 101 P.3d at 156 ("It is well settled that attorney fees under section 1021.5 may

16  be awarded for consumer class action suits benefiting a large number of people.").  The action also

17  conferred a significant benefit on a large class of individuals who purchased Avalon Organics®

18  and Jason® products believing them to be organic by reimbursing purchasers for a substantial

19  portion of the products' purchase price.  *See id.*  Further, the necessity and financial burden of

20  private enforcement make an award appropriate.  Without the incentive of an attorneys' fees

21  award, Plaintiffs could not have afforded to hire counsel to pursue this case given that the products

22  at issue here typically cost less than $20.  *See* Brown Decl. ¶ 2; Lohela Decl. ¶ 2.  Similarly,

23  justice does not require that the attorneys' fees be paid out of Plaintiffs' recovery given their

24  relatively small individual damages compared with the significant fees and costs incurred in

25  successfully litigating this action on behalf of the class.

26  Third, Plaintiffs are entitled to a fee award pursuant to COPA.  Under COPA, the Court

27  has broad discretion to award attorneys' fees.  Specifically, the Court "may award . . . reasonable

28

attorneys' fees as determined by the court" to a "person, organization or entity" who brings an action to enjoin violations of COPA.  *See* Cal. Health & Safety Code § 111910(a) & (b).  Here, Plaintiffs' success in securing the Settlement on behalf of the class warrants an award of reasonable attorneys' fees in keeping with California's fee-shifting policy of encouraging enforcement of consumer protection laws such as COPA.

### C.   California Law Prescribes a Lodestar Method of Calculating a Reasonable Fee.

In fee-shifting cases, in which the responsibility to pay attorneys' fees is statutorily transferred from the prevailing plaintiff or class to the defendant, California law requires use of the lodestar method.  Under California law, "[t]he starting point for every fee award . . . must be a calculation of the attorney's services in terms of the time he has expended on the case."  *Serrano v. Priest ("Serrano III")*, 569 P.2d 1303 fn. 23 (Cal. 1977); *PLCM Group v. Drexler*, 997 P.2d 511 (Cal. 2000) ("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.") (citation omitted).  The California Legislature has "endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations," and "[w]hen the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated."  *Ketchum v. Moses*, 17 P.3d 735, 743 (Cal. 2001); *Meister v. Regents of U. of California,* 78 Cal. Rptr. 2d 913 (Cal. App. 6th Dist. 1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation.").

While the lodestar method is clearly established under California law, "[t]he award of attorney fees based on a percentage of a 'common fund' recovery is of questionable validity in California."  *Dunk v. Ford Motor Co.,* 56 Cal. Rptr. 2d 483 (Cal. App. 4th Dist. 1996); *Lealao v. Beneficial California, Inc.*, 97 Cal. Rptr.2d 797, 804 (Cal. Ct. App. 2000) ("Prior to 1977, when the California Supreme Court decided *Serrano III*, California courts could award a percentage fee in a common fund case.  After *Serrano III*, it is not clear whether this may still be done.").  This is because the "common fund" doctrine is "a traditional equitable doctrine 'rooted in concepts of

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

quasi-contract and restitution'" which is utilized ***in the absence*** of a "contractual or statutory basis to award attorneys' fees in a class action case." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).[3]  Here, because Class Counsel's right to attorneys' fees is based on California fee-shifting statutes, the lodestar method is applicable to the determination of the reasonable amount of Plaintiffs' attorneys' fees.

> **D.    Federal Courts Utilize the Lodestar Analysis to Calculate Attorneys' Fees in Class Action Cases Based on California Law.**

Recent decisions by courts in this District have confirmed that courts should apply the lodestar/multiplier method in diversity cases arising under California law: "where, as here, plaintiff brings a state law claim, the Court looks to the state's law in deciding which method to use to calculate attorney's fees." *Relente v. Viator, Inc.*, 12-CV-05868-JD, 2015 WL 3613713, at *1 (N.D. Cal. June 9, 2015).  Similarly, in awarding attorneys' fees under a class action settlement regarding misleading food labels, Judge Tigar held that "California courts apply the lodestar method in class actions governed by California law." *Lilly v. Jamba Juice Co.*, No. 13-cv-02998–JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015); *see also Wolph*, 2013 WL 5718440, at *2 ("Under California law, '[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method.'") (ciatation omitted).  While the Ninth Circuit has endorsed 25% of the common fund as an appropriate "benchmark" for determining reasonable attorneys' fees in class action settlements under federal law, the Ninth Circuit has never swayed from authorizing trial courts to utilize the lodestar method when applying California law.  *See, e.g., In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Furthermore, application of California's lodestar method is particularly appropriate where, as here, the case was heavily litigated and the amount of the individual damages are relatively small.  *See Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826, at

---

[3] The California Supreme Court recently granted review of a case concerning whether a trial court may "anchor its calculation of a reasonable attorney's fees award in a class action on a percentage of the common fund recovered." *Laffitte v. Robert Half International, Inc. (Brennan )*, review granted Feb. 25, 2015, S222996.

1  *16 (N.D. Cal. April 1, 2011).  In *Wren*, Judge Spero found that the lodestar method allowed "for

2  a more accurate assessment of the reasonableness of Plaintiffs' fee request."  *Id.*  In that case, as is

3  true here, "the parties intensely litigated [the] action for over four years" and the defendant

4  "mounted a particularly aggressive defense which, in turn, greatly increased the amount of time

5  and resources counsel had to devote to discovery and litigating issues surrounded class action

6  status."  *Id.*  In light of the substantial litigation, Judge Spero held that "[u]tilizing the lodestar

7  approach" was appropriate given that it "captures the time counsel spent litigating such issues

8  while still allowing the Court to trim any excess time."  *Id.*

9       Likewise, Judge Spero found that application of the lodestar methodology was appropriate

10  because "the amount of individual damages . . . such as the instant case are relatively small" and

11  thus "gauging the amount of attorneys' fees on the size of the settlement fund may not lead to a

12  reasonable fee determination."  *Id.*  Indeed, under California law, courts apply the lodestar method

13  even where there is a "disparity between [the class's] potential total recovery and plaintiffs' fee

14  request" because California fee-shifting statutes are intended to "encourage litigation in cases that

15  are not likely candidates to produce high-dollar judgments."  *Parkinson v. Hyundai Motor Am.,*

16  796 F. Supp. 2d 1160, 1171-72 (C.D. Cal. 2010); *see Jefferson v. Chase Home Fin.*, C 06-6510

17  TEH, 2009 WL 2051424, *3 (N.D. Cal. 2009) (same).  Because this consumer protection case

18  similarly involves intensive litigation and small individual damages, the lodestar method should be

19  applied.

20       **E.    The Class Action Fairness Act Also Supports Application of the Lodestar
                 Method to Class Counsel's Fee Request.**

21       As established above, this case is governed by substantive California law.  The case was

22  removed to this Court under the Class Action Fairness Act ("CAFA").  To the extent the Court

23  looks to CAFA regarding the calculation of Plaintiffs' attorneys' fees, CAFA, like California law,

24  supports use of the lodestar method to calculate the fee award.  28 U.S.C. § 1712(b)(1).  Where, as

25  here, a portion of the classwide relief provided in a class action settlement is in the form of

26  coupons, Section 1712 of the CAFA applies and requires use of the lodestar method to calculate

27  the attorneys' fees.

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1    Specifically, Section 1712(b) provides that: "[i]f a proposed settlement in a class action

2 provides for a recovery of coupons to class members, and a portion of the recovery of the coupons

3 is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award

4 shall be based upon the amount of time class counsel reasonably expended working on the action."

5 28 U.S.C. § 1712(b)(1).  Section 1712(b) "applies in situations where a coupon settlement also

6 provides for non-coupon relief," and "confirms the appropriateness of determining attorney's fees

7 on [a lodestar] basis in connection with a settlement based in part on coupon relief."  *In re HP*

8 *Inkjet Printer Litig.*, 716 F.3d 1173, 1183 (9th Cir. 2013); *see also* S. Rep. 109-14 (109th Cong.,

9 1st Sess. 2005), *available at* 2005 U.S.C.C.A.N. 3, at 30 ("the proponents of a class settlement

10 involving coupons may decline to propose that attorney's fees be based on the value of the

11 coupon-based relief provided by the settlement [and instead] may propose that counsel fees be

12 based upon the [lodestar].  Section 1712(b) confirms the appropriateness of determining attorneys'

13 fees on this basis . . . .").

14    Here, Plaintiffs seek to recover their attorneys' fees under California fee-shifting statutes

15 based only on the amount of time Class Counsel reasonably expended on this action.  Class

16 Counsel's right to attorneys' fees thus does not arise in any way from the value of the coupons.

17 Indeed, the significant monetary relief is the primary relief obtained for the class; although class

18 members have the option of receiving coupons to increase their total recovery from $50 to $80, the

19 coupon relief is in addition to receiving cash.  Settlement § III.B.  Thus, because "the recovery of

20 the coupons is not used to determine the attorney's fee to be paid to class counsel," the award here

21 "**shall** be based upon the amount of time class counsel reasonably expended working on the

22 action."  28 U.S.C. § 1712(b)(1) (emphasis added).

23 **II.    THE FEE AWARD OF $3.54 MILLION IS REASONABLE AND SIGNIFICANTLY**
**LESS THAN THE TIME SPENT BY CLASS COUNSEL REPRESENTING THE**
24 **CLASS OVER MORE THAN FOUR YEARS OF LITIGATION.**

25    As established above, the value of Class Counsel's services to the class under California

26 law is calculated by multiplying the time reasonably spent on the litigation by appropriate hourly

27 rates.  This calculation yields a lodestar value of at least $4.54 million through final distribution of

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   the Settlement funds.  Todzo Decl. ¶¶ 29-32.  This lodestar figure is "presumptively reasonable."

2   *Harman v. San Francisco*, 69 Cal. Rptr. 3d 750, 759 (Cal. App. 1st Dist. 2007) (citation omitted).

3   Indeed, Class Counsel's hours are thoroughly documented, the hours claimed are consistent with

4   the demands of this case, and significant billing judgment has been exercised.  Nevertheless, Class

5   Counsel are only seeking to recover $3.54 million in attorneys' fees – a 22% reduction in their

6   lodestar – in accordance with the Settlement.

7        A.     **The More Than 8,969 Hours Class Counsel Expended Are Well Documented and Reasonable in Light of the Case's Complexity, Intensity and Duration.**

8        Class Counsel are entitled to be compensated for all hours reasonably spent litigating this

9   case "absent facts rendering the award unjust."  *Serrano v. Unruh*, 652 P.2d 985 (Cal. 1982).

10  Time is reasonably spent if it is the type of work that would be billed to a paying client.  *Harman*,

11  39 Cal. Rptr. 3d at 610.  Moreover, "[i]t must . . . be kept in mind that lawyers are not likely to

12  spend unnecessary time on contingency fee cases in the hope of inflating their fees . . . . By and

13  large, the court should defer to the winning lawyer's professional judgment as to how much time

14  he was required to spend on the case; after all, he won, and might not have, had he been more of a

15  slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  "While extensive

16  detail about how an attorney or paralegal spends their time is not necessary, plaintiff's counsel

17  should 'identify the general subject matter of [their] time expenditures.'"  *Lilly*, 2015 WL

18  2062858, at *5 (citing *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004)).

19       Class Counsel maintained detailed contemporaneous time records, from which they have

20  prepared the summaries set forth in the Todzo Declaration.  Todzo Decl. ¶¶ 23-26.  Mr. Todzo's

21  declaration provides a breakdown of the lodestar by timekeeper and a detailed summary of the

22  work performed from the inception of the litigation to the filing of the instant motion underlying

23  the reported time.  *Id.* ¶¶ 2-20, 29-30.  This evidence is "entitled to credence in the absence of a

24  clear indication the records are erroneous."  *Horsford v. Bd. Of Trustees Of California State U.,* 33

25  Cal. Rptr. 3d 644, 673 (Cal. App. 5th Dist. 2005).

26       The time spent by Class Counsel was reasonable and necessary to bring this case to a

27  successful conclusion.  The Todzo Declaration establishes that the work performed by Class

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   Counsel is the type of work that would ordinarily be billed to clients in non-contingent cases. *See,*

2   *e.g.,* Todzo Decl. at ¶¶ 2-20, 28.  Moreover, the work was necessary to counter Hain's aggressive

3   defense: Hain fought at every stage of the litigation, and agreed to provide appropriate relief to the

4   class only after Plaintiffs, among other things, prevailed on numerous discovery disputes,

5   withstood Hain's pleadings challenges and motion for summary judgment, and prevailed on class

6   certification and Plaintiffs' three motions for summary adjudication. *See id.*  Furthermore, Class

7   Counsel have exercised reasonable billing judgment: any time that might be considered excessive,

8   redundant or otherwise unnecessary has not been claimed.[4] *Id.* at ¶ 33.

   ### B.   Class Counsel's Rates Are Consistent with the Predominate Market Rates for Private Lawyers in the Northern District.

10      The hourly rates requested by Class Counsel are based on the rates charged by private

11  attorneys of comparable skill, reputation and experience for similarly complex litigation in the

12  Northern District.  Todzo Decl. ¶¶ 35-44.  Declarations of the fee applicant's attorney regarding

13  prevailing fees in the community and rate determinations in other cases are satisfactory evidence

14  of the prevailing market rate. *Minor v. Christie's, Inc.,* C 08-05445 WHA, 2011 WL 902235, at

15  *4 (N.D. Cal. Jan. 29, 2011)*, report and recommendation adopted* C 08-05445 WHA, 2011 WL

16  902033 (N.D. Cal. Mar. 14, 2011).  Moreover, counsel may claim their current hourly rates to

17  account for the "deferred and contingent nature of counsel's compensation." *Miller v. Ghirardelli*

18  *Chocolate Co.,* 12-CV-04936-LB, 2015 WL 758094, at *6 (N.D. Cal. Feb. 20, 2015).  Here, as the

19  Court has acknowledged, Class Counsel brought both expertise and skill to their successful

20  prosecution of this case. *See, e.g.,* ECF No. 267 at 22-23.  Their rates are fully justified.

21      In 2011, Judge Spero conducted a thorough review of the prevailing hourly rates for

22  attorneys' practicing complex litigation in the Northern District based on a substantial amount of

23  evidence submitted by the parties in *Wren v. RGIS Inventory Specialists*, C-06-05778 JCS, 2011

24

25  _____

26      [4] Indeed, none of the hours worked by any of the attorneys who filed the related *Crivier* case are even included in Class Counsel's request as such time was potentially duplicative of the time
27  spent by Class Counsel litigating the lead case.  Todzo Decl. ¶ 33.

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   WL 1230826 (N.D. Cal. Apr. 1, 2011).  Judge Spero determined that $650 for a partner with 17

2   years of experience, $450 for associates with 6-7 years of experience and $150 for

3   paraprofessionals with 3-5 years of experience were consistent with the prevailing market rates in

4   this District.  *Id.* at *17-22.  Likewise, in 2010, the Ninth Circuit found the district court did not

5   abuse its discretion in awarding 2008 hourly rates for San Francisco Bay Area attorneys of $875

6   for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with

7   approximately five years of experience and $190 for paralegals.  *Prison Legal News v.*

8   *Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).  More recent decisions by courts in this

9   District demonstrate that Class Counsel's hourly rates are in line with the predominate rates for

10  attorneys with comparable experience.  Todzo Decl. ¶ 36.

11      Here, Plaintiffs' lead counsel, Mark N. Todzo, has 22 years of experience in complex

12  consumer protection and environmental public interest cases.  Todzo Decl. ¶ 37.  His $750 hourly

13  rate is well within the range of market rates charged by similarly experienced attorneys for

14  reasonably comparable work.  *Id.* at ¶ 36.  Plaintiffs' other counsel were all similarly well

15  qualified for the specific and defined roles they played.  *Id.* ¶¶ 38-44.  Their rates, ranging from

16  $400 to $770, are comparable to market rates for similarly experienced attorneys.  *Id.* at ¶ 36.

17  Given their expertise, experience and skill, Class Counsel's hourly rates should be approved.

18      **C.      The Requested Fee Award Is Reasonable Given the Benefits Obtained for the
           Class, the Serious Risks Assumed by Class Counsel and the Quality of the**

19         **Representation.**

20      Plaintiffs' request for compensation for Class Counsel's services in the amount of $3.54

21  million is eminently reasonable considering the relief obtained for the class in the face of the risks

22  undertaken by Class Counsel in representing the class on a contingency fee basis.  While the

23  lodestar figure is "presumptively reasonable," a court applying California law may adjust it

24  upward or downward by an appropriate positive or negative multiplier reflecting a host of factors

25  including: (1) the degree of success; (2) the novelty and difficulty of the issues; (3) the risks

26  counsel assumed; and (4) the quality of the representation.  *Chavez v. City of Los Angeles*, 224

27  P.3d 41, 54 (Cal. 2010); *Graham,* 101 P.3d at159.

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1    Here, these lodestar enhancement factors strongly support applying a positive multiplier to

2  Class Counsel's $4.54 million lodestar.  Nevertheless, instead of seeking a positive multiplier,

3  Class Counsel agreed to accept a negative multiplier in order to reach the Settlement with Hain

4  which secured excellent benefits for the class while avoiding the expense and risk entailed in

5  continuing the litigation through trial.

6           **1.      The Settlement Is a Remarkable Result for the Class.**

7    The Settlement is a substantial victory for the class.  Even if the full $3.54 million in

8  attorneys' fees and $460,000 in litigation expenses is granted and no coupons are claimed, the

9  $3.5 million cash relief for the class represents a significant percentage of the damages available to

10 the class.  Unless the claim fund is oversubscribed, which appears to be unlikely, class members

11 submitting claims are receiving more than 100% of the alleged overcharge.  Todzo Decl. ¶ 22.

12 Under the Settlement, class members will receive 50% of the purchase price of the products.  *Id.*

13 In contrast, Plaintiffs' disgorgement of profits method would have yielded a 32% of sales recovery

14 for the class members.  *Id.*  And under Plaintiffs' price premium method, the alleged "organic"

15 premium Hain charged for the products was less than that.  *Id.*  Thus, the Settlement is an

16 excellent result for the class members.

17          **2.      The Issues Involved in This Litigation Were Novel and Difficult.**

18   The issues raised in this case were novel and difficult.  As discussed in Section I.A. above,

19 this is a first of its kind case.  Todzo Decl. ¶ 2.  Indeed, when Hain filed its first motion to dismiss

20 in March 2012, no court had addressed whether the OFPA preempted COPA and other California

21 consumer production laws.  *Id.*  As a novel consumer class action on behalf of a class of California

22 consumers against one of the world's largest cosmetic companies, Class Counsel faced the reality

23 that the litigation would likely be lengthy and hard-fought.

24          **3.      Class Counsel Faced Serious Risks in Taking the Case on a
                     Contingency Basis.**

25   Class Counsel's fee request is supported by the considerable risks they faced in

26 undertaking the representation of the class in this case.  A lodestar enhancement based on

27 "contingent risk" is "intended to approximate market-level compensation for . . . services

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

[rendered to fee-paying clients], which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum v. Moses*, 17 P.3d 735, 746 (Cal. 2001); *see Graham*, 101 P.3d at157 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions."). Here, the risk and uncertainty as to whether Plaintiffs would prevail and Class Counsel would ever be paid for their work – as well as the substantial delay in receiving such payment – warrant a fee enhancement.

These risks are not illusory. The fee in this matter was entirely contingent with the only certainty being that there would be no fee without a successful result. Todzo Decl. ¶ 28. Class Counsel have received no compensation for their efforts during the four and a half year course of this litigation, and have advanced significant sums for litigation expenses. *Id.* Specifically, Class Counsel have risked non-payment of more than $460,000 in out-of-pocket expenses and over 8,969 hours in attorney time expended on this matter, knowing that if their efforts were not successful no fee would be paid and they would not recoup their expenses. *Id.* at ¶¶ 29, 45 Likewise, due to the heavy burdens created by this litigation, Class Counsel have been forced to forego significant other fee-generating work. *Id.* at ¶ 34. Accordingly, the fee award should reflect the contingency risks.

### 4. The Exceptional Quality of Class Counsel's Representation.

Class Counsel were only able to prosecute this case so effectively and efficiently by virtue of their considerable experience in this area of the law. Class Counsel specialize in consumer class actions, and have served as counsel for classes of plaintiffs in a variety of substantive areas. Todzo Decl. ¶ 27. In particular, Class Counsel have significant experience representing aggrieved consumers in class action cases alleging that cosmetic products were falsely advertised. *Id.* The Court has observed that Class Counsel have "extensive experience in litigating consumer class actions" and "they have proven more than proficient in the applicable law" [ECF No. 267 at 22-23]. The skill demonstrated by Class Counsel in litigating and ultimately settling this action supports the requested fee.

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

**D.      The Requested Fee Award Is Supported by Awards Granted in Other Class Action Cases.**

Courts may look at fees awarded in comparable cases to determine if the fee requested is reasonable.  *Vizcaino*, 290 F.3d at 1050 n.4.  A review of attorneys' fees awards in other public interest class action cases supports the requested award here:

- In a consumer class action alleging defendant concealed an automobile defect, the court awarded $3.7 million in fees under the lodestar approach and $115,471 in costs where the class recovery was $3.42 million.  *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010).

- In an employment class action, the court awarded $11.3 million in fees and $1.5 million in litigation expenses under the lodestar method where the settlement resulted in a settlement fund of $27 million.  *Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. April 1, 2011).

- In a consumer class action regarding a defect in defendant's printers, the court awarded $2 million in fees and costs under the lodestar approach where the settlement provided injunctive relief and $5 million in e-credits to the class.  *In re HP Laser Printer Litig.*, SACV 07-0667 AG RNBX, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011).

**III.     CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET LITIGATION EXPENSES.**

Class Counsel are entitled to reimbursement of reasonable out-of-pocket expenses.  "In a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, both the Settlement and the CLRA, Cal. Civ. Code § 1780(e), allow Class Counsel to recoup their reasonable out-of-pocket costs that would normally be billed to a fee paying client.  *See Miller v. Ghirardelli Chocolate Co.*, 12-CV-04936-LB, 2015 WL 758094, at *7 (N.D. Cal. Feb. 20, 2015); *Sadowska v. Volkswagen Group of Am., Inc.*, CV 11-00665-BRO AGRX, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013) (awarding "reasonable costs and expenses . . . that would normally be charged to a fee paying client" under the CLRA).

Class Counsel in this case have incurred $460,000 in costs while prosecuting the action. These expenses are set forth with particularity in the Todzo Declaration ¶ 45, Exhibit 1.  The categories of expenses for which Class Counsel seek reimbursement are the type of expenses routinely charged to hourly paying clients such as Westlaw research, mediation fees, expert fees,

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

1   copying expenses, postage, express deliveries, travel costs and court fees. *Id.* These expenses

2   were all necessarily incurred and therefore should be reimbursed. *Id.*

3   **IV.     THE CLASS REPRESENTATIVES SHOULD RECEIVE REASONABLE
           SERVICE AWARDS FOR THEIR EFFORTS IN SECURING THE SETTLEMENT.**

4           Class Counsel request that the Court authorize incentive awards of $7,500 each for

5   Plaintiffs Rosminah Brown and Eric Lohela.[5]  Incentive awards are appropriate to compensate

6   named plaintiffs for their work done in the interest of the class. *In re Cellphone Fee Termination*

7   *Cases,* 113 Cal. Rptr. 3d 510, 521-22 (Cal. App. 1st Dist. 2010).  The efforts of the class

8   representatives in this case were instrumental in achieving the Settlement on behalf of the class.

9   To date, the class representatives have received no compensation whatsoever for their efforts.

10  Brown Decl. ¶ 5; Lohela Decl. ¶ 5.  The requested service awards are well deserved.

11          The amounts of the requested service awards are modest under the circumstances, and well

12  in line with awards approved by courts in this District.  In the Northern District, a "$5,000

13  payment [to class representatives] is presumptively reasonable." *Pierce v. Rosetta Stone, Ltd.*, No.

14  C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013).  However, courts authorize

15  higher awards in light of, among other things, the extent of the named plaintiffs' efforts to protect

16  the class and the relief ultimately obtained for the class. *See, e.g., Thieriot v. Celtic Ins. Co.*, C-

17  10-04462-LB, 2011 WL 1522385, at *8 (N.D. Cal. Apr. 21, 2011) (granting request for $25,000

18  service award); *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2012 WL 381202, at *8 (N.D.

19  Cal. Feb. 6, 2012) (awarding $12,500 to named plaintiff).  The service awards here are warranted

20  considering the class representatives' substantial efforts in obtaining excellent relief for the class.

21          Plaintiff Brown filed the initial complaint in May 2011 and Plaintiff Lohela joined Brown

22  in filing the First Amended Complaint in August 2012.  They have performed a number of tasks

23  that greatly assisted in the preparation, prosecution and settlement of the case.  Among other

24  things, Plaintiffs Brown and Lohela: (1) consulted with Class Counsel on a regular basis

25

26          [5] Although the Court's preliminary approval order authorized Plaintiffs to seek an incentive

27  award for Plaintiff Crivier, the parties have decided not to seek an award on her behalf.

28

1   throughout the case; (2) attended two mediations in person (requiring them to travel from Santa

2   Barbara to San Francisco and miss work) and made themselves available by telephone for another

3   two mediations; (3) were each deposed by Hain (again requiring them to travel to San Francisco

4   and miss work); (4) provided factual background to assist in the development of the case and in

5   responding to several rounds of Hain's discovery requests; (5) reviewed pleadings and

6   correspondence in the case; and (6) evaluated and approved the Settlement papers.  *See* Brown

7   Decl. ¶¶ 3-4; Lohela Decl. ¶¶ 3-4.  Thus, the $7,500 awards to Plaintiffs Brown and Lohela are

8   justified by the significant time they spent protecting the interests of the class over four and half

9   years of litigation.

10                                  **CONCLUSION**

11          For the foregoing reasons, the Court should award Class Counsel $3.54 million in

12   attorneys' fees and $460,000 in litigation expenses, and should authorize service awards of $7,500

13   for Plaintiffs Brown and Lohela.

14

15   DATED: December 30, 2015              Respectfully submitted,

16                                         LEXINGTON LAW GROUP

17

18                                         By:   /s/ Mark N. Todzo
                                                 Mark N. Todzo
19                                               Attorneys for Plaintiffs ROSMINAH BROWN
                                                 and ERIC LOHELA, on Behalf of Themselves
20                                               and All Others Similarly Situated

21

22

23

24

25

26

27

28

**MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**