LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 11-cv-03082 LB<br><br>**DECLARATION OF MARK N. TODZO IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND SERVICE AWARDS**<br><br>Date:       February 11, 2016<br>Time:       9:30 a.m.<br>Location:  Courtroom C – 15th Floor<br>Judge:     Hon. Laurel Beeler |

I, Mark N. Todzo, declare as follows:

1.     I am a partner at the Lexington Law Group ("LLG") and we represent Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") in this action against the Hain Celestial Group, Inc. ("Hain").  I am one of the attorneys who has been principally involved in the prosecution of this litigation and the negotiations which culminated in the Stipulation of Settlement resolving Plaintiffs' and the class's claims (the "Settlement").  I have personal knowledge of the matters set forth herein and, if called upon, I would and could testify competently thereto.

**LLG's Investigation, Litigation and Settlement of the Case**

2.     Plaintiff Brown (along with the Center for Environmental Health) filed this action on May 11, 2011.  Before commencing this action, Class Counsel conducted a comprehensive examination and evaluation of the relevant law and facts to assess the merits of the claims and to determine how to best serve the interests of the class members.  At that time, there were no reported cases involving COPA, and Class Counsel could not find any precedent for asserting a claim under COPA or using COPA as a predicate for a claim under California's Unfair Competition Law, Cal. Business & Professions Code §§ 17200, *et seq.* ("UCL") or California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.* ("CLRA").  Class Counsel also anticipated that Hain would raise defenses based on preemption and primary jurisdiction and had to be sure to plead the case in a way that minimized Hain's chance of prevailing on these issues. Indeed, when Hain eventually filed its first motion to dismiss in March 2012, no court had addressed whether the OFPA preempted COPA and other California consumer production laws. Because of the novelty of the legal issues, Class Counsel were required to conduct significant legal research prior to filing the action.

3.     In addition to their legal research, Class Counsel conducted a pre-suit factual investigation that included interviewing and communicating with putative class members and consulting with expert witnesses.  It also included investigating Hain's marketing, business practices and promotional efforts with respect to the Avalon Organics® and JASON® products, preparing the requisite pre-suit notice pursuant to the CLRA and drafting the complaint.  Overall, Class Counsel and their staff expended more than 82 hours for a lodestar of $55,547 on these

- 1 -                Case No. 11-cv-03082 LB

**DECLARATION OF MARK N. TODZO**

necessary pre-litigation activities.

4.      This complex class action required Plaintiffs to expend substantial time on case management matters.  Over the four and half years of litigation, Plaintiffs submitted seventeen joint case management conference statements, each of which required Plaintiffs to engage in often contentious meet and confer efforts with Hain regarding the management of discovery, motion practice, the litigation schedule, alternative dispute resolution and other matters.  Class Counsel were also required to prepare for and appear at the approximately ten case management conferences held by the Court [*see, e.g.,* ECF Nos. 17, 78, 132, 141, 175, 180, 192, 299, 309 & 317].  In addition, the complexity of the case and the nature of Hain's spirited defense required numerous internal strategy meetings regarding the litigation and overall case administration.

5.      There was also significant administrative motion practice regarding case management matters.  Plaintiffs filed ten administrative motions concerning matters such as case deadlines, motion page limits and discovery, and Plaintiffs were required to oppose an administrative motion by Hain to stay all case deadlines early in the litigation [*see, e.g.*, ECF Nos. 44, 45, 54, 71, 160, 194, 225, & 265].  Further, as a result of Hain's practice of designating virtually every document produced in the litigation as "confidential," Plaintiffs were required to file approximately six motions to seal documents [*see, e.g.*, ECF Nos. 199, 212, 219, 236, 238, 322].  Overall, Class Counsel and their staff expended approximately 710 hours for a lodestar of $375,272 on these case management matters.

6.      Hain zealously attacked the pleadings in this action, bringing three separate challenges to the operative complaint based on at least six distinct legal theories.  Ten months after the lawsuit was filed, Hain moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the Organic Foods Production Act, 7 U.S.C. §§ 6501-6524 ("OFPA"), expressly preempts COPA [ECF No. 27].  At the hearing on the motion, although the Court indicated it did not believe OFPA preempted Plaintiffs' claims, Hain argued for the first time that the Court should dismiss the complaint because the United States Department of Agriculture purportedly had primary jurisdiction over Plaintiffs' claims [ECF No. 47].  Hain requested permission to file supplemental briefs regarding the primary jurisdiction issue, which the Court

granted over Plaintiffs' opposition.  After holding a hearing on the supplemental briefing, the Court denied Hain's motion to dismiss in its entirety [ECF No. 58].  Had it been granted, Hain's motion could have been completely dispositive of Plaintiffs' claims.

7.    Hain thereafter requested that the Court certify the order denying the motion to dismiss for interlocutory appeal to the Ninth Circuit, and moved for a stay of the case pending such appeal, which Plaintiffs opposed [ECF Nos. 60 & 70].  The Court granted Hain's motion for certification of the order for interlocutory review but denied the request for a stay [ECF Nos. 79]. The parties subsequently briefed Hain's petition for permission to appeal, and the Ninth Circuit denied the petition shortly after the briefing was completed [Ninth Cir. Docket No. 12-80186, Order Denying Petition (December 17, 2012)].

8.    On August 21, 2012, Plaintiff Brown filed an amended complaint ("FAC") to add Plaintiff Lohela as a class representative and to conform the complaint to the federal rules regarding class certification (given that the operative complaint had been removed by Hain from state court) [ECF No. 68].  On October 9, 2012, Hain filed a motion to dismiss the amended complaint together with a motion to strike [ECF Nos. 85 & 87].  If granted, the second motion to dismiss could have been dispositive of the entire action, and the motion to strike would have substantially narrowed the class to less than 3% of the settlement class approved by the Court. On December 22, 2012, the Court denied Hain's second motion to dismiss and motion to strike in their entirety [ECF No. 104].  Overall, Class Counsel and their staff expended approximately 478 hours for a lodestar of $285,444 on defeating Hain's pleadings challenges.

9.    As the Court is well aware, Hain forcefully resisted discovery in this case.  As a result, discovery was unusually time consuming and hard fought.  The following is an overview of the major discovery conducted in this case:

- Plaintiffs served five sets of requests for production of documents, four sets of interrogatories and three sets of requests for admissions on Hain.  Plaintiffs met and conferred with Hain extensively regarding its responses to these requests. Hundreds of thousands of pages of documents were eventually produced by Hain and carefully reviewed by Plaintiffs.

- Plaintiffs responded to three sets of requests for admissions and two sets of document requests and interrogatories propounded by Hain.

1
2
3

- Plaintiffs took a FRCP 30(b)(6) deposition and deposed eight key Hain employees. Class Counsel also defended the depositions of Plaintiffs Brown and Lohela, as well as defending the deposition of one of their experts, Stephen F. Hamilton, Ph.D.

4
5
6
7

- Plaintiffs were required to conduct substantial third party discovery due to gaps in Hain's document production and written discovery responses.  Plaintiffs subpoenaed over thirty non-parties including Hain's suppliers, wholesalers, retailers, marketing firms and the entities responsible for certifying the organic content of the Avalon Organics® products, and met and conferred extensively with those non-parties regarding their responses.

8
9
10
11

- Plaintiffs were required to submit a total of eight separate discovery dispute letters to the Court, which resulted in six orders compelling Hain to produce relevant information and documents [ECF Nos. 64, 102, 278, 283, 299 & 320].  Plaintiffs were also required to file a motion for discovery sanctions under FRCP 37, which the Court granted in the amount of $26,520 due to Hain's refusal to substantively respond to Plaintiffs' discovery requests for the first eighteen months of the litigation [ECF No. 155].

12
13

Overall, Class Counsel and their staff expended approximately 4,079 hours for a lodestar of $1,844,449 on discovery matters.

14
15
16
17
18
19
20

10.     In another unsuccessful attempt to derail Plaintiffs' claims, Hain filed a motion for summary judgment ("MSJ") on November 1, 2013, arguing that a California Department of Public Health ("CDPH") "Resolution Letter" dated February 19, 2013 barred Plaintiffs' claims. [ECF No. 156].  This was another potentially dispositive motion that required skilled and careful opposition in order to keep the class claims intact.  Once the motion was briefed and the Court had held a hearing, the Court denied the motion [ECF No. 172].  Overall, Class Counsel and their staff expended approximately 249 hours for a lodestar of $143,700 defending Hain's MSJ.

21
22
23
24
25
26
27
28

11.     Plaintiffs filed their motion for class certification on July 15, 2014 [ECF No. 248]. This motion was heavily litigated.  In support of the motion, Plaintiffs consulted with experts regarding the method of calculating damages on a classwide basis, the alleged price premium Hain charged for the products and the likelihood of deception resulting from the organic representations on the products.  Plaintiffs prepared and submitted two detailed expert declarations with their motion [ECF Nos. 243-14, 243-15].  Hain vigorously opposed the motion. Hain's opposition brief was accompanied by over 600 pages of testimony from a damages expert and key Hain employees [ECF Nos. 248-2 to 248-18].  Hain also filed a motion to strike

- 4 -                                              Case No. 11-cv-03082 LB

**DECLARATION OF MARK N. TODZO**

Plaintiffs' evidence, which Plaintiffs opposed [ECF Nos. 251 & 253-1].  The Court granted the class certification motion on November 14, 2014 [ECF No. 267].  The Court certified a class of consumers who: (1) purchased JASON® products in California from May 11, 2007 to January 30, 2011; and (2) purchased Avalon Organics® products in California from May 11, 2007 to January 6, 2015 [ECF No. 267].  Plaintiffs thereafter conferred extensively with Hain's counsel and the Claims Administrator regarding the class notice program, prepared the class notice and supporting documents, and prepared and filed the motion for approval of the class notice program, which the Court granted on December 23, 2014 [ECF No. 279].  Overall, Class Counsel and their staff expended approximately 639.4 hours for a lodestar of $357,180 briefing the motion and reply, preparing expert testimony regarding class certification, defending Hain's motion to strike, preparing for and appearing at the hearing on the motion, and preparing and obtaining approval of the class notice program.

12.      Following class certification, Plaintiffs brought three successful motions for summary adjudication under FRCP 56(a) in order to narrow the disputed issues for trial [ECF Nos. 245, 296 & 323].  Although Hain mounted a forceful opposition to each motion, the Court granted all three motions [ECF Nos. 333 & 340].  Overall, Class Counsel and their staff expended approximately 442 hours for a lodestar of $241,670 to prevail on Plaintiffs' three motions for summary adjudication.

13.      Throughout the litigation, Plaintiffs were required to consult with experts regarding their case in chief and to counter Hain's defenses.  For instance, Plaintiffs worked with experts to develop their case as to their claim that Hain improperly counted the water used to reconstitute dehydrated ingredients in the products in violation of COPA.  Plaintiffs also worked with experts regarding consumers' perceptions as to organic representations on the products and the overall marketing of the products, as well as the issue of whether the products constituted "cosmetics" under California law.  Overall, Class Counsel and their staff expended approximately 45.8 hours for a lodestar of $32,658 on expert issues.

14.      The settlement conference that led to the Settlement took place on July 20, 2015, which was only six months prior to the scheduled trial date [ECF No. 337].  Accordingly, Class

DOCUMENT PREPARED
ON RECYCLED PAPER

Case No. 11-cv-03082 LB

**DECLARATION OF MARK N. TODZO**

1    Counsel had to begin preparing for trial.  Had the case gone to trial, Plaintiffs would have had to

2    demonstrate, among other things, that each product at issue: (1) was a "cosmetic" under Cal.

3    Health & Safety Code § 109900; (2) displayed the word "organic" on the principal display panel

4    during a particular time period; and (3) contained less than 70% organic ingredients during the

5    same time period.  Thus, Plaintiffs gathered and prepared their evidence as to each of the more

6    than 300 products at issue.  Given the significant gaps in Hain's document production, this

7    process was extraordinarily time consuming.

8            15.    In addition to their pre-trial work with consulting and class certification experts,

9    Class Counsel's trial preparation included working with their trial expert witnesses to prepare the

10   necessary expert reports for trial.  Plaintiffs consulted with and retained several experts

11   regarding, among other things: (1) Hain's method of calculating the organic content of its NSF-

12   certified Avalon Organics® products; (2) the amount of the "organic" premium allegedly charged

13   for the Avalon Organics® and JASON® products; and (3) the proper calculation of damages in

14   the case based on sales data Hain produced in discovery.  Plaintiffs were in the process of

15   finalizing their expert reports in advance of an August 2015 expert disclosure deadline when the

16   parties reached a settlement in principle on July 20, 2015.  Overall, Class Counsel and their staff

17   spent approximately 626.9 hours for a lodestar of $231,774 on work related to trial preparation.

18           16.    As with the other aspects of this litigation, the negotiations ultimately leading to

19   the settlement of Plaintiffs' claims were contentious and required significant attorney time and

20   skill.  Class Counsel engaged in intensive, adversarial settlement efforts with Hain over the

21   course of the litigation, including participating in four separate mediations.  From the outset,

22   Plaintiffs attempted to resolve their claims without the need for the time consuming and

23   expensive litigation described herein.  Early in the proceedings, the parties agreed to participate

24   in the Northern District's Alternative Dispute Resolution program, and a mediation with Arthur

25   D. Levy was scheduled for March 2012 [ECF Nos. 15 & 18].  As noted above, however, ten

26   months after the case was filed, Hain chose to delay the scheduled mediation in order to file a

27   motion to dismiss and the parties agreed to postpone mediation until the Court ruled on the

28   motion [ECF No. 23].  Following the Court's denial of Hain's first motion to dismiss in August

2012, the parties submitted detailed mediation briefs and attended a day-long mediation with Mr. Levy at which a Hain representative and Plaintiffs Brown and Lohela were present.  The case did not settle.  Indeed, Plaintiffs did not receive any counteroffer from Hain regarding Plaintiffs' monetary demand at that time.

17.     Five months later, following the Court's denial of Hain's motion to strike and second motion to dismiss, the parties again entered into settlement discussions and agreed to participate in a mediation with Randall D. Wulff in late February 2013.  Four days prior to the February 25, 2013 mediation, after the parties had already submitted their mediation briefs, Hain provided Class Counsel with the CDPH's February 19, 2013 "Notice of Resolution" letter.  The CDPH letter significantly impacted the negotiations, and although the parties made some progress toward a resolution, they were ultimately unable to reach a settlement.  The parties scheduled a second day of mediation with Mr. Wulff, which took place on March 12, 2013.  Near the end of the second day of mediation, the parties believed they had reached a settlement in principle.  For the next six months, Plaintiffs expended considerable resources attempting to finalize the detailed terms of a settlement agreement with Hain and preparing the preliminary approval papers.  However, in the process of memorializing the settlement, it became clear that there was no meeting of the minds as to a particular issue which prevented the parties from finalizing the settlement.  Thus, the parties resumed litigation in September 2013.  The value of the settlement to the class that the parties were negotiating at that time was a mere fraction of the value of the present Settlement to the class.

18.     After the Court denied Hain's motion for summary judgment in February 2014, the parties agreed to participate in a settlement conference with the Court.  On April 16, 2014, the parties participated in a full day settlement conference with the Court.  The conference did not result in a settlement.  On May 23, 2014, the parties participated in a second full day settlement conference with the Court.  Following the settlement conference, settlement discussions continued with the Court's assistance until June 3, 2014, at which time it became clear that the case would not settle.  The parties thus resumed litigation.  The monetary relief for the class on the table when settlement discussions were terminated was significantly less than the relief

**DECLARATION OF MARK N. TODZO**

DOCUMENT PREPARED
ON RECYCLED PAPER

1   provided by the present Settlement.

2        19.    One year later, in April 2015, following the Court's class certification order, Hain

3   proposed reopening settlement discussions.  The parties discussed and made proposals to the

4   Court regarding the scheduling of a settlement conference [ECF No. 331].  Shortly thereafter, on

5   May 26 and May 30, 2015, the Court granted each of Plaintiffs' three motions for summary

6   adjudication [ECF Nos. 333 & 340].  On June 15, 2015, the Court referred the parties to

7   Magistrate Judge Spero for a settlement conference, which took place on July 20, 2015 [ECF No.

8   342].  The parties were able to reach a settlement in principle at the conference, and Judge Spero

9   scheduled a second settlement conference so he could oversee any issues with finalizing the

10  Settlement [ECF No. 346].  The Court stayed the litigation deadlines and, for the next month, the

11  parties negotiated the specific terms of the Settlement [ECF No. 348].  Following agreement as to

12  the general terms of the settlement in principle, much work remained for Class Counsel.  Class

13  Counsel still had to draft and reach agreement with Hain regarding the form of the Settlement,

14  the class notices, the claim form, the notice program and multiple other exhibits to the

15  Settlement.  The parties submitted updated settlement conference statements in advance of the

16  August 26, 2015 settlement conference, at which the parties informed Judge Spero that they had

17  reached agreement on all material and substantive terms of the Settlement [ECF No. 352].

18       20.    Once the Settlement was signed, Class Counsel prepared and filed the motion for

19  preliminary approval, which included numerous supporting documents and declarations [ECF

20  No. 355].  Class Counsel appeared at the hearing and argued in support of preliminary approval,

21  which the Court granted shortly after the hearing on October 8, 2015 [ECF No. 360].  Since the

22  Court preliminarily approved the Settlement, Class Counsel have worked closely with Hain's

23  counsel and the Claim Administrator to supervise dissemination of notice to class members and

24  to oversee the claims process.  This work continues at the time of this filing.  To date, Class

25  Counsel and their staff have expended approximately 1087.6 hours for a lodestar of $655,548 on

26  settlement related matters.

27       21.    Early in the litigation, Hain ceased making organic representations with respect to

28  its Jason® products and reformulated its Avalon Organics® products to increase the percentage

of organic ingredients.  Hain has continued to implement these more accurate organic representations on the Jason® and Avalon Organics® products up through the present.

**The Value of the Settlement**

22.     Assuming the Court grants Class Counsel's request for $4 million in fees and costs, the remaining $5.35 million in cash and coupons still represents a significant percentage, if not 100%, of the damages alleged by the class.  At class certification, Plaintiffs' expert estimated Hain's operating profits from sales of the allegedly mislabeled products at $11.5 million which represented 32% of total sales [ECF No. 243-14 at ¶ 40].  However, the class period at issue was longer – up through October 2014 for the Avalon Organics® products – than the Settlement Class certified by the Court, which is only up through May 2011.  Adjusting for the shorter class period, 100% of disgorgement of profits would be $8.2 million.  Nevertheless, it is more likely that the Court would have ultimately utilized the price premium methodology to calculate damages rather than the disgorgement remedy.  Here, based on my consultation with our damages expert in preparation for trial, the price premium methodology would likely have resulted in approximately 50% of the disgorgement damages, or $4.1 million.  Thus, at a minimum, the Settlement provides a cash fund for the class equal to 85% of the potential recovery in a case where the outcome was uncertain and the risks and costs of proceeding through trial were considerable.  This percentage increases if the value of any of the coupons are considered.  The recovery by individual class members valued at 50% of the cost of their purchases is in excess of even the 32% disgorgement of profits remedy, which was identified as the highest measure of restitution or damages by Plaintiffs' expert.

**LLG's Timekeeping Practices**

23.     My firm keeps detailed time records and maintains complete documentation of all the attorneys' fees and costs that Plaintiffs have incurred in pursuing this matter.  The time records are kept contemporaneously with time delineated by timekeeper to the tenth of an hour.  These detailed time records are kept by my firm according to its usual timekeeping practices, which are designed to ensure that our time records are detailed, accurate and complete.  I personally helped develop, implement and monitor compliance with this timekeeping policy.  All

**DECLARATION OF MARK N. TODZO**

new billing employees are trained on LLG's timekeeping procedures.

24.     LLG's timekeeping practices require every professional employee to keep his or her time contemporaneously.  An individual time entry is required for every case-related task completed by an attorney, para-professional or investigator.  My office uses a custom-designed Excel spreadsheet to initially record time entries.  An entry is made by first selecting the case to which the work was performed from a drop-down menu.  The spreadsheet allows for the selection of only one case, and it is not possible to assign a given billable entry to more than one case. After the case selection is made, a detailed description of the task performed is composed by the timekeeper by typing it into the spreadsheet entry.  This allows the timekeeper to fully explain the task performed.  We encourage use of uniform task descriptions to create bills that are more consistent and readable.  After the task is completed, the timekeeper must record the time spent on the task.  All time records are recorded in tenth of an hour (six minute) increments.

25.     Pursuant to LLG's standard timekeeping procedures, the timekeeping information from the Excel spreadsheets is then uploaded to the Timeslips time and expense software program by LLG's bookkeeper.  The Timeslips program then generates reports and bills that are sent to clients and used internally for practice management.  Every month, I review several reports generated by the Timeslips program.  One such report summarizes all of the time each timekeeper has spent on every case they have worked on for that given month, sorted by timekeeper. Another report summarizes all of the time billed in every active case, sorted by case.  I review these reports for completeness, accuracy, and reasonableness.  My partners and I also periodically review the underlying time entries to ensure that LLG's timekeeping policies are being followed and to exercise billing judgment by writing off any time that appears inefficient or unreasonable. Specific time and expense reports requested are forwarded to the client periodically for review.

26.     Because of LLG's rigorous timekeeping practices, LLG's billing records reflect the hours that are reasonably necessary to achieve Plaintiffs' goals in this litigation.  I have carefully reviewed the time records in this case and can attest that, in my professional judgment, all of the time spent to date was: (a) spent in furtherance of necessary investigation, litigation and settlement activities; (b) of measured duration appropriate to each task; and (c) billed cost-

**DECLARATION OF MARK N. TODZO**

DOCUMENT PREPARED
ON RECYCLED PAPER

effectively by a person of appropriate skill and experience for the task.

**LLG's Lodestar**

27.     LLG is a public interest law firm specializing in complex consumer class actions and environmental litigation.  LLG has significant experience representing aggrieved consumers in class action cases alleging that that cosmetic products were falsely advertised.  LLG presently has seven attorneys on staff with a combined total of over 90 years of litigation experience.  A true and correct copy of LLG's firm resume was previously submitted to the Court with Plaintiffs' motion for preliminary approval of the Settlement [ECF No. 56-2, Exh. 3].

28.     As described above, Plaintiffs' counsel were required to spend a considerable amount of time and resources investigating, developing, filing, litigating and settling this action. This work was performed on a pure contingency basis with no guarantee of success or ever being paid.  Throughout the litigation I coordinated with members of my firm to divide up work in an efficient and cost effective manner, thereby ensuring that all work was performed without unnecessary duplication.

29.     Based on my firm's contemporaneous time records, Class Counsel have spent over 8,969 hours litigating this case resulting in a lodestar in excess of $4,513,914.  This lodestar includes time spent by the following timekeepers:

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Mark  N. Todzo | (P) | 1,886.2 | $750 | $1,414,650 |
| Eric S. Somers | (P) | 97.2 | $770 | $74,844 |
| Howard Hirsch | (P) | 1,254 | $650 | $815,100 |
| Donna Solen | (A) | 67.8 | $590 | $40,002 |
| Joseph Mann | (A) | 51.1 | $570 | $29,127 |
| Lisa Burger | (A) | 155.8 | $460 | $71,668 |
| Lucas Williams | (A) | 2,247.3 | $430 | $966,339 |
| Abigail Blodgett | (A) | 367.9 | $400 | $147,160 |
| Jennie Romer | (DRA) | 1,470.8 | $400 | $588,320 |
| Joanna Malaczynski | (DRA) | 291.3 | $400 | $116,520 |
| Jill Karjian | (PL) | 43.5 | $250 | $10,875 |
| John Banister | (PL) | 607.3 | $235 | $142,715 |
| Casey Fisher | (PL) | 298.2 | $225 | $67,095 |
| Sandy Yelnick | (PL) | 128.6 | $225 | $28,935 |
| Leslie Valpey | (PL) | 2.4 | $235 | $564 |
| **TOTAL:** | | **8,969.4** | | **$4,513,914** |

(P) Partner, (A) Associate, (DRA) Document Review Attorney (PL) Paralegal

30.    In order to facilitate the review and determination as to the reasonableness of the attorneys' fees incurred in this matter, we have also reviewed and categorized by general task descriptions all of the time spent by members of my firm on this case.  Although this categorization is not an exact science, it reflects our best professional judgment to allocate each time entry to a specific task category.  Pursuant to this procedure, which I personally helped develop and implement, we allocated each time entry to one of the following seven task categories:

a.    Case Development;

b.    Experts;

c.    Pleadings and law and motion;

d.    Settlement;

e.    Case management and litigation strategy;

f.    Factual discovery; and

g.    Trial.

DOCUMENT PREPARED
ON RECYCLED PAPER

Case No. 11-cv-03082 LB

**DECLARATION OF MARK N. TODZO**

While the major litigation tasks within each of these categories are described in detail above (¶¶ 2-20), the following is a chart summarizing the time spent by LLG (through November 30, 2015) by general category of tasks performed:

| LODESTAR BY GENERAL CATEGORY | | | |
|---|---|---|---|
| Category | Description | Hours | Lodestar |
| 1 | **Case Development** (*e.g.*, researching Hain's advertising and marketing of the Products, legal research to support potential claims, communicating with potential class members, preparing pre-suit notice, drafting complaint) | 82.1 | $55,547 |
| 2 | **Experts** (*e.g.,* communicating with consulting experts to prepare case and address Hain's defenses) | 45.8 | $32,658 |
| 3 | **Pleadings and law and motion** (*e.g.*, drafting and responding to pleadings and law and motion matters, preparing for and appearing at hearings, legal research) | 2336.9 | $1,318,665.50 |
| 4 | **Settlement** (*e.g.*, reviewing and exchanging relevant information with defense counsel to facilitate case evaluation and settlement, preparing mediation briefs and attending mediations, preparing and reviewing proposed settlement agreements, negotiating settlement terms, preparing supporting documents for settlement, communicating with Claim Administrator and defense counsel regarding notice to the Class and claims process, preparing preliminary approval and fee motion) | 1087.6 | $655,548.50 |
| 5 | **Case management and litigation strategy** (*e.g.*, meetings with defense counsel regarding case management and scheduling issues, drafting case management statements, internal strategy meetings, administrative motion practice) | 710.4 | $375,272 |
| 6 | **Factual discovery** (*e.g.,* propounding and responding to discovery, reviewing discovery responses and document production, meeting and conferring with defense counsel regarding discovery issues, preparing joint discovery dispute letters and appearing at hearings regarding such letters) | 4079.7 | $1,844,449.50 |
| 7 | **Trial** (*e.g.*, reviewing document production to prepare evidence regarding the products at issue, preparing expert reports for trial) | 626.9 | $231,774 |
| **TOTAL:** | | **8,969.4** | **$4,513,914** |

DOCUMENT PREPARED
ON RECYCLED PAPER

**DECLARATION OF MARK N. TODZO**

31.     Subtracting from Class Counsel's $4,513,914 lodestar the $26,520 attorneys' fees award granted by the Court as a sanction for Hain's discovery misconduct (*supra* ¶ 9) results in a lodestar of $4,487,394.

32.     Class Counsel's LLG's $4,487,394 lodestar does not reflect any time and costs incurred after November 30, 2015, which includes significant attorney time spent preparing this motion.  Nor does this lodestar include any time and costs spent preparing the motion for final approval of the Settlement, preparing for and attending the final approval hearing, overseeing the ongoing claims administration process, responding to any further inquiries from class members, or any of the other significant amount of work I anticipate will be necessary to finalize and effectuate the Settlement.  Specifically, I anticipate that I will spend at least an additional 50 hours and that my associate Lucas Williams will spend at least an additional 50 hours up through final distribution of the Settlement funds resulting in an additional lodestar of $59,000.  Accordingly, Class Counsel's total lodestar will be approximately $4,546,394 at the conclusion of its work on behalf of the class.

33.     Furthermore, Class Counsel have exercised reasonable billing judgment: any time that might be considered excessive, redundant, purely administrative or otherwise unnecessary has not been claimed.  For example, Class Counsel are not seeking to recover any time spent by a former associate who spent less than 20 hours on the litigation.  In addition, Class Counsel have not claimed time spent on activities related solely to the parallel state action, *Center for Environmental Health v. Hain Celestial Group, Inc.*, Case No. RG12620309, which is pending in the Alameda County Superior Court and has trailed this case since Hain removed the action to this Court.  Likewise, none of the hours worked by any of the attorneys who filed the related *Crivier* case (which I have been informed amounts to a lodestar of over $400,000) are included in Class Counsel's request as such time was potentially duplicative of the time spent by Class Counsel litigating the lead case.  Overall, Class Counsel's billing judgment has resulted in the reduction of Class Counsel's attorney time by more than $477,742 (*i.e.*, from $5.02 million to $4.54 million).

34.     In undertaking the representation of Plaintiffs on a contingency basis, Class

**DECLARATION OF MARK N. TODZO**

DOCUMENT PREPARED
ON RECYCLED PAPER

Counsel have been forced to forego other fee-generating work.  For example, due to the demands of this litigation, Class Counsel have had to decline potential cases involving enforcement of COPA's provisions pertaining to non-cosmetic products.

**LLG's Hourly Rates**

35.     Through my practice in consumer protection actions, my review of attorneys' fee awards by other California courts in my own consumer protection cases and in other consumer protection cases, and my review of the declaratory evidence submitted in support of those awards, I am aware of the market rates charged by other firms for attorneys with similar levels of experience.  The billing rates of my firm's attorneys are commensurate with prevailing market rates for attorneys of similar skill and experience in the San Francisco Bay Area, as detailed below.  My firm's billing rates have already been approved in this action [ECF No. 155 at 11] and have also been consistently approved by state and federal courts in the scores of settlement approval and other motions regarding attorneys' fees we have filed in state and federal courts, including the following cases:

- *Golloher v. Todd Christopher International, Inc. dba Vogue International*, Case No. 12-cv-06002 RS (ND Cal. 2014), Order and Final Judgment Approving Class Action Settlement, Awarding Attorneys' Fees and Expenses, and Awarding Class Representative Service Awards (entered April 25, 2014) (awarding attorneys' fees based on LLG's 2014 rates, which are identical to those sought herein);

- *In re: Comcast Corporation Peer-to-Peer (P2p) Transmission Contract Litigation*, MDL No. 1992, Case No. 2:08-MD-1992-LDD (E.D. Penn. 2010), Order Granting Motion for Approval of Attorneys' Fees (entered June 29, 2010) (awarding attorneys' fees based on LLG's 2010 rates);

- *Center for Environmental Health v. Food Market Management, Inc.*, San Francisco County Superior Court, Case No. CGC-12-526395, Order re: Discovery Issues (entered June 24, 2015) (awarding attorneys fees' based on LLG's 2015 rates);

**DECLARATION OF MARK N. TODZO**

DOCUMENT PREPARED
ON RECYCLED PAPER

- *Center for Environmental Health v. Space Jam Juice LLC*, Alameda County Superior Court, Case No. RG15770932, Order Granting Plaintiff's Motion for Court Approval and Entry of Consent Judgments (entered October 6, 2015) (awarding attorneys' fees based on LLG's 2015 rates).

36.    I often compare LLG's rates to those of other San Francisco and California firms that do similar work.  LLG's rates are in line with such other firms' rates.  Indeed, my comparison is supported by recent decisions by courts in this District:

- In *Wynn v. Chanos*, 14-CV-04329-WHO, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015), on a motion for attorneys' fees following a successful anti-SLAPP motion, the court found reasonable hourly rates of (among others) $920/875 for partners with 20 years of experience, $710/645 for associates with 6 years of experience and $170 for litigation support staff and paralegals.

- In *O'Bannon v. Natl. Collegiate Athletic Assn.*, 09-CV-03329-CW (NC), 2015 WL 4274370, at *3 (N.D. Cal. July 13, 2015), an antitrust action, the court approved hourly rates of (among others) $610/510 for partners with 15 years of experience, $490 for associates with 7 years of experience, $370 for associates with 3 years of experience and $300-320 for paralegals.

- In *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015), a consumer class action against a bank for unfair practices, the court approved hourly rates of (among others) $700-$850 for partners with 17 years of experience, $300-$490 for associates with 2 to 12 years of experience, and $150-$430 for litigation support and paralegals;

- In *G. F. v. Contra Costa County*, 13-CV-03667-MEJ, 2015 WL 7571789, at *13 (N.D. Cal. Nov. 25, 2015), a class action discrimination action, the court approved hourly rates of $975 to $325 for attorneys who graduated from law school between 1961 and 2012.

37.    The principal LLG attorneys working on this matter are my partners Howard Hirsch and Eric S. Somers, associates Lucas Williams, Abigail Blodgett, Lisa Burger, and Joseph

DOCUMENT PREPARED
ON RECYCLED PAPER

Case No. 11-cv-03082 LB

**DECLARATION OF MARK N. TODZO**

Mann, and myself.  I graduated from Hastings College of Law and was admitted to the California Bar in 1993.  I have been practicing law for 22 years.  Since joining LLG in 1998, my practice has been devoted exclusively to representing plaintiffs in complex consumer protection class actions and environmental litigation.  My current hourly rate is $750.

38.    My partner Howard Hirsch graduated from Boalt Hall School of Law in 1996, and was admitted to the Massachusetts Bar in 1996 and the California Bar in 2001.  Mr. Hirsch has practiced law for over nineteen years, almost the entirety of which has been spent exclusively representing plaintiffs in environmental and consumer protection litigation.  Before joining LLG in 2003, Mr. Hirsch worked for five years at a national, non-profit environmental law firm prosecuting citizen suits under federal environmental statutes, and for two years prior to that as a litigation associate at a nationally recognized law firm based in Boston.  Mr. Hirsch's current hourly rate is $650 an hour.

39.    My partner Eric S. Somers graduated from Hastings College of the Law in 1988, was admitted to the California Bar in 1989, and has been practicing law for over twenty-six years.  Upon admission, Mr. Somers worked for several years at a large nationally recognized San Francisco law firm.  In 1996, Mr. Somers founded LLG, and since then has specialized in representing public entities, non-profit organizations, and individual plaintiffs in environmental and consumer protection litigation.  Mr. Somers has presented and taught at numerous law conferences and seminars.  Mr. Somers current hourly rate is $770.

40.    Joseph Mann is an associate who graduated from New York University School of Law in 1999, and was admitted to the California Bar in 2000.  Mr. Mann has practiced law for over 15 years, all of which have been spent exclusively representing plaintiffs in environmental and consumer protection litigation.  Before joining LLG in September 2012, Mr. Mann spent over a decade as a litigation attorney for the National Environmental Law Center, a nonprofit organization specializing in the enforcement of federal environmental laws, and a year as a Law Clerk to U.S. District Court Judge Irma E. Gonzalez in the Southern District of California.  Mr. Mann's current hourly rate is $570 an hour.

41.    Donna F. Solen is a former associate who graduated from the University of Florida

College of Law in 1997.  She was admitted to the Florida Bar in 1997, the District of Columbia Bar in 1999, and the California Bar in 2014.  She has been practicing law for over 18 years, specializing in complex consumer fraud, environmental, products liability, and antitrust class actions.  Ms. Solen's current rate is $590 an hour.

42.  Lisa Burger is an associate who graduated from Notre Dame Law School in 2005, and was admitted to the California Bar that same year.  Ms. Burger has practiced law for ten years, all of which have been spent exclusively representing plaintiffs in civil rights, environmental and consumer protection litigation.  Before joining LLG, Ms. Burger was a litigation fellow with Disability Rights Advocates, a non-profit law center in Berkeley, California, that specializes in class action litigation on behalf of people with disabilities.  Ms. Burger's current hourly rate is $460 an hour.

43.  Lucas Williams is an associate who graduated from Golden Gate University School of Law in 2008, and was admitted to the California Bar in 2009.  Mr. Williams has practice law for over 6 years.  Before joining LLG in January 2011, Mr. Williams was an attorney with a nonprofit environmental law clinic, where he specialized in enforcing air quality and clean energy laws on behalf of low-income communities of color.  Mr. Williams' work as an environmental justice advocate included significant experience securing and defending attorneys' fee awards for non-profit environmental organizations.  Mr. Williams' current hourly rate is $430.

44.  My associate Abigail Blodgett graduated from University of Oregon School of Law in 2010, and was admitted to the California Bar in 2011.  Prior to joining LLG in January 2014, Ms. Blodgett was an associate and legal fellow with a nonprofit organization where she specialized in enforcing clean water laws and developing environmental policies.  Ms. Blodgett has also clerked and volunteered for various public interest organizations and law firms, litigating a wide range of environmental, consumer protection, and land use cases.  Ms. Blodgett's current hourly rate is $400 an hour.

**LLG's Out-of-Pocket Litigation Expenses**

45.  Based on my firm's contemporaneously maintained expense records, LLG has incurred $459,425 in costs in this matter as of November 30, 2015.  LLG's costs include Westlaw

DOCUMENT PREPARED
ON RECYCLED PAPER

research, mediation fees, expert fees, copying expenses, postage, express deliveries, travel costs and court fees.  A true and correct copy of LLG's expense report through November 30, 2015 is attached hereto as **Exhibit 1**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is executed on this 30th day of December, 2015.

/s/ Mark N. Todzo_____
Mark N. Todzo

**DECLARATION OF MARK N. TODZO**

Document Prepared
on Recycled Paper