Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for Objector Dawn Weaver

*Brown v. The Hain Celestial Group, Inc.,*
Case No. CV 11-3082

FILED
JAN 19 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA; on behalf of themselves And all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>THE HAIN CELESTIAL GROUP, INC.,<br><br>Defendant. | Case No. CV 11-03082 LB, CV 13-02237 LB<br><br>**CLASS ACTION**<br><br>OBJECTION OF DAWN WEAVER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR<br><br>Date: February 11, 2016<br>Time: 9:30 a.m.<br>Judge: Hon. Laurel Beeler |

Dawn Weaver objects to the proposed settlement. Ms. Weaver is a member of the class and her claim number is 3085118720292. Ms. Weaver's address is 208 Via Morella, Encinitas California, 92024. Her phone number is (858) 829-3659 and her email is Weavdm@gmail.com.

**I.     THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT**

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement. *Kullar v. Foot Locker Retail, Inc.,* 168 Cal. App. 4th 116, 130, 133 (2008). In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement because the court was not "provided with basic information about the nature and magnitude of the

claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133. In *Clark v. American Residential Services LLC, et al.*, 175 Cal.App.4th 785 (July 6, 2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra*, 168 Cal.App.4th at p. 130.

California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 96 Cal. Rptr. 3d 127 (2009).

The Court should decline to grant final approval to this proposed class action settlement (hereinafter referred to as "S.A."). The settlement notice is inadequate and misleading as to what claims have been brought, the potential recovery amount assuming a victory and effectively ensures the real beneficiaries of this settlement to be the unknown *cy pres* beneficiaries and Class counsel. The proposed cash payments and coupon amounts are convoluted and misleading. For example, page 2 of the Notice asserts, "Hain shall also spend up to $2 million to make available up to $1.85 million in coupons." However, the coupons not only expire, but akin to the type of marketing that companies similar to the Defendant use to build and expand their brand. Further, the S.A. releases claims for personal injuries and the Notice fails to disclose this fact to the class.

Moreover, the attorneys' fees are excessive in relation to the recovery alleged for the Class. For example, the proposed $4 million in attorneys' fees accounts for half of the fund. Also, the Motion for Attorneys' Fees was conveniently filed on December 30, 2015, not only in the middle of the holiday season but also right before New Year's and very close to upcoming deadlines. Further, the Attorneys' fees are to be paid before the case is fully settled, i.e., before the appeal process. The Attorneys' fees are

to be paid in cash where the Class is to receive partial payment in $2 coupons that are not stackable and expire in a year. Part of the recovery is nothing more than a ploy for the Defendant s to gain more business by giving the Class coupons that must be spent in their store and are not large enough denominations to purchase entire products and therefore cash must be spent to even use the coupons. AS a precondition, the Court should require stackability of the coupons so that they are actually useful. Here, the coupons are simply a bootstrap for the excessive attorneys' fees.

## II. ARGUMENT

### A. Notice is Inadequate

Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights they are releasing or the remedies available for violations of those legal rights. The Notice merely states:

> A proposed settlement has been reached in a California class action lawsuit about the labeling and advertising of certain Avalon Organics and JASON brand cosmetic products. The plaintiffs in the lawsuit assert that the packaging and advertising for these products misled consumers o believe that the products were wholly or at least mostly organic. The Hain Celestial Group, Inc. ("Hain") denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing. The court has not decided who is right and who is wrong.

The description of the release is similarly uninformative. The Notice states that under the Settlement, Class Members "must release (give up) all claims that are subject to the Released Claims, and the case will be dismissed on the merits with prejudice. The Released Claims include all claims that were or could have been raised based on the facts alleged in the lawsuit." However, the claims and facts alleged in the lawsuit are nowhere to be found. The website does not, at this time, have a copy of the complaint. Class Members are left guessing as to what laws have been alleged to have been violated by the Defendants. Class Members are not informed that violations alleged may subject the requesting party to claims for up to a certain amount per transaction, plus other liabilities.

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement. Class Counsel have not identified the operative Complaint or included their Motion for Final Approval. Identifying any Complaint and which Complaint is the Operative

Complaint would inform Class Members about "[t]he Released Claims includ[ing] all claims that were or could have been raised based on the facts alleged in the lawsuit." Instead they can only speculate, which is unacceptable.

### B. The Settlement Benefit is Unknown

#### 1. *Coupon Settlements are Disfavored*

Each form of relief is problematic. The Coupons are not equivalent to cash. The Coupon is only valid for twelve (12) months. Consumers prefer cash; numerous studies show a large percentage of gift cards go unclaimed each year (between eight and ten percent).[1]

Coupon settlements are viewed with disfavor. Criticism of coupon settlements led to the enactment of the Class Action Fairness Act of 2005 ("CAFA"), which established minimum procedural steps that apply in coupon settlements in federal courts. Although federal courts strictly scrutinize coupon settlements under CAFA, California state courts have not always found coupon settlements inherently suspect or improper. *See generally Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008).

In *Chavez*, the California Court of Appeal distinguished "pure coupon settlements" from "variant[s] of coupon settlements," suggesting that the latter should receive more deference. But the court acknowledged the economic benefit of a coupon settlement to class members may be negligible, and the settlement may provide some benefit to the settling Defendants because they are "selling" or exchanging products that class members would not otherwise have purchased. The court observed:

> In a pure coupon settlement, the class members would receive a coupon, voucher, or discount that would partly defray the cost of making a new purchase of goods or services from the defendant. In many cases, the coupon might induce the member to make a purchase he or she would not otherwise have made, which may actually produce a net benefit for the defendant. *Chavez*, at 53.

It is hard to determine the actual benefit conferred by coupons. Unlike cash settlements, coupon settlements typically involve offers for products whose actual value may differ significantly from their face value. In federal court, expert testimony is often elicited to determine the actual value to a class of

---

[1] See http://business.time.com/2012/01/09/billions-wasted-do-gift-cards-make-sense-when-so-many-go-unused/, Citing a Tower group study stating that roughly $2 billion worth of gift cards would go unredeemed in 2012, and noting that in 2007 approximately 10% of the value of all gift cards went to waste thanks to fees, expiration, and consumers who left them in drawers or otherwise just didn't use them.

a coupon settlement. One court has observed §1712 of CAFA was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Using coupons often "masks the relative payment of the class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) (quoting Christopher R. Leslie, A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation, 49 UCLA L. Rev. 991, 1049 (2002). "[C]ourts aim to tether the value of an attorneys' fees award to the value of the class recovery... Where both the class and its attorneys are paid in cash, this task is fairly effortless... But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult." *Id*. The real value of the Settlement is masked through coupons that not only expire but are to be distributed in $2 increments and are not stackable.

>   **2. *Unclaimed Funds are to be distributed to two third parties who will then distribute them as they see fit and are not in the Best Interest of the Class***

The principal beneficiary of a settlement should be the class, and *cy pres* distributions should only be a last resort. *See e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (cy pres settlement can easily become "a paper tiger"); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (holding *cy pres* to be an inadequate substitute for individual compensation); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION ("ALI Principles") §3.07 cmt b (2010) (rejecting position that "*cy pres* remedy is preferable to further distributions to class members"). Here, any unclaimed funds will be given to California Consumer Protection Foundation and the Jesse Smith Noyes Foundation, which will donate the funds to charitable organizations. Said actions are improper because a further distribution to class members could easily be arranged or, as a last resort, any unclaimed funds could be distributed through a a true *cy pres* provision, where the beneficiary is known. Further, the dollar value of the Coupons given to Class Members could be increased pro rata. The Coupons could be distributed as gift cards and the valuation assigned to these cards could be changed electronically, at minimal additional expense and no additional mailing costs. Coupons returned in the

mail or unredeemed after several years could be donated *cy pres*, as a last resort. Class Counsel provide no mechanism to insure the bulk of the settlement goes to the Class.

Here, the ultimate beneficiaries of any unclaimed funds are unknown. *Cy pres* recipients would be the "next best" recipients. The "next-best" rule – reflecting the doctrines origins in trust law described above – requires the *cy pres* recipient approximate the interests of class members and the underlying lawsuit. *See Dennis* 697 F.3d at 865-66; *see also In re Groupon, Inc.*, No. 11-md-2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750, at *36 (S.D. Cal. Sept. 28, 2012) (requiring "an actual connection, not just between the class and *cy pres* beneficiary, but between the claims alleged in the case and the *cy pres* beneficiary."). The American Law Institute's position is roughly equivalent. ALI PRINCIPLES §3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class."). Having the Coupons expire in one year and only distributed in $2 increments is a "doubling down" because the Coupons given to the Class members will be spent on the Defendant's products and any unspent will be (effectively) kept by the Defendants. Said actions do not follow the punitive nature of the statute having been violated.

The Defendant is building brand loyalty and goodwill. There's no reason the funds cannot be divided equally among the claimants.

### C. The fee request creates a conflict

The $4 million dollar fee request is *much* larger than the $2 dollar Coupon and minimal cash to be dispersed to each class member. Because there is no settlement amount provided it is impossible to decipher the percentage or difference between the fee requested and amount recovered for the class members. Even among this special bar, this is a brazen request. The court must call a foul because even in this game, asking for such an amount where the client's recovery is unknown is against the rules.

The attorneys base their outsize fee request on their work to protect an important public right. Unquestionably, truthful advertising and marketing is an important issues and deserves protection.

Class Counsel's claim it's fee request is fair and reasonable and through arms-length negotiations. Claiming the fees were negotiated separately is no Chinese wall; the settlement benefits and the attorneys' fees must be considered part of a common fund. Each of the benefits offered with the Settlement, including attorneys' fees, form part of a "constructive common fund." *See, e.g., Dennis v.*

*Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (evaluating a "constructive common fund" settlement). *See also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995). "Although class counsel and GM contend (and the district court believed) that the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.*, at 821. *Accord. Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

    Even if Counsel's fees should be based on their lodestar, their lodestar can be adjusted downwards and upwards. Although California courts routinely use the lodestar method to analyze fee awards, they also acknowledge the lodestar method is subject to abuse. These abuses were acknowledged in *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 40, 97 Cal. Rptr. 2d 797 (2000). In *Lealao* the court analyzed the history of the lodestar method, citing THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES (1985) 108 F.R.D. 237, 246-249, ("the Report of the Third Circuit Task Force concluded the lodestar technique is a "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar" (*Id.* at p. 258), and recommended a return to the percentage of the recovery fee formula in cases involving a settlement fund).

    *Lealao* did not suggest discontinued the lodestar method to determine fees but it said "courts must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id., quoting* John Coffee, Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions (1986) 86 COLUM. L.REV. 669, 691 (observing "As one commentator has stated, '[b]y severing the fee award from the settlement's size, [the lodestar] formula facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award...'). *Accord.* Charles Silver, Due Process and the Lodestar Method, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

California courts can and should cross check the lodestar against the benefit obtained for the Class. *Lealao* held "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal.App. at 50 (observing "As we have said, the California Supreme Court has never prohibited adjustment of the lodestar on this basis. Due to the complexity of the judicial responsibility to structure a class action fee award providing counsel the optimum mix of incentives and disincentives, and the variety of different and sometimes competing considerations that may come into play (*see* Hay, Asymmetric Rewards: Why Class Actions (May) Settle for Too Little (1997) 48 HASTINGS L.J. 479), trial judges need the flexibility Serrano III provides, as it enables them to relate fee awards to the economic realities that determine the efficacy of the private enforcement contemplated by our civil justice system.) *See also see Serrano v. Priest* (1977) 20 Cal.3d 25, 49. *Accord. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (the lodestar "may be adjusted upward or downward to account for several factors including ... the benefit obtained for the class").

*Lealao* explained that "An adjustment reflecting the amount of the class recovery is not significantly different from an adjustment reflecting a percentage of that amount; and California courts have evaluated a lodestar as a percentage of the benefit." As an example, the court cited *Glendora Community Redevelopment Agency v. Demeter* (1984) 155 Cal.App.3d 465. In *Glendora*, the court awarded a 25 percent contingency amount. The Court of Appeal affirmed, concluding a fee award under the statute may be made on the basis of a contingent fee agreement where the trial court considered other factors in determining the fee was reasonable. The trial court's finding the 25 percent figure was reasonable relied in part on the California Rules of Professional Conduct. Rule 2-107 set forth nine factors that could be considered in determining the reasonableness of a fee, one of which was " '[t]he amount involved and the result obtained.' " 155 Cal.App.3d at p. 474.

Here, the results are unknown. CAFA requires a district court to base "the portion of any attorney's fee . . . attributable to the award of coupons" on "the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a). Even that value should be looked at with skepticism. As the

court in *Chavez v. Netflix* observed, "In a pure coupon settlement, the class members would receive a coupon, voucher, or discount that . . . might induce the member to make a purchase he or she would not otherwise have made, which may produce a net benefit for the defendant." Here the class members receiving the product vouchers may not have intended to make any additional purchases from Pier 1. And, once we learn the nominal value of the vouchers redeemed by class members, that number should be reduced to reflect their wholesale value. See *Dennis v. Kellogg Co.*, 697 F.3d 858 (2012) (voicing concern over retail valuation of cy pres product donations).

Class counsel should receive only 25% of the amounts redeemed by the class, reduced to wholesale value. See *Lealao*, 82 Cal. App. 4th 19, at fn. 1 (citing several decisions and observing "Studies show that this benchmark is within the range followed by most courts. *See, e.g.*, Lynk, The Courts and the Plaintiffs' Bar: Awarding the Attorney's Fee in Class-Action Litigation (1994) 23 J. LEGAL STUDIES 185, 208; Newberg & Conte, ATTORNEY FEE AWARDS (2d ed.1993), pp. 50–53.

Further, Class Counsel is to be paid before the case can be perfect upon appeal. And if appealed and lost then Class Counsel is to return the money, without interest, so basically they get an interests free loan where the Class would receive nothing.

The incentive awards are excessive.

Incentive awards of $7,500 for each of the class representative is excessive. California courts have followed the analysis recommended in some federal court cases in rejecting incentive awards out of keeping with the recovery achieved for unnamed class members. In *Clark v. American Residential Services LLC*, et al., *supra*, the court rejected an incentive award that was 44 times the amount the average class member would receive. In *Clark*, the court considered the factors looked at in *Cook v. Niedert* (7th Cir. 1998) 142 F.3d 1004, 1016. Those factors included "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Clark*, 175 Cal. App. 4th at 804, *citing Cook, ibid. Cook* also pointed to other factors identified in federal cases, including "the risk to the class representative in commencing suit, both financial and otherwise," "the notoriety and personal difficulties encountered by the class representative," "the duration of the litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

*Clark*, at 804, citing *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal. 1995). The court also rejected conclusory statements regarding the effort the class representative put into the litigation. Although Class Counsel recite in boilerplate fashion the efforts made by class representatives in furtherance of the litigation, their declarations are unpersuasive and repetitive. The court should not just rubber stamp these service awards.

## III.   JOINDER IN OTHER OBJECTIONS

Ms. Weaver joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members which are not inconsistent with these objections.

## IV.   CONCLUSIONS

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated: January 12, 2016

By: _____
Darrell Palmer
Attorney for Objector Dawn Weaver

Brown v. The Hain Celestial Group
Case No.: CV-11-3082

## DECLARATION OF SERVICE
### UNITED STATES OF AMERICA, STATE OF TEXAS

I, Meredith Cherry, declare as follows:

I am employed with Puls Haney, PLLC whose address is 300 Burnett Street, Suite 160, Fort Worth, Texas 76102. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen (18) and I am not a party to this action.

On January 12, 2016, I caused to be served the following:

**Objection of Dawn Weaver to Proposed Settlement and Notice of Intent to Appear**

on:

    Clerk of the Court
    United States District Court
    Northern District of California
    450 Golden Gate Avenue
    San Francisco, CA 94102

    Mark N. Todzo
    Lexington Law Group 503 Divisadero Street
    San Francisco, CA 94117

    William L. Stern
    Morrison & Foerster LLP
    425 Market Street
    San Francisco, CA 94105

____ by placing a copy in a separate envelope addressed to each addressee as indicated on the attached Service List and personally delivering it to the above named persons.

____ by sending a copy via overnight mail. Airbill No. _____.

__X__ by depositing a sealed envelope, with postage fully prepaid, for each address named on the attached Service List with the United States Postal Service.

____ by sending a copy via facsimile transmission to the facsimile number(s) indicated on the attached Service List. The facsimile machine I used complied with California Rules of Court, Rule 2003, and no error was reported by machine.

I declare under penalty of perjury under the laws of the State of Texas of the United States of America, that the foregoing is true and correct. Executed on January 12, 2016, at 2:45 p.m. in Fort Worth, Texas.

*/s/ Meredith Cherry*
Meredith Cherry

DECLARATION OF SERVICE