LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>       v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br>                                    Defendant. | Case No. 11-cv-03082 LB<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND TO STRIKE OBJECTIONS THERETO**<br><br>Date:       February 11, 2016<br>Time:       9:30 a.m.<br>Location:  Courtroom C – 15th Floor<br>Judge:     Hon. Laurel Beeler<br><br>[Filed concurrently with Declarations of Mark N. Todzo, Mark Rapazzini, Mildred Buchanan and Cassandra Malry] |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

NOTICE OF MOTION..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.      SUMMARY OF ARGUMENT ........................................................................1

II.     BACKGROUND ..............................................................................................3

     A.     Procedural History ...............................................................................3

     B.     Settlement Terms .................................................................................3

           1.     Hain Must Contribute Substantial Sums To A Case Payment
                 To Compensate Class Members...................................................4

           2.     Any *Cy Pres* Funds Will Be Awarded to Independent, Non-Profit
                 Foundations Which Will Ensure That the Funds are Used in a
                 Manner That Is Closely Tied to the Goals of the Litigation...........5

     C.     Preliminary Approval and Notice to Settlement Class .......................5

III.    ARGUMENT ....................................................................................................7

     A.     Standards for Judicial Approval of Class Action Settlements .................7

     B.     The Strength of Plaintiffs' Case............................................................9

     C.     The Risk, Expense, Complexity and Likely Duration of Litigation ........9

     D.     Risk of Maintaining Class Action Status Throughout Trial ................10

     E.     Amount Offered in Settlement.............................................................10

     F.     The Stage of Proceedings and the Amount of Discovery Completed ................111

     G.     Experience and Views of Counsel ......................................................12

     H.     Reaction of the Settlement Class ........................................................122

     I.     The Four Objectors Lack Standing and Fail to Raise Any Valid Objections......123

           1.     The Objectors Are Not Aggrieved by the Settlement and Therefore
                 Lack Standing to Object...............................................................14

           2.     The Objectors Are All Professional Objectors Lacking in
                 Credibility Such That Their Membership in the Class Is
                 Questionable.. .............................................................................16

           3.     The Objections Lack Merit ..........................................................18

                 a.     The Notice Is Not Misleading.............................................19

b.  The Coupons Are an Optional Form of Relief for Class Members Who Choose Them and Do Not Render the Relief Inadequate ........................................................................... 19

c.  The Proposed Cy Pres Recipients Will Ensure That the Funds Will Be Used for the Best Interests of the Class ................ 20

d.  The Release Is Limited to the Claims at Issue in the Case and Does Not Release Personal Injury Claims ............................ 21

e.  The Attorneys' Fees Are Reasonable ............................................ 21

f.  The Incentive Awards Are Reasonable .......................................... 23

g.  The Objectors' Other Miscellaneous Objections to the Settlement Lack Merit ................................................................... 23

IV.   CONCLUSION ................................................................................................................ 26

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**CASES**

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652, 666 (E.D. Cal. 2008) ..................................................................11

*Barnes v. FleetBoston Fin. Corp.,*
   No. 01-10395-NG, 2006 WL 6916834 (D. Mass., Aug. 22, 2006) ......................16

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................9, 12

*Brotherton v. Cleveland,*
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ............................................................12, 13

*Chavez v. Netflix, Inc.,*
   75 Cal. Rptr. 3d 413 (Cal. App. 1st Dist. 2008) ..................................................14

*City of Livonia Employees' Ret. System v. Wyeth,*
   No. 07 CIV. 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ............15

*Dennis v. Kellogg Co.,*
   No. 9-1786, 2013 WL 6055326 (S.D. Cal. Nov. 4, 2013) ....................................13

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ............8, 11, 12

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
   630 F. Supp. 482 (E.D. Pa. 1985) ........................................................................12

*Franco v. Ruiz Food Products, Inc.,*
   No. 1:10-CV-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..........20

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975)....................................................................................9

*Guttmann v. Nissin Foods (USA) Co. Inc.,*
   No. 3:15-cv-00567, 2015 WL 4881073 (N.D. Cal., Aug. 14, 2015) ................17, 18

*Hughes v. Microsoft Corp.,*
   No. C98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001)......................8

*In re Bluetooth Headset Products Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ..................................................................................8

*In re First Capital Holdings Corp. Financial Prods. Sec. Litig.,*
   33 F.3d 29 (9th Cir. 1994) ....................................................................................14

*In re Ins. Brokerage Antitrust Litig.,*
   579 F.3d 241 (3d Cir. 2009) ..................................................................................24

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ......................................................................9, 11, 12

*In re NASDAQ Market–Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y.1998) .........................................................24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...............................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    No. MDL 3:07-md-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ..............................24

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)........................................................10

*Knisley v. Network Assocs., Inc.*,
    312 F.3d 1123 (9th Cir. 2002) ............................................................14

*Larsen v. Trader Joe's Co.*,
    No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............................18

*Meyenburg v. Exxon Mobil Corp.*,
    No. 3:05-cv-15-DGW, 2006 WL 5062697 (S.D. Ill. June 5, 2006) ........................13

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
    797 F.2d 799 (9th Cir. 1986) ............................................................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)..........................................................9

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................... *passim*

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ...........................................................14

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .............................................................8

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ...........................................................7

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...........................................................7

*Vollner v. Selden*,
    350 F.3d 656 (7th Cir. 2003) ..........................................................16

*Williams v. First Nat'l Bank of Pauls Valley*,
    216 U.S. 582 (1910)....................................................................7

**FEDERAL RULES**

Federal Rule of Civil Procedure Rule 23(e) ...................................................7, 10

Federal Rule of Civil Procedure Rule 33(b)(3)................................................17

1

**NOTICE OF MOTION**

2

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3   PLEASE TAKE NOTICE that on February 11, 2016, at 9:30 a.m., or as soon thereafter

4   as counsel may be heard in the courtroom of the Honorable Laurel Beeler, Plaintiffs Rosminah

5   Brown and Eric Lohela ("Plaintiffs"), on behalf of the proposed Class, will and hereby do

6   respectfully move for entry of an order: (i) granting final approval of the proposed settlement

7   set forth in the class action Stipulation of Settlement ("the Settlement"); and (ii) confirming

8   certification of the Settlement Class as defined in the Settlement.[1]  Plaintiffs also move the Court

9   for an order striking the objections submitted in response to the settlement due to the objectors'

10   lack of standing and/or requesting that the Court overrule such objections.

11   Plaintiffs' motion is based on the attached Memorandum of Points and Authorities in Support

12   of Final Approval of Class Action Settlement; the Declaration of Mark N. Todzo in Support of

13   Plaintiffs' Motion for Final Approval of Class Action Settlement ("Todzo Decl."), the Declaration of

14   Mark Rapazzini in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

15   ("Rapazzini Decl."), the Declaration of Mildred Buchanan in Support of Plaintiffs' Motion for Final

16   Approval of Class Action Settlement ("Buchanan Decl."), the Declaration of Cassandra Malry in

17   Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Malry Decl.") and the

18   exhibits attached thereto; the Settlement filed on October 17, 2015; all other pleadings and matters of

19   record; and such additional evidence or argument as may be presented at the hearing.

20

**MEMORANDUM OF POINTS AND AUTHORITIES**

21   **I.    SUMMARY OF ARGUMENT**

22   The Settlement resolves the claims in the operative First Amended Complaint in this case.  In

23   that Complaint, Plaintiffs allege that The Hain Celestial Group, Inc. ("Hain") engaged in false and

24   misleading marketing and advertising of its Avalon Organics® and JASON® line of personal care

25   products (the "Challenged Products").  The lawsuit alleges these Challenged Products are not, contrary

26

27   [1]   All capitalized terms not defined herein shall have the same meanings set forth in the
Settlement filed on October 17, 2015. [ECF No. 358-3].

28

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

to Hain's labeling and advertising, predominantly made of organic ingredients. The Settlement remedies the concerns expressed in the lawsuit Plaintiffs filed on behalf of all California purchasers of these Challenged Products, who allegedly paid a premium for them over comparable products that did not purport to be organic. As discussed below, the Settlement gives class members precisely the relief that Plaintiffs sought when they filed the Complaint by requiring Hain to provide class members with cash payments (supplemented in some instances by product coupons at the election of individual class members) that represent more than the damages they could recover at trial.

The Settlement is fair, reasonable, and adequate, falling well within the range of class action settlements that merit final approval. Hain will pay a total of $7,500,000 into a settlement fund for the benefit of Class members—which will be distributed to the class members via direct cash payments and to pay attorneys' fees and costs and administrative expenses. Any unused or unclaimed funds will be distributed to the California Consumer Protection Foundation and the Jesse Smith Noyes Foundation, two non-profit organizations that will use the funds to directly benefit the interests and needs of Class Members. Hain has also agreed to make a total of up to $1,850,000 in product coupons available to class members who elect that option for compensation.

By making this substantial fund available, the Settlement provides an immediate, significant and positive result for the Class. In turn, Hain will receive a release of all claims that were or could have been raised in the First Amended Complaint relating to its labeling, marketing and advertising of the Challenged Products as organic. This settlement was reached after several years of contentious litigation, extensive discovery, and rigorous and informed negotiations between the parties and their experienced class action counsel in a process that was overseen by a seasoned, neutral mediator.

The response of the Class overwhelmingly favors final approval of the Settlement. Following preliminary approval, notice was served in accordance with the Court-approved notice plan. The notice plan is estimated to have reached well in excess of 25 million individuals, and it was unquestionably effective at reaching members of the Class: to date, there have been over 80,000 visits to the settlement website and over 22,000 claim forms have been received. Rapazzini Decl., ¶¶ 8-9,

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

11.  Yet *only four objections have been filed*, and not a single individual has elected to opt out of the Settlement.  *Id.*  Thus, less than 0.02% of those Class Members who chose to participate in the Settlement have expressed any problem with it.

The Settlement easily satisfies the Ninth Circuit's test to determine whether a settlement is fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23(e).  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Therefore, the proposed Settlement should be finally approved by the Court.

## II.    BACKGROUND

### A.    Procedural History.

Because the Court is intimately familiar with this litigation, rather than re-iterating the procedural history here, Plaintiffs refer the Court to the Procedural History sections set forth in both the preliminary approval motion [ECF No. 355] and motion for attorneys' fees and costs [ECF No. 362].  In sum, after almost five years of contentious and robust litigation, Plaintiffs are pleased to seek final approval of the Settlement now before the Court.

From the inception of this case in May 2011, the parties have engaged in multiple and extensive discussions regarding potential settlement options, including three private mediations with two different mediators and settlement conferences with two different judges.  Todzo Decl., ¶ 2.  Through these discussions and through substantial written discovery, deposition testimony, third party discovery, and independent investigation, Plaintiffs have gathered vital information pertinent to the legitimacy and scope of their claims, including documentation regarding the composition and labeling of the Challenged Products and the volume of sales.  *Id.*  The parties were finally able to reach an agreement in principle following a settlement conference with Magistrate Judge Spero on July 20, 2015.  *Id.*

### B.    Settlement Terms.

In exchange for a release of all claims that were or could have been brought based on the facts alleged in the complaint, Hain has agreed to contribute $7.5 million into an independently-administered Class fund, which will be used to fund payments to users of the Challenged Products who, Plaintiffs contend, were misled by Hain's past labeling practices—as well as to

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    disseminate notice to the Class such that affected persons may avail themselves of this remedial

2    monetary payment.  Settlement, ¶ III.  This fund will also be used to pay for Plaintiffs'

3    reasonable attorneys' fees and costs in an amount not to exceed $4,000,000, and to pay modest

4    incentive awards to the Plaintiffs Brown and Lohela of $7,500 each.  *Id.*  In addition to the $7.5

5    million fund, Hain has agreed to spend up to $2,000,000 on $1,850,000 in coupons redeemable

6    for Hain products for the benefit of the Class.

**1.      Hain Must Contribute Substantial Sums To A Cash Payment
To Compensate Class Members.**

8          The Settlement provides that Hain will pay $7.5 million in cash to establish a fund (the

9    "Cash Payment") for payment of Class member claims, notice and administration costs to

10   maximize Class members' access to the funds being created for their benefit, and attorneys' fees

11   and costs.  Settlement, ¶ III.A.  In addition, Hain will expend up to $2,000,000 for coupons

12   which may be used toward the purchase of any Avalon Organics® brand or JASON® brand

13   cosmetic.  *Id.* ¶ I.A.28.[2]  The Cash Payment is being administered by the Heffler Claims Group

14   (the "Claim Administrator"), an independent, qualified company approved by the Court, which

15   has been reviewing claims submitted by affected Class members in accordance with a specified

16   procedure and subject to verification by the parties.  *Id.* ¶¶ III.A.8 & Exh. A; Rapazzini Decl., ¶

17   2.

18         Class Members who submit claim forms are eligible to receive, for each product

19   purchased, either: (1) a cash payment; or (2) a cash payment and coupons.   Settlement, ¶ III.B.9

20   & Exh. A.  Class members who elect to receive cash payments will receive 50% of the purchase

21   price of each JASON® or Avalon Organics® product purchased in California up to a total of

22   $50.  *Id.* ¶ III.B.2(a) & III.B.3.  Class members who elect to receive cash payments and coupons

23   will receive 50% of the value of the purchase price of the products purchased and coupons for a

24   total of up to $80 (the payment will be calculated at a ratio of $1 cash to $4 in coupons).  *Id.* ¶

---

26   [2] The cost of a coupon includes the face value of the coupon together with printing and
27   processing fees.  Settlement ¶ I.A.17.  Thus, each $2 coupon costs Hain approximately $2.15.  *Id.*
     Accordingly, the maximum total face value of coupons available under the Settlement is $1,850,000.

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

III.B.2(b) & III.B.3.  Class members are ***not required*** to provide receipts or proofs of purchase in order to submit a claim.  Settlement, ¶ III.B.5.  To qualify for a cash payment, class members only have to fill out a simple form attesting to the quantity of Challenged Products that they purchased—nothing else is required.  *Id.*, Exh. F.  However, for class members who have receipts for the Challenged Products they purchased, there is no maximum limit for either cash or combined cash and coupon payments.  *Id.* ¶ III.B.3.

The Settlement also includes important safeguards to ensure that notice and administration costs are capped – no more than $650,000 of the Cash Payment may be used to reimburse those costs reasonably and actually incurred by the Claim Administrator in connection with providing notice and administering claims.  Settlement, ¶¶ I.A.9 & III.B.2(a).  In addition, the Settlement caps any award of attorneys' fees and costs at $4 million.  *Id.* ¶ III.B.2(b).

### 2. Any *Cy Pres* Funds Will Be Awarded to Independent, Non-Profit Foundations Which Will Ensure That the Funds are Used in a Manner That Is Closely Tied to the Goals of the Litigation.

The Settlement allows no possibility of any Cash Payment monies reverting to Hain.  Following distribution to Class members, and payment of notice and administration costs and attorneys' fees and costs, the remainder of the Cash Payment shall be distributed as *cy pres* in equal amounts to California Consumer Protection Foundation and the Jesse Smith Noyes Foundation for use in a manner that the will provide the next best use of compensation to Class members arising out of the claims alleged by Plaintiffs in this action.  Todzo Decl., ¶ 3; Buchanan Decl., ¶¶ 18-19, 22-23; Malry Decl., ¶¶ 27-28.  Each of these foundations will publish a request for proposals from non-profit organizations to apply for a portion of the funds.  Buchanan Decl., ¶ 19; Malry Decl., ¶¶ 17-21.  Using their decades of experience determining the best use of donated funds, the foundations will then choose the most worthy groups and projects to receive funding.  Buchanan Decl., ¶¶ 4, 11, 15-19; Malry Decl., ¶¶ 8, 13, 25.

### C. Preliminary Approval and Notice to Settlement Class.

On October 8, 2015, this Court issued an order conditionally certifying the Class and preliminarily approving the Settlement.  ECF No. 360.  The Court found that the requirements of

1   Federal Rule of Civil Procedure 23 were preliminarily satisfied, conditional certification was

2   warranted, the Settlement appeared reasonable, and the Class Notice plan was sufficient.  *Id*.  The

3   Court also approved the designation of the Heffler Claims Group to serve as the Court-appointed

4   Claim Administrator for the Settlement.  *Id*.

5       Notice to the Class began in November 2015 pursuant to the Court-approved notice plan,

6   which was determined by the Court to be "the best notice practicable."  ECF No. 360 at 7:24;

7   Rapazzini Decl., ¶¶ 4-10.  First, the Claim Administrator published a full page advertisement in the

8   California edition of *People* magazine – a publication which is widely read among the Challenged

9   Products' target demographic.  Rapazzini Decl., ¶¶ 5 & 7.  Second, the Claim Administrator

10  published notice by a 1/6 page advertisement in the form of the Publication Notice four separate

11  times over a three week period in the San Francisco Chronicle.  *Id*., ¶¶ 6 & 7.  Third, press releases

12  in both English and Spanish targeting all 50 states were sent to the PR Newswire service.  *Id.*, ¶ 8.

13  The PR Newswire was disseminated nationwide and was subsequently rebroadcast by at least 310

14  news sources thereby increasing the potential reach of the Notice to consumers.  *Id*.  Fourth, internet

15  and mobile phone advertisements targeting potential Class members were run on various media

16  services, resulting in over 25 million delivered opportunities for potential Class members to click on

17  the banner ad and view the settlement website.  *Id.*, ¶ 7.  All notices direct Class members to a

18  settlement website and toll-free telephone support system, which were set up by the Claim

19  Administrator.  *Id.,* ¶¶ 9-10.  The website included a more detailed notice fully explaining the terms

20  of the Settlement and all attendant Class member rights both in English and Spanish as well as a full

21  set of the Settlement documents.  *Id.,* ¶ 9.

22      This notice program has worked very well.  Although the Claim Administrator has not

23  completed its tally of the claims, as of January 27, 2016, the claim statistics are as follows: (A)

24  there were 80,961 visits to the Settlement website; and  (B) 22,126 electronic claim forms

25

26

27

28

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1   received[3] which will result in payments to Class members of $840,539.52 in cash and

2   $112,474.00 in coupons.  Rapazzini Decl., ¶ 14.  Further, pursuant to the Court's Order, the

3   deadline for Class members to opt out of or object to the Settlement was January 12, 2016.  As of

4   that date the Claim Administrator received no objections and no one had opted out.  *Id.*., ¶ 12.

5   Four objections have, however, been filed with the Court.  ECF Nos. 361, 363, 364 & 365.

6   **III.    ARGUMENT**

7         **A.       Standards for Judicial Approval of Class Action Settlements.**

8              It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the

9   preferred means of dispute resolution."  *Officers for Justice*, 688 F.2d at 625.  Class action suits

10  readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the

11  outcome and the typical length of the litigation.  "[T]here is an overriding public interest in settling

12  and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco*

13  *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869

14  F.2d 437, 443 (9th Cir. 1989).[4]

15             In approving a proposed settlement of a class action under Federal Rule of Civil Procedure

16  23(e), the court must find that the proposed settlement is "'fair, adequate and reasonable.'"[5]  The

17  Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a

18  class action settlement:

19             Although Rule 23(e) is silent respecting the standard by which a proposed settlement
              is to be evaluated, the universally applied standard is whether the settlement is
20            fundamentally fair, adequate and reasonable.  The district court's ultimate
              determination will necessarily involve a balancing of several factors which may
21            include, among others, some or all of the following: the strength of plaintiffs' case;
              the risk, expense, complexity, and likely duration of further litigation; the risk of
22            maintaining class action status throughout the trial; the amount offered in settlement;

23  ───────────────────────

24        [3]  The Claim Administrator also received paper claim forms in the mail.  Those claim forms
    have not yet been processed and the amounts of those claims are not included in these totals.
25  Rapazzini Decl., ¶ 14.

26        [4]  The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank of
    Pauls Valley*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.
27  1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

28        [5]  *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625.

1
2
the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

3   *Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375

4   (9th Cir. 1993).[6]

5       The district court must exercise sound discretion in approving a settlement.  *Torrisi*, 8 F..3d

6   at 1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939

7   (9th Cir. 1981).  However, a strong initial presumption of fairness attaches to a proposed settlement

8   if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight

9   is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the

10  underlying litigation.  *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697, *7 (W.D.

11  Wash. Mar. 26, 2001).  Therefore, in exercising its discretion, "the court's intrusion upon what is

12  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited

13  to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

14  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

15  whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  The

16  Ninth Circuit defines the limits of the inquiry to be made by the Court in the following manner:

17
18
19
20
Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

21  *Id.* (emphasis in original).  Moreover, courts apply an even less exacting review of the fairness of

22  class action settlements where, as here, a class has already been certified.  *Cf. In re Bluetooth*

23  *Headset Products Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011).  As explained below and in the

24  Declaration of Mark N. Todzo, application of these criteria demonstrates that the Settlement

25  warrants final Court approval.

26
27     [6]  Unless otherwise noted, all citations are omitted and emphasis is added.
28

**B.      The Strength of Plaintiffs' Case.**

The substantial relief secured by the settlement is quite fair in light of the significant hurdles faced by Plaintiffs and the Class.  Hain vigorously disputes that Plaintiffs would be able to prove liability or be entitled to injunctive relief or monetary damages.  *See* Todzo Decl., ¶ 4. Hain also intended to seek decertification of the Classes the Court had certified.  *Id.*  Although Plaintiffs have prevailed against the defenses Hain has raised thus far and succeeded on class certification, there is considerable litigation risk for Plaintiffs going forward.  *Id.*  For example, despite their extensive discovery efforts, Plaintiffs face substantial evidentiary gaps in proving that all of the Challenged Products violated the California Organic Products Act ("COPA") for the entirety of the relevant class periods.  *Id.*  Even if they prevailed on liability, proof of damages would need to overcome Hain's defense that the Challenged Products are priced no higher than other similar non-organic products.  *Id.*  And, given that the legal issues regarding allegedly false organic representations on consumer products are relatively novel and have not been widely litigated, there is always the risk that the Court's orders denying Hain's motions to dismiss and granting Plaintiffs' motions for summary judgment could be reversed on appeal even if Plaintiffs prevailed at trial.  *Id.*

**C.      The Risk, Expense, Complexity and Likely Duration of Litigation.**

To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class Members and the immediacy and certainty of a substantial recovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975); *Boyd v. Bechtel Corp*, 485 F. Supp. 610, 616-617 (N.D. Cal. 1979).  In other words, "'[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.   In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Approval of the Settlement will mean a present recovery for eligible claimants.  If not for the Settlement, this case was on track for expert depositions, a motion for decertification of the class,

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    and further summary judgment motions followed by trial. *See* Todzo Decl., ¶ 5.  A trial would have

2    occupied a number of attorneys for many weeks and would have required substantial and costly

3    expert testimony on both sides. *Id.*  Furthermore, a judgment favorable to the Class, in light of the

4    contested nature of virtually every aspect of this case, would unquestionably be the subject of post-

5    trial motions and further appeals, which could prolong the case for several more years. *Id.*; *see, e.g.*,

6    *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-748 (S.D.N.Y. 1985) (delay from appeals

7    is a factor to be considered).  Therefore, delay, not just at the trial stage, but through post-trial

8    motions and the appellate process as well, could force Class Members to wait many more years for

9    any recovery, further reducing its value.  Settlement of this litigation now ensures a recovery, and

10   eliminates the risk of no recovery at all.  In sum, the risks posed by continued litigation are

11   substantial, and they would be present at every step of the litigation if it were to continue.

12       **D.**    **Risk of Maintaining Class Action Status Throughout Trial.**

13       While this Court had already certified the Classes, Hain had intended to seek decertification,

14   and Plaintiffs would have had the burden of proving that the Court's certification Order was still

15   proper.  Among other issues, Hain would argue that each member of the Class has different

16   conceptions of the meaning of organic, that some Class members purchased the Challenged Products

17   for reasons having nothing to do with any perception of the Challenged Products' organic content,

18   and that some Class members who may have purchased the Challenged Products under some

19   misimpression as to organic content have nevertheless been completely satisfied with the Challenged

20   Products' performance.  While Plaintiffs are confident they would have defeated Hain's efforts to

21   decertify the Classes, this factor too weighs in favor of finally approving this Settlement.

22       **E.**    **Amount Offered in Settlement.**

23       Settlement by its nature is a compromise. Therefore, the law does not require a settlement

24   to reflect the best possible result in the litigation, but rather only that it falls within the ambit of

25   reasonableness. Fed. R. Civ. P. 23(e)(2).  Here, the $7.5 million monetary recovery (plus up to

26   $1,850,000 in coupons) represents a substantial portion and perhaps more than the amount that

27   Plaintiffs believe to be their best case scenario for recovery at trial. *See* Todzo Decl., ¶ 6.  The

28

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1   monetary provisions of the Settlement were based in part on a damages model that measures

2   premiums paid by consumers for the Challenged Products over and above the prices paid by

3   consumers for comparable personal care products that do not claim to be organic.  *Id.*  Plaintiffs

4   also seek disgorgement of profits, which, while easier to calculate, has less precedential support.

5   *Id.*  The 50% of the purchase price made available to Class members pursuant to the Settlement

6   exceeds the restitution and damages estimate under either the price premium or disgorgement

7   model.  *Id.*  On both a class wide and individual basis, the monetary recovery represents a

8   substantial portion if not more than the best case recovery Plaintiffs could have expected at trial.

9   *Id.*

10       The unclaimed portion of the Cash Payment will be distributed in equal amounts as *cy*

11  *pres* to California Consumer Protection Foundation and the Jesse Smith Noyes Foundation, two

12  foundations that will grant the funds to non-profit groups to use on projects that are consistent

13  with the goals of the litigation.  Todzo Decl., ¶ 3; Buchanan Decl., ¶ 15-23; Malry Decl., ¶ 28-

14  29.  By allocating any remaining money to these foundations, the Settlement ensures that the *cy*

15  *pres* funds will be distributed to non-profit groups that are selected by independent professionals

16  who specialize in awarding grants in accordance with specific goals.  Buchanan Decl., ¶¶ 15-23;

17  Malry Decl., ¶¶ 19-29.

18       The reasonableness of the Settlement is further underscored by the fact that it was

19  reached only after participation in a formal settlement conference before a qualified neutral.  *See*

20  *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 666 (E.D. Cal. 2008) (brokering of settlement by

21  qualified mediator weighs in favor of preliminary approval of settlement by court).  Here, the

22  parties' agreement was reached with the assistance of Magistrate Judge Spero, an experienced

23  member of the federal judiciary who provided invaluable assistance and insights to the

24  settlement process.  *See* Todzo Decl. ¶ 2.

25       **F.    The Stage of Proceedings and the Amount of Discovery Completed.**

26       The stage of the proceedings and the amount of discovery completed is one of the factors

27  that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.

28  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Ellis*, 87 F.R.D. at 18;

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).  Here, the settlement was

2    reached only after substantial litigation and discovery, including several rounds of written

3    discovery that included hundreds of separate discovery requests, the review by Plaintiffs of

4    hundreds of thousands of pages of documents produced by Hain, and depositions of key

5    company personnel.  Todzo Decl. ¶ 7.  To verify this information and further investigate the

6    claims, Plaintiffs also served discovery on dozens of third parties involved in manufacturing,

7    certifying, marketing, labeling and selling the Challenged Products on Hain's behalf, which

8    resulted in the significant production of additional documents.  *Id*.  This discovery ensured

9    sophisticated and meaningful settlement negotiations, which were conducted periodically over

10   the course of the litigation.  *Id*.  As a result, the Parties have a comprehensive understanding of

11   the strengths and weaknesses of the case and have sufficient information to make an informed

12   decision regarding the fairness of the settlement.  *See Mego Fin.*, 213 F.3d at 459.

13        **G.      Experience and Views of Counsel.**

14        It has long been accepted that the view of the attorneys actively conducting the litigation,

15   while not conclusive, "is entitled to significant weight" when evaluating a settlement.  *Fisher Bros.*

16   *v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the

17   fact that experienced counsel involved in the case approved the settlement after hard-fought

18   negotiations is entitled to considerable weight").  This action has been litigated and settled by

19   experienced and competent counsel on both sides of the case.  Plaintiffs' counsel are well known for

20   their decades of experience and success in complex and class action litigation.  Todzo Decl., ¶ 8.

21   Defense counsel are, likewise, extremely sophisticated and experienced litigators.  That such

22   qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate

23   heavily favors this Court's approval of the Settlement.

24        **H.      Reaction of the Settlement Class.**

25        Another factor courts consider when determining whether to approve a settlement is the

26   reaction of the class.  *Officers for Justice*, 688 F.2d at 625.  A "relatively small number" of

27   objections is "an indication of a settlement's fairness."  *Brotherton v. Cleveland*, 141 F. Supp. 2d

28   894, 906 (S.D. Ohio 2001); *see also Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

WL 5062697, at *6 (S.D. Ill. June 5, 2006) (nine objections is a "minuscule" amount). Concomitantly, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton*, 141 F. Supp. 2d at 906. Here, notice was widely disseminated via print and electronic publication to millions of persons, including members of the Class. The Class members are well aware of the Settlement— as of January 12, 2016 (the deadline for claims, objections, and opt-outs), there have been a total of: (1) 80,961 visits to the Settlement website; and (2) 22,126 electronic claim forms received which would result in payments to the Class of over $840,000 in cash and $112,000 in coupons. Rapazzini Decl., ¶ 14. Yet, only four Class Members have objected and no one has requested exclusion from the Settlement. *Id.*, ¶ 12; ECF Nos. 361, 363, 364 & 365. These numbers indicate that the Notice process has been remarkably successful—and the Class's reaction to the proposed settlement has been overwhelmingly positive.

## I. The Four Objectors Lack Standing and Fail to Raise Any Valid Objections.

Of the over 22,000 class members who participated in the Settlement, only four have raised any objection to the Settlement. This paltry level of objection (less than 0.02%) indicates overwhelming approval of the Settlement by nearly all of the Class Members. Notably, none of the objectors claim that the amount of compensation to Class Members here – which comprises one hundred percent or more of the relief they could have obtained at trial – is insufficient. As a result of the objectors' concession that the monetary relief is sufficient to fully fund any of their alleged damages as well as those of the absent class members, they cannot and do not identify any injury that they will suffer as a result of the Settlement. Because the objectors are in no way aggrieved by any aspect of the Settlement, they have no standing to object.

All four of the objections were filed by counsel and/or objectors known to be "professional objectors," who have raised the exact same arguments and earned scorn from other courts for their detrimental role in class action litigation and for failing to contribute any benefit for class members. Todzo Decl. ¶ 10; *see, e.g., Dennis v. Kellogg Co.*, No. 9-1786, 2013 WL 6055326, at *4 n. 2 (S.D. Cal. Nov. 4, 2013) ("Palmer has been widely and repeatedly criticized as a serial, professional, or

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

otherwise vexatious objector"; collecting other cases regarding same); *Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 431 (Cal. App. 1st Dist. 2008) (affirming trial court's rejection of Helfand's "puzzling" objections to approval of class action settlement). Here, the objectors are: (1) Dawn Weaver, who is represented by Darrell Palmer; (2) Steven Helfand, an attorney who is representing himself; (3) Patrick Sweeney, an attorney who is representing himself; and (4) Sheri Lee Williams, who is represented by Brad Salter (together, the objectors and their counsel are referred to as the "Objectors"). Between them, the Objectors have objected to a substantial number of class action settlements. Todzo Decl., ¶ 10,

The Objectors often work in concert. For example, although Mr. Sweeney is representing himself on his objection here, he is often represented by Mr. Palmer in other objections. Decl. Todzo, ¶ 11. Likewise, Mr. Helfand previously has worked together with Mr. Palmer on other objections. *Id*. While it is unclear at this point whether the Objectors are working together here, their objections are similar enough to be addressed together.

Because none of the objections provide any valid basis for the Court to reverse its preliminary determination that the Settlement is fair and reasonable, the Court should grant Plaintiff's motion for final approval of the Settlement.

### 1. The Objectors Are Not Aggrieved by the Settlement and Therefore Lack Standing to Object.

The Objectors have no standing to object to the Settlement because they are not aggrieved by any of the settlement terms about which they complain. Therefore, the Court should strike their objections.

Membership in a class does not automatically confer standing to challenge a settlement – the objecting class member must be "aggrieved" by the settlement term at issue. *In re First Capital Holdings Corp. Financial Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994). If modifying a settlement term would not "actually benefit the objecting class member," the class member lacks standing. *Knisley v. Network Assocs., Inc*., 312 F.3d 1123, 1126 (9th Cir. 2002); *cf. Rodriguez v. Disner*, 688 F.3d 645, 660 n.11 (9th Cir. 2012) (addressing appellate standing) ("'objectors who do

1   not participate in a settlement lack standing to challenge class counsel's . . . fee award because,

2   without a stake in the common fund pot, a favorable outcome would not redress their injury'").

3          Here, none of the Objectors dispute that the cash portion of the Settlement being distributed

4   to Class Members is sufficient to compensate him or her (and absent class members) for any harm

5   caused by Hain's alleged misconduct.  This concession is fatal to the Objectors' standing to

6   challenge the other components of the Settlement since any change to those other terms will not

7   impact the amount of recovery they receive.  For instance, the Objectors complain that the attorneys'

8   fees amount and incentive awards are too high.  However, since the Objectors concede that Class

9   Members who filed claims will receive full and just compensation for any and all alleged damages, any

10  reduction in the fees or incentive awards will not increase the distribution of funds to such claimants.

11  Indeed, to do so would be considered a windfall.  Because changes to these settlement terms would

12  not redress any injury to the Objectors, they lack standing to object to those portions of the

13  Settlement.  *See, e.g.*, *City of Livonia Employees' Ret. System v. Wyeth*, No. 07 CIV. 10329 (RJS),

14  2013 WL 4399015, at *1-2 (S.D.N.Y. Aug. 7, 2013).

15         Likewise, the Objectors lack standing to the *cy pres* provision of the Settlement.  Given their

16  acknowledgement that the Settlement fully compensates absent Class Members and the Objectors

17  alike, changes to the *cy pres* provision will in no way affect them.  Accordingly, the Objectors lack

18  standing to pursue such objections.

19         Similarly, the Objectors lack standing to object to the coupon portion of the Settlement since

20  the coupons were an option for Class Members to elect in lieu of a pure cash recovery, and the

21  Objectors do not contend that the $7.5 million cash portion of the Settlement is in any way

22  insufficient to compensate the Class.  Once again, having conceded that the cash recovery will

23  adequately compensate Class Members for the harm at issue, the Objectors lack standing to object to

24  the Settlement's inclusion of an alternative form of relief that is purely voluntary at the election of an

25  individual Class Member.[7]

26  _____

27         [7] Dawn Weaver, Patrick Sweeney and Steven Helfand also lack standing to object to the
28  coupon portion of the Settlement since none of them elected to receive their compensation in the

**2.     The Objectors Are All Professional Objectors Lacking in Credibility Such That Their Membership in the Class Is Questionable.**

Plaintiffs acknowledge that individuals objecting to class action settlements can provide valuable input into the resolution of cases by ensuring the protection of absent class members. Often, however, "professional" or "serial" objectors and their counsel file objections with the primary goal of extracting payments for themselves at the expense of the class by threatening to delay implementation of a settlement pending resolution of their meritless objections and subsequent appeals:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01–10395–NG, 2006 WL 6916834, *1 (D. Mass., Aug. 22, 2006); *see also Vollner v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (criticizing practice of filing objections to "cause expensive delay in the hope of getting paid to go away"). The Objectors are professional objectors that have filed boilerplate objections in numerous class actions,[8] that have worked together in some cases to delay implementation of class action settlements for their own benefit at the expense of the class, and that have in some instances earned the wrath of trial courts for their improper tactics. Therefore, the Court should give their objections little weight.

---

form of coupons, and are therefore not affected whatsoever by the inclusion of a partial coupon alternative. Ms. Williams, on the other hand, voluntarily chose to be compensated in a combination of coupons and cash. Had she truly found the coupon alternative objectionable, she could have simply elected to make a claim for all cash. Her attempt to manufacture standing based on a selection of her own choosing should be rejected.

[8] The boilerplate nature of the Objectors' filings in this case is underscored by: (1) the use of the defendant name "Pier 1" in Ms. Weaver's objection [ECF No. 364 at 9:4]; and (2) the fact that Mr. Helfand has filed the exact same *cy pres* objections in at least three different cases in the past few months. Todzo Decl., ¶ 12, Exh. 2.

1    In addition, given their overall lack of credibility, it is not even clear that most of the

2  Objectors are even Class Members to begin with.  Steven Helfand -- who did not even bother to file

3  a claim[9] -- alleges without any specifics that he purchased one of the Challenged Products in

4  California even though he resides in Florida.  However, when responding to interrogatories, he was

5  unable to identify a single store, location, city, or county in California where he purchased any of the

6  Challenged Products.  Todzo Decl., ¶ 12, Exh. 1.  His verified discovery responses trump the

7  unsworn "Attestation" attached to his objection.  *See* FED. R. CIV. P. 33 (b)(3) (interrogatories must

8  be answered "under oath").  Additionally, Mr. Helfand's objections in numerous other consumer

9  false advertising cases raise further questions concerning his veracity with regard to his alleged

10  deception.  Todzo Decl., ¶ 10.  How is Mr. Helfand perpetually deceived by similar marketing and

11  labeling representations?  At some point, one would think he might have a more discerning eye when

12  it comes to believing product marketing.  *See Guttmann v. Nissin Foods (USA) Co. Inc.,* No. 3:15-

13  cv-00567,  2015 WL 4881073 (N.D. Cal., Aug. 14, 2015) ("This order finds [serial class action

14  plaintiff] Guttmann was keenly aware of the alleged injury he might suffer by eating Nissin's

15  noodles, and he knew he could have avoided any such injury caused by Nissin by simply checking

16  the product label.").  In any event, the Court should strike his objection due to his lack of injury, his

17  failure to file a claim, and his inability to demonstrate his standing as a member of the class.

18    While Ms. Weaver also claims to have purchased a single Jason Product in 2011, she is

19  unable and unwilling to muster any specific details about her alleged purchase.  In fact, when her

20  counsel was asked to provide dates for Ms. Weaver's deposition, Mr. Palmer responded, "[t]hat will

21  never happen!"  Todzo Decl., ¶ 14, Exh. 4.  Thus, Plaintiffs were unable to explore the veracity of

22  Ms. Weaver's standing allegations.  Ms. Weaver's claim that she was duped into purchasing one or

23  more Challenged Products based on Hain's organic representations is all the more incredible when

24  _____

25    [9]  Because he did not file a claim (Rappazzini Decl., ¶ 13), Mr. Helfand has no stake to any
   of the Settlement proceeds and will be unaffected by any changes to the Settlement.  Therefore, he

26  lacks standing for this independent reason as well.  Indeed, it appears that Mr. Helfand's objection
   here may have simply been filed as a matter of convenience since he had already filed nearly

27  identical objections to a settlement in another class action that happens to be scheduled for a final
   approval hearing on the same date as the present motion.  Todzo Decl., ¶ 12 & Exh. 2.

28

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

one considers that she has alleged to have been similarly duped in numerous other instances by other companies' advertising ploys. *See Guttmann,* 2015 WL 4881073, at *2; *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *6 fn. 2 (N.D. Cal. July 11, 2014) (rejecting "Ms. Weaver's . . . boilerplate objections . . . that have been rejected by other courts."). Due to Ms. Weaver's utter lack of credibility concerning her standing and her unwillingness to respond to Plaintiffs' reasonable discovery requests, the Court should strike her objection.

As with Mr. Helfand, Mr. Sweeney is not a resident of California and was not a resident of California at any time during the class period. *See* ECF No. 365 at 4. Nevertheless, he submitted a claim stating he purchased a single Jason Product and mailed an objection from his residence in Wisconsin. In light of his history as a serial objector, Mr. Sweeney's self-serving statement from the Midwest is worthy of little weight.

Although Ms. Williams appears to have purchased one or more of the Challenged Products during the relevant time period, her deposition testimony made it clear that her problem is with California law, not the settlement. Ms. Williams testified that she objects to the Settlement because it does not require Hain to reformulate the Challenged Products to be 100% organic. Todzo Decl. ¶ 13, Exh. 3 at 20:5-23, 30:20-31:5; 33:1-4. However, California law permits cosmetic products to be labeled as organic so long as the products contain at least 70% organic ingredients, not 100%. Because Ms. Williams' objection is to California law rather than the Settlement, her objection should be stricken.[10]

### 3.   The Objections Lack Merit.

To the extent the Court looks past the Objectors' lack of standing and reviews the merits of the objections, those objections are without merit. The Objectors contend that: (1) the Notice is misleading; (2) the coupons are inadequate; (3) the *cy pres* recipients are improper; (4) the release is overbroad; (5) the attorneys' fees are excessive; (6) the incentive awards are excessive; and (7) there are other miscellaneous problems with the Settlement such as the alleged inclusion of an implied

---

[10] In addition, at her deposition, Ms. Williams demonstrated a surprising lack of familiarity with this case. *See, e.g.,* Todzo Decl. ¶ 13, Exh. 3 at 15:6-15, 21:5-9, & 21:16-22:25.

1   clear sailing agreement.  Most of the objections appear to result from an intentional or negligent

2   misreading of the Settlement.  None of the objections withstands scrutiny.

3                              **a.      The Notice Is Not Misleading.**

4          The Objectors complain that the Notice is somehow misleading, but they are unable to

5   muster a single example of a misleading statement in the Notice.  For instance, the Objectors argue

6   that the Notice "falsely" states that, "'Hain shall also spend up to $2 million to make available up to

7   $1.85 million in coupons.'"  ECF No. 361 at 2:3-8 (*quoting* Notice); *see also id.* at 5:24 – 6:4.  As

8   part of the Settlement, Hain agreed to spend up to $2 million to make up to $1.85 million in coupons

9   available to Class Members.  Settlement, ¶ I.A.28.  The Objectors fail to explain how the Notice's

10  factually accurate description of this relief is "demonstrably untrue."  *See* ECF No. 361 at 2:8.

11  Similarly, while the Objectors argue that the Notice misleads Class members as to the scope of the

12  release [*id.* at 2:12-14], the Notice adequately and accurately describes the release.  In fact, the entire

13  release, which expressly identifies all of the claims released by the Settlement, is attached to the

14  class notice.  Rapazzini Decl., ¶ 9, Exh. G.  Therefore, the Court should reject the Objectors'

15  unfounded complaints about the Notice.

16                              **b.      The Coupons Are an Optional Form of Relief for Class
                                         Members Who Choose Them and Do Not Render the**
17                                       **Relief Inadequate.**

18         None of the Objectors contend that the cash component of the Settlement is in any way

19  inadequate.  Yet, even though the coupons constitute additional relief that can be added to a cash

20  recovery at the choice of a claimant, all of the Objectors contend that the coupons somehow render

21  the Settlement inadequate.  This appears to be a case of the Objectors failing to read or to understand

22  how the Settlement works.

23         For instance, the Objectors complain that certain aspects of the coupons – that they are non-

24  transferable, are issued in non-stackable two dollar denominations, expire after a year, and are not

25  redeemable for cash – render the coupon portion of the Settlement inadequate.  ECF No. 361 at 2:26 –

26  3:8; ECF No. 363 at 3:4-23.  However, the coupons are an optional supplement that Class Members

27  can choose in lieu of a pure cash recovery.  A Class Member who finds any of the coupons'

28

1    reasonable fraud protection features objectionable can simply elect to receive all cash.  Todzo Decl.,

2    ¶ 15.

3           Likewise, the Objectors argue that the value of any unclaimed coupons should be distributed to

4    a non-profit organization as *cy pres*.  ECF No. 363 at 4:1-7.  However, the premise of this objection –

5    that if "Defendants [sic] are not disgorged of the value of unredeemed coupons, then they [sic] will

6    unfairly benefit from the Settlement" [*id.* at 4:3-6] – is false as the Objectors do not contend that the

7    $7.5 million cash portion of the class benefit, which will not revert to Hain, is insufficient in any way

8    irrespective of the coupons.[11]

9                    c.    **The Proposed *Cy Pres* Recipients Will Ensure That the
                          Funds Will Be Used for the Best Interests of the Class.**

10          The Objectors also complain that, by distributing the funds to foundations that intend to

11   distribute the funds to other organizations, the Settlement does not adequately ensure that the money

12   is spent appropriately.  However, the Settlement distributes any unclaimed funds in equal amounts to

13   The Jesse Noyes Foundation and the CCPF -- well-established foundations whose entire purpose is

14   to distribute funds in conformance with specific criteria -- with a specific directive that the money be

15   distributed to qualified non-profit recipients for use on projects that are directly tied to the claims in

16   this litigation.  Distribution of the *cy pres* funds to the foundations will thus ensure strict adherence

17   to the nexus requirement through their open and competitive bidding processes, which will be

18   administered by independent boards of directors.  Buchanan Decl., ¶¶ 15-23; Malry Decl., ¶¶ 19-29.

19          The Objectors' argument, if accepted, would mean that courts could never award *cy pres*

20   funds to foundations, yet this happens all the time.  *See, e.g., Franco v. Ruiz Food Products, Inc.*,

21   No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *2 (E.D. Cal. Nov. 27, 2012) (approving *cy pres*

22   distribution to the Chicana Latina Foundation); *Stephenson v. Neutrogena Corp.*, No. C 12-0426

23   _____

24          [11] Ms. Williams also suggests that, "if the Court does not deny the Settlement," the Court
     should "wait to determine settlement fairness" for at least a year to see how many of the coupons are
25   redeemed.  ECF No. 363 at 3:23-26.  This suggestion makes no sense as the Court must either approve
     or reject the Settlement.  If the Court approves the Settlement and the coupons are distributed and
26   redeemed, there is no way to undo that relief.  The redemption rate is also irrelevant to the validity of
     the Settlement as: (1) the coupons are an optional form of relief that Class Members voluntarily select;
27   and (2) Plaintiffs are not basing their request for attorneys' fees on the value of the coupons.

28

PJH, Final Settlement Order & Judgment [ECF No. 57] (approving *cy pres* distribution to the Rose Foundation).  Indeed, one of the two *cy pres* recipients in this case – the California Consumer Protection Foundation – was originally formed at the request of the court in a class action for the explicit purpose of receiving and distributing *cy pres* funds.  Malry Decl., ¶ 1.  Moreover, by distributing the funds to foundations that can then award grants to any number of organizations doing work that benefits the class, the Settlement is likely to have a bigger impact than if all of the funds were directly distributed to just one or two such organizations.

The Objectors also complain that, by forcing Class Members to contribute funds to the *cy pres* recipients – organizations whose work the Class Members may or may not support – the Settlement runs afoul of the First Amendment.  ECF No. 361 at 6:6-13:14.  The Objectors fail to cite any authority to support their First Amendment argument.  This is unsurprising since: (1) the First Amendment only applies to government actors, not to a settlement by private parties that is subject to Court approval; (2) by definition, any *cy pres* recipient needs to be doing work that furthers the interests of the members of the class; and (3) any class member who finds a *cy pres* recipient objectionable can always opt out.

### d.      The Release Is Limited to the Claims at Issue in the Case and Does Not Release Personal Injury Claims.

The Objectors also complain that the Settlement releases claims for personal injuries, and that the Notice fails to disclose this to the Class.  *See* ECF No. 361 at 2:12-13; ECF No. 363 at 4:12-23.  However, the Settlement does not release any claims for personal injury since the released claims only include those that could have been brought by Class Members based on the facts alleged in the Complaint, and the factual allegations in the Complaint are limited to conduct (misrepresenting the Challenged Products' organic attributes) that by definition could cause only economic harm and not physical injury.  Thus, there is no release of claims for personal injury.

### e.      The Attorneys' Fees Are Reasonable.

The  Objectors also argue that the attorneys' fee award is excessive.  ECF No. 361 at 2:15 – 3:3 & 5:7-8.  Unlike Mr. Helfand, the other Objectors at least waited until after Plaintiffs filed their

1    fee request before raising their objections.[12]   However, having reviewed Plaintiffs' detailed fee

2    motion and associated evidentiary support, the Objectors do not dispute that all of the fees were

3    reasonably expended or the reasonableness of counsel's rates.[13]   Indeed, as Plaintiffs' fee motion

4    demonstrates, Plaintiffs' fee request is fully justified based on the amount of work required to litigate

5    this hotly contested action and preparing it for trial.   Therefore, the Court should reject these

6    objections and grant Plaintiffs' fee request in full.[14]

7           As part of their attack on Plaintiffs' fee request, the Objectors argue that that the Court should

8    await the outcome of a pending California appellate case (*Laffitte v. Robert Half Int'l., Inc.*, S222996

9    (review granted Feb. 25, 2015) before ruling on whether Plaintiffs' fee request is reasonable.   ECF

10   No. 363 at 5:14 – 6:8.   Doing so, however, would defeat one of the primary benefits of a settlement,

11   which is to eliminate risk and uncertainty for both sides caused by, among other things, pending

12   appellate cases that may impact the outcome of their pending case.   *Officers for Justice*, 688 F.2d at

13   625 ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

14   litigation that induce consensual settlements.").   Another benefit is to reduce court congestion.   If

15   courts were to delay settlement approval while appellate courts resolve unrelated cases that may

16

17

18   _____

19       [12] Ironically, although he lodged his objection before Plaintiffs' fee motion was even filed,
     Mr. Helfand also complains that he did not have sufficient time to respond to that motion.   ECF No.

20   361 at 2:18-24.   Under the Court-approved schedule, Mr. Helfand had nearly two weeks to oppose
     Plaintiffs' fee motion after it was filed.   Mr. Helfand's failure to file any response to Plaintiffs' fee

21   motion, or to even seek an extension of time to do so, speaks volumes about the sincerity of his
     objection.

22       [13] The only specific criticism mustered by any of the Objectors is that Plaintiffs should

23   exclude time spent securing the coupon relief in the Settlement since Plaintiffs indicated that they are
     not basing their fee request on the coupons.   ECF No. 363 at 7:12-27.   However, what Plaintiffs

24   meant by that is that they are not including the value of the coupons as part of the value of the
     Settlement for purposes of assessing their degree of success, and not that their lawyers should not be

25   paid for securing that relief.   In any event, the negligible amount of time spent Plaintiffs' counsel
     spent securing the coupons is non-segregable from other time spent negotiating the Settlement.

26   Todzo Decl., ¶ 16.

27       [14] Notably, none of the Objectors argue that the $459,000 in costs Plaintiffs are seeking is
     unreasonable.

28

1   impact their view of the case being settled, these two benefits of settlement would both be

2   eliminated.[15]

3       Finally, while the Objectors argue that the coupons should not be used "as a bootstrap for

4   excessive attorneys' fees" [ECF No. 364 at 3:6], Plaintiffs have not based their fee request on the

5   value of the coupons.  Therefore, the value of the coupons is simply irrelevant to the amount of fees

6   Plaintiffs are seeking.

7                    **f.        The Incentive Awards Are Reasonable.**

8       Plaintiffs Brown and Lohela each expended extraordinary time and effort on behalf of the

9   Class, including reviewing pleadings, discovery responses, and settlement documents, collecting and

10  producing documents and other evidence, preparing for and attending their depositions, and

11  participating in multiple mediations and settlement conferences that ultimately resulted in the

12  Settlement.  *See* ECF Nos. 362-3 & 362-4.  Nevertheless, and without any basis, the Objectors argue

13  that the $7,500 incentive awards that Ms. Brown and Mr. Lohela will receive under the Settlement

14  are excessive.  Because Ms. Brown and Mr. Lohela are deserving of these relatively modest service

15  awards for their almost five years of work on behalf of the Classes, the Court should reject the

16  Objectors' complaints about the size of those awards.[16]

17

18

19

20  _____

21  [15] Furthermore, the outcome of *Laffitte* will not affect this case.  The only question in *Laffitte*
    is whether California state courts may use the common fund method of calculating a fee award in

22  addition to using a lodestar method.  *Laffitte v. Robert Half International, Inc. (Brennan )*,
    S222996 (review granted Feb. 25, 2015) (granting review of question as to whether a trial

23  court may "anchor its calculation of a reasonable attorney's fees award in a class action on a
    percentage of the common fund recovered.").  The resolution of *Laffitte* will not affect the discretion

24  of a California court to use the lodestar method applicable where, as here, a statutory fee-shifting
    statute provides the basis for the fee award.  Likewise, the Court should reject the Objectors'

25  suggestion to use a common fund approach instead of a lodestar approach in assessing Plaintiffs' fee
    request as Plaintiffs are basing their request on California law and it is currently unclear whether

26  California law even permits that approach.

27  [16] Ms. Williams' request that the Court deny any incentive award to Lauren Crivier ignores
    the fact that Plaintiffs have elected not to seek one.  ECF No. 363 at 8:1-4; ECF No. 362 at 24, fn. 5.

28

1

2

> **g.** **The Objectors' Other Miscellaneous Objections to the Settlement Lack Merit.**

The Objectors raise several other miscellaneous objections to the Settlement, all of which lack merit. First, without any supporting authority, the Objectors claim that the Settlement is somehow improper because Plaintiffs' counsel has the option of being paid their fees prior to the resolution of any appeals. However, courts generally reject objections against such settlement terms, which are referred to as quick-pay provisions, and approve payments to counsel within days of class action settlements because they recognize that counsel often litigate and finance these cases for years without any compensation whatsoever. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 283–85 (3d Cir. 2009) (affirming $29.95 million fee award and noting that the settlement agreement required plaintiffs' counsel to reimburse the already-paid fee award, if that award were reversed on appeal); *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y.1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. MDL 3:07-md-1827, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("[f]ederal courts, including this court and others in the district, routinely approve settlements that provide for [quick pay] fees prior to final disposition in complex class actions.").

In fact, many commentators regard the "wide-spread use" of quick pay as a useful tool to "reduce the 'holdout tax' that blackmail objectors can extract in class action litigation." Brian T. Fitzpatrick, THE END OF OBJECTOR BLACKMAIL?, 62 Vand. L. Rev. 1623, 1625-26 (Nov. 2009). Further, by requiring Class Counsel to provide undertakings acceptable to Defendant (which may include a requirement for the payment of interest) and to refund any attorneys' fee award, the Settlement provides adequate safeguards in the event any attorneys' fees award is reversed. *See* Settlement, ¶ VII.A.3. In sum, the quick pay provision is appropriate and the Objectors only despise it because it reduces their leverage to extract a payment pending appeal.

Second, the Objectors argue that the Settlement includes an "implicit clear-sailing" provision. ECF No. 361 at 3:10 – 5:6. A clear-sailing agreement is a provision where the defendant agrees not to challenge the plaintiff's fee request. There is no such provision in the Settlement and Objectors

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    do not identify one.  In fact, had Hain chosen to object to Plaintiffs' fee request and persuaded the

2    Court to reduce the fee award, the Settlement would go forward with the reduced fee.

3         Third, the Objectors request that the Court deny approval of the Settlement pending the

4    resolution of several pending Ninth Circuit appeals they contend "will impact this Court's analysis

5    of ascertainability, superiority, and ***potentially*** settlement fairness."  ECF No. 363 at 2:18-19

6    (emphasis added).  Prior to the Settlement, the Court certified the Classes in this case over Hain's

7    objection that the Classes are not ascertainable and that a class action is not the superior method of

8    resolving this dispute.  *See generally* ECF No. 267.  Since Plaintiffs already prevailed on these

9    issues, waiting for the Ninth Circuit to rule on ascertainability and superiority can only ***harm*** the

10   interests of the class members on whose behalf the Objectors purport to be objecting.  And, once

11   again, to defer ruling on the adequacy of the parties' settlement pending resolution of unrelated

12   appellate cases will undermine the certainty, finality and efficiency that settlements are designed to

13   achieve.  *See Officers for Justice*, 688 F.2d at 625.

14        Fourth, one objector, Ms. Williams, complains that the Settlement is inadequate because it

15   does not include any injunctive relief.  ECF No. 363 at 2:25-3:3.  However, according to her

16   deposition testimony, her entire reason for objecting is because she believes products should only be

17   labeled organic if they contain 100% organic ingredients.  Todzo Decl. ¶ 13, Exh. 4 at 20:5-23,

18   30:20-31:5; 33:1-4.  This, however, is not the law and no injunction could ever have been issued to

19   alleviate her concern.  Furthermore, if one of the Objectors or any other Class Member is dissatisfied

20   with Hain's current labeling of the Avalon Organics® and JASON® Challenged Products, the

21   Settlement does not bar them from pursuing Hain to enjoin that conduct as the release only pertains to

22   Challenged Products sold prior to the Court's final approval of the Settlement.  Settlement, ¶ I.A.7 &

23   I.A.16.[17]

24

25        [17] Ms. Williams' objection that the Settlement will allow Hain to "continue to collect a
     premium on its products because of its 'Natural' claims" (ECF No. 363, p. 3:1-2) is misplaced since:
26   (1) Plaintiffs' claims have always been limited to challenging the organic representations on the
     Challenged Products; and (2) the Settlement explicitly carves out of the release the claims in *Astiana*
27   *v. Hain*, a case that does challenge Hain's representations regarding the extent to which the
     JASON® products are "natural."  For this same reason, Ms. Williams' complaint that the Settlement's

28

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    IV.    CONCLUSION

2            For the reasons discussed herein and in the Todzo Declaration, Plaintiffs respectfully request

3    that the Court approve the Settlement of this litigation as fair, reasonable, and adequate.

4

     DATED: January 28, 2016                    Respectfully submitted,

5
                                                LEXINGTON LAW GROUP
6

7
                                        By:    /s/ Mark N. Todzo
8                                              Mark N. Todzo
                                               Attorneys for Plaintiffs ROSMINAH BROWN
9                                              and ERIC LOHELA, on behalf of themselves and
                                               all others similarly situated.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   ───────────────────────────────────────────

26   release "both waives and preserves identical claims" in the *Astiana* case (ECF No. 363, p. 4:24 – 5:9)
     is incorrect; the release specifically preserves all the claims in the *Astiana* case as those claims are
27   based on different conduct (natural representations) than the conduct at issue here (organic
     representations).

28