LEXINGTON LAW GROUP
Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (State Bar No. 213209)
Lucas Williams (State Bar No. 264518)
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
hhirsch@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiffs ROSMINAH BROWN
and ERIC LOHELA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>Defendant. | No. 11-cv-03082 LB<br><br>**DECLARATION OF MARK N. TODZO IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND TO STRIKE OBJECTIONS THERETO**<br><br>Date:      February 11, 2016<br>Time:      9:30 a.m.<br>Location:  Courtroom C -- 15th Floor<br>Judge:     Hon. Laurel Beeler<br><br>[Filed concurrently with Motion for Final Approval and Declarations of Mark Rapazzini, Mildred Buchanan and Cassandra Malry] |

I, Mark N. Todzo, declare:

1. I am an attorney with the Lexington Law Group ("LLG"), and I represent Plaintiffs Rosminah Brown and Eric Lohela ("Plaintiffs") in this action. I have personal knowledge of the matters set forth below and, if called upon, I could and would competently testify thereto. I am the attorney who has been principally involved in the prosecution of this litigation and the negotiations that culminated in the Stipulation of Settlement (the "Settlement Agreement" or "Settlement") between Plaintiffs and The Hain Celestial Group, Inc. ("Hain") which is before the Court for preliminary approval. A true and correct copy of the Settlement Agreement, signed by the Parties to this case, was submitted with Plaintiffs' motion for preliminary approval as ECF No. 358-3.

2. From the inception of this case in May 2011, the parties have engaged in multiple and extensive discussions regarding potential settlement options, including three private mediations with two different mediators and settlement conferences with two different judges. Through these discussions and through substantial written discovery, deposition testimony, third party discovery, and independent investigation, Plaintiffs have gathered vital information pertinent to the legitimacy and scope of their claims, including documentation regarding the composition and labeling of the Challenged Products and the volume of sales. The parties were finally able to reach an agreement in principle following a settlement conference with Magistrate Judge Spero. Judge Spero is an experienced member of the federal judiciary who provided invaluable assistance and insights to the settlement process.

3. The unclaimed portion of the Cash Payment will be distributed in equal amounts as *cy pres* to California Consumer Protection Foundation and the Jesse Smith Noyes Foundation, two foundations that will grant the funds to non-profit groups to use on projects that are consistent with the goals of the litigation.

4. The substantial relief secured by the settlement is quite fair in light of the significant hurdles faced by Plaintiffs and the Class. Hain vigorously disputes that Plaintiffs would be able to prove liability or be entitled to injunctive relief or monetary damages. Hain also

1 intended to seek decertification of the Classes the Court had certified.  Although Plaintiffs have prevailed against the defenses Hain has raised thus far and succeeded on class certification, there is considerable litigation risk for Plaintiffs going forward.  For example, despite their extensive discovery efforts, Plaintiffs face substantial evidentiary gaps in proving that all of the Challenged Products violated the California Organic Products Act ("COPA") for the entirety of the relevant class periods.  Even if they prevailed on liability, proof of damages would need to overcome Hain's defense that the Challenged Products are priced no higher than other similar non-organic products.  And, given that the legal issues regarding allegedly false organic representations on consumer products are relatively novel and have not been widely litigated, there is always the risk that the Court's orders denying Hain's motions to dismiss and granting Plaintiffs' motions for summary judgment could be reversed on appeal even if Plaintiffs prevailed at trial.

5. If not for the Settlement, this case was on track for expert depositions, a motion for decertification of the class, and further summary judgment motions followed by trial.  A trial would have occupied a number of attorneys for many weeks and would have required substantial and costly expert testimony on both sides.  Furthermore, a judgment favorable to the Class, in light of the contested nature of virtually every aspect of this case, would unquestionably be the subject of post-trial motions and further appeals, which could prolong the case for several more years.

6. The $7.5 million monetary recovery (plus up to $1,850,000 in coupons) represents a substantial portion and perhaps more than the amount that Plaintiffs believe to be their best case scenario for recovery at trial.  The monetary provisions of the Settlement were based in part on a damages model that measures premiums paid by consumers for the Challenged Products over and above the prices paid by consumers for comparable personal care products that do not claim to be organic.  Plaintiffs also seek disgorgement of profits, which, while easier to calculate, has less precedential support.  The 50% of the purchase price made available to Class members pursuant to the Settlement exceeds the restitution and damages estimate under either the price premium or disgorgement model.  On both a class wide and individual basis, the monetary recovery represents a substantial portion if not more than the best case recovery Plaintiffs could have expected at trial.

1      7.     The settlement was reached only after substantial litigation and discovery,
2 including several rounds of written discovery that included hundreds of separate discovery
3 requests, the review by Plaintiffs of hundreds of thousands of pages of documents produced by
4 Hain, and depositions of key company personnel.  To verify this information and further
5 investigate the claims, Plaintiffs also served discovery on dozens of third parties involved in
6 manufacturing, certifying, marketing, labeling and selling the Challenged Products on Hain's
7 behalf, which resulted in the significant production of additional documents.  This discovery
8 ensured sophisticated and meaningful settlement negotiations, which were conducted periodically
9 over the course of the litigation.

10     8.     Plaintiffs' counsel, Lexington Law Group ("LLG"), are well known for their
11 decades of experience and success in complex and class action litigation.  LLG has significant
12 experience representing aggrieved consumers in class action cases alleging that that cosmetic
13 products were falsely advertised.  LLG presently has seven attorneys on staff with a combined
14 total of over 90 years of litigation experience.  A true and correct copy of LLG's firm resume was
15 previously submitted to the Court with Plaintiffs' motion for preliminary approval of the
16 Settlement as ECF No. 56-2, Exh. 3.

17     9.     Four putative class members have submitted objections to the approval of the
18 proposed Settlement: (1) Dawn Weaver, who is represented by Darrell Palmer [ECF No. 364] ; (2)
19 Steven Helfand [ECF No. 361]; (3) Patrick Sweeney [ECF No. 365] ; and (4) Sheri Lee Williams,
20 who is represented by Brad Salter [ECF No. 363] (together, the objectors and their counsel are
21 referred to as the "Objectors").

22     10.    The Objectors have filed a substantial number of boilerplate objections to class
23 action settlements which have been routinely rejected by courts across the country.  *See, e.g.,*
24 *Dennis v. Kellogg Co.*, No. 9-1786, 2013 WL 6055326, at *4 n. 2 (S.D. Cal. Nov. 4, 2013)
25 ("Palmer has been widely and repeatedly criticized as a serial, professional, or otherwise vexatious
26 objector"; collecting other cases regarding same); *Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 431
27 (Cal. App. 1st Dist. 2008) (affirming trial court's rejection of Helfand's "puzzling" objections to
28

3                                Case No. 11-cv-03082 LB
**TODZO DECL. ISO MOTION FOR FINAL SETTLEMENT APPROVAL**

1 approval of class action settlement); *In re NVIDIA GPU Litig.*, 539 Fed. App'x 822 (9th Cir. 2013) (rejecting appeal by Helfand to approval of settlement); *Wal-Mart Stores Inc v Buholzer*, 156 Fed. App'x 347-48 (2d Cir. 2005) (finding that Helfand's "contributions" to the settlement approval process were "minimal"); *Roberts v. Electrolux Home Products, Inc.*, CV13-2339-CAS VBKX, 2014 WL 4568632, at *12 (C.D. Cal. Sept. 11, 2014) ("The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class, and finds that they are meritless in all respects. The objections are filed by counsel [Darrell Palmer] who routinely files objections to class settlements."); *Wilkins v. HSBC Bank Nevada*, N.A., 14 C 190, 2015 WL 890566, at *8 (N.D. Ill. Feb. 27, 2015) (rejecting objections to settlement by Ms. Weaver); *Howerton v. Cargill, Inc.*, CIV. 13-00336 LEK, 2014 WL 6976041, at *3 (D. Haw. Dec. 8, 2014) (rejecting objections by objector represented by Bradley Salter and approving class action settlement).

11. The Objectors often work in concert. For example, although Mr. Sweeney is representing himself on his objection here, he is often represented by Mr. Palmer in other objections. *See, e.g., Roberts*, 2014 WL 4568632, at *12; *see also Larsen v. Trader Joe's Co.*, 11-CV-05188-WHO, 2014 WL 3404531, at *7 (N.D. Cal. July 11, 2014) ("Like Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings."). Likewise, Mr. Helfand previously has worked together with Mr. Palmer on other objections. *See, e.g., In re Credit/Debit Card Tying Cases*, A138984, 2014 WL 5488910, at *13 (Cal. App. 1st Dist. Oct. 30, 2014), review denied (Feb. 11, 2015) (rejecting appeal by class action objector represented by Helfand and Palmer).

12. True and correct excerpts of Mr. Helfand's responses to Plaintiffs' Interrogatories Nos. 1-6 are attached as **Exhibit 1**. Mr. Helfand's objections to class action settlements in *Perkins v. Linkedin* Corporation, 13-CV-04303 LHK (N.D. Cal.) (filed November 30, 2015) and *Gay v. Tom's of Maine, Inc.*, 0:14-CV-60604-KMM (S.D. F.L.) (filed November 30, 2015) are attached as **Exhibit 2**.

13. A true and correct copy of the transcript of Ms. Williams' deposition testimony is

4   Case No. 11-cv-03082 LB
**TODZO DECL. ISO MOTION FOR FINAL SETTLEMENT APPROVAL**

1  attached as **Exhibit 3**.

2      14.    On January 20, 2016, I sent an email to Mr. Palmer inquiring as to Ms. Weaver's
3  availability to sit for a deposition.  On January 21, 2016, Mr. Palmer replied to my email, stating:
4  "That will never happen!"  A true and correct copy of this email correspondence is attached hereto
5  as **Exhibit 4**.

6      15.    The Objectors complain that certain aspects of the coupons – that they are non-
7  transferable, are issued in non-stackable $2 increments, expire after one year, and are not
8  redeemable for cash ((Settlement, ¶ I.A.17) – render the coupon relief inadequate.  However, these
9  limitations are necessary to protect against coupon fraud, which is a huge problem facing the
10 consumer products industry.  More information about coupon fraud can be found at
11 www.couponinformationcenter.com, the website of the Coupon Information Corporation, a non-
12 profit corporation dedicated to fighting coupon misredemption and fraud.

13     16.    Plaintiffs' counsel spent a very minimal amount of time negotiating the coupon
14 relief in the Settlement.  That time is not segregable from the other time spent negotiating the
15 Settlement.

17     I declare under penalty of perjury under the laws of the United States that the
18 foregoing is true and correct.

19     Executed on January 28, 2016, at San Francisco, California.

                      */s/ Mark N. Todzo*
                      MARK N. TODZO