Steven F. Helfand, SBN 206667
HELFAND LAW OFFICES
1400 SW 137th Avenue, Unit F112
Hollywood, FL 33027

Telephone: 415.596.5611
Email:      sh4078@gmail.com

In Pro per

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSMINAH BROWN and ERIC LOHELA; on behalf of themselves and all others similarly situated.<br><br>    Plaintiff,<br><br>   *vs*.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>    Defendant. | Case No.: 11-CV-03082 LB<br><br>**RESPONSE BY OBJECTOR STEVEN F. HELFAND TO PLAINTIFFS' MOTION FOR SETTLEMENT APPROVAL**<br><br>**DATE:  FEBRUARY 11, 2016**<br>**TIME:  9:30 A.M.**<br>**CTRM: C**<br>**JUDGE: HON. LAUREL BEELER** |

Plaintiffs' disputative "response" to absent class member and objector, Steven F. Helfand's [hereafter "Helfand" or "Objector"] brief is, in a word, baffling.  See, Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement and to Strike Objections Thereto [hereafter "Plaintiffs' Brief"].

**A. Plaintiffs argue a plethora of baseless and inconsistent claims that only serve to underscore the prospective settlement's infirmities while highlighting Class counsel's excessive fee request.  These challenges are compounded by Plaintiffs' countless foundationless assertions of imagined "concessions" allegedly made by Objector that do not exist.**

This includes, *inter alia*:

- "As a result of the objectors' concession that the monetary relief is sufficient to fully fund any of their alleged damages as well as those of the absent class members, they cannot and do not identify any injury that they will suffer as a result of the Settlement."  Plaintiffs' Brief, p. 13.  **Helfand never, at any time, made such concession**.  See, *e.g.*, **Exhibit A** [Special Interrogatory, No. 23 referencing requests for admission served on Helfand by Plaintiffs; Helfand explains why, for example, the monetary relief is insufficient.]  Plaintiffs' argument that follows is untethered to any underlying facts and purely academic.  Plaintiffs have no support; cite none, and, for little wonder, it simply

does not exist.  Under Plaintiffs' proposed scenario, the *cy pres* could be paid in full to Mr. Todzo or his next of kin for purely personal use unconnected with the Class interest.  Class members would have no right to object because the monetary relief attained is somehow alleged to be "sufficient, " whatever this means.  That makes no sense and, fortunately, is not and cannot be the law.

- "Here, none of the Objectors dispute that the cash portion of the Settlement being distributed to Class Members is sufficient to compensate him or her (and absent class members) for any harm caused by Hain's alleged misconduct."  Plaintiffs' Brief, p. 15.  However, to the contrary, **Helfand did, in fact, dispute that the cash portion is adequate to compensate for for any harm caused by Hain's alleged misconduct**.  See, e.g., Special Interrogatory No. 23. p. 6.

- "Likewise, the Objectors lack standing to the *cy pres* provision of the Settlement.  Given their acknowledgement that the Settlement fully compensated absent Class Members and the Objectors alike, changes to the *cy pres* provision will in no way affect them."  Plaintiffs' Brief, p. 15.  **Helfand has made no such acknowledgment and even if he did, this would not divest Helfand of standing to object.**

- "However, since the Objectors concede that Class Members who filed claims will receive full and just compensation for any and all alleged damages, any reduction in the fees or incentive awards will not increase the distribution of funds to such claimants. Indeed, to do so would be considered a windfall." Plaintiffs' Brief, p. 15. **Helfand, like those discussed *supra*, made no such concession**.

Put simply, there is much for Plaintiffs and their counsel to be defensive about. It is little surprise Plaintiffs seek to stifle criticism by, for example, attempting to "strike" objections in spite of the absence of any reasoned basis for doing so.

### B.  Plaintiffs' foundationless argument on standing makes no sense.

A class member **need not file a claim form in order to have standing** to challenge the fairness of a class action settlement. *Compare*, Plaintiffs' Brief, p. 17, fn. 9 ["Because he did not file a claim (Rappazzini Decl., ¶ 13), Mr. Helfand has no stake to any of the Settlement proceeds and will be unaffected by any changes to the Settlement. Therefore, he lacks standing for this independent reason as well."]

However, submission of a claim form **is not required to object**. As an initial matter, if Class counsel were somehow correct, then this Court must decline settlement approval based on the insufficiency of notice. The notice **indisputably**

**fails to state that submission of a claim form is required to file an objection**.

See, Notice, *generally*.  Class counsel's argument will have sunk the case requiring re-notice.

As to substantive grounds, the footnote is based on a misunderstanding of the law.  Whether there may be "changes" is not the issue at the fairness hearing.  It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.  The Court cannot "delete, modify or substitute certain provisions.  The settlement must stand or fall in the entirety." *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. Cal. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011  (9th Cir. Cal. 1998).  Thus, whether or not Helfand could benefit from a future change in certain component parts of the settlement is irrelevant; Helfand opposes the current terms, although Helfand appreciates the implicit "concession" by Plaintiffs that changes are required.  Ostensibly, if the terms are changed in a material manner, re-notice and an extension of applicable deadlines would be triggered allowing Helfand to ultimately submit a claim.  As framed, Helfand contends the settlement is inadequate.  It makes no sense that a class member should be required to submit a claim to a settlement such class member contends should not be approved.  Presumably, had Helfand, in fact, submitted a claim, Plaintiffs would have argued that this somehow amounts to a waiver.  Dissent is stifled under either scenario.  This is not what is contemplated

by class action due process.

Indeed, Class members, can, for example, even challenge class certification at the fairness hearing in spite of the fact this could lead to decertification of the class. See, *e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 1997 U.S. LEXIS 4049 (D. N.J. 1997).  If the class were decertified, obviously the claim form and notice become moot.  In a similar way, should the court decline to grant final approval to this settlement as Helfand requests, the claim form becomes moot as well.  Submittal of a claim form has no bearing on the fairness of the settlement.  If the Court declines to approve the settlement, it makes no difference whether a claim form is submitted.

**C. <u>As if Plaintiffs' erroneous contentions were not already sufficiently off-track with respect to the prospective settlement, the claims rate is confirmed to be abysmal.  See, Plaintiffs' Brief, p. 2 [indicating just 22,000 claim forms submitted].</u>**

Such a low redemption rate casts a dark cloud over the settlement and Class counsel's overbearing fee request. The fee request exceeds the benchmark with no meaningful explanation as to, for example, why.  Class counsel makes no effort to square the low take-rate with the fee request or coupon redemption rates.  The value of the coupons is not $2 million and everyone knows this.

It is ostensibly for this reason Class counsel seeks to try and raise contrived

questions of standing that do not, in fact, exist. For instance, a class member need not have been a California resident at any time, suffered injury or deception.  This is beyond dispute in spite of Plaintiffs' attempt to trigger a non-genuine dispute.

### 1. Settlement Class Definition

The Settlement Agreement confirms, "Class" and/or "Class Members" means all individuals who purchased the Challenged Products in California within the Class Period. Specifically excluded from the Class are (a) Defendant, (b) the officers, directors, or employees of Defendant and their immediate family members, (c) any entity in which Defendant has a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendant, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Products for the purpose of resale.  Settlement Agreement, § 1, ¶ 12.

### 2. Notice Class Defined

The Notice also makes clear that the construction of the class is as follows: "You may be a member of the Class if you purchased at least one Avalon Organics® brand cosmetic product in California during the time period from May 11, 2007 through May 11, 2011 or at least one JASON® brand cosmetic product in California during the time period of May 11, 2007 through January 30, 2011. The

Avalon Organics® brand cosmetic products sold in California between May 11, 2007 through May 11, 2011 at issue in the litigation, and the JASON® brand cosmetic products sold in California during the time period of May 11, 2007 through January 30, 2011 at issue in the litigation, are referred to as the 'Challenged Products.' A complete list of the Challenged Products is available at www.HainOrganicCosmeticsLawsuit.com."  Notice, p. 2.

### D. Deception, injury and California residency are irrelevant.  It has nothing to do with standing.

In spite of the plain lack of relevancy, Class counsel oddly asserts: "As with Mr. Helfand, Mr. Sweeney is not a resident of California and was not a resident of California at any time during the class period."  Plaintiffs' Brief, p. 18.  But, as noted *supra*, residency is irrelevant.

Class counsel correctly asserts that Helfand is a current resident of Florida. Class counsel may be attempting to argue that this somehow suggests Helfand did not purchase a covered product in California in spite of verified special interrogatories confirming that Helfand did so.  After all, Helfand is currently residing thousands of miles away.  It is evidently too much of a stretch for Plaintiffs to believe in the era of plane travel or an automobile for persons not presently residing in California to either have resided there in the past or merely visited. The argument is silly.  Helfand's discovery response has been included in

the record.  To the extent there was any question as to "standing" Class counsel corrected the alleged defect by attaching Helfand's verified special interrogatory responses to the Declaration of Mark Todzo.  For convenience, they are also attached herein.

In fact, Objector Helfand was a California resident from December, 1999 to October 22, 2015.  Class counsel knew this because Helfand told them.  See, email from Helfand to Todzo, **Exhibit. B** attached hereto.  "As to a deposition, I reside in Florida.  If you would like to depose me you can do it in Hollywood, Florida.  I am not scheduled to return to California until the fairness hearing.  You shall note that on the website for the California State Bar, my residence in Florida is listed.  **It has been my residence since October 22, 2015**."  (emphasis added).  Helfand moved from San Francisco, where he had lived for over fifteen years to Hollywood, Florida.  This was discussed during meet and confer on discovery.  Class counsel's arguments on residency are disingenuous.

As if there were or could be any genuine question as to irrelevant issues of residency, which there are not, Helfand's phone number at the top of his pleading has a "415" area code and this should have alerted Class counsel that its arguments on this topic were ill-advised.  Helfand is also member in good standing of the California Bar.

Helfand verifies in discovery responses, "A list of Avalon and Jason Products

Objector Helfand purchased in California during the relevant class period are ....."
See, Ex. A, Special Interrogatories 1-6.  Helfand listed the products and identified
the retail stores in question, contrary to Plaintiffs' erroneous assertions otherwise.
Helfand did not need to provide the retail store addresses for each purchase and it
was not requested.  Helfand provided more specifics than the named
representatives in their own declarations in support of final approval.

For example, while Rosminah Brown identifies a Whole Foods somewhere in
Roseville, California, where she evidently made a singular product purchase, she
does not provide the address or prove her residency.  This is in stark contrast to
Helfand who made multiple product purchases and identified them by name.  Ms.
Brown may not be a legitimate Class members, at least, according to her own
attorneys, as she is not specific enough; neglecting to mention street addresses and
other details not required for anyone but presumably Helfand.  Class counsel gets it
wrong.  Of course, Ms. Brown has standing; just like Objector.

Mr. Eric Lohela fails to even establish a single product purchase, let alone
residence.  In his short and incomplete declaration the totality of the key factual
attestation is as follows: " I purchased seven Avalon Organics® products. At the
time of my purchases, I believed, based on the "Organics" name, that the products
were either completely or at least mostly comprised of organic ingredients."  Mr.
Lohela does not indicate the purchases were in California, unlike Helfand.  Mr.

Lohela fails to identify a specific product and fails to identify any store.

Helfand provided a great deal of information to Class counsel well before the discovery was due.  Had Class counsel genuinely believed there was a deficiency in the discovery responses, one would have thought Class counsel would have met and conferred.  Make no mistake about it; Class counsel is generally concerned that its fees are excessive and the proposed settlement is infirm.  The argument about professional objectors is not persuasive since the settlement includes a so-called "early pay" provision.  In other words, Class counsel gets its money before the class.  Class counsel alleges that this provision is included so as to avoid objector blackmail.  Evidently, at least, according to Class counsel, it does not solve the problem.  Then why have it?  The claimed remedy, the "early payout," does not solve the issue Class counsel asserts to exist, thus, it should not be enforced as it fails to remedy the claimed problem and leads to its exacerbation later.

Class counsel argues Helfand's objection to fees was somehow premature and that Helfand must be a soothsayer.  See, Plaintiffs' Brief, p. 21 ["Unlike Mr. Helfand, the other Objectors at least waited until after Plaintiffs filed their fee request before raising their objections."]  Why should Helfand have waited?  Class counsel indicated in the notice it would seek the very excessive award of attorneys' fees they now seek.  Helfand took Class counsel at its word; Class counsel kept it, at least, with regard to the promised presentation of an overbroad fee request as

described in the Notice and Settlement Agreement.  Class counsel obviously believes that Helfand should have disbelieved the notice; ignored the Settlement Agreement, and waited until the fee motion was actually filed; to see if Class counsel would repent or Helfand would forget.

Helfand contends that the fees payable to Class counsel are excessive.  The Class Action Fairness Act applies in situations where a coupon settlement also provides for non-coupon relief, such as equitable or injunctive relief: "the language of § 1712(b) is not permissive — if class counsel wants to be paid "any" fees, and the "recovery of the coupons is not used to determine" those fees, the entirety of the payment "shall be" calculated "based upon the amount of time class counsel reasonably expended working on the action," i.e., using the lodestar method. *Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173  (9th Cir. Cal. 2013). Here there is no doubt that the provisions of § 1712(c) apply and Helfand has standing to raise a challenge to these issues.  Helfand need not have responded a to a fee motion as he already served his objection to the fee request in the first place. Class counsel's approach would necessarily require Class members to object twice or thrice; once is more than enough.

### E. **Plaintiffs' personal attacks directed at Objector should be ignored.**

In simplest terms, Plaintiffs would have the Court believe that merely by Objector appearing in other class action settlements and/or representing class

members who object to other proposed settlements (many of which have been reversed on appeal), that a conclusion can be drawn that the instant objections should be disregarded.  This is misadventure and will likely lead to reversal. Plaintiffs misconstrue (or alternatively desire to ignore) the intent of the law which provides for a procedure for Class members who are not the named representatives to be represented and to have a voice in the determination as to whether the settlement is, in fact, fair, reasonable and adequate.

**1. Objectors play a vital role in assisting Court determination of the fairness, adequacy and reasonableness of the prospective settlement.**

As has been noted in case law and by the commentators as quoted below, the vast majority of class members have absolutely no knowledge that a class action is pending or the status of a class action until notice of a proposed settlement is sent to class members.  As a practical matter, whether a case has been pending for two months or ten years is not relevant with regard to the real world involvement of class members who desire to object to a proposed settlement.  Class members who are not named representatives are given notice of a proposed settlement only after the court has preliminarily approved the settlement.  It is at this point that class members begin to inquire about their rights and the fairness of the settlement.  That is what is contemplated by class action due process and that is exactly what happens in all class settlements, including the proposed settlement in this case.

Due process dictates that once a proposed settlement has been reached, the class members have a right to appear or hire counsel experienced in such matters and appear and be heard if such individuals believe the settlement to be unfair, unreasonable, or inadequate.  *Devlin v. Scardelletti* (2002) 536 U.S. 1, 10.

The critical and helpful role of objectors in class litigation has been discussed in detail in case law and by learned commentators.  As has been discussed universally in case law, the objective of the fairness hearing is to protect the interests of absent class members - not the named plaintiffs in the case.  While the law generally requires notice of a lawsuit and an opportunity for a hearing before any person can be bound by a court's judgment, applicable law clearly provides that in class actions, the judgment  - whether or not favorable to the class - shall be binding on all those whom the court finds to be members of the class.  **The Supreme Court of the United States has made it clear that due process requires in all class action settlements that objecting class members be given sufficient standing so as to participate at the fairness hearing**.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965 (1985).

As noted in *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co*., in a class action, the absentee members of the class may not even learn of the proposed judgment until a tentative settlement has been struck on their behalf by the defendant and Class Counsel.  *Mars Steel Corp. v. Continental Ill. Nat'l Bank &*

*Trust Co.* (7th Cir. 1987) 834 F.2d 677, 680-81.  When notice of a proposed

settlement and notice of the class action are sent simultaneously, the absent class

members may perceive it as *fait accompli*.  The potential for conflict of interest

under these circumstances is substantial and, to some extent, unavoidable.  For

these reasons, the role of the objector is critical in assisting the court in ensuring

the fairness of the settlement, even if the objectors are few in number.

During the last decade, legal scholars have expressed growing concerns about

the conflicts that may arise between the class and its counsel: "These attorneys are

not subject to monitoring by their putative clients, they operate largely according to

their own self interests, subject only to whatever restraints might be imposed by

bar discipline, judicial oversight, and their own sense of ethics and fiduciary

responsibilities."  Jonathan R. Macey & Geoffrey P. Miller, The Plaintiffs'

Attorney's Role in Class Actions and Derivative Litigation, 58 U. Chi. L. Rev. 1,

7-8 (1991); see also John C. Coffee, Jr., Rethinking the Class Action, 62 Ind. L. J.

625, 628-629 (1987) (listing several factors that have contributed to

"entrepreneurial" class action litigation, including the relatively low cost of filing

dubious class action suits, the large amounts defendants are willing to pay in

settling these suits, and the incentive for class counsel to invest little time or effort

in protecting the absent class members); John C. Coffee, Jr., The Regulation of

Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class

Action, 54 U. Chi. L. Rev. 877, 879 (1987) (outlining proposed rule changes that

would "manipulate the incentives that the law holds out so as to motivate" class

counsel to defend the absent class members as they would any other client);

Kenneth W. Dam, Class Actions: Efficiency, Compensation, Deterrence, and

Conflict of Interest, 4 J. of Legal Studies 47, 61 (1975) (coining the phrase

"lawyer-entrepreneur" in reference to class counsel).

Judge Posner, in his Richard A. Posner, "An Economic Analysis of Law," at

570 (4th ed.) stated:

"[T]he absence of a real client impairs the incentive of the lawyer for the

class to press the suit to a successful conclusion.  His earnings from the suit are

determined by the legal fee he receives rather than the size of the judgment.  No

one has economic stake in the size of the judgment except the defendant, who has

an interest in minimizing it.  The lawyer for the class will be tempted to offer to

settle with defendant for a small judgment and a large legal fee, and such an offer

will be attractive to the defendant, provided the sum of the two figures is less than

the defendant's net expected loss from going to trial.  Although the judge must

approve the settlement, the lawyers largely control his access to the

information-about the merits of the claim, the amount of work done by the lawyer

for the class, the likely damages if the case goes to trial, etc. - that is vital to

determining the reasonableness of the settlement."

**2. The potential for abuse of the class action procedure points out the importance of the Court's obligation, with the assistance of objecting class members, to determine that the protective order requirements of Rule 23 are met.**

While the court generally plays a relatively detached role in most civil proceedings, in a class action the court is the guardian of class interest. (*Weinberger v. Kendrick*, 698 F.2d 61, 69 n. 10, cert. denied, 464 U.S. 818, 104 S. Ct. 77, 78 L.Ed.2d 89 (1983); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir.), cert. denied 484 U.S. 926, 108 S. Ct. 289, 98 L. Ed. 2d 249 (1987); *In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195, 225 (5th Cir. 1981), cert. denied, 456 U.S. 998, 102S. Ct. 2283, 73 L. Ed. 2d 1294 (1982); *Piambion v. Bailey*, 610 F. 2d 1306, 1327 (5th Cir.), cert. denied, 449 U.S. 1011, 101 S. Ct. 568, 66, L. Ed. 2d 469 (1980); 2 NEWBURG & CONTE, ß 11.41, at 11-93 to 11-94.)  The trial court therefore bears the burden under Rule 23 to police the proceedings to minimize conflicts of interest and, primarily, to protect absent class members.  The drafters designed the procedural requirements of (class action law), so that the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interest.  The rule thus represents a measured response to the issues of how the due process rights of absentee interests can be protected and how absentees'

represented status can be reconciled with a litigation system premised on traditional bipolar litigation.

In simplest terms, the critical role of the court, joined by objectors, with regard to class settlement review is to act as guardian for absent class members in assuring that the settlement is fair, adequate, and reasonable.  If in fact the settlement is fair, adequate, and reasonable in all aspects, the court, the defendant, and class counsel should welcome the presence of class members, who did not participate in the discovery and settlement procedures, in their role of further assuring that the settlement meets applicable jurisprudential requirements.

**3. The role of objectors in class actions is critical in assuring that the proposed settlement is fair, adequate, and reasonable, and benefits the Class and the Court.**

The undersigned submits that this Court is served by a knowledgeable attorney and class member putting the settlement to the test in the hopes that the class will be the winner - not merely Class counsel.  In simplest terms, this case should not be based on "name-calling" by the parties.  The Court's determination with regard to final approval of the prospective settlement should boil down to the unequivocal question in class action settlements, and that is whether the settlement, as proposed, is fair, adequate, and reasonable.  The Court should not allow Class counsel to make a mockery of Objector's due process rights merely because Class

counsel cannot address Objectors' concerns on the merits.  Class counsel's name

calling in order to attempt to shield the prospective settlement from unbiased

scrutiny should be disregarded.


Dated: February 2, 2016                    _____/s/_____


                                    Steven Franklyn Helfand

                                    1400 SW 137th Avenue, Apt. F112
                                    Hollywood, FL 33027
                                    Telephone:  415.397.0007
                                    Email:      sh4078@gmail.com

## DECLARATION BY STEVEN F. HELFAND

I, Steven F. Helfand declare as follows:

1.  Attached at **Exhibit A** hereto is a copy of some of the myriad discovery that I was subjected to in this case by Class counsel.  It was/is verified.

2.  Attached at **Exhibit B** is a true and correct copy of an email I directed to Mr. Todzo as to meet and confer on discovery.

3.  Class counsel correctly asserts that I am a current resident of Florida.  Class counsel attempts to argue that this somehow suggests I did not purchase a covered product in California in spite of verified special interrogatories confirming that I did so.

4.  In fact, I was a California resident from December, 1999 to October 22, 2015.  I lived in San Francisco.  I did nearly all my shopping of covered products in San Francisco.  Class counsel knew this because I told them both orally and in writing.  See, email from Helfand to Todzo, Ex. B.  "As to a deposition, I reside in Florida.  If you would like to depose me you can do it in Hollywood, Florida.  I am not scheduled to return to California until the fairness hearing.  You shall note that on the website for the California State Bar, my residence in Florida is listed.  **It has been my residence since October 22, 2015**."  (emphasis added).  I moved from San Francisco, where I had lived for over 15 years to Hollywood, Florida.  This was discussed during meet and confer on discovery and in response to an attempt by Class counsel to set my deposition in San Francisco, California, in light of "my

practice." Attached at **Exhibit C** is a true and correct copy of an email sent to me by Mr. Todzo making this reference. My response, attached at **Exhibit B**, plainly reflects that I moved on the date indicated. I offered to appear at deposition under appropriate conditions and requested that it be promptly taken. Class counsel declined to take it.

This declaration is executed under penalty of perjury under the laws of the United States of America in Hollywood, Florida on February 2, 2016.

_____/s/_____

Steven Franklyn Helfand

1400 SW 137th Avenue, Apt. F112
Hollywood, FL 33027
Telephone:  415.397.0007
Email:        sh4078@gmail.com