1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                               San Francisco Division

| | |
|---|---|
| 11 ROSMINAH BROWN and ERIC LOHELA, on behalf of themselves and all others similarly situated, | No. 3:11-cv-03082-LB |
| | AMENDED ORDER APPROVING CLASS-ACTION SETTLEMENT, DISMISSING CASE, AND ENTERING FINAL JUDGMENT |
| Plaintiffs, | |
| v. | [Re: ECF Nos. 362, 367] |
| THE HAIN CELESTIAL GROUP, INC., | |
| Defendant. | |

18                                **INTRODUCTION**

19        The plaintiffs Rosminah Brown and Eric Lohela bought Avalon Organics® and JASON®

20   brand cosmetic products that are manufactured and marketed by the defendant The Hain Celestial

21   Group and then – on behalf of themselves and other consumers – sued Hain complaining that

22   Hain falsely advertised, marketed, sold, and labeled these and other products as organic, in

23   violation of 1) the California Organic Products Act of 2003 ("COPA"), Cal. Health & Safety Code

24   § 110810, *et seq.,* 2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et*

25   *seq.,* 3) the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and 4) the

26   California Commercial Code provision regarding express warranties, Cal. Com. Code § 2313.

27   The court previously certified two classes. The parties then settled their lawsuit and the court

28   granted the plaintiffs' unopposed motion for preliminary approval of the class-action settlement.

(Order, ECF No. 360.[1]) The plaintiffs moved for final approval of the settlement. (Motion, ECF No. 367.) The court held a fairness hearing on February 11, 2016. (Minute Order, ECF No. 369.) The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including fees, costs, and the incentive awards to the named plaintiffs.

**STATEMENT**

**1.   The lawsuit to date**

The plaintiffs filed the lawsuit in May 2011, and Hain removed the case in June 2011. (ECF No. 1.) The operative complaint is the first amended complaint filed in August 2012. (*See* ECF No. 68.) In a second case filed initially in the Central District of California, transferred here, related to this case, and then stayed, the plaintiff Lauren Crivier alleged violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, the UCL, and the CLRA based on the same misleading use of the word "organic" on the principal display panel of some JASON® products as well as other uses of the words "natural" and "organic" on product labels and advertising. (Complaint, ECF No. 1, No. 3:13-cv-02237-LB.)

The litigation has been protracted and included 1) a motion to dismiss (denied), 2) Hain's petition for interlocutory appeal to the Ninth Circuit (denied by the Ninth Circuit), 3) a second motion to dismiss and a motion to strike class allegations in the first amended complaint (denied), 4) contentious discovery, 5) Hain's summary-judgment motion asserting that a state agency determination "extinguished" the plaintiffs' claims (denied), 6) the court's certification of two classes, and 7) three motions by the plaintiffs for partial summary judgment (all granted). (*See* Docket.) The parties also had several rounds of court-hosted and private mediation. (Todzo Decl., ECF No. 355-1 at ¶¶ 5-6.) The parties' last settlement conference with Magistrate Judge Joseph Spero (held six months before the trial date) resulted in an agreement in principle, and the parties then negotiated the final terms of the settlement. (*Id.* ¶ 6.)

---

[1] Citations are to the electronic case file ("ECF"); pin cites are to the ECF-generated numbers at the tops of documents.

**2. The settlement**

The court previously certified the following two classes:

The "JASON® Class," defined as:

> All persons who purchased a cosmetic product in California sold under the JASON® brand name between May 12, 2007 and January 31, 2011 other than those JASON® brand cosmetic products that are USDA-certified as organic.

The "Avalon Organics® Class", defined as:

> All persons who purchased a cosmetic product in California sold under the Avalon Organics® brand name between May 12, 2007 and the present other than those Avalon Organics® brand cosmetic products that are USDA-certified as organic.

(11/18/15 Order, ECF No. 269; 11/30/14 Order Modifying Class Definitions, ECF No. 272.)

The parties agreed to a modified class definition for settlement purposes only:

> All individuals who purchased the Challenged Products in California within the Class Period. Specifically excluded from the Class are (a) Defendant, (b) the officers, directors, or employees of Defendant and their immediate family members, (c) any entity in which Defendant has a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendant, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Products for the purpose of resale.

(*See* Settlement Agreement, Todzo Decl., Ex. 1, ECF No. 358-3, §§ 1.A.12 & V.) "Challenged Products" are defined as "all Avalon Organics® and JASON® brand cosmetic products at issue in this Action that were manufactured and/or sold during the Class Period, a complete list of which is provided in . . . Exhibit F hereto." (*Id.* § I.A.7.) The "Class Period" is from May 11, 2007 to January 30, 2011 for purchases of JASON® products and May 11, 2007 to May 11, 2011 for purchases of Avalon Organics® products. (*Id.* § I.A.16.) As part of the settlement, the parties stipulated to adding Ms. Crivier as a named plaintiff and dismissing her separate complaint. (*Id.* § II.F.)

In summary form, the settlement is as follows.

Hain will pay $7.5 million cash and $1.85 million in coupons (plus $150,000 in redemption costs) redeemable for the two cosmetic-product brands at issue in the litigation: Avalon Organics® and JASON®. The fund will be used to pay all costs of notice and administration (estimated in the settlement agreement as $585,000 and capped at $650,000), any fees and costs

1  awarded to the plaintiffs' counsel (up to $4 million), service awards to the plaintiffs, and claims

2  by class members. Class members are eligible to receive either 1) a cash payment or 2) a cash

3  payment and coupons. Those who elect a cash-only payment will receive 50% of the purchase

4  price of each Avalon Organics® or JASON® product up to a total of $50. (For example, if a

5  claimant bought $100 of products, a cash-only payment would be $50.) Those who elect cash and

6  coupons will receive 50% of purchase price of the products purchased and coupons substituted

7  for 20% of the purchase price (with a cash-to-coupon ratio of $1 cash to $4 in coupons) up to a

8  total of $80. (For example, a claimant who bought $100 in products would receive $40 in cash

9  (80% of the $50 cash payment) and $40 in coupons.) There will be no cap on the total amount

10 paid to claimants – either for cash or cash/coupon payments – who have receipts or other proof of

11 purchase (such as a credit- or debit-card statement or product packaging) for the challenged

12 products; claimants without receipts will self-identify under penalty of perjury. (*Id.* § III.)

13     The settlement provides for service awards in an amount not to exceed $7,500 for Rosminah

14 Brown and Eric Lohela and $1,500 for Lauren Crivier. (*Id.* § VIII.B.) (The plaintiffs no longer

15 seek a service award for Ms. Crivier. (*See* Motion, ECF No. 362 at 31.))

16     If any of the $7.5 million remains in the fund after paying all claims, service awards, and fees

17 and costs, the money will be donated *cy pres*, in equal amounts, to two non-profit organizations:

18 the California Consumer Protection Foundation and the Jesse Smith Noyes Foundation.

19 (Settlement Agreement, Todzo Decl., Ex. 1, ECF No. 358-3, § III.A.6.)

20     In return for the settlement relief, class members who do not opt out of the settlement will

21 release claims under the COPA, UCL, CLRA, express-warranty provisions of the California

22 Commercial Code, and any other similar state or federal laws, in connection with the Challenged

23 Products. (*Id.* § IV.) But the revised class period means that the settlement does not release Hain

24 from any claims that the post-reformulation Avalon Organics® products continue to violate the

25 COPA by (allegedly) counting as organic content the water used to rehydrate the dehydrated aloe

26 in the products. (*See id.* §§ I.A.7 & I.A.16.)

27

28

### 3.  Notice to the class

The independent claims administrator is the Heffler Claims Group; its responsibilities are in the settlement agreement and include publishing class notice, establishing a website, distributing funds to class members, and otherwise administering the settlement. (*Id.* § III.A.2 & Exs. A, C-E.)

The court previously approved the form of notice:

> The court approves the class notice and the notice plan and finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. The form of notice fairly, plainly, accurately, and reasonably provides class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class-members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) instructions on how to object to the settlement and the deadline for doing so; (7) the date, time, and location of the Final Approval Hearing; (8) the Internet address for the settlement and the toll-free number and other means for obtaining additional information about the settlement; and (9) the identity of class counsel and the provisions for attorneys' fees, costs, and class-representative service awards. (Settlement Agreement § VI, Exs. C and E.)

(Order, ECF No. 360 at 7-8.)

The court previously approved the following notice plan and directed notice:

> Within 30 days of this order, the Claims Administrator will establish a settlement website, which will have (1) the publication notice, (2) a list of frequently asked questions, (3) key deadlines, (4) downloadable copies of the court's orders and the pleadings relating to the settlement, (5) the signed stipulation of settlement, (6) downloadable copies of the class notice and claim form, (7) information about how to contact the Claim Administrator via a toll-free number, email, and mail, and (8) information about how to file a claim. (*Id.* § VI(B) & Ex. D.)

> Notice will be published in several places, all of which will refer class members to the settlement website. Within 35 days of this order, a full-page advertisement will be published in the California edition of People Magazine, and a one-sixth-page advertisement will be published four times over a three-week period in the San Francisco Chronicle. Press releases in English and Spanish that target class members will be disseminated via the PR Newswire. Within 30 days of this order, Internet and mobile advertisements in English and Spanish that target class members will be run for 31 days on various media services, including People.com, Pulpo Media, USWeekly.com, Xasis, Sharethrough, Facebook, and Twitter. (*Id.*)

> \* \* \*

> The court directs the Claim Administrator to follow the notice plan set forth in this order and in the settlement agreement, including (1) establishing the settlement website with copies of this order, the stipulated settlement agreement and all exhibits, class notice, the claims forms that may be downloaded and submitted online, by mail, or by facsimile, and other information required by the settlement agreement or useful to the class members (including the toll-free hotline and methods for contacting the Claim Administrator and a

1   link to class counsel's website), (2) establishing the toll-free hotline, and (3) commencing
2   notice within 30 days from the date of this order (which is slightly more than 90 days
    before the Final Approval Hearing). The costs of the notice, the processing of claims, and
3   other Claim Administrator expenses may be paid from the claim fund in accordance with
    the applicable provisions of the settlement agreement.
4
(*Id.* at 8-9.)

5       The claims administrator complied with these procedures. (*See* Rapazzini Decl., ECF No.

6   367-6, ¶¶ 4-14.) As of January 27, 2016, there were 80,961 visits to the settlement website, and

7   class members submitted 22,126 claims forms. This results (so far) in cash payments of

8   $840,539.52 and $112,474 in coupons. (*Id.* ¶ 14.) The deadline for members to opt out or object to

9   the settlement was January 12, 2016. (*See* Order, ECF No. 260 at 8.) The claims administrator

10  received no objections. (*See* Rapazzini Decl., ECF No. 367-6, ¶ 12.) Four objectors filed

11  objections with the court. (*See* ECF Nos. 361, 363, 364, 365.)

12                                  **ANALYSIS**

13  **1.   Jurisdiction**

14      This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

15

16  **2.   Certification of Class**

17      The court certifies the following settlement class for settlement purposes only under Federal

18  Rule of Civil Procedure 23(b)(3). (*See* Order, ECF No. 360 at 5.)

19      All individuals who purchased the Challenged Products in California within the Class
        Period. Specifically excluded from the Class are (a) Defendant, (b) the officers,
20      directors, or employees of Defendant and their immediate family members, (c) any
        entity in which Defendant has a controlling interest, (d) any affiliate, legal
21      representative, heir, or assign of Defendant, (e) all federal court judges who have
        presided over this Action and their immediate family members, (f) all persons who
22      submit a valid request for exclusion from the Class, and (g) those who purchased the
        Challenged Products for the purpose of resale.
23

24  (*See* Settlement Agreement, Todzo Decl., Ex. 1, ECF No. 358-3, §§ 1.A.12 & V.) "Challenged

25  Products" are defined as "all Avalon Organics® and JASON® brand cosmetic products at issue in

26  this Action that were manufactured and/or sold during the Class Period, a complete list of which

27  is provided in . . . Exhibit F hereto." (*Id.* § I.A.7.) The "Class Period" is from May 11, 2007, to

28

January 30, 2011, for purchases of JASON® brand products and May 11, 2007, to May 11, 2011, for purchases of Avalon® brand products. (*Id.* § I.A.16.)

The settlement class differs in scope from the classes that the court certified previously only in that it excludes purchases of post-reformulation Avalon Organics® products by excluding purchases after May 11, 2011. Thus, the court applies its analysis from its certification order and finds (for settlement purposes only) that the proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy: 1) the class is so numerous that joinder of all members is impracticable; 2) there are common questions of law and fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); 11/18/14 Order, ECF No. 269 at 17-23. The court also finds (for settlement purposes only) that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); 11/18/14 Order, ECF No. 269 at 24-32.

The court thus certifies the class for settlement purposes only.

### 3.   Class Representative, Class Counsel, and Claims Administrator

For the reasons set forth in its class-certification order, the court confirms its prior appointment of 1) the plaintiffs Rosminah Brown, Eric Lohela, and Lauren Crivier as the class representatives and 2) Mark N. Todzo and the Lexington Law Group as class counsel. *See* Fed. R. Civ. P. 23(a) & (g)(1); 11/18//14 Order, ECF No. 269 at 21-22. The court confirms its prior designation of the Heffler Claims Group as the claims administrator.

### 4.   Notice

As described above, the claims administrator provided notice to the members of the class in the form that the court had approved. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of

their rights under the settlement agreement, met the requirements of due process, and complied

with the court's order regarding notice.

### 5.   Compliance with the Class Action Fairness Act

On October 2, 2015, as required by the notice plan, the claims administrator provided notice

of the settlement and other information showing compliance with the Class Action Fairness Act of

2005, 28 U.S.C. § 1715, to the appropriate federal and state officials within ten days after the

parties filed their settlement agreement with the court. (Settlement Agreement, Ex. D; Rapazzini

Decl., ECF No. 367-6, ¶ 4.) The notice met the requirements of 28 U.S.C. § 1715 and was made

more than 90 days before the final approval hearing as required by 28 U.S.C. § 1715.

### 6.   Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex

class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th

Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may

approve a proposed class-action settlement only "after a hearing and on finding that it is fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed

settlement is ideal or the best possible; it determines only whether the settlement is fair, free of

collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. See *Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified

factors relevant to assessing a settlement proposal: 1) the strength of the plaintiff's case; 2) the

risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining

class-action status throughout trial; 4) the amount offered in settlement; 5) the extent of discovery

completed and the stage of the proceeding; 6) the experience and views of counsel; 7) the

presence of a government participant; and 8) the reaction of class members to the proposed

settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and

experienced counsel, the court begins its analysis with a presumption that the settlement is fair

1   and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal.

2   Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We

3   put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . .

4   ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

5       The court finds the settlement fair, reasonable, and adequate under the *Hanlon* factors.

6       First, an evaluation of the strengths and weaknesses of the plaintiffs' case militates in favor of

7   settlement. The plaintiffs represent that they could establish liability and damages on a class-wide

8   basis at trial, but they concede that there is considerable litigation risk going forward. The legal

9   issues regarding the allegedly false organic representations have not been widely litigated, and

10   Hain vigorously disputes that the class could prove liability or establish entitlement to relief.

11       Second, the related point is that the litigation poses risks. The court is familiar with the

12   lengthy, hard-fought nature of the proceeding, and there is a risk of continued, expensive

13   litigation. Hain strenuously opposed class certification and the plaintiffs' attempts to narrow the

14   disputes through summary-judgment motions. The plaintiffs note the risk of an appeal of the

15   court's orders. Settlement provides immediate monetary relief for all class members. (The coupon

16   component is does not alter the reasonableness of the settlement: there is an option for a cash-

17   only settlement, and the cash-to-coupon $1/$4 ratio for 20% of the cash value gives consumers an

18   opportunity to obtain a higher value in addition to the largely cash payment. *Cf.* 28 U.S.C. §

19   1712(c).)

20       Third, the settlement appears to treat all class members fairly. Having a claims process is

21   necessary because there is no central repository of information identifying class members. All

22   class members who purchased the Challenged Products between May 2007 and the time when the

23   Challenged Products were relabeled or reformulated (January 30, 2011, for the JASON® products

24   and May 11, 2011, for the Avalon Organics® products) may apply for the monetary relief

25   provided by the settlement.

26       Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and

27   was reached after an extensive mediation process, including the final mediation with Magistrate

28   Judge Spero.

1    In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair,

2  adequate, and reasonable" that preliminary approval of the settlement is warranted. *See Officers*

3  *for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th

4  Cir. 1982). The court thus approves the settlement.

5

6  **7.  *Cy Pres* Award**

7    If any of the $7.5 million remains in the fund after paying all claims, service awards, and fees

8  and costs, the money will be donated *cy pres*, in equal amounts*,* to the California Consumer

9  Protection Foundation and the Jesse Smith Noyes Foundation. (Todzo Decl., ECF No. 355-1, ¶

10  14.) The foundations will solicit requests for proposals ("RFPs") from non-profit organizations

11  for proposals to benefit class members on consumer education regarding advertising relating to

12  organic products. (*Id.*) This distribution accounts for and has a substantial nexus to the nature of

13  the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v.*

14  *Facebook, Inc.*, 696 F.3d 811, 819-822 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034,

15  1038-41 (9th Cir. 2011).

16

17  **8.  Attorney's Fees**

18    Class counsel asks for $3.541 million in attorney's fees (roughly a million dollars less than the

19  lodestar) and litigation expenses of $459,000 for a total of $4 million in fees and costs. (Motion,

20  ECF No. 362 at 7.) The settlement agreement provides that "Any award of attorneys' fees and

21  expenses to Class Counsel must be approved by the Court as set forth herein." (Settlement

22  Agreement, ECF No. 358-3 at 24.) It also states, "Class Counsel shall make an award for

23  attorneys' fees and expenses of up to $4,000,000 for the Action and the *Crivier* Action. Class

24  Counsel's application for attorneys' fees and expenses shall be made in accordance with COPA,

25  the CLRA, and Cal. Code of Civil Procedure 1021.5." (*Id.*)

26    Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the

27  court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by

28  the parties' agreement." Fee provisions included in proposed class-action settlements must be

reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942-43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *See Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). As the settlement agreement sets forth, California fee-shifting statutes – the COPA, the CLRA, and California Code of Civil Procedure 1021.5 – also authorize the award of fees. When a fee-shifting statute applies, courts may award fees on the lodestar method. *See California Practice Guide: Federal Civil Procedure Before Trial* § 10:870 (Rutter Group 2015) (collecting cases); *see PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000) (fee-setting inquiry under California law ordinarily begins with the lodestar); *Serrano v. Priest*, 569 P.2d 1303, 1316 n.23 (Cal. 1977). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *See Fischel*, 307 F.3d at 1006; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

1   When determining the value of a settlement, courts consider the monetary and non-monetary

2   benefits that the settlement confers. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir.

3   2003); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may

4   properly consider the value of injunctive relief obtained as a result of settlement in determining

5   the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18,

6   2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of

7   distribution, and the injunctive relief").

8   Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

9   benefits being made available to class members rather than the actual amount that is ultimately

10   claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007)

11   (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court

12   abused its discretion in basing attorney fee award on actual distribution to class" instead of

13   amount being made available) (quoted language from *Young*)).

14   If the court applies the percentage method, it then typically roughly calculates the lodestar as a

15   "cross-check to assess the reasonableness of the percentage award." *See, e.g., Weeks v. Kellogg*

16   *Co.,* 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25,

17   48-49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226-27 (1980); *Melnyk v.*

18   *Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970).

19   "The lodestar . . . is produced by multiplying the number of hours reasonably expended by

20   counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19,

21   26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by

22   applying a positive or negative "multiplier to take into account a variety of other factors,

23   including the quality of the representation, the novelty and complexity of the issues, the results

24   obtained, and the contingent risk presented." *Id.*

25   Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed.

26   R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover

27   reasonable expenses that would typically be billed to paying clients in non-contingency matters.);

28   *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving

reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiffs' counsel, the court finds that the lodestar is at least $4.51 million with an estimated lodestar through final distribution of $4.54 million. (*See* Todzo Decl., ECF No. 362-1, ¶¶ 29-30.) For all the reasons cited by the plaintiffs, the billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market. The rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Counsel also submitted a sufficient breakdown of the attorneys' billing efforts for the court to reach its conclusion about the lodestar.

Thus, the fees that the plaintiffs request ($3.51 million) are supported by the lodestar (in excess of $4.5 million). The fee request exceeds the 25% benchmark under the "percentage of the fund" approach. *See Hanlon*, 150 F.3d at 1029 (25% is a benchmark in common-fund cases). The plaintiffs suggest that the common-fund approach "'is of questionable validity in California.'" (*See* Motion, ECF No. 362 at 21, *quoting Dunk v. Ford Motor Co.,*, 56 Cal. Rptr. 2d 483 (Cal. App. 1996) and *Lealoa v. Beneficial California, Inc.*, 97 Cal. Rptr. 2d 797, 804 (Cal. App. 2000).) The court does not need to resolve the issue because it is undisputed that it can apply the lodestar. *See Bluetooth Headset*, 654 F.3d at 941; *Relante v. Viator Inc.*, No. 12-cv-05868-JD, 2015 WL 3613713, at *1 (N.D. Cal. June 9, 2015); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015). It does so here and awards the fees that the plaintiffs request.

1    The fee award is appropriate based on counsel's efforts and the substantial benefits to the

2    class. As discussed earlier in this order, the litigation has been protracted, contentious, and

3    intensely fought. (*See supra* Statement, *1. The lawsuit to date*; Analysis, *6. Approval of*

4    *Settlement.*) The settlement is fair and gives good cash value to the class members, and the

5    coupon portion enhances the value of the largely cash payment. (*See supra* Analysis, *6. Approval*

6    *of Settlement.*) Based on the plaintiffs' calculation, 100% disgorgement of profits is about $8.2

7    million. (*See* Motion, ECF No. 362 at 18.) The court is familiar with the damages issues; this

8    figure is disputed. Regardless, applying litigation-risk discounts alone (as the plaintiffs point out)

9    results in a discount to something approximating the settlement of the case. (*See id.*)

10    As in *Wren*, the defendants mounted a "particularly aggressive defense" over the course of

11    years. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at * 16 (N.D.

12    Cal. Apr. 1, 2011). The fee award here (discounted from the lodestar by more than $1 million) is

13    appropriate and reflects counsel's exceptional efforts. *See id.* The record reflects the court's view

14    of the plaintiffs' counsel (and indeed, the defendant's counsel too): all did an extraordinary job.

15    The case was not just litigated intensively, it was litigated well.

16    The court also finds the lodestar approach appropriate under CAFA. *See* 28 U.S.C. § 1712(b).

17    The court also finds the expenses to be appropriate and supported by the submissions.

18    approves and awards the requested litigation expenses. This results in total award for fees and

19    costs of $4 million.

20    The court also approves and authorizes payment of the actual claims-administration expenses

21    in an amount not to exceed $650,000. (As discussed in the Statement, the expenses were

22    estimated at $585,000 and capped at $650,000 and are to be paid from the $7.5-million fund.)

23

24    **9.  Service Awards**

25    The proposed awards to the class representatives Rosminah Brown and Eric Lohela are

26    $7,500 each. (Motion, ECF No. 362 at 31.) The plaintiffs do not seek an award for Lauren

27    Crivier. (*Id.*)

28

---

ORDER APPROVING CLASS-ACTION SETTLEMENT
No. 3:11-cv-03082-LB

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975-78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

Counsel and the named plaintiffs described sufficiently the efforts of the named plaintiffs, including consulting with counsel, attending mediations, being deposed, and otherwise participating in the litigation. (*See* Motion, ECF No. 362 at 32, summarizing declarations.) The court approves the award.


**10. Objectors**

The claims administrator received no objections. (*See* Rapazzini Decl., ECF No. 367-6, ¶ 12.) Four people filed objections with the court: Steven Helfand, Sheri Lee Williams, Dawn Weaver, and Patrick Sweeney. (*See* ECF Nos. 361, 363, 364, 365.) None of these people appeared at the hearing. Collectively, their objections are as follows: 1) the class notice is misleading on grounds that include a) its failure to describe rights released and remedies to redress the rights and b) the inadequacy of the website; 2) the settlement is inadequate because it does not have injunctive relief and the coupon relief is inappropriate; 3) the *cy pres* award is inappropriate; 4) the release is overbroad because it includes negligence, does not exclude claims for personal injury, and waives future claims; 5) the service awards are inappropriate or excessive; 6) the attorney's fees are

excessive, can be paid before the resolution of any appeal, and are (essentially) not objected to by the defendant; 7) the court should delay settlement approval until a) the Ninth Circuit decides three cases (*Brazil v. Dole Food Co.*, No. 15-1748; *Jones v. ConAgra*, No. 14-16327; and *Kosta v. Del Monte Foods, Inc.*, No. 15-16974) and b) the California Supreme Court resolves (in *Laffitte v. Robert Half Int'l, Inc.*) whether the lodestar approach or the percent-of-common-fund approach applies; and 8) the claims-administration process does not reliably ensure that "the claims process actually delivers what was promised." (*See* ECF Nos. 361 at 2-5, 363, 364, and 365 at 2.)

Four preliminary, but important, observations should be made about the objectors. First, they are few in number. Against the approximately 22,500 claims that class members filed by the claims deadline, the settlement prompted four objections. (Rapazzini Decl. – ECF No. 367-6 at 16 [¶ 14].) That is less than 0.02% of the participating class. No one has asked to be excluded from the class. (*Id.* at 5 [¶ 12].) A "relatively small number" of objections is "an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001); *cf. Staton*, 327 F.3d at 959 (court should consider "reaction of the class members to the proposed settlement"). Second, as the plaintiffs have adequately shown, these are "professional" objectors; courts across the country (including in the Ninth Circuit) have repeatedly turned aside their efforts to upend settlements. (Todzo Decl. – ECF No. 367-1 at 4-5 [¶ 10]) (citing, *inter alia*, *In re NVIDIA GPU Litig.*, 539 F. App'x 822 (9th Cir. 2013), *Howerton v. Cargill, Inc.*, 2014 WL 6976041, *3 (D. Haw. Dec. 8, 2014), *Roberts v. Electrolux Home Products, Inc.*, 2014 WL 4568632, *12 (C.D. Cal. Sept. 11, 2014), and *Dennis v. Kellogg Co.*, 2013 WL 6055326, *4 n. 2 (S.D. Cal. Nov. 4, 2013)). Third, one of the objectors, Mr. Helfand, has provided no proof that he is a class member. He has not submitted a claim. (*See* Rapazzini Decl. – ECF No. 367-6 at 5-6 [¶ 13].) His objection does not provide the information that might substitute for a claim; he neither provides receipts nor identifies the products he claims to have bought. (ECF No. 361.) The court could therefore almost certainly strike his objection. *E.g., In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 7985367, *2 (S.D. Cal. Sept. 17, 2013). Fourth, it is questionable whether these objectors have standing to challenge the settlement. To take just one aspect of the settlement: None of the objectors contends that the monetary relief is insufficient to compensate

1    him or her — or any class member — for harm caused by Hain's alleged wrongs. (*See* ECF Nos.

2    361, 363-65, *passim*.) It is consequently hard to see how they are aggrieved by this main

3    settlement element. But, if they are not "aggrieved," they may lack standing to object to this part

4    of the settlement. *See In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, 33 F.3d 29 (9th

5    Cir. 1994). With that essential backdrop, it is not clear how changing other aspects of the

6    settlement, such as the *cy pres* term or the fee award, would "actually benefit" these objectors —

7    so that, again, they apparently lack standing. *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d

8    1084, 1088 (9th Cir. 2011) (class member "lacks standing" to challenge settlement unless

9    proposed change would "actually benefit" her).

10    The court nevertheless considers the objectors' various points. None warrants rejecting the

11    settlement. First, the notice is factually true and is not misleading. It accurately describes the

12    scope of the release.

13    Second, as to the coupon component, there is an option for a cash-only settlement. The

14    coupons (for 20% of the cash value) are an option that allow consumers to obtain a higher value

15    in addition to the largely cash settlement. (*See supra*, Analysis.) There is no injunctive relief

16    because — as the course of this litigation shows — cosmetics in both lines underwent

17    reformulations during the class period and relabeling that (among other things) removed the

18    "Pure, Natural, and Organic" tagline from the Jason products. (*See* Summary-Judgment Order,

19    ECF No. 340 at 2; Amended Class-Certification Order, ECF No. 269.)

20    Third, the *cy pres* award is appropriate (as discussed above). The objectors' arguments do not

21    change this conclusion.

22    Fourth, the release is limited to claims at issue in the case and does not (for example) include

23    personal-injury claims.

24    Fifth, the incentive awards here are permitted, reasonable, and do not render the settlement

25    unfair or unreasonable.

26    Sixth, the court made a thorough review of the request for attorney's fees and found them

27    reasonable. Indeed, the settlement agreement requires the court's approval of the fees. The

28    objections do not preclude approval of the settlement. The plaintiffs' counsel has the option of

1    being paid fees before resolution of any appeal; they also must return them immediately if the

2    settlement is overturned on appeal. (Settlement Agreement § VII.A.4.) Courts in this district

3    approve these "quick pay" provisions routinely. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*,

4    No. MDL 3:07-md-1827 SI, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting

5    cases).

6    　　　Seventh, the court sees no grounds to delay based on the pending cases. In particular, the

7    court rejected the defendant's arguments about ascertainability, and delay pending the Ninth

8    Circuit appeals seemingly would hurt (not help) the plaintiffs if it reached a result contrary to the

9    court's rulings regarding class certification. The court also considered the common-fund approach

10   but ultimately decided to award fees based on its consideration of the lodestar.

11   　　　Finally, the claims process is robust and is designed to deliver the settlement amounts to class

12   members.

13

14   **11. Other Orders**

15   　　　1.   This order and judgment incorporates by reference the definitions in the Stipulation of

16   Settlement dated in September 2015 ("Stipulation"), e-filed at ECF No. 358-3, and attached as

17   Exhibit A, and all capitalized terms used herein shall have the same meanings as set forth in the

18   Stipulation unless set forth differently herein. The terms of the Stipulation are fully incorporated

19   in this Judgment as if set forth fully here.

20   　　　2.   As set forth above, the Court has jurisdiction over the subject matter of this action and all

21   Parties to the action. No Class Member has filed a request to be excluded from the class.

22   (Rapazzini Decl. – ECF No. 367-6 at 5 [¶ 11].)

23   　　　3.   As set forth above, and pursuant to Federal Rule of Civil Procedure 23(b)(3), the court

24   amends the classes previously certified by order dated November 14, 2014, by certifying the

25   following Class:

26   　　　All individuals who purchased the Challenged Products in California within the Class Period.
     Specifically excluded from the Class are (a) Defendant, (b) the officers, directors, or
27   employees of Defendant and their immediate family members, (c) any entity in which
     Defendant has a controlling interest, (d) any affiliate, legal representative, heir, or assign of
28   Defendant, (e) all federal court judges who have presided over this Action and their

1  immediate family members, (f) all persons who submit a valid request for exclusion from the Class, and (g) those who purchased the Challenged Products for the purpose of resale.

2  4.  Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons or entities who

3  satisfy the Class definition above, except those Class Members who timely and validly excluded

4  themselves from the Class, are Class Members bound by this Judgment.

5  5.  Persons or entities that filed timely exclusion requests are not bound by this Judgment or

6  the terms of the Stipulation and may pursue their own individual remedies against the Defendant.

7  However, such excluded parties are not entitled to any rights or benefits provided to Class

8  Members by the terms of the Stipulation. Again, in this case, no one has requested exclusion from

9  the Class.

10  6.  Upon the Effective Date, the named plaintiffs and each Class Member shall be deemed to

11  have, and by operation of this Final Settlement Order and Judgment shall have released, waived,

12  and discharged with prejudice the Defendant from any and all Released Claims as set forth in

13  Section IV of the Stipulation.

14  7.  All Class Members who have not timely and validly submitted requests for exclusion are

15  bound by this Judgment and by the terms of the Stipulation.

16  8.  The court awards a service award of 7,500 each to the named plaintiffs Rosminah Brown

17  and Eric Lohela.

18  9.  The court awards fees and costs totaling $4 million to the plaintiffs' counsel.

19  10. The court dismisses the case with prejudice, and the Released Parties are hereby released

20  from all further liability for the Released Claims.

21  11. Without affecting the finality of this judgment, the court reserves jurisdiction over the

22  implementation, administration, and enforcement of this Judgment and the Stipulation, and all

23  matters ancillary thereto.

24  12. The court finds that no reason exists for delay in ordering final judgment pursuant to

25  Federal Rule of Civil Procedure 54(b) and thus directs the entry of judgment forthwith.

26  13. The court authorizes the Parties, without the need for further approval from the court, to

27  agree to and adopt such modifications and expansions of the Stipulation, including without

28

1    limitation the claim review procedure, that are consistent with this Judgment and do not limit the

2    rights of Class Members under the Stipulation.

3

4                                    **CONCLUSION**

5        This order amends the court's previous order of February 17, 2016. (*See* ECF No. 372.) The

6    previous order is withdrawn and this order is substituted *nunc pro tunc* in its place. The

7    amendments corrected one typographical error and two erroneous references to an exhibit. This

8    amendment makes no substantive change in the previous order. This disposes of ECF Nos. 362,

9    367.

10       **IT IS SO ORDERED.**

11   Dated: February 18, 2016

12   _____

13   LAUREL BEELER
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28